Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, NV 89118
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*[Proposed] Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEVADA**

|  |  |
|---|---|
| In re | Case No.: 25-12627-mkn<br>Chapter 11 |
| VELOCITY ESPORTS, INC.<br><br>          Debtor. | **EMERGENCY MOTION FOR<br>PRELIMINARY INJUNCTION**<br><br>Hearing Date: **OST REQUESTED**<br>Hearing Time: **OST REQUESTED** |

Velocity Esports, Inc. (the "Holding Company"), Velocity Esports Las Vegas Town Square, LLC ("Velocity Las Vegas"), Velocity Esports Chicago Schaumburg, LLC ("Velocity Schaumburg"), Velocity Esports Newport, LLC ("Velocity Newport"), Velocity Esports Newport II, LLC ("Velocity Newport II"), and Velocity Esports Orlando Downtown, LLC ("Velocity Orlando") ( collectively the "Debtors"),[1] as debtors and debtors in possession in the above-referenced chapter 11 bankruptcy cases (the "Chapter 11 Cases"), by and through their proposed counsel, Nevada Bankruptcy Attorneys, respectfully submit this *Emergency Motion for (I) Preliminary Injunction; and/or (II) Extension of the Automatic Stay* (the "Motion") for an order, pursuant to sections 105 and 362 of title 11 of the United States Code, §§ 101 et. seq. (the "Bankruptcy Code"), and Rule 9024 of the Federal Rules of Bankruptcy Procedure (the

---

[1] Debtors are operating under the presumption that this application will be heard after Debtors' Emergency First Day Motion for Order Directing Joint Administration of Related Cases Pursuant to Bankruptcy Rule 1015(B) and Local Rule 1015, which would consolidate the Dockets for the Debtors' Chapter 11 Cases. Should Debtors' Motion for Order Directing Joint Administration not be granted, Debtors' will file separate Applications to Employ NBA in accordance with the Bankruptcy Code and Bankruptcy Rules.

"Bankruptcy Rules"), enjoining 434 N. Orange Investment, LLC ("Orange Investment"), from pursuing litigation against Debtor's Principals, Philip Kaplan and Leonard Wanger (the "Orlando Litigation").[2]

This Motion is made and based upon the following memorandum of points and authorities, the *Declaration of Philip Kaplan* (the "Kaplan Declaration") filed concurrently herewith, the papers and pleadings on file with this Court in the Chapter 11 Cases, and any oral argument presented at the time of the hearing of this Motion.

Debtors' bases for seeking emergency relief are detailed in the Omnibus Declaration of Philip Kaplan at ¶ 38, filed concurrently herewith and incorporated herein by reference.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### PRELIMINARY STATEMENT

The Debtors seek to enjoin Orange Investment from pursuing litigation against Debtors' principals, Philip Kaplan ("Kaplan") and Leonard Wanger ("Wanger") (collectively "Principals"). Velocity Orlando originally contracted with Orange Investment on or about April 28, 2023. Additionally, the Principals executed a personal guarantee obligation with Orange Investment ("Personal Guarantee"), attached to the Executed Retail Lease as Exhibit I-2. On April 10, 2025, Orange Investment sued the Principals in accordance with the Personal Guarantee and is seeking to collect "in excess of $50,000, exclusive of interest, costs, and attorneys' fees" ("Orlando Litigation").[3] Allowing Orange Investment to pursue these funds would critically hinder the Debtors' reorganizational efforts because it prevents the Principals from reinvesting these funds into the Debtor's accounts, which would then be used to satisfy all creditors, instead of prioritizing Orange Investment's claim. The Principals are also heavily invested in time commitment to ensuring that Debtors successfully emerge from their reorganization, and the Orlando Litigation will only hinder that effort by diverting the Principals' time and personal funds from their duties to Debtors.

---

[2] Orlando Litigation refers to *434 N Orange Invs. LLC v. Leonard Wanger and Philip Kaplan*, Case No. 2025-CA-003002-O (Fla. 9th Cir. Ct. April 8, 2025); Kaplan Decl. at ¶ 17.
[3] *Id.*

Under Debtors' forthcoming plan of reorganization, Orange Investment's claim will be paid in full, thus obviating the need to pursue the Orlando Litigation. Allowing Orange Investment to pursue the Orlando Litigation would thus irreparably harm the Debtors and render their Bankruptcy Filing meaningless.

This Motion is based upon these moving papers, the accompanying Memorandum of Points and Authorities, the Omnibus Declaration of Philip Kaplin in Support of First Day Motions (the "Kaplan Declaration"), the record in these cases, including the pleadings and documents filed on behalf of the parties, the arguments and representations of counsel, and any oral or documentary evidence presented at or prior to the time of the hearing.

Debtors' bases for seeking emergency relief are detailed in the Omnibus Declaration of Philip Kaplan at ¶ 38, filed concurrently herewith and incorporated herein by reference.

## II.

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are 11 U.S.C. §§ 105 and 362, and Fed. R. Bankr. P. 9024.

4.      Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## III.

### FACTUAL BACKGROUND

A.      **General Background**

5.      On April 30, 2025 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

6. Debtors are concurrently filing their Emergency First Day Motions for Orders Directing Joint Administration of Related Cases Pursuant to Bankruptcy Rule 1015(B) and Local Rule 1015, and the Debtors are currently awaiting it to be heard.

7. Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, under sections 1107 and 1108 of the Bankruptcy Code. *See generally* Chapter 11 Case Dockets.

8. An Official Committee of Unsecured Creditors (the "Committee") has not yet been appointed in the Debtors' Chapter 11 Cases.

**B.    Contracting with Orange Investment**

9. The Debtors entered a lease for a site in downtown Orlando in April 2023, to operate under Velocity Esports Orlando Downtown, LLC. Orlando's vibrant, young demographic and reputation as a top entertainment destination made it an attractive expansion target.  Kaplan Decl. at ¶ 16.

10. Designs were completed and fully approved, but construction never commenced. The capital originally earmarked for Orlando was consumed by cost overruns at Debtors Schaumberg location in Chicago, Il., and bids for the Orlando build-out came in at nearly three times initial estimates. Management negotiated a termination of the lease. While partial payments were made under the termination agreement, Velocity ultimately defaulted on further payments to preserve remaining liquidity, leading to the retention of restructuring counsel.  On  April 10, 2025, the Orlando landlord, 434 N. Orange Investment LLC ("Orlando Landlord") sued the Principals under their personal guarantees. *Id*. at 17.

11. If this lawsuit is allowed to proceed independently of the instant Bankruptcy Case, it will place a significant strain on our already stretched resources in terms of time the Wanger and I need to dedicate to the restructuring of the Newport and Las Vegas locations to ensure they are attractive to prospective buyers.  *Id*. at 17(a).

12. Even worse, if this lawsuit is allowed to proceed, it will absorb significant financial resources from the Principals personal finances which they will need to fund Velocity's successful reorganization *Id*. at ¶ 17(b).

13. Debtors are looking for every option to reduce overhead and reach a positive cash

position.  Principals may nevertheless have to contribute several hundred dollars in personal funds through the end of 2025 to accomplish this result, which they are prepared to do.  Debtor's proposed plan of reorganization will provide for repayment of 100 percent of the Orlando Landlord's unsecured claim to avoid the need for the collection action in Orlando. *Id*.

## IV.

## ARGUMENT

Section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Congress clearly envisioned that section 105(a) would be available to issue an injunction on a case-by-case basis in situations expressly excepted from the automatic stay. *See* House Report at 175, 343, *reprinted in* 1978 U.S. Code Cong. & Admin. News at 6135, 6298 (Code grants courts "ample other powers to stay actions not covered by the automatic stay," including section 105(a), which require more careful review by the court). "Indeed, many courts recognize that injunctions under Section 105 can be used to stay creditor activity if that creditor had received relief from stay under Section 362(d)." *Lattin v. Midland Mort. Co. (In re Lattin)*, 461 B.R. 832, 834 (Bankr. D. Nev. 2011).

The Ninth Circuit has long recognized that Section 105 includes authority to stay or enjoin third-party litigation not automatically stayed by 11 U.S.C. § 362 when that outside action would "threaten the integrity of the bankrupt's estate." *Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1093 (9th Cir. 2007) (quoting *Canter v. Canter (In re Canter)*, 299 F.3d 1150, 1155 (9th Cir. 2002)) (footnote omitted).  In other words, if a creditor's lawsuit against a non-debtor would adversely impact the bankruptcy estate or undermine the debtor's reorganization, the bankruptcy court may intervene under § 105(a). This power prevents creditors from doing indirectly (by suing third parties) what they cannot do directly against the debtor because of the automatic stay.

Where, as here, "the complaint here seeks to impose a specific injunction, tailored to the facts of this case, against an identified creditor," injunctive relief under section 105 is available. *In re Lattin*, 461 B.R. at 835. "That creditor, in turn, has all the procedural protections provided by an adversary proceeding as

well the ability to require that the debtors prove the traditional prerequisites of equitable relief. The exercise of this type of jurisdiction has always been within the bankruptcy court's power, and remain so." *Id.*

In the Ninth Circuit "the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a)."[4] Thus, to receive the requested injunction, the Debtors must establish: (1) a reasonable likelihood of a successful reorganization; (2) the Debtors will suffer irreparable harm without the injunction; (3) the balance of hardships between the parties favors the Debtors; and (4) the issuance of the injunction advances public policy. *Id.* at 1093-96. "The first two factors of the traditional standard are the most critical[,]"[5] and the third and fourth factors are only analyzed if the first two are satisfied.[6] There is a sliding scale with regards to balancing the first two factors, the stronger the likelihood of success, the weaker the showing of irreparable harm needs to be, and vice versa.[7] Debtors easily meet all four elements.

As noted above, the Debtors seek a short injunction through plan confirmation to allow Orange Investment's claim to be addressed through the Debtor's plan. The Debtors expect that the Principals will infuse cash into the Debtor's business, which would allow the plan to confirm. However, should the Orlando Litigation continue, the Principal's funds would instead be used to fight it and would jeopardize the Debtor's reorganization.

**(1) Debtors have a reasonable likelihood of success on the merits.**

A debtor demonstrates a likelihood of successful reorganization by presenting credible evidence that it can propose and confirm a feasible Chapter 11 plan. Courts evaluate whether there is a reasonable prospect that the debtor's restructuring efforts, including proposed contributions and business forecasts, will result in satisfaction of creditor claims. See Excel Innovations, 502 F.3d at 1094.

The Debtors are pursuing an actively managed and credible reorganization strategy. Their forthcoming plan proposes to pay Orange Investment's claim in full, thereby preserving the rights of that creditor while enabling an equitable distribution to all stakeholders. More importantly, the Debtors have secured the committed financial support of their Principals, Kaplan and Wanger, who are prepared to

---

[4] *In re Excel Innovations*, 502 F.3d at 1094.
[5] *Nken v. Holder*, 556 U.S. 418, 434 (2009).
[6] *Index Newspapers LLC v. United States Marshals Service*, 977 F.3d 817, 824 (9th Cir. 2020).
[7] *In re Red Mountain Machine Co.*, 451 B.R. 897, 899 (Bankr. D. Ariz. 2011) (referencing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).

contribute over $500,000.00 of their personal funds through the end of 2025. These funds are critical to the continued operations of the Debtors' remaining profitable venues and the confirmation of a plan. The forward-looking cash flow statements attached to the Kaplan Declaration further underscore the viability of the reorganization.

Because the Debtors have outlined a clear and credible path to a successful reorganization—including committed funding, operational restructuring, and a plan that proposes to satisfy all allowed claims—they satisfy the first and most essential prong of the preliminary injunction standard under Ninth Circuit law.

**(2) If the Orlando Litigation is permitted to move forward, irreparably harm reorganization.**

A debtor suffers irreparable harm where, absent an injunction, creditor actions against non-debtors will directly and materially undermine the reorganization effort, such as by depleting funding sources or diverting key personnel. *See Excel Innovations*, 502 F.3d at 1094-95; *In re Lattin*, 461 B.R. 832, 834-35 (Bankr. D. Nev. 2011).

Allowing Orange Investment to proceed with the Orlando Litigation will inflict immediate and irreparable harm on the Debtors. The Principals are the only available source of interim funding needed to continue operations and avoid administrative insolvency. If compelled to defend and potentially satisfy the Orlando Litigation, the Principals will necessarily redirect resources that are earmarked for the Debtors' reorganization. Further, both Principals are actively engaged in day-to-day operational and strategic efforts essential to stabilizing and marketing the Debtors' core locations. Litigation distractions and financial depletion will jeopardize not only the plan funding, but also the critical management oversight necessary to reorganize.

Because the Orlando Litigation will directly interfere with the Debtors' access to vital capital and leadership at a critical juncture, the Debtors have shown that they, their estates, and their creditors will suffer irreparable harm absent injunctive relief.

**(3) The Balance of Hardships Favor Debtors**

When the harm to the debtor and its creditors from denying injunctive relief outweighs the harm to the enjoined party from a temporary delay, the balance of hardships favors issuance of the injunction. Courts

consider whether the enjoined party is prejudiced by the delay and whether the debtor has proposed to address the underlying claim through its Chapter 11 plan. *See Excel Innovations*, 502 F.3d at 1095.

The harm to the Debtors and their estates from the denial of an injunction is grave: the loss of funding and key leadership would likely force a liquidation, resulting in minimal recoveries for all creditors. In contrast, Orange Investment faces only a modest delay in pursuing its claim. The Debtors' proposed plan of reorganization will pay Orange's claim in full. Thus, Orange is being asked to wait to be paid in an orderly fashion alongside similarly situated creditors—not to forfeit any substantive rights. This minimal delay does not prejudice Orange and is outweighed by the potentially catastrophic harm to the estate.

The balance of hardships overwhelmingly favors the Debtors. The injunction would preserve the estate's reorganization prospects and equitable treatment of all creditors, while imposing only a temporary delay on Orange Investment's ability to recover.

**(4) Public Policy Weighs in Favor of an Injunction**

When the harm to the debtor and its creditors from denying injunctive relief outweighs the harm to the enjoined party from a temporary delay, the balance of hardships favors issuance of the injunction. Courts consider whether the enjoined party is prejudiced by the delay and whether the debtor has proposed to address the underlying claim through its Chapter 11 plan. *See Excel Innovations*, 502 F.3d at 1095. "A court of equity abhors forfeitures, and will not lend its aid to enforce them." *Jones v. New York Guar. & Indem. Co.*, 101 U.S. 622, 628 (1879). Further, "[t]he public interest in successful reorganization is significant." *Bank of the West v. Fabtech Indus., Inc. (In re Fabtech Indus., Inc.)*, No. ADV.10-01294-BB, 2010 WL 6452908, at *6 (B.A.P. 9th Cir. July 19, 2010) (internal quotation marks omitted).

The harm to the Debtors and their estates from the denial of an injunction is grave: the loss of funding and key leadership would likely force a liquidation, resulting in minimal recoveries for all creditors. In contrast, Orange Investment faces only a modest delay in pursuing its claim. The Debtors' proposed plan of reorganization will pay Orange's claim in full. Thus, Orange is being asked to wait to be paid in an orderly fashion alongside similarly situated creditors—not to forfeit any substantive rights. This minimal delay does not prejudice Orange and is outweighed by the potentially catastrophic harm to the estate.

The balance of hardships overwhelmingly favors the Debtors. The injunction would preserve the estate's reorganization prospects and equitable treatment of all creditors, while imposing only a temporary delay on Orange Investment's ability to recover.

Each of the four preliminary injunction factors weighs in favor of the Debtors. They have demonstrated a strong likelihood of reorganization, irreparable harm in the absence of relief, a favorable balance of hardships, and the advancement of public interest. Accordingly, under binding Ninth Circuit precedent, the Court should grant the requested injunction pursuant to 11 U.S.C. § 105(a).

**V.**

**CONCLUSION**

The Debtors have demonstrated that each of the four elements required for injunctive relief under 11 U.S.C. § 105(a) is satisfied. The proposed plan of reorganization is viable and well-supported by the committed financial contributions of the Principals, who are actively engaged in the Debtors' day-to-day management. Without injunctive relief, the Orlando Litigation will irreparably harm the reorganization effort by diverting critical leadership and capital from the estate at its most vulnerable stage. The balance of hardships tips decidedly in favor of the Debtors, as Orange Investment faces only a temporary delay in enforcing a claim that will be satisfied in full under the proposed plan. The public interest also weighs heavily in favor of preserving the integrity of the Chapter 11 process and ensuring an equitable outcome for all creditors.

Accordingly, and in light of the urgent need to protect the estate and its creditors, the Debtors respectfully request that the Court enter an order enjoining Orange Investment from continuing the Orlando Litigation through the conclusion of the plan confirmation process, and granting such other and further relief as the Court deems just and proper.

Dated: 5/23/2025

By: /s/ Matthew Knepper, Esq.
Matthew Knepper, Esq.
NEVADA BANKRUPTCY ATTORNEYS, LLC
*[Proposed] Attorney for Debtor*

- 9 -