Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re

VELOCITY ESPORTS, INC.,

■ Affects Velocity Esports, Inc.
■ Affects Velocity Esports Las Vegas Town Square, LLC
☐ Affects Velocity Esports Chicago Schaumburg, LLC
☐ Affects Velocity Esports Newport Kentucky, LLC
☐ Affects Velocity Esports Orlando Downtown, LLC
☐ Affects All Debtors

Debtor(s).

Case No.: 25-12627-mkn

Jointly Administered with
Case No. 25-12628-mkn
Case No. 25-12629-mkn
Case No. 25-12630-mkn
Case No. 25-12631-mkn

Chapter 11

**DEBTORS' MOTION FOR ENTRY OF AN ORDER: (I) (A) APPROVING THE DESIGNATION OF ILLUSION ATTRACTIONS LLC AS THE STALKING HORSE BIDDER; (B) APPROVING THE STALKING HORSE ASSET PURCHASE AGREEMENT AS THE STALKING HORSE BID; AND (C) APPROVING STALKING HORSE PROTECTIONS; (II) APPROVING BIDDING PROCEDURES FOR THE SALE OF CERTAIN ASSETS; (III) APPROVING THE FORM AND MANNER OF NOTICE; (IV) SCHEDULING AN AUCTION AND A HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST OR OTHERWISE BEST BIDDER; AND (V) GRANTING RELATED RELIEF**

Hearing Date: **OST REQUESTED**
Hearing Time: **OST REQUESTED**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................**1**

II. JURISDICTION AND VENUE .....................................................................................**2**

III. RELIEF REQUESTED ................................................................................................**3**

IV. STATEMENT OF FACTS ...........................................................................................**3**

    A. The Chapter 11 Cases ............................................................................................**3**

    B. Facts Relevant to the Motion ................................................................................**4**

        1. The Debtors' Assets and Liabilities.................................................................**4**

            a. NewtekOne, Inc's First-Priority Security Interest ....................................**5**

            b. NFS Capital, LLC Lease # 2025-0269 ......................................................**6**

            c. NFS Capital, LLC Secured Settlement Agreement ...................................**6**

            d. H. Betti Industries, Inc. – Secured Equipment Claim...............................**7**

            e. Pawnee Leasing – Secured Equipment Claim ...........................................**8**

            f. SRFM Town Square Owner, LLC – VES LV Landlord.............................**9**

            g. First Choice Business Brokers and Freddie McFinn to be Paid as a Priority

               Administrative Expense. .........................................................................**10**

        2. The Debtors' Marketing Efforts ...................................................................**10**

        3. The Proposed Sale Process ...........................................................................**12**

        4. Summary of the Stalking Horse APA and Key Terms ...................................**12**

        5. No Sale of PII; Consumer Privacy Ombudsman Not Requested ..............**12**

V. PROPOSED SALE AND BIDDING PROCEDURES ..............................................**13**

    A. Disclosures Required Pursuant to Local Rule 6004(b)........................................**13**

    B. Requirements to Participate in the Auction ........................................................**19**

    C. Secured Creditors' Right to Credit Bid...............................................................**20**

    D. Designated Stalking Horse Bidder and Stalking Horse Protections ...................**21**

    E. Auction ................................................................................................................**21**

    F. Representations and Warranties ..........................................................................**23**

    G. Acceptance of the Winning Bid...........................................................................**23**

i

VI. THE SALE HEARING ..................................................................................................24

VII. RETURN OF DEPOSITS ............................................................................................25

VIII. NOTICE PROCEDURES............................................................................................26

IX. RESERVATION OF RIGHTS IN CONNECTION WITH BIDDING PROCEDURES

     AND AUCTION PROCESS .....................................................................................27

X. ARGUMENT..................................................................................................................28

    A. Approval of the Bidding Procedures Is Appropriate and in the Best Interests of the

       Debtors and Their Stakeholders.....................................................................................28

    B. Approval of the Stalking Horse Protections Set Forth in the APA Is Appropriate and

       Supports a Value-Maxing Sale Process.........................................................................29

    C. Approval of the Sale Is Warranted under § 363..............................................................32

       1. The Sale of the Sale Assets Is Authorized as a Sound Exercise of the Debtors'

          Business Judgment ....................................................................................................32

       2. The Sale of the Sale Assets Free and Clear of Liens and Other Interests Is

          Authorized by § 363(f)..............................................................................................33

       3. Application of Sale Proceeds to Priority Administrative Expenses Is Appropriate

          Under the Bankruptcy Code.......................................................................................34

       4. The Successful Bidder Should Be Afforded All Protections Under § 363(m) as a

          Good Faith Purchaser.................................................................................................35

    D. Relief from the 14-Day Waiting Period under Bankruptcy Rule 6004(h) Is

       Appropriate .....................................................................................................................36

  XI. CONCLUSION..............................................................................................................37

**TABLE OF AUTHORITIES**

**Cases**

*Calpine Corp. v. O'Brien Env'tl Energy, Inc.* (*In re O'Brien Env'tl Energy, Inc.*), 181 F.3d 527, 533-37 (3d Cir. 1999) ................................................................................................**30, 31**

*Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ...........................................**28**

*Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983)..........................................................................................................................**28, 32**

*Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564-65 (8th Cir. 1997) .....................................................................................................................**28, 32**

*GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005) ...**29**

*In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (2d Cir. 1986)...................................................**28, 32**

*In re Am. W. Airlines, Inc.*, 166 B.R. 908, 913 (Bankr. D. Ariz. 1994) ......................................**30, 31**

*In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130-31 (Bankr. N.D. Ga. 1988)..................**28, 33**

*In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986)...............................................**33**

*In re Cascade AG Servs., Inc.*, 2012 WL 13332185 at *1 (Bankr. W.D. Wash. Mar. 12, 2012) ............................................................................................................................................**30**

*In re Cascade Hydraulics & Util. Serv., Inc.*, 815 F.2d 546, 548 (9th Cir. 1987) ......................**35**

*In re Cmty. Healthcare of Douglas, Inc.*, 2013 WL 12291504 at *10 (Bankr. D. Ariz. Oct. 22, 2013) ......................................................................................................................................**30–31**

*In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1068-69 (9th Cir. 2001)..............**35**

*In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992)..**33**

*In re Elec. Transp. Eng'g Corp.*, 2010 WL 11823030 at *3 (Bankr. D. Ariz. Sept. 3, 2010).....**30**

*In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) ...........................................................................**35**

*In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011) .........................................**34**

*In re Specialty Tr., Inc.*, 2013 WL 12577922 at *1 (Bankr. D. Nev. Mar. 26, 2013) .................**31**

*In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)...........................................................................**35**

*In re Trident Water Works, Inc.*, 2010 WL 5167286 at *1 (Bankr. W.D. Wash. Aug. 27, 2010) ...............................................................................................................................**30**

*In re W. Funding Inc.*, 2013 WL 6997402 at *2 (Bankr. D. Nev. Nov. 27, 2013).....................**30**

*In re W. Funding Inc.*, 2014 WL 183945 (Bankr. D. Nev. Jan. 6, 2014) ...................................**30**

*In re Walter*, 83 B.R. 14, 19 (9th Cir. BAP 1988)........................................................**28, 32**

*Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) ............................................ **28, 32**

*Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) ...........................................................................................**33**

*Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 659 (S.D.N.Y. 1992) ...............................................................**28, 30, 31, 32**

*Official Comm. of Unsecured Creditors v. The LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 143 (2d Cir. 1992) .........................................................................................**28**

*Onouli-Kona Land Co. v. Est. of Richards* (*In re Onouli-Kona Land Co.*), 846 F.2d 1170, 1172 (9th Cir. 1988) .............................................................................................**35**

*Paulman v. Gateway Venture Partners III, L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 576 (9th Cir. 1998) ...........................................................................................................**35**

*Simantob v. Claims Prosecutor, LLC* (*In re Lahijani*), 325 B.R. 282, 288-89 (9th Cir. B.A.P. 2005) .......................................................................................................................**29, 32**

**Statutes**

11 U.S.C. § 101.................................................................................................................**15**

11 U.S.C. § 101(41A)........................................................................................................**12, 14**

11 U.S.C. §§ 101-1532 .....................................................................................................**1**

11 U.S.C. § 105(a) ............................................................................................................**1, 3, 28**

11 U.S.C. § 327.................................................................................................................**34**

11 U.S.C. § 330.................................................................................................................**10, 34**

11 U.S.C. § 331.................................................................................................................**10**

11 U.S.C. § 332.................................................................................................................**13, 14**

11 U.S.C. § 361 ............................................................................................................. **8**

11 U.S.C. § 363 ............................................................................................................. **1, 3, 18, 28, 32**

11 U.S.C. § 363(b) ........................................................................................................ **3, 8, 17, 32, 34, 35**

11 U.S.C. § 363(b)(1) ................................................................................................... **13, 14, 28, 32, 34**

11 U.S.C. § 363(b)(1)(B) .............................................................................................. **13**

11 U.S.C. § 363(e) ........................................................................................................ **34**

11 U.S.C. § 363(f) ......................................................................................................... **5, 8, 18, 33, 34**

11 U.S.C. § 363(f)(2) .................................................................................................... **7, 34**

11 U.S.C. § 363(f)(4) .................................................................................................... **34**

11 U.S.C. § 363(f)(5) .................................................................................................... **34**

11 U.S.C. § 363(k) ........................................................................................................ **18, 20**

11 U.S.C. § 363(m) ....................................................................................................... **24, 35, 36**

11 U.S.C. § 363(n) ........................................................................................................ **23, 36**

11 U.S.C. § 365 ............................................................................................................. **1, 3, 6, 8**

11 U.S.C. § 365(a) ........................................................................................................ **3, 9**

11 U.S.C. § 365(b) ........................................................................................................ **3**

11 U.S.C. § 365(b)(1)(A) .............................................................................................. **6**

11 U.S.C. § 365(b)(1)(C) .............................................................................................. **9, 27**

11 U.S.C. § 365(d)(4) .................................................................................................... **9**

11 U.S.C. § 365(f) ......................................................................................................... **3, 6**

11 U.S.C. § 365(f)(2)(B) ............................................................................................... **6, 9, 27**

11 U.S.C. § 502 ............................................................................................................. **8**

11 U.S.C. § 502(g) ........................................................................................................ **10**

11 U.S.C. § 503(b)................................................................................................................**31, 34**

11 U.S.C. § 503(b)(1)(A)............................................................................................................**31**

11 U.S.C. § 506(a)........................................................................................................................**35**

11 U.S.C. § 506(b)......................................................................................................................**5, 8**

11 U.S.C. § 506(c)........................................................................................................................**35**

11 U.S.C. § 507(a)(2)...................................................................................................................**34**

11 U.S.C. §§ 544-549...................................................................................................................**18**

11 U.S.C. § 1107(a)........................................................................................................................**3**

11 U.S.C. § 1108.............................................................................................................................**3**

11 U.S.C. § 1146(a)......................................................................................................................**17**

28 U.S.C. § 157(b)(2).....................................................................................................................**2**

28 U.S.C. § 1334.............................................................................................................................**2**

28 U.S.C. § 1408.............................................................................................................................**2**

28 U.S.C. § 1409.............................................................................................................................**2**

**Rules**

Fed. R. Bankr. P. 2002.......................................................................................................**1, 3, 26, 27, 28**

Fed. R. Bankr. P. 2002(a)(2)........................................................................................................**28**

Fed. R. Bankr. P. 6004.......................................................................................................**1, 3, 26, 28, 32**

Fed. R. Bankr. P. 6004(g)............................................................................................................**13**

Fed. R. Bankr. P. 6004(h)......................................................................................................**19, 36**

Fed. R. Bankr. P. 6006.....................................................................................................**1, 3, 6, 8, 28**

Fed. R. Bankr. P. 9014.........................................................................................................**3, 6, 26**

Local Rule 6004...........................................................................................................................**2, 3**

Local Rule 6004(b)...................................................................................................................**13, 28**

Local Rule 6004(b)(1) ...........................................................................................................**14**

Local Rule 6004(b)(2) ...........................................................................................................**14**

Local Rule 6004(b)(3) ...........................................................................................................**14**

Local Rule 6004(b)(4) ...........................................................................................................**14**

Local Rule 6004(b)(5) ...........................................................................................................**14**

Local Rule 6004(b)(6)(A)......................................................................................................**15**

Local Rule 6004(b)(6)(B)......................................................................................................**15**

Local Rule 6004(b)(6)(C).......................................................................................................**15**

Local Rule 6004(b)(6)(D)......................................................................................................**15**

Local Rule 6004(b)(6)(E) ......................................................................................................**16**

Local Rule 6004(b)(6)(F) .......................................................................................................**16**

Local Rule 6004(b)(6)(G).......................................................................................................**17**

Local Rule 6004(b)(6)(H)......................................................................................................**17**

Local Rule 6004(b)(6)(I) ........................................................................................................**17**

Local Rule 6004(b)(6)(J) ........................................................................................................**17**

Local Rule 6004(b)(6)(K).......................................................................................................**18**

Local Rule 6004(b)(6)(L) .......................................................................................................**18**

Local Rule 6004(b)(6)(M) ......................................................................................................**18**

Local Rule 6004(b)(6)(N)......................................................................................................**18**

Local Rule 6004(b)(6)(O).......................................................................................................**19**

Local Rule 9014.2...................................................................................................................**3**

**Other Authorities**

Advisory Committee Notes to Fed. R. Bankr. P. 6004(h)........................................................**36**

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8,
119 Stat. 23 (2005) ................................................................................................................**1**

Collier on Bankruptcy ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ...........**36**

Guidelines for Professional Compensation (Office of the United States Trustee).....................**10**

U.S. Const. art. III..................................................................................................................**3**

## I.

## **INTRODUCTION**

Velocity Esports, Inc. ("VES Inc.") and Velocity Esports Las Vegas Town Square, LLC ("VES LV" and collectively, the "Debtors"), as debtors and debtors in possession in the above-referenced jointly administered chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, Nevada Bankruptcy Attorneys, LLC, pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"),[1] Rules 2002, 6004, and 6006 of the FRBP, and Rule 6004 of the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court, District of Nevada (the "Local Rules" or "LR"), hereby submit this motion (the "Motion") for entry of an order (the "Bidding Procedures Order"), substantially in the form attached hereto as **Exhibit 1**, (i) approving the designation of Illusion Attractions LLC ("Buyer" or the "Stalking Horse Bidder") as the stalking horse bidder; (ii) approving that certain Asset Purchase Agreement (the "APA"), attached as **Exhibit A** to the Declaration of Philip Kaplan in Support of this Motion (the "Kaplan Decl."); (iii) approving the stalking horse protections set forth in the APA (the "Stalking Horse Protections"); (iv) approving the bidding procedures attached hereto as **Exhibit 2** (the "Bidding Procedures"); (v) approving the form and manner of notice attached hereto as **Exhibit 3** (the "Sale Notice"); and (vi) scheduling an auction (if necessary) and a sale hearing to consider entry of an order approving the sale (the "Sale Order") to the highest or otherwise best bidder. This Motion relates solely to the Debtors identified in the caption as being affected hereby and concerns the proposed sale of the assets associated with the VES LV location.

This Motion is supported by: (a) this Motion; (b) the Declaration of Philip Kaplan in Support of the Motion ("Kaplan Decl."), filed concurrently herewith; (c) the Declaration of Freddie McFinn in Support of the Motion (the "McFinn Decl."), filed concurrently herewith, and (d) the record in these Chapter 11 Cases.

---

[1] All references to "ECF No.", "Proof of Claim No.," or "Claim No." are to the numbers assigned to documents filed in these Chapter 11 Cases as they appear on the jointly administered docket in Case No. 25-12627-mkn maintained by the Clerk of the Court and, as applicable, the Court's claims registry. Unless otherwise indicated, all references to the "Code," "Chapter," "§," and "Section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005). References to "Rule" or "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("FRCP").

The proposed timeline, subject to modifications as more fully described herein, is as follows:

| **Date** | **Event** |
|---|---|
| Set by OST Order on this Motion | Hearing on Motion to Approve Bidding Procedures |
| Within one (1) business day following entry of the Bidding Procedures Order | Service of approved Bidding Procedures, Auction, and Sale Notice. |
| March 9, 2026 | Indication of Interest Deadline |
| March 16, 2026 | Competing Qualified Bid Deadline |
| March 13, 2026 | Deadline to File Any Objections to Sale |
| March 18, 2026, at 10:00 a.m. | Auction (if necessary) |
| March 20, 2026 | Sale Hearing |
| March 24, 2026 | Closing |

On August 6, 2025, the Court entered an order [ECF No. 131] (the "Broker Retention Order") Authorizing Retention and Employment of First Choice Business Brokers and Freddie McFinn (collectively the "Broker") as Debtors' Business Broker.

The Debtors will continue to market the Sale Assets (as defined below) through the Bid Deadline. Kaplan Decl. at ¶ 5. For the reasons set forth below in greater detail, and to conduct a full and fair bidding process for the purpose of maximizing the consideration to be received by the Debtors' estate for the Sale Assets, the Debtors respectfully request that the Court grant the Motion. Kaplan Decl. at ¶ 21.

In support of the Motion, the Debtors represent as follows:

**II.**

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

- 2 -

3.      The statutory bases for the relief requested herein are §§ 105(a), 363(b), 365(a), 365(b) & 365(f), Bankruptcy Rules 2002, 6004 & 6006, and Local Rule 6004.

4.      Pursuant to Local Rule 9014.2, the Debtors consent to entry of the final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## III.

## RELIEF REQUESTED

5.      Pursuant to §§ 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004, the Debtors request the immediate entry of the Bidding Procedures Order, which *inter alia*, approves the Bidding Procedures, approves the Bidding Procedures Notice, and grants related relief.

## IV.

## STATEMENT OF FACTS

**A.      The Chapter 11 Cases**

6.      On May 7, 2025 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court. ECF No. 1.

7.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      The Chapter 11 Cases are being jointly administered under Case No. 25-12627-mkn. ECF No. 96.

9.      To date, no official committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee. No trustee or examiner has been appointed in the Chapter 11 Cases. *See* ECF No. 30.

10.      To minimize disruption to operations and preserve value for stakeholders, the Debtors have filed, and the Court has considered and/or entered, various motions and requests for relief typical in the Chapter 11 Cases, including "First Day" relief. *See* ECF Nos. 16-21, 23.

/ / /

/ / /

- 3 -

**B.      Facts Relevant to the Motion**

      **1.      The Debtors' Assets and Liabilities**

11.     The Debtors' assets include, among other things, the business assets associated with the Debtors' Las Vegas Town Square operations. Kaplan Decl. at ¶ 6. The assets that are the subject of the proposed sale (the "Sale Assets") are more particularly described in, and will be conveyed pursuant to, the APA and related schedules. *Id*. The proposed sale of the Sale Assets is referred to herein as the "Sale."

12.     The Sale Assets generally include the Debtors' tangible and intangible personal property used in connection with the VES LV location (including furniture, fixtures, equipment, and other operating assets), together with such contract rights, intellectual property, and other rights to be assumed and assigned to the extent provided in the APA and approved by the Court. *See id.* at ¶ 7.

13.     Since the filing of the Debtors' original schedules and statements, there have been various adjustments and updates to creditor information. Kaplan Decl. at ¶ 21. For purposes of the Sale, however, the Debtors anticipate that only Secured Creditors and secured equipment lessors – including those holding liens on substantially all assets, and those whose equipment leases may be assumed by the Buyer – will have their claims addressed through the Sale (whether by payment from Sale Proceeds[2] and/or by assumption and assignment). *Id.* The Debtors have identified, among others, the following Secured Creditors and secured equipment lessors (which list is non-exhaustive and remains subject to amendment and claims reconciliation):

| Creditor/Secured Lessor | Approximate Claim Amount | Action Taken through Sale |
|---|---|---|
| NewtekOne, Inc. | $663,430.86 | Paid with Sale Proceeds |
| NFS Capital, LLC Lease # 2025-0269 | $159,684.75 | Buyer Assumes Lease Contract or Paid with Sale Proceeds |
| NFS Capital, LLC | $213,232.57 | Undersecured; Paid from any excess Sale Proceeds following administrative expenses, and then from |

---

[2] "Sale Proceeds" means all cash and other consideration actually received by the Debtors (or their estates) in connection with the Sale, including, without limitation, any portion of the Purchase Price paid at or in connection with Closing, net of any amounts required to be paid from escrow at Closing for permitted prorations, adjustments, and other Closing payments as provided in the APA and/or the Sale Order.

- 4 -

| | | personal funds of Debtors' principals: Philip Kaplan and Len Wenger.  NFS remains secured against its collateral located at Velocity Esports Newport Kentucky, LLC. |
|---|---|---|
| H. Betti Industries, Inc. | $7,003.63 | Paid with Sale Proceeds |
| Pawnee Leasing Corporation | $126,219.44 | Buyer Assumes Lease Contract or Paid with Sale Proceeds |

### a.   NewtekOne, Inc's First-Priority Security Interest

14.    NewtekOne, Inc. ("Newtek") holds a valid, perfected, and unavoidable first-priority security interest in substantially all assets of VES LV. Pursuant to 11 U.S.C. § 363(f), the Debtors seek to sell the assets free and clear of Newtek's liens, with such liens attaching to the Sale Proceeds in the same order of priority. The Debtors intend to pay Newtek's allowed secured claim in full at Closing in accordance with a current payoff statement, thereby satisfying and releasing its liens. To the extent Newtek is oversecured, its claim includes postpetition interest and reasonable fees under 11 U.S.C. § 506(b).

15.    Debtor's principle, Philip Kaplan listed and sold two of his personal real properties located in Park City, Utah. *Id*. at ¶ 22. On October 17, 2025, Kaplan closed the sale on his investment residential real property located at 745 Quaking Aspen Ct., Park City, UT 84060 ("745 Property"). *Id*. Newtek received $146,264.11 under its second deed of trust recorded against the 745 Property. *Id*. On February 17, 2026, Kaplan closed on his investment real property located at 4940 W. Ponderosa Ct., Park City, UT 84098 ("4940 Property"). *Id*. Newtek received $712,120.03 on account of its deed of trust recorded against the 4940 Property. *Id*. Kaplan is now listing his remaining investment real property located at 4958 W. Ponderosa Ct., Park City, UT 84098 ("4958 Property"). *Id*.  Kaplan expects that approximately $955,000.00 will be available to distribute to Newtek on account of its first deed of trust recorded against the 4958 Property. *Id*.

16.    Kaplan estimates that after the sale of the Park City properties, Newtek's remaining claim will be $663,430.86.  *Id*.

/ / /

- 5 -

**b.  NFS Capital, LLC Lease # 2025-0269**

17.    NFS Capital, LLC ("NFS") is the lessor under Equipment Lease No. 2025-0269 (the "NFS Lease"), which the Debtors believe constitutes a true lease of personal property. ECF 71-1 at 11. Pursuant to 11 U.S.C. § 365 and Rules 6006 and 9014, the Debtors seek authority to assign the NFS Lease to the Buyer, which the Buyer will assume upon closing of the Sale. *Id*. at ¶ 23. NFS calculated the current payoff demand at $159,684.75 (the "NFS Payoff Quote"), which includes related fees and costs recoverable by NFS under the express terms of the NFS Lease. *Id*.

18.    The NFS Payoff Quote does not reflect any asserted monetary default under the NFS Lease and, on its face, is comprised of buyout-related components, including remaining contractual amounts and transaction-related taxes and termination filing fees, rather than arrearages, default interest, collection fees, or default-based attorneys' fees. Accordingly, because the Debtors are not in default under the NFS Lease, the Debtors do not contend that the NFS Payoff Quote constitutes a "cure" amount under 11 U.S.C. § 365(b)(1)(A).  Debtors seek authority to assign the NFS Lease under § 365(f), and will demonstrate that the Buyer has provided adequate assurance of future performance as required by 11 U.S.C. § 365(f)(2)(B).

**c.  NFS Capital, LLC Secured Settlement Agreement**

19.    NFS Capital, LLC ("NFS") is also a party to the Settlement Agreement dated June 26, 2025 (the "Settlement Agreement"), previously approved by Order of this Court pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Settlement Order"). ECF 168. Under the Settlement Agreement, the Debtors agreed to satisfy certain secured obligations in accordance with its terms.  ECF 71 *as amended by* ECF 80. The Settlement Agreement further required Velocity Esports Las Vegas Town Square, LLC to execute a security agreement granting NFS a security interest in its assets and required Mr. Kaplan and Mr. Wanger to execute personal guaranties in connection therewith.  NFS has provided an updated payoff statement reflecting that, as of February 15, 2026, the total amount due under the Settlement Agreement is $213,232.57 (the "Settlement Payoff Demand") Kaplan Decl. at ¶ 24. The Settlement Payoff Amount includes amounts due under the Settlement Agreement through its stated validity date and incorporates the components reflected in the payoff statement, including accrued default interest, administrative collection fees, and other amounts expressly provided for under the Settlement Agreement.

20.     Based on the projected net Sale Proceeds available after payment of permitted closing costs and senior secured claims, the Debtors do not seek authority to satisfy the Settlement Payoff Amount from Sale Proceeds, as there will be a shortfall of at least $69,569.95. *Id.* at ¶ 25. Instead, as a condition to Closing, Mr. Kaplan and Mr. Wanger, in their capacities as non-debtor guarantors under the Settlement Agreement, will continue to make monthly payments under the payment schedule at ECF 71-1 at 9, to be paid to NFS from their personal, non-estate funds. NFS's all-asset lien against Debtor Velocity Esports Newport Kentucky, LLC's collateral is not affected by the sale under the APA.

21.     To the extent NFS asserts any remaining interest in Sale Proceeds notwithstanding such releases, any such interest shall attach to Sale Proceeds in the same validity, priority, and extent as existed immediately prior to Closing, subject to further order of the Court.

22.     NFS will deliver customary releases and terminations (including UCC termination statements and lien releases, as applicable) with respect to any liens and security interests asserted against the VES LV assets. Upon NFS's delivery of such releases and terminations, the Debtors will transfer the VES LV assets to the Buyer free and clear of NFS's interests pursuant to 11 U.S.C. § 363(f)(2).

23.     The Debtors do not seek authority to pay any additional attorneys' fees or post–February 15, 2026, charges absent either (i) inclusion in a final agreed payoff statement delivered prior to Closing or (ii) further order of this Court. Payment of the Settlement Payoff Amount as reflected in the payoff statement shall fully implement the terms of the Settlement Agreement as approved by the Settlement Order.

### d.  H. Betti Industries, Inc. – Secured Equipment Claim

24.     H. Betti Industries, Inc. ("Betti") asserts a secured claim arising from equipment financing arrangements relating to certain arcade and gaming equipment located at the Las Vegas Town Square premises (the "Betti Collateral"). *Id.* at ¶ 26. Betti holds a valid, perfected security interest in the Betti Collateral securing its outstanding indebtedness.  *Id.*

25.     The Debtors obtained Betti's payoff statement reflecting that the approximate amount necessary to satisfy Betti's secured claim as of Closing, in the amount of $7,003.63, or as determined pursuant to a current payoff letter delivered prior to Closing (the "Betti Payoff Amount"). *Id.* To the extent Betti holds a valid and unavoidable lien on the Betti Collateral, such lien shall attach to the Sale Proceeds

in the same validity, priority, and extent as existed immediately prior to Closing pursuant to 11 U.S.C. § 363(f).

26.    Debtors seek authority under 11 U.S.C. § 363(b) and (f) to pay the Betti Payoff Amount from Sale Proceeds at Closing in exchange for the full release and termination of Betti's liens against the Betti Collateral and any proceeds thereof. Payment of the Betti Payoff Amount will permit the Debtors to convey the Sale Assets free and clear of Betti's liens and will constitute adequate protection of Betti's secured interest under 11 U.S.C. § 361.

27.    To the extent Betti asserts entitlement to postpetition interest, fees, or other charges, such amounts shall be limited to the extent permitted under 11 U.S.C. § 506(b), and payment at Closing shall be made only in accordance with a final agreed payoff statement delivered prior to Closing or as otherwise authorized by order of this Court. Nothing herein shall constitute allowance of any unsecured deficiency claim, if any, which shall remain subject to the claims allowance process under 11 U.S.C. § 502.

28.    Upon payment of the Betti Payoff Amount at Closing, Betti shall release and terminate its liens against the Sale Assets and execute any UCC termination statements or other documentation reasonably required to evidence such release.

### e.    Pawnee Leasing – Secured Equipment Claim

29.    Pawnee Leasing ("Pawnee") is the lessor and/or secured party under Contract No. 395953 (the "Pawnee Lease"), with the customer identified as Velocity Esports, Inc., relating to arcade game equipment used in connection with the Las Vegas Town Square operations. Pawnee has provided a written payoff quotation dated as of February 18, 2026, reflecting that the "Net Payoff Due" under the Pawnee Lease is $126,219.44. Kaplan Decl. at ¶ 28; POC 12, filed in Case # 25-12627.

30.    The Pawnee payoff quotation reflects a remaining balance of $83,280.17, a purchase option of $27,419.65, sales tax of $6,812.59, a termination fee of $95.00, and other miscellaneous charges due of $8,612.02. Ex. G. The miscellaneous charges due include past-due finance charges and related fees totaling $2,031.30 and late fees totaling $6,580.72. *Id*. at 29.

31.    The Buyer has agreed that, as part of the Sale, it will assume and accept assignment of the Pawnee Lease pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006, and will perform the post-Closing obligations thereunder. The Debtors will request that the Sale Order include a finding that the Buyer has

provided adequate assurance of future performance under 11 U.S.C. § 365(b)(1)(C) and § 365(f)(2)(B) with respect to the Pawnee Lease. *Id*. at 30.

32.    To the extent any creditor is not anticipated to receive a distribution from the sale proceeds or have their equipment lease assumed by a Buyer, such creditor's claim will be addressed and treated pursuant to the Debtors' Chapter 11 Plan of Reorganization to be filed in these Chapter 11 Cases. *See* Kaplan Decl. at ¶ 20.

### f.   SRFM Town Square Owner, LLC – VES LV Landlord

33.    SRMF Town Square, LLC is VES LV's landlord ("SRMF Lease"). VES LV will reject SRMF Lease; the Buyer will enter a new lease for the Premises with SRMF as a condition to Closing.  *Id*. at ¶ 30.

34.    SRMF Town Square Owner, LLC ("SRMF") is the landlord under that certain nonresidential real property lease governing the premises located at the VES LV location (the "SRMF Lease"). The SRMF Lease is currently an unexpired lease of nonresidential real property within the meaning of 11 U.S.C. § 365(d)(4). *Id*. at ¶ 31.

35.    The Debtors have determined, in consultation with the proposed Buyer, that the SRMF Lease will not be assumed and assigned to the Buyer in connection with the Sale. Instead, as contemplated under the Asset Purchase Agreement (the "APA"), the Buyer and SRMF intend to enter a separate, new lease agreement governing the Buyer's post-Closing occupancy of the premises, on terms negotiated directly between those parties. *Id*. at ¶ 32.

36.    The APA contemplates that Closing is conditioned upon, among other things, the Buyer's ability to enter into a new lease agreement with SRMF on terms acceptable to the Buyer. The Debtors understand that SRMF and the Buyer are actively negotiating the terms of such new lease.  *Id*. at ¶ 33.

37.    In connection with the proposed Sale, the Debtors intend to file a motion pursuant to 11 U.S.C. § 365(a) seeking authority to reject the SRMF Lease, with such rejection to be effective as of the Closing Date under the APA. The Debtors believe that rejection of the SRMF Lease effective as of Closing is in the best interests of the estates because it will (i) eliminate ongoing administrative expense obligations under the SRMF Lease following Closing, (ii) facilitate the orderly transition of the premises to the Buyer under a new lease, and (iii) preserve the value of the Sale transaction. *Id*. at ¶ 34.

- 9 -

38.    The Debtors will request that any order approving rejection of the SRMF Lease provides that rejection is effective as of the Closing Date of the Sale, and that the Debtors' obligations under the SRMF Lease shall cease as of such date, except as otherwise provided under the Bankruptcy Code. To the extent SRMF asserts any claim arising from rejection of the SRMF Lease, including any claim under 11 U.S.C. § 502(g), such claim will be addressed in accordance with the claims allowance process and the Debtors' proposed plan of reorganization.

**g. First Choice Business Brokers and Freddie McFinn to be Paid as a Priority Administrative Expense.**

39.    On or about August 6, 2025, the Court entered the Broker Retention Order authorizing the Debtors to retain "Broker to market and facilitate a sale of the Sale Assets." ECF 131. The Broker's efforts, including broad-based marketing and targeted outreach to strategic buyers, were a material factor in producing the Stalking Horse APA and establishing a sale process designed to maximize value for the estates.

40.    The Broker's commission (the "Broker Commission") is structured as transaction-based compensation payable only upon consummation of a sale of the Sale Assets and is intended to compensate the Broker for the marketing and disposition of the Sale Assets. Accordingly, the Broker will seek compensation for fees and expenses, to be paid as an administrative priority expense, incurred on behalf of the Debtor and the estate in accordance with 11 U.S.C. §§ 330 and 331, the FRBP, and the Local Rules, and the Guidelines for Professional Compensation established by the Office of the U.S. Trustee.

**2.    The Debtors' Marketing Efforts**

41.    The Debtors, through the Broker, have actively marketed the Sale Assets since approximately May 2025. McFinn Decl. at ¶ 6.

42.    As part of these marketing efforts, the Broker listed and advertised the opportunity on multiple business-for-sale platforms, including BizBuySell, BizQuest, BusinessesForSale, DealStream, and the First Choice Business Brokers website. *Id.* at ¶¶ 7-8. In addition, the Broker conducted targeted outreach using industry tools (including Seamless AI and LinkedIn Navigator) to identify and contact strategic buyers in the family entertainment center and hospitality/entertainment sectors. *Id.*

43.    The Broker's outreach included contacting numerous potential acquirers, securing nondisclosure agreements ("NDAs") before providing any confidential information, and, after a party executed an NDA, providing that party with a confidential business profile and/or financial information and, where appropriate, facilitating access to additional diligence materials. *Id.* at ¶¶ 9-10. By way of example, the Broker obtained NDAs from, among others, (a) Lucky Strike Entertainment (NDA June 9, 2025), (b) GameWorks Enterprises, LLC (NDA May 30, 2025; which later submitted a non-accepted LOI dated August 3, 2025), (c) Five Star Parks (NDA June 6, 2025), and (d) Off The Wall GameZone (NDA June 17, 2025), as well as other parties, including a family entertainment center counterparty whose name is redacted pursuant to mutual NDA. *Id.*

44.    The Broker also conducted additional outreach by phone and email to other leading operators and strategic buyers in the family entertainment space (including, among others, Dave & Buster's, Andretti Indoor Karting & Games, Round1, Topgolf, United Parks & Resorts, Punch Bowl Social, and Landry's). *Id.* at ¶ 11. The Debtors and the Broker have found that outreach to larger groups can be challenging because key decision makers are often difficult to reach; nevertheless, the Broker has continued to make repeated and targeted attempts to engage appropriate contacts. *Id.*

45.    As part of the Debtors' and Broker's buyer-screening process, the Debtors have focused on well-capitalized strategic buyers in the hospitality or entertainment sector (or high net worth individuals with relevant experience), and have required the execution of NDAs and, where appropriate, proof of funds and/or other information demonstrating financial wherewithal before disseminating confidential information. *Id.* at ¶ 12.

46.    The Debtors intend to continue their marketing efforts through the Bid Deadline. *Id.* at 13; Kaplan Decl. at ¶ 5. Potential Bidders will be required to execute an NDA, and parties that do so will be granted access to an electronic data room containing diligence materials and information relating to the Sale Assets, as the Debtors reasonably deem appropriate. McFinn Decl. at ¶ 13. The Debtors and the Broker intend to continue contacting parties they believe may be interested in submitting Bids and will provide notice of these Bidding Procedures in the form and manner requested herein. *Id.*

/ / /

- 11 -

### 3.    The Proposed Sale Process

47.    The Debtors seek to implement market-tested bidding and auction procedures designed to solicit higher and better offers and maximize value for the estate. Kaplan Decl. at ¶ 8.

48.    The Debtors have identified the Buyer as a Stalking Horse Bidder to establish a baseline transaction structure and a floor bid, subject to higher or better Bids pursuant to the Bidding Procedures and Court approval. Kaplan Decl. at ¶ 9.

### 4.    Summary of the Stalking Horse APA and Key Terms

49.    The APA provides, among other things, for: (a) a stated purchase price of $1,100,000, subject to the Closing Credit for assumed equipment leases; (b) a $50,000 deposit and a due diligence period; (c) a limited set of Assumed Liabilities and Assumed Contracts, with all other liabilities and contracts treated as excluded; (d) Stalking Horse Protections (including the Break-Up Fee and Expense Reimbursement); (e) an exclusivity/no-shop covenant that terminates upon entry of court-approved bidding procedures and includes a fiduciary exception; (f) delivery at Closing of a Non-Solicitation and Non-Competition Agreement; (g) a perpetual, royalty-free, non-exclusive license-back to the Newport venue for certain intellectual property; and (h) closing conditions including entry of the Sale Order, execution of a new lease with the Landlord (including a release of Sellers and Sellers Shareholders under the existing lease), and either transfer of the liquor license or entry into a management agreement pending transfer, at Buyer's election. Kaplan Decl. at ¶ 18.

50.    Should the need arise, as discussed below, the Debtors will conduct an Auction in accordance with the Bidding Procedures and seek approval at a Sale Hearing of the highest or otherwise Best Bid.

### 5.    No Sale of PII; Consumer Privacy Ombudsman Not Requested

51.    Although the APA includes certain "customer list/customer data" concepts in generic form, the Debtors do not maintain or possess "personally identifiable information" or "PII" (as that term is used in Bankruptcy Code § 101(41A)) that would be transferred in connection with the proposed transaction. *Id.* at ¶ 19. As set forth in the Kaplan Decl., there is no PII to be sold, leased, or otherwise transferred under the APA. *Id.* To the extent the Debtors later identify any information that could qualify as "personally identifiable information" under 11 U.S.C. § 101(41A), such information will be treated as excluded from

the Sale Assets and will not be transferred absent further notice and an order of the Court authorizing such transfer in compliance with 11 U.S.C. §§ 332 and 363(b)(1) and Fed. R. Bankr. P. 6004(g). *Id.*

52.     Accordingly, the Debtors do not request appointment of a consumer privacy ombudsman under 11 U.S.C. § 332, because the contemplated transaction does not involve the sale or lease of PII and does not trigger Bankruptcy Code § 363(b)(1)(B) or Bankruptcy Rule 6004(g). *Id.*

## V.

## PROPOSED SALE AND BIDDING PROCEDURES

53.     In connection with the Sale of the Sale Assets, the Debtors submit that conducting an Auction in accordance with the bidding procedures among Qualified Bidders will obtain the highest or otherwise best offer for the Sale Assets and will maximize the value of the Debtors' estates. *Id.* at ¶¶ 8-9. In determining the Winning Bid, the Debtors shall consider, among other factors, (i) the amount and form of consideration, (ii) assumed liabilities and cure costs, (iii) likelihood and timing of closing, (iv) proposed changes to transaction documents, and (v) overall net value to the estates. A summary of some of the significant provisions of the Bidding Procedures is set below. If there exists any omission or discrepancy between the following summary and the actual terms of the Bidding Procedures, the actual terms of the Bidding Procedures shall control.

### A.     Disclosures Required Pursuant to Local Rule 6004(b)

54.     The following chart summarizes the information required to be disclosed pursuant to Local Rule 6004(b), including, but not limited to, certain material terms of the proposed Bidding Procedures. The Debtors cannot provide fulsome responses to certain of the below at this time because the Bidding Procedures contemplate an Auction during which the parties will negotiate the final terms of the Sale. The Debtors will file and serve a supplement to this Motion (the "Sale Supplement"), including a proposed Sale Order reflecting the identity of the Successful Bidder (and, if applicable, the Back-Up Bidder) and the material economic terms of the Successful Bid, no later than one (1) business day after the Auction (if any) and in sufficient time to permit review prior to the Sale Hearing. The Debtors refer all parties to the Bidding Procedures, *see* **Exhibit 2**.

/ / /

- 13 -

| Local Rule | Disclosure |
| --- | --- |
| 6004(b)(1) | **A copy of the proposed purchase agreement, or a form of such agreement substantially similar to the one the moving party reasonably believes will be executed in connection with the proposed sale.**<br><br>A copy of the APA is attached to the Kaplan Decl. The APA is the Stalking Horse Bid, and, should there be an Auction, would serve as the Opening Bid. |
| 6004(b)(2) | **A list of all lienholders with an interest in the property to be sold under the sale motion.**<br><br>Known lienholders and secured parties asserting an interest in some or all of the Sale Assets include, without limitation: (i) NewtekOne, Inc.; (ii) NFS Capital, LLC; (iii) Fortune 5 Capital Holdings; (iv) SRMF Town Square Owner, LLC; (v) H. Betti Industries, Inc.; and (vi) Pawnee Leasing Corporation. The foregoing reflects the Debtors' current good-faith identification of lienholders based on the Debtors' books and records, contract files, and diligence conducted to date, and the Debtors will supplement this list if additional lienholders are identified. |
| 6004(b)(3) | **A copy of a proposed form of sale order.**<br><br>The proposed Bidding Procedures Order is attached to the Motion as **Exhibit 1**. Given the proposed Auction procedure, the Debtors will file and serve a proposed form of sale order after selection of the Successful Bid (and, if applicable, the Back-Up Bid), with the sale order reflecting the identity of the Successful Bidder and the material economic terms of the Successful Bid, and in sufficient time to permit review prior to the Sale Hearing and consistent with the Bidding Procedures. |
| 6004(b)(4) | **A request, if necessary, for the appointment of a consumer privacy ombudsman under 11 U.S.C. § 332.**<br><br>This provision is not applicable because, as set forth in the Motion and the Kaplan Decl., the Sale does not include 'personally identifiable information' as defined in 11 U.S.C. § 101(41A), and the Debtors are not proposing to transfer any consumer information covered by 11 U.S.C. § 363(b)(1). |

| 6004(b)(5) | **The sale motion must highlight material terms and must indicate the location of any such provision in the proposed form of order or purchase agreement.** |
| --- | --- |
| | The Motion highlights and cites the material terms of both (i) the proposed Bidding Procedures and (ii) the APA, including without limitation: the Stalking Horse Protections (including the Break-Up Fee and Expense Reimbursement); the APA's exclusivity/no-shop covenant and its termination upon entry of court-approved bidding procedures; the Non-Solicitation and Non-Competition Agreement to be delivered at Closing; the Newport Venue intellectual property license-back provision; the liquor-license/management-agreement closing condition; and the new-lease closing condition, including the Landlord's release of Sellers and Sellers Shareholders under the existing lease. |
| 6004(b)(6)(A) | **If the proposed sale is to an insider, as defined in 11 U.S.C. § 101, the sale motion must: (i) Identify the insider; and (ii) Describe the insider's relationship to the debtor.** |
| | This provision is not applicable. |
| 6004(b)(6)(B) | **If a proposed buyer has discussed or entered into any agreements with management or key employees regarding compensation or future employment, the sale motion must disclose the material terms of any such agreements.** |
| | This provision is not applicable. |
| 6004(b)(6)(C) | **The sale motion must highlight any provisions pursuant to which an entity is being released, or claims against any entity are being waived or otherwise satisfied.** |
| | The APA conditions Closing on Buyer entering into a new lease with SRMF Town Square Owner, LLC ("Landlord") that includes, among other things, a release of Sellers and Sellers Shareholders from obligations and guarantees under the existing lease. The Debtors are not seeking a court-imposed third-party release; rather, the release is a contractual provision to be granted by the Landlord in connection with the new lease as a condition to Closing. |
| 6004(b)(6)(D) | **The sale motion must disclose whether an auction is contemplated, and highlight any provision in which the debtor has agreed to not solicit competing offers for the property subject to the sale motion or to otherwise limit the marketing of the property.** |

- 15 -

| | |
|---|---|
| | An Auction is contemplated and will be conducted as set forth in the Bidding Procedures. In addition, the APA contains an exclusivity/no-shop covenant pursuant to which Sellers agreed, prior to entry of court-approved bidding procedures, not to solicit or knowingly encourage competing proposals, subject to a fiduciary exception and related notice provisions. Entry of the Bidding Procedures Order constitutes the contemplated court-approved process and terminates the APA's exclusivity restriction in accordance with its terms. |
| 6004(b)(6)(E) | **The sale motion must highlight any deadlines for the closing of the proposed sale or deadlines that are conditions to closing the proposed transaction**<br><br>The closing date in the APA is currently set on or before March 24, 2026, and a Termination Date of March 24, 2026. In addition, the APA includes conditions to Closing and related deadlines, including without limitation: (i) entry of the Sale Order; (ii) Buyer's completion of its due diligence within the APA's due diligence period; (iii) Buyer's and the Landlord's execution of a new lease for the premises on terms acceptable to Buyer (including the Landlord's release of Sellers and Sellers Shareholders under the existing lease); and (iv) either transfer/approval of the liquor license or entry into a management agreement permitting operations pending transfer, at Buyer's election and on terms acceptable to Buyer.<br><br>The parties hereto may also elect to close on an earlier or later date on the mutual written agreement of Buyer and Sellers, provided that Sellers or Buyer shall have the right to terminate this Agreement if Closing has not occurred by April 15, 2026, without penalty or liability. |
| 6004(b)(6)(F) | **The sale motion must highlight whether the proposed purchaser has submitted or will be required to submit a good faith deposit and, if so, the conditions under which the deposit may be forfeited.**<br><br>Under the APA, Buyer shall deposit FIFTY THOUSAND DOLLARS AND 00/100 ($50,000.00) (the "Deposit") into escrow only after written approval of the APA from the Bankruptcy Court and execution of this APA. The Deposit shall be non-refundable to Buyer upon both (a) expiration of the Due Diligence Period pursuant to Section 9 of the APA, and (b) upon satisfaction of the Closing Conditions set forth under Section 10 of the APA. The Deposit shall be applied to the Purchase Price, as defined in the APA, at Closing. To be clear, the Deposit shall be returned to the Buyer if any of the Closing Conditions are not met, or if Buyer decides not to proceed with the transaction prior to the end of the Due Diligence Period. |

| 6004(b)(6)(G) | **The sale motion must highlight any provision pursuant to which a debtor is entering into any interim agreements or arrangements with the proposed purchaser, such as interim management arrangements (which, if out of the ordinary course, also must be subject to notice and a hearing under 11 U.S.C. § 363(b)), and the terms of the agreements.**<br><br>The APA contemplates that, if the liquor license is not transferred by Closing, Buyer may elect to operate the business under a management agreement pending transfer of the liquor license, on terms acceptable to Buyer and Sellers. Any such interim arrangement will be presented for approval to the extent required. |
|---|---|
| 6004(b)(6)(H) | **The sale motion must highlight any provision pursuant to which a debtor proposes to release sale proceeds on or after the closing without further court order, or to provide for a definitive allocation of sale proceeds.**<br><br>The Purchase Price will be paid into escrow at Closing and disbursed pursuant to the escrow arrangements and the Sale Order. Other than payment of customary escrow/closing costs and any lien payoffs or other disbursements expressly authorized by the Sale Order, the Debtors will not distribute sale proceeds to creditors absent further order of the Court. |
| 6004(b)(6)(I) | **The sale motion must highlight any provision seeking to have the sale declared exempt from taxes under 11 U.S.C. § 1146(a), and the type of tax (e.g., recording tax, stamp tax, use tax, or capital gains tax) for which the exemption is sought. It is not sufficient to refer simply to "transfer" taxes and the state or states in which the affected property is located.**<br><br>This provision is not applicable and will be updated in supplemental briefing to the extent it becomes applicable to the proposed Sale. |
| 6004(b)(6)(J) | **If the debtor proposes to sell substantially all of its assets, the sale motion must highlight whether the debtor will retain, or have reasonable access to, its books and records to enable it to administer its bankruptcy case.**<br><br>Sellers, their employees, agents, and representatives will cooperate with Buyer and take all actions reasonably requested by Buyer in connection with transferring books and records, to the extent Buyer reasonably needs such books and records to administer these chapter 11 cases and to effectuate the transactions contemplated by the APA and the Sale Order. |

- 17 -

| 6004(b)(6)(K) | **The sale motion must highlight any provision pursuant to which the debtor seeks to sell or otherwise limit any rights to pursue avoidance claims under Chapter 5 of Title 11 of the United States Code.**<br><br>The APA expressly excludes from the Sale Assets all claims and causes of action belonging to the Debtors' estates, including any rights under 11 U.S.C. §§ 544-549 and recoveries therefrom, unless such claims are expressly included and approved by the Court. The Debtors are not seeking, through this Motion or the APA, to sell, transfer, or otherwise limit the estates' avoidance actions. |
| --- | --- |
| 6004(b)(6)(L) | **The sale motion must highlight any provision limiting the proposed purchaser's successor liability.**<br><br>The APA provides that Buyer is assuming only those liabilities expressly identified as 'Assumed Liabilities' and otherwise is not assuming and shall not be responsible for any other liabilities of Sellers (including any Excluded Liabilities). The Debtors intend to seek, in the Sale Order, customary findings under 11 U.S.C. § 363(f) and related authority that the transfer is free and clear of 'Claims' and 'Interests' to the fullest extent permitted by law, including successor liability claims (if any) to the extent such claims constitute 'Interests' that may be cut off by a § 363 sale. |
| 6004(b)(6)(M) | **The sale motion must highlight any provision by which the debtor seeks to sell property free and clear of a possessory leasehold interest, license or other right.**<br><br>This provision is not applicable. The Debtors are not seeking, by this Motion or the Bidding Procedures Order, to sell free and clear of a third party's possessory leasehold interest or license. Rather, Closing is conditioned on Buyer entering into a new lease with the Landlord, and the APA provides a license-back to the Newport venue for certain intellectual property, as set forth in the APA. |
| 6004(b)(6)(N) | **The sale motion must highlight any terms with respect to credit bidding pursuant to 11 U.S.C. § 363(k).**<br><br>A secured creditor may seek to credit bid pursuant to 11 U.S.C. § 363(k) only to the extent of its allowed secured claim and subject to the rights of any consensual lienholders with equal or greater priority. As set forth in the Motion and Bidding Procedures, any creditor submitting a credit bid must either obtain the written consent of all consensual lienholders |

| | |
|---|---|
| | holding an equal or senior lien on the Sale Assets or provide for payment in full in cash of all such equal/senior consensual liens. |
| 6004(b)(6)(O) | **The sale motion must highlight any provision whereby the debtor seeks relief from the fourteen (14) day stay imposed by Fed. R. Bankr. P. 6004(h).**<br><br>The Debtors will seek relief from the 14-day stay imposed by FRBP 6004(h). |

**B.    Requirements to Participate in the Auction**

55.    The Bidding Procedures provide that only Qualified Bidders and the Stalking Horse Bidder may participate in the Auction. To be a "Qualified Bidder," a party wishing to submit a Bid (as defined by the Bidding Procedures) and participate in the Auction must first become a "Potential Bidder," which requires that an interested party execute, or shall be currently subject to, an NDA in form and substance satisfactory to the Debtors. Ex. 2 at 3. Upon qualifying as a Potential Bidder, a party may receive due diligence information from the Debtors, including access to the Debtors' "Diligence Room" and potentially other nonpublic information relating to the Debtors' Sale Assets. Id. at 3.

56.    The Bidding Procedures also set forth the requirements for a Potential Bidder to become a Qualified Bidder, including (without limitation) that a Potential Bidder: (i) submit a Bid by the Bid Deadline to the Bid Deadline Recipients identified in the Bidding Procedures; (ii) provide a proposed asset purchase agreement, based on, and redlined against, the form agreement that the Debtors will produce ahead of the Bid Deadline; (iii) deliver a Deposit by wire transfer in an amount equal to ten percent (10%) of the proposed Purchase Price (as defined in the Bidding Procedures); (iv) demonstrate that it has the financial wherewithal and ability to consummate the Sale as set forth in the Bidding Procedures; and (vi) disclose any connections to the Debtors and affiliated persons. Id. at 4-6.  The Bidding Procedures further provide that a Bid shall propose cash consideration, and that Bids will be evaluated based upon the amount of cash consideration and other value components contemplated by the APA (as applicable), including any proposed assumption and assignment of Equipment Leases (as defined in the APA) and any resulting Closing Credit to the extent permitted under the APA, as determined by the Debtors in their reasonable discretion. Id. at 2.

- 19 -

57.     A Bid, other than the Stalking Horse Bid (as defined below), that satisfies each of the Bid Requirements (as defined in the Bidding Procedures), as determined by the Debtors in their reasonable discretion, shall constitute a "Qualified Bid," and such Potential Bidder submitting such Bid will be deemed a "Qualified Bidder." *Id.* at 7. Prior to, or immediately before the commencement of any Auction, the Debtors shall file and serve on each Potential Bidder that submitted a Bid a notice indicating the identity of all Qualified Bidders, and a copy of the Bid which is deemed to be the Opening Bid at the Auction. *Id.*  For the avoidance of doubt, the Stalking Horse Bidder shall be permitted to participate in the Auction, and the Stalking Horse Bid shall be the Opening Bid, but the Stalking Horse Bid shall not constitute a Qualified Bid.

58.     The Debtors, in consultation with their Broker and counsel and in the exercise of their reasonable, good-faith business judgment consistent with their fiduciary duties, shall determine whether a particular Bid constitutes a Qualified Bid based on the Bid Requirements set forth herein. The Debtors may decline to designate a Bid as a Qualified Bid only to the extent such Bid fails to satisfy the Bid Requirements or is otherwise materially inconsistent with these Bidding Procedures. *Id.*

**C.     Secured Creditors' Right to Credit Bid**

59.     Any party with a valid, properly perfected prepetition or post-petition security interest in the Sale Assets (a "Secured Creditor") may credit bid (any such Bid, a "Credit Bid" and any party submitting a Credit Bid, each a "Credit Bidder") for such Sale Assets in connection with the Sale in accordance with and pursuant to § 363(k), except as otherwise limited by the Court for cause; provided, however, that no Credit Bidder may Credit Bid unless (a) all Secured Creditors with a valid and perfected security interest in the Sale Assets subject to the Credit Bid that rank equal or senior to the security interest of the Credit Bidder in the Sale Assets consent in writing to such Credit Bid or (b) the Credit Bid expressly provides for the payment in full in cash at the closing on account of the Sale Assets subject to valid and perfected security interests in the Sale Assets that are equal or senior in rank to the security interests of the Credit Bidder. *Id.* at 7. Nothing herein shall limit the rights of any party in interest to seek relief from the Court related to the right or alleged right of any creditor to exercise a Credit Bid for any of the Sale Assets.

/ / /

**D.** **Designated Stalking Horse Bidder and Stalking Horse Protections**

60.     The Debtors have negotiated and entered into the APA with Illusion Attractions LLC (the "Stalking Horse Bidder"), and the Debtors request that the Court approve Illusion's designation as the Stalking Horse Bidder and approve the Stalking Horse Protections. Kaplan Decl. at ¶¶ 6, 9. The Debtors submit that the Stalking Horse Bid establishes a credible floor for the Sale Assets and provides a baseline transaction document that competing bidders may use as a template, thereby promoting a competitive and value-maximizing sale process. *Id.* at ¶ 9.

61.     The Debtors further request approval of the stalking horse protections set forth in the APA, including the Break-Up Fee equal to 3% of "Transaction Value" and the "Expense Reimbursement" items, including capped third-party diligence expenses, each as more fully described in Exhibit A attached to the APA and subject to the terms and limitations set forth therein and in the proposed Bidding Procedures Order. Any Break-Up Fee and/or Expense Reimbursement, to the extent payable, shall be payable only upon the occurrence of the applicable triggering event(s) under the APA and shall be payable at the closing of a Competing Transaction (as defined in the APA) with a party other than the Stalking Horse Bidder. Ex. 2 at 6-7. Any Expense Reimbursement, to the extent payable, shall be payable only upon the occurrence of the applicable triggering event(s) under the APA and shall be payable at the earlier of (i) the closing of any Competing Transaction or (ii) ten (10) business days following the Debtors' termination of the APA in favor of a Competing Transaction, in each case in accordance with the APA and the proposed Bidding Procedures Order. *Id.*

62.     If the Debtors receive one or more Qualified Bids by the Bid Deadline, the Debtors will conduct an auction (the "Auction") pursuant to the Bidding Procedures. *See* Ex. 2 at 7-8. In that event, the Stalking Horse Bid shall be the opening Bid at the Auction (the "Opening Bid"). *Id.* at 8. The Debtors will determine the Winning Bid and the Back-Up Bid in accordance with the Bidding Procedures, subject to Court approval. *Id.* at 10.

**E.** **Auction**

63.     The Auction shall be conducted and administered by the Debtors, acting through their counsel, with assistance from the Broker. The Debtors shall preside over the Auction, recognize and announce bids, determine the validity of each successive bid, and maintain the official record of bidding.

- 21 -

64.     If the Debtors receive one or more Qualified Bids, the Debtors will conduct an Auction on March 18, 2026, at 10:00 a.m., Pacific Time, at the offices of Debtors' counsel, Nevada Bankruptcy Attorneys, 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148, or by such other remote videoconference or telephonic means noticed to the Qualified Bidders and the Stalking Horse Bidder as determined by the Debtors in their discretion in accordance with the Bidding Procedures.

65.     The Auction shall be governed by the following procedures:

a.     only Qualified Bidders and the Stalking Horse Bidder, in person or through duly-authorized representatives at the Auction, may bid at the Auction, and every Qualified Bidder and the Stalking Horse Bidder must have at least one (1) such duly-authorized representative with authority to bind the Qualified Bidder and the Stalking Horse Bidder at the Auction;

b.     only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Debtors, the Top 20 Largest Unsecured Creditors, the Secured Creditors, the secured equipment lessors, and their respective legal and financial advisors shall be permitted to attend the Auction;

c.     if the Debtors receive one or more Qualified Bids, excluding the Stalking Horse Bid, representatives of the Debtors (and any other parties entitled to participate under the Bidding Procedures) may confer with each Qualified Bidder and the Stalking Horse Bidder regarding the terms and conditions of their Bid before commencement of the Auction. Because Illusion Attractions LLC has been designated as the Stalking Horse Bidder, the Stalking Horse Bid shall serve as the Opening Bid, and Illusion Attractions LLC shall be the Opening Bidder;

d.     bidding shall commence at the amount of the Opening Bid. The Opening Bid shall be announced by the Debtors at or before the commencement of the Auction. Other Qualified Bidders may then submit successive Bids, provided that the first bid over the Opening Bid must exceed the Opening Bid by at least $75,000.00, and all subsequent Bids must be at least $50,000.00 higher than the previous Bid, in each case as provided in the APA;

e.     Qualified Bidders shall have the right to submit additional Bids that include modifications to their Qualified APA at the Auction, consistent herewith, provided that any such modifications to the Qualified APA, on an aggregate basis and viewed in whole, shall not be less

- 22 -

favorable to the Debtors than any prior Bid by such party, as determined by the Debtors. The Debtors reserve the right to separately negotiate the terms of any Qualified Bids at the Auction, provided the terms are fully disclosed at the time such Qualified Bid is formally submitted;

f.    the bidding will be transcribed by a certified court reporter employed by the Debtors or otherwise recorded in a manner the Debtors deem appropriate, to ensure an accurate recording of the bidding at the Auction;

g.    each Qualified Bidder and the Stalking Horse Bidder shall be required to confirm that they have not engaged in any collusion with respect to the bidding or the proposed Sale and are not in violation of § 363(n); and

h.    absent irregularities in the conduct of the Auction, the Debtors will not consider any Bids made after the Auction is closed.

*Id.* at 7-10.

**F.    Representations and Warranties**

66.    Except as explicitly set forth in the Winning Bid APA (as defined below), the Sale Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, whether written, verbal, express, implied, or by operation of law. *Id.* at 3.

**G.    Acceptance of the Winning Bid**

67.    Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, shall identify (i) the "Winning Bid," which is the highest or otherwise best Bid submitted at the Auction; and (ii) the next highest or otherwise best Bid (the "Back-Up Bid" and the party submitting the Back-Up Bid, the "Back-Up Bidder"). *Id.* at 9. Each of the Winning Bidder and the Back-Up Bidder shall be required to execute definitive documentation conformed to the provisions of the Winning Bid and the Back-Up Bid, as applicable, as soon as practicable, but in no event, before the Sale Hearing. *Id.* For the purposes of these Bidding Procedures, the definitive agreement executed by the (i) Winning Bidder shall be defined as the "Winning Bid APA" and (ii) Back-Up Bidder shall be defined as the "Back-Up Bid APA". *Id.*

68.     The Back-Up Bidder must keep the Back-Up Bid open and irrevocable until the earlier of (i) 5:00 p.m. (Pacific Time) on the date which is thirty (30) days after the entry of the Sale Order (the "Outside Back-Up Date"), or (ii) the date of closing of the Sale to the Winning Bidder. *Id.*

69.     Within one (1) business day after the conclusion of the Auction, the Winning Bidder and the Back-Up Bidder shall each deposit with the Debtors an additional amount in cash such that, when combined with their existing Deposit, each such bidder's aggregate Deposit equals twenty percent (20%) of the Purchase Price (as defined in the Bidding Procedures) reflected in the final bid of the Winning Bidder and of the Back-Up Bidder, respectively (such additional amounts shall be included in the definition of the "Deposit"). *Id*. at 9-10.

70.     If an Auction is held, the Debtors shall be deemed to have accepted a Bid as the winner of the Auction, conditioned upon approval by the Bankruptcy Court, only when (i) such Bid is declared the Winning Bid; (ii) definitive documentation has been executed in respect thereof; and (iii) any additional Deposit required as a result of a Bid submitted at the Auction (as required by the Bidding Procedures) has been provided to the Debtors. Such acceptance is also conditioned upon approval by the Court of the Winning Bid and, if applicable, the Back-Up Bid. *Id.* at 10.

## VI.

## THE SALE HEARING

71.     As part of this Motion, the Debtors ask this Court to schedule a sale hearing (the "Sale Hearing") on March 20, 2026, or as soon thereafter as is convenient to the Court.  The Debtors will present the results of the Auction to the Court at the Sale Hearing, at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that: (i) the Auction was properly conducted, and the Winning Bidder and the Back-Up Bidder were properly selected, in accordance with the Bidding Procedures; (ii) the Auction was fair in substance and procedure; (iii) each of the Winning Bid and the Back-Up Bid was submitted and selected in accordance with the Bidding Procedures; (iv) the closing of the Sale in accordance with the Winning Bid (or if applicable, the Back-Up Bid) will provide the highest or otherwise best value for the Sale Assets and is in the best interests of the Debtors; and (v) each of the Winning Bidder and the Back-Up Bidder are deemed to be purchasers of the Sale Assets in good faith as set forth in § 363(m). *Id.* at 10-11.

- 24 -

72.     At the Sale Hearing, the Debtors shall request the Bankruptcy Court to enter an order approving the Winning Bid and, if applicable, the Back-Up Bid (the "Sale Order").  *Id*. at 10. Except to the extent revised by the Debtors in their discretion, after consultation with the Winning Bidder, the proposed Sale Order presented to the Bankruptcy Court at the Sale Hearing shall be consistent with the Winning Bid and preserve the Secured Creditors' rights with respect to any proceeds received from the Sale. *Id.* at 10.

73.     At the Sale Hearing, the Debtors shall also request, as part of the Sale Order, authorization from the Bankruptcy Court to accept the Back-Up Bid as the Winning Bid, and consummate such bid, if the Winning Bid is not consummated when and as required by its terms without further order of the Bankruptcy Court. *Id.* at 11. The Debtors and the Back-Up Bidder shall be bound to consummate the Back-Up Bid if the Winning Bid terminates, at which time the Back-Up Bidder shall be deemed the Winning Bidder. *Id.* The Debtors shall promptly give notice to the Back-Up Bidder if the Winning Bid is terminated and shall provide the Back-Up Bidder with a reasonable period to close as set forth in the Back-Up Bid APA. *Id*.

## VII.

### RETURN OF DEPOSITS

74.     Upon closing of the Sale with the Winning Bidder, the Deposit of the Winning Bidder shall be credited to the Purchase Price. *Id.* at 11. As shall be set forth in the Winning Bid APA, if the Winning Bidder fails to close, then the Deposit, which is the subject of the Winning Bid, shall be retained by the Debtors or returned to the Winning Bidder as shall be set forth in the Winning Bid APA or as otherwise ordered by the Bankruptcy Court. *Id*.

75.     The Deposits of any Qualified Bidders or the Stalking Horse Bidder, other than the Winning Bidder and the Back-Up Bidder, will be returned within two (2) business days after the conclusion of the Sale Hearing; provided, that, the Deposit of the Back-Up Bidder shall be returned to the Back-Up Bidder at the earlier of (i) the closing of the Sale to the Winning Bidder, and (ii) thirty (30) days after entry of the Sale Order. *Id.*

/ / /

## VIII.

## NOTICE PROCEDURES

76.     For purposes of this Motion and the Bidding Procedures Order, the "Notice Parties" shall mean: (a) counsel for the Debtors; (b) the Office of the United States Trustee for Region 17; (c) counsel for each known secured creditor and lienholder asserting an interest in the Sale Assets (or, if unrepresented, such creditor or lienholder); (d) counsel for any statutory committee appointed in these Chapter 11 Cases (if any); (e) any party that has entered an appearance and requested notice in the Chapter 11 Cases affected by this Motion; and (f) any counterparty to an executory contract or unexpired lease that the Debtors seek to assume and assign in connection with the Sale.

77.     The Debtors propose that any objections to the Sale (a "Sale Objection"), must: (i) be in writing; (ii) comply with Fed. R. Bankr. P. 9014 and the applicable Local Rules governing contested matters; (iii) set forth the specific basis for the Sale Objection; (iv) be filed with the Court, together with any evidence in support of such Sale Objection and proof of service, on or before the Sale Objection Deadline set forth in the Bidding Procedures Order; and (v) be served, to be actually received on or before the Sale Objection Deadline, upon the Notice Parties.

78.     If a Sale Objection is not filed and served on or before the Sale Objection Deadline, the Debtors request that the objecting party be barred from objecting to the Sale and not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party. The Debtors also request that the Court approve the form of the Bidding Procedures Notice substantially in the form attached hereto as **Exhibit 3**. The Debtors will serve a copy of the Bidding Procedures Notice on the Notice Parties and all parties that the Debtors are required to serve pursuant to Bankruptcy Rules 2002 and 6004.

79.     The Debtors propose to file with the Court and serve the Bidding Procedures Notice within five (5) business days following entry of the Bidding Procedures Order, by first-class mail, postage prepaid, on the Notice Parties. The Procedures Notice provides that any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request in writing to Nevada Bankruptcy Attorneys, LLC, Attn: Matthew I. Knepper, 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148 or by emailing mknepper@nvbankruptcyattorneys.com or calling (702) 805-1659.

80.    To the extent the APA contemplates assumption and assignment of any executory contracts or unexpired leases in connection with the Sale, the Debtors will provide a separate notice (the "Cure Notice") identifying each contract or lease to be assumed and assigned and the Debtors' proposed cure amount, if any, for each such contract or lease (each, a "Cure Amount"). The Cure Notice will be served on the applicable counterparties and the Notice Parties. Any counterparty disputing (i) the proposed assumption and assignment, (ii) the Cure Amount, and/or (iii) the Buyer's adequate assurance of future performance under 11 U.S.C. § 365(b)(1)(C) and § 365(f)(2)(B), must file and serve an objection by the Sale Objection Deadline. Any counterparty that fails to timely object will be deemed to have consented to the assumption and assignment and to have agreed that the Cure Amount is correct. All cure and adequate-assurance disputes, if any, will be adjudicated at the Sale Hearing

81.    The Debtors submit that the foregoing notices comply fully with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Bidding Procedures, Auction and Sale, and Sale Hearing to the Debtors' creditors and other parties in interests as well as to those who have expressed an interest or are likely to express an interest in bidding on the Sale Assets. Based on the foregoing, the Debtors respectfully request that this Court approve these proposed notice procedures.

**IX.**

**RESERVATION OF RIGHTS IN CONNECTION WITH BIDDING PROCEDURES AND AUCTION PROCESS**

82.    The Debtors, after consultation with their financial and legal advisors: (i) may waive any requirements for a Potential Bidder to become a Qualified Bidder; (ii) may waive any requirements for a Potential Bid to become a Qualified Bid; (iii) after each round of bidding at the Auction may determine which Bid, if any, is the highest or otherwise best offer and the value thereof; (iv) may reject, at any time, any bid that they deems to be (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or any other orders applicable to the Debtors, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Debtors, their estates, and stakeholders as determined by the Debtors; (v) may impose additional terms and conditions and otherwise modify the Bidding Procedures at any time; (vi) withdraw from sale any Sale Assets at any time and make subsequent attempts to market the same; and (vii) reject all bids. Ex. 2 at 12-13.

## X.

## ARGUMENT

**A.    Approval of the Bidding Procedures Is Appropriate and in the Best Interests of the Debtors and Their Stakeholders**

Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession, after notice and a hearing, to use, sell, or lease property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rules 2002 and 6004 govern notice and procedure for sales of estate property, and Bankruptcy Rules 6004 and 6006 govern the sale/auction mechanics and assumption-and-assignment procedures to the extent executory contracts or unexpired leases are implicated. *See* Fed. R. Bankr. P. 2002(a)(2), 6004, 6006. Local Rule 6004(b) sets forth the disclosures required in a sale motion, which are addressed above.

Although Section 363 does not specify a particular standard for authorizing a sale, courts have long held that a proposed sale of estate assets outside the ordinary course should be approved where the debtor demonstrates a sound business purpose and the sale process is fair. *See, e.g.*, *In re Walter*, 83 B.R. 14, 19 (9th Cir. BAP 1988); *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (2d Cir. 1986); *Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996); *Official Comm. of Unsecured Creditors v. The LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141, 143 (2d Cir. 1992); *Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Consistent with that framework, courts recognize that the paramount goal of a Section 363 sale is to maximize value for the estate and stakeholders, and competitive bidding procedures are routinely approved when designed to encourage participation and drive value. *See, e.g.*, *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564–65 (8th Cir. 1997); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 659 (S.D.N.Y. 1992) (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130–31 (Bankr. N.D. Ga. 1988)). As long as the proposed sale and procedures are designed to enhance value for the estate, courts generally defer to a debtor's business judgment and will not second-guess that judgment absent a showing that it is clearly

- 28 -

erroneous, too speculative, or contrary to the Bankruptcy Code. *See In re Lahijani*, 325 B.R. 282, 288–89 (9th Cir. BAP 2005); *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 255 (N.D. Tex. 2005).

Here, the Debtors have exercised reasonable business judgment in negotiating the APA with Illusion Attractions LLC, the Stalking Horse Bidder, and in proposing the Bidding Procedures. The Stalking Horse Bid establishes a credible baseline, and floor, offer and provides a vetted form of agreement for competing bidders, while the Bidding Procedures are intended to solicit higher and better offers through an orderly and transparent process designed to maximize value for the estates. Kaplan Decl. at ¶ 8. The Debtors, through their Broker, have undertaken meaningful marketing efforts and intend to continue marketing through the Bid Deadline, including outreach to Potential Bidders and facilitation of diligence access consistent with the Bidding Procedures. McFinn Decl. at ¶ 13.

The proposed Bidding Procedures are structured to promote competitive bidding while protecting the estates against delay, uncertainty, and nonperforming bidders. Among other things, the Bidding Procedures establish a Bid Deadline and "Qualified Bid" requirements intended to ensure Bids are bona fide and financeable, an auction framework, if required, that is fair and transparent, and a Sale Hearing to allow the Court to determine whether the Successful Bid represents the highest or otherwise best offer. Kaplan Decl. at ¶ 8. Consistent with the Debtors' proposed process, the Stalking Horse Bid will serve as the Opening Bid at any auction. Kaplan Decl. at ¶ 9.

Accordingly, approval of the APA and the Bidding Procedures is warranted because they are reasonable, appropriate, and in the best interests of the Debtors, their estates, creditors, and all parties in interest.

**B.** **Approval of the Stalking Horse Protections Set Forth in the APA Is Appropriate and Supports a Value-Maxing Sale Process**

The Debtors submit that the stalking horse protections reflected in the APA—namely, a Break-Up Fee and Expense Reimbursement (collectively, the "Stalking Horse Protections")—are reasonable, customary in chapter 11 sale transactions, and warranted here because they induced the Stalking Horse Bidder to commit resources to diligence and negotiations, established a credible floor bid, and provide a

tested transaction framework that other bidders can use as a baseline, thereby promoting competitive bidding and value maximization.

Courts recognize that stalking horse protections may be approved when they provide a cognizable benefit to the estate—for example, by (i) attracting or retaining a bid, (ii) establishing a bid standard, or (iii) attracting additional bidders—and when they are structured so they do not improperly chill bidding. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 660–62 (S.D.N.Y. 1992); *Calpine Corp. v. O'Brien Env'tl Energy, Inc.* (*In re O'Brien Env'tl Energy, Inc.*), 181 F.3d 527, 533–37 (3d Cir. 1999). In the Ninth Circuit, courts evaluate whether such protections are in the best interests of the estate and whether the protections are properly supported as "actual and necessary" costs that provide an estate benefit, rather than an impermissible penalty or mere liquidated damages. *In re Am. W. Airlines, Inc.*, 166 B.R. 908 (Bankr. D. Ariz. 1994); *In re Elec. Transp. Eng'g Corp.*, 2010 WL 11823030 at *3 (Bankr. D. Ariz. Sept. 3, 2010*); In re Cascade AG Servs., Inc.*, 2012 WL 13332185 at *1(Bankr. W.D. Wash. Mar. 12, 2012).

Ninth Circuit bankruptcy courts also focus on whether the protections were negotiated at arm's length and are a material inducement for the stalking horse to serve as the initial bidder and provide a binding transaction framework for the auction process. *See, e.g.*, *In re Cascade AG Servs., Inc.*, 2012 WL 13332185 (Bankr. W.D. Wash. Mar. 12, 2012); *In re Elec. Transp. Eng'g Corp.*, 2010 WL 11823030 at *2 (Bankr. D. Ariz. Sept. 3, 2010). Relatedly, courts approve stalking horse structures where bid protections and overbid mechanics are integrated to ensure that any topping bid yields a net benefit to the estate (i.e., exceeds the stalking horse bid by at least the amount necessary to account for any court-approved protections). *See In re Cmty. Healthcare of Douglas, Inc.*, 2013 WL 12291504 (Bankr. D. Ariz. Oct. 22, 2013); *In re Trident Water Works, Inc.*, 2010 WL 5167286 at *1 (Bankr. W.D. Wash. Aug. 27, 2010).

Courts in the District of Nevada likewise approve break-up fees and expense reimbursements where structured to support a competitive process and protect estate value. For example, in *Western Funding*, the bankruptcy court approved a breakup fee and expense reimbursement structure (including documented expense oversight) and also included language limiting other bidders from obtaining similar bid-protection payments. *In re W. Funding Inc.*, 2014 WL 183945 (Bankr. D. Nev. Jan. 6, 2014); *In re W. Funding Inc.*, 2013 WL 6997402 at *2 (Bankr. D. Nev. Nov. 27, 2013). Similarly, in *Specialty Trust*, the court approved

- 30 -

break-up fee and expense reimbursement protections conditioned on plan/exit-facility outcomes. *In re Specialty Tr., Inc.*, 2013 WL 12577922 at *1 (Bankr. D. Nev. Mar. 26, 2013).

Here, the proposed Break-Up Fee and Expense Reimbursement fall within ranges that courts commonly approve, including in Ninth Circuit cases approving a 3% termination/break-up fee structure in the context of auction procedures designed to maximize value. *See In re Cmty. Healthcare of Douglas, Inc.*, 2013 WL 12291504 at *10 (Bankr. D. Ariz. Oct. 22, 2013). At the same time, courts caution that bid protections must not be set so high (or structured so broadly) that they "unnecessarily chill[] bidding" or deplete estate value without an offsetting benefit. *In re Am. W. Airlines, Inc.*, 166 B.R. 908, 913 (Bankr. D. Ariz. 1994). The Debtors' proposed Stalking Horse Protections are narrowly tailored and tied to documented items and a defined percentage, which supports a finding that they are reasonable and not bid-chilling.

Consistent with § 503(b)'s "actual and necessary" standards, the Debtors seek approval of the Stalking Horse Protections only as actual and necessary costs of preserving the estate under 11 U.S.C. § 503(b)(1)(A), payable solely upon consummation of a competing transaction that closes, and only in the amounts and under the conditions set forth in the APA and the Bidding Procedures Order.

Finally, the structure of the APA further limits any potential chilling effect because the Break-Up Fee is payable only upon the closing of a "Competing Transaction,"[3] and the Expense Reimbursement is similarly tied to termination in favor of (and/or closing of) a Competing Transaction. Kaplan Decl. at ¶ 18. Thus, the estates will not incur these protections unless the sale process results in a higher or otherwise better transaction that closes, ensuring that any payment of Stalking Horse Protections corresponds with an enhanced outcome for the estates. *See, e.g.*, *In re O'Brien Env'tl Energy, Inc.*, 181 F.3d 527, 533–37 (3d Cir. 1999); *In re Integrated Res., Inc.*, 147 B.R. at 660–62; *accord In re Cmty. Healthcare of Douglas, Inc.*, 2013 WL 12291504 (Bankr. D. Ariz. Oct. 22, 2013). Accordingly, the Court should approve the Stalking Horse Protections as reasonable, appropriate, and supportive of a value-maximizing sale process.

///

---

[3] Under the APA, a Competing Transaction means "any agreement, proposal, or transaction with a third party to purchase, acquire, or otherwise assume all or any material portion of the Business, Purchased Assets, or Sellers's equity interests, or to otherwise operate the Business instead of Buyer."

**C.    Approval of the Sale Is Warranted under § 363**

As discussed above, § 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

**1.    The Sale of the Sale Assets Is Authorized as a Sound Exercise of the Debtors' Business Judgment.**

In accordance with Bankruptcy Rule 6004, sales of property outside the ordinary course of business may be conducted by private sale or public auction. *See* Rule 6004. The Debtors have determined that the proposed sale of the Sale Assets through the Court-approved Bidding Procedures—including a competitive Auction if more than one Qualified Bid is received—will enable the Debtors to obtain the highest or otherwise best offer for the Sale Assets, thereby maximizing value for the estates and serving the best interests of creditors and other stakeholders. Kaplan Decl. at ¶ 8; McFinn Decl. ¶ 14.

The Debtors' conclusion that an Auction process is the best way to maximize value is supported by the Debtors' extensive marketing efforts. The Debtors retained First Choice Business Brokers and Freddie McFinn as the Broker, and the Sale Assets have been marketed broadly, including listings on multiple business-for-sale platforms and targeted outreach to strategic buyers, including the execution of NDAs and dissemination of diligence materials to industry participants. McFinn Decl. ¶¶ 7-8.

Section 363 does not specify a single test for whether a sale outside the ordinary course should be approved. Courts nonetheless consistently hold that such a sale should be authorized where a sound business purpose exists. *See, e.g.*, *Meyers v. Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (2d Cir. 1986); *Committee of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983). Within the Ninth Circuit, courts likewise require an articulated business justification for a proposed § 363(b) sale and recognize the Court's obligation to ensure the estate realizes optimal value under the circumstances. *In re Walter*, 83 B.R. 14 (9th Cir. BAP 1988); *Simantob v. Claims Prosecutor, LLC* (*In re Lahijani*), 325 B.R. 282 (9th Cir. BAP 2005).

The paramount goal in any proposed sale of estate property is to maximize value for the estate. *See, e.g.*, *Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564–65 (8th Cir. 1997) (recognizing "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 659

- 32 -

(S.D.N.Y. 1992) ("duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate") (quoting *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 130–31 (Bankr. N.D. Ga. 1988)).

Applying these principles, the Debtors submit that the proposed Sale should be approved under § 363(b) because it reflects a sound exercise of business judgment and is designed to maximize value through adequate market exposure and a fair, competitive process. *See* Kaplan Decl. at ¶ 8. The proposed process tests value through continued marketing, dissemination of diligence materials to Potential Bidders, and a transparent Auction process (if necessary) conducted pursuant to Court-approved Bidding Procedures— widely recognized as the best means to establish whether a fair and reasonable price is being paid under the circumstances. *Id.* at ¶¶ 8-9; McFinn Decl. ¶ 14-15.

### 2. The Sale of the Sale Assets Free and Clear of Liens and Other Interests Is Authorized by § 363(f)

The Debtors further submit that it is appropriate to approve the Sale free and clear of liens, claims, and other interests pursuant to § 363(f), with any valid liens attaching to the Sale proceeds in the same order of priority, subject to further order of the Court. Section 363(f) authorizes a debtor to sell assets free and clear of liens and other interests if:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interests;
> (2) such entity consents;
> (3) such interest is a lien and the sale price is greater than the value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Because § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale free and clear of liens and interests. *See In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986); *Mich. Emp't Sec. Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991).

- 33 -

Here, with respect to each interest asserted against the Sale Assets, the Debtors will demonstrate at the Sale Hearing that at least one of the prongs of 11 U.S.C. § 363(f) is satisfied. To the extent a lienholder's interest is to be paid from Sale Proceeds at Closing pursuant to an agreed payoff, the Debtors expect to obtain written payoff statements and/or written consent to the Sale, satisfying 11 U.S.C. § 363(f)(2). To the extent any party asserts an interest that is disputed as to validity, priority, or extent, the Debtors reserve the right to seek authorization to sell free and clear under 11 U.S.C. § 363(f)(4), with such disputed interest, if any, attaching to the Sale Proceeds in the same validity, priority, and extent, pending further order of the Court. To the extent any party asserts an interest that is not being paid in full at Closing, the Debtors will request authority to sell free and clear under 11 U.S.C. § 363(f)(5) because such party could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest, with any such interest attaching to the Sale Proceeds to the extent, and with the priority, determined by the Court. The Debtors will address and support the application of § 363(f) to specific asserted interests in the Sale Supplement and/or at the Sale Hearing. *See* Kaplan Decl. at ¶ 15.

3.      **Application of Sale Proceeds to Priority Administrative Expenses Is Appropriate Under the Bankruptcy Code.**

Section 363(b) authorizes a debtor-in-possession to use property of the estate outside the ordinary course of business upon notice and a hearing. 11 U.S.C. § 363(b)(1). To the extent Sale Proceeds remain after satisfaction of secured claims to the extent of their collateral value under 11 U.S.C. § 506(a), such proceeds constitute unencumbered property of the estate available for distribution in accordance with the priority scheme of the Bankruptcy Code.

Administrative expenses allowed under 11 U.S.C. § 503(b), including compensation of professionals retained under 11 U.S.C. § 327 and approved under § 330, are entitled to priority under 11 U.S.C. § 507(a)(2). *See In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 874 (9th Cir. 2011). Once secured creditors are satisfied to the extent of the value of their interests, remaining proceeds are properly available to satisfy priority administrative claims in accordance with the statutory distribution scheme.

To the extent any secured creditor asserts that Excess Proceeds constitute its cash collateral, the Debtors will comply with 11 U.S.C. § 363(e) and any applicable cash collateral orders. Moreover, to the extent transaction costs or professional fees are argued to diminish the value of collateral, the Ninth Circuit

- 34 -

recognizes that a surcharge under 11 U.S.C. § 506(c) may be appropriate where the expense was reasonable, necessary, and provided a quantifiable benefit to the secured creditor's collateral. *In re Cascade Hydraulics & Util. Serv., Inc.*, 815 F.2d 546, 548 (9th Cir. 1987); *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1068–69 (9th Cir. 2001).

The Sale process contemplated by these Bidding Procedures is designed to maximize the value of the VES LV assets for all stakeholders, including junior lienholders and unsecured creditors. To the extent the Sale generates proceeds in excess of amounts necessary to satisfy secured claims as determined under § 506(a), the Debtors submit that application of such Excess Proceeds to allowed priority administrative expenses is consistent with the Bankruptcy Code's distribution framework and does not impermissibly impair any secured creditor's protected interest.

**4.     The Successful Bidder Should Be Afforded All Protections Under § 363(m) as a Good Faith Purchaser**

Section 363(m) protects a good-faith purchaser's interest in property purchased from the estate, notwithstanding that the sale conducted under § 363(b) is later reversed or modified on appeal. Specifically, § 363(m) provides that:

> The reversal or modification on appeal of an authorization under [§ 363(b)] . . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).

The Ninth Circuit has repeatedly held that when a sale is made to a good faith purchaser, it may not be modified or set aside on appeal unless the sale was stayed pending appeal. *Paulman v. Gateway Venture Partners III, L.P.* (*In re Filtercorp, Inc.*), 163 F.3d 570, 576 (9th Cir. 1998); *In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992); *Onouli-Kona Land Co. v. Est. of Richards* (*In re Onouli-Kona Land Co.*), 846 F.2d 1170, 1172 (9th Cir. 1988). In the Ninth Circuit, lack of good faith is typically shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Filtercorp*, 163 F.3d at 576 (quoting *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985)).

Accordingly, the selection of the Successful Bidder will be the product of arms' length, good-faith negotiations and (if necessary) competitive bidding in accordance with the Bidding Procedures, including

the requirement that bidders confirm they have not engaged in collusion prohibited by § 363(n). *See* Kaplan Decl. at ¶ 10. The Debtors intend to request at the Sale Hearing a finding that the Successful Bidder is a good faith purchaser entitled to the protections of § 363(m). *Id.*

**D.      Relief from the 14-Day Waiting Period under Bankruptcy Rule 6004(h) Is Appropriate**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtors respectfully request that the Sale Order be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes do not prescribe when a court should "order otherwise," *Collier* explains that the 14-day stay period may be eliminated to permit an immediate closing where no objection is lodged to the procedure, and that—if an objection is filed and overruled and the objecting party indicates an intent to appeal—the stay may be reduced to the time actually necessary to file a notice of appeal. *Collier on Bankruptcy* ¶ 6004.11 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Here, waiver of the 14-day stay is appropriate because the Sale process is structured to provide robust notice and a meaningful opportunity to object, and because prompt effectiveness of the Sale Order will facilitate an orderly transition and closing that preserves value (including avoiding delay-related disruption and uncertainty that can impair going-concern value and the estates' ability to consummate the transaction on the timetable presented to bidders). In addition, the APA contemplates an anticipated closing date of March 24, 2026, and the Debtors have structured the Sale timeline to facilitate a prompt closing on that schedule. Absent waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), the Debtors could be forced into delay that jeopardizes consummation of the Stalking Horse Bid (including by increasing closing risk and uncertainty for the Stalking Horse Bidder), to the detriment of the estates and stakeholders.

Accordingly, the Debtors request that the Court waive the 14-day stay period under Bankruptcy Rule 6004(h) or, in the alternative, if an objection to the Sale is filed and overruled and the objecting party informs the Court of its intent to appeal, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## XI.

## **CONCLUSION**

WHEREFORE, Debtor respectfully request that the Court: (i) grant the Motion; (ii) enter the Bidding Procedures Order, which, inter alia, (a) approves the Bidding Procedures, (b) approves the Bidding Procedures Notice, and (c) schedules the Sale Hearing; and (iii) grant Debtors such other and further relief as is just and appropriate.

Respectfully submitted on February 26, 2026, by:


By: /s/ Matthew Knepper, Esq.
Matthew Knepper, Esq.
NEVADA BANKRUPTCY ATTORNEYS, LLC
*Attorney for Debtor(s)*

**EXHIBIT 1**

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: 25-12627-mkn |
| VELOCITY ESPORTS, INC., | Jointly Administered with<br>Case No. 25-12628-mkn |
| ■ Affects Velocity Esports, Inc. | Case No. 25-12629-mkn |
| ■ Affects Velocity Esports Las Vegas Town Square, LLC | Case No. 25-12630-mkn<br>Case No. 25-12631-mkn |
| ☐ Affects Velocity Esports Chicago Schaumburg, LLC | Chapter 11 |
| ☐ Affects Velocity Esports Newport Kentucky, LLC | **ORDER ESTABLISHING BIDDING PROCEDURES AND DEADLINES RELATING TO SALE PROCESS FOR CERTAIN OF DEBTORS' SALE ASSETS** |
| ☐ Affects Velocity Esports Orlando Downtown, LLC | |
| ☐ Affects All Debtors | |
| Debtor(s). | Hearing Date: **OST REQUESTED**<br>Hearing Time: **OST REQUESTED** |

Upon the *Debtors' Motion for Entry of an Order: (I) (A) Approving the Designation of Illusion Attractions LLC as the Stalking Horse Bidder; (B) Approving the Stalking Horse Asset Purchase Agreement as the Stalking Horse Bid; and (C) Approving Stalking Horse Protections; (II) Approving Bidding Procedures for the Sale of Certain Assets; (III) Approving the Form and Manner of Notice; (IV) Scheduling an Auction and a Hearing to Consider Approval of the Sale to the Highest or Otherwise Best Bidder; and (V) Granting Related Relief* (the "Motion");[1] and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest;

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to them in the Motion.

- 2 -

and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[1]

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and over the persons and property affected hereby.

B.      Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

C.      Venue for this case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory and legal predicates for the relief requested in the Motion and provided for herein are §§ 105(a) and 363, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rule 6004.

E.      In the Motion, any supplemental briefing in support thereof, and at the Hearing, the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

F.      The Debtors' proposed Bidding Procedures Notice, the Auction, the Auction Procedures, and the hearing to approve the sale of the Sale Assets (the "Sale Hearing") are appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

G.      The Bidding Procedures substantially in the form attached to the Motion as **Exhibit 2** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Sale Assets.

H.      The Break-Up Fee is reasonably calculated to: (1) attract or retain a potentially successful bid; (2) establish a bid standard or minimum for other bidders to follow; and (3) attract additional bidders.

---

[1] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

- 3 -

Accordingly, in light of the foregoing, the size and nature of the Sale, and the efforts that would be expended by a Stalking Horse Purchaser, the Break-Up Fee is reasonable and appropriate.

I.    Entry of (i) this Order at this time and (ii) an order approving the Sale (the "Sale Order") after the Sale Hearing is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

The Motion is **GRANTED** as set forth herein.

**IT IS HEREBY ORDERED THAT** any objections to the Motion that have not been withdrawn, resolved, or otherwise settled are overruled on the merits;

**IT IS FURTHER ORDERED THAT** the designation of Illusion Attractions LLC as the Stalking Horse Bidder is approved, and the APA is approved as the Stalking Horse Bid, subject to the terms and conditions of this Order and final approval of any sale at the Sale Hearing;

**IT IS FURTHER ORDERED THAT** the Bidding Procedures attached to the Motion as **Exhibit 2** are incorporated herein by reference in their entirety, are approved, and shall be effective and binding on all parties in interest as of entry of this Order, as if set forth fully herein;

**IT IS FURTHER ORDERED THAT** the Stalking Horse Protections set forth in the APA, including (a) a break-up fee equal to three percent (3%) of the "Transaction Value" (the "Break-Up Fee"), and (b) expense reimbursement items (including capped third-party diligence expenses) (the "Expense Reimbursement," and together with the Break-Up Fee, the "Stalking Horse Protections"), are approved, subject to the terms of the APA and this Order;

**IT IS FURTHER ORDERED THAT** any Break-Up Fee, to the extent payable, shall be payable only upon the occurrence of the applicable triggering event(s) under the APA and shall be payable at the closing of a Competing Transaction with a party other than the Stalking Horse Bidder.

**IT IS FURTHER ORDERED THAT** the Expense Reimbursement, to the extent payable, shall be payable only upon the occurrence of the applicable triggering event(s) under the APA and shall be payable at the earlier of (i) the closing of any Competing Transaction or (ii) ten (10) business days following the Debtors' termination of the APA in favor of a Competing Transaction, in each case in accordance with the APA and this Order;

- 4 -

**IT IS FURTHER ORDERED THAT** to the extent payable pursuant to the APA and this Order, the Break-Up Fee and Expense Reimbursement shall constitute allowed administrative expense obligations of the Debtors' estates under 11 U.S.C. § 503(b)(1)(A);

**IT IS FURTHER ORDERED THAT** to the following dates and deadlines are approved and shall govern the sale process, all times Pacific:

    a.    Indication of Interest Deadline: March 9, 2026 at 5:00 p.m;

    b.    Qualified Bid Deadline (Bid Deadline): March 16, 2026 at 5:00 p.m;

    c.    Auction (if necessary): March 18, 2026 at 10:00 a.m., at Nevada Bankruptcy Attorneys, LLC, 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148, or by such other remote means noticed to Qualified Bidders as provided in the Bidding Procedures;

    d.    Sale Objection Deadline: March 13, 2026 at 5:00 p.m.; and

    e.    Sale Hearing: March 20, 2026 at 9:30 a.m., before the United States Bankruptcy Court for the District of Nevada, at Courtroom 2, or as otherwise noticed by the Court;

**IT IS FURTHER ORDERED THAT** if the Debtors receive one or more Qualified Bids by the Bid Deadline, the Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures and, in consultation with the parties specified in the Bidding Procedures, to select the highest or otherwise best bid as the Winning Bid and to designate a Back-Up Bid in accordance with the Bidding Procedures, subject to Court approval at the Sale Hearing;

**IT IS FURTHER ORDERED THAT** the Sale Notice attached to the Motion as **Exhibit 3** is approved as adequate and appropriate under the circumstances. The Debtors are directed and authorized to serve the Sale Notice and related materials in the form and manner set forth in the Motion and Bidding Procedures within five (5) business days after entry of this Order on the Notice Parties. Such service shall constitute good and sufficient notice under the Bankruptcy Rules and Local Rules;

**IT IS FURTHER ORDERED THAT** a hearing to approve the sale of the Sale Assets to the Winning Bidder(s) or any Back- Up Bidder(s) resulting from the Auction shall take place on March 20, 2026, at 9:30 a.m. before a United States Bankruptcy Judge, Courtroom 2, United States Bankruptcy Court, 300 Las Vegas Boulevard South, Las Vegas, Nevada. Any objections to the Sale (a "Sale Objection"), must:

- 5 -

(i) be in writing; (ii) comply with the Bankruptcy Rules and the LRs; (iii) set forth the specific basis for the Sale Objection; (iv) be filed with the Court, 300 Las Vegas Boulevard South, Las Vegas, Nevada, together with proof of service, March 13, 2026 at 5:00 p.m. (prevailing Pacific Time) (the "Sale Objection Deadline"); and (v) be served, so as to be actually received on or before the Sale Objection Deadline, upon: (i) Debtors' Counsel, NEVADA BANKRUPTCY ATTORNEYS, LLC, Attn: Matthew Knepper (mknepper@nvbankruptcyattorneys.com); (ii) Counsel for Newtek Bank, N.A., ALDRIDGE PITE, LLP, Attn: Richard Samuel Ehlers, Esq. Todd S. Garan, Esq. (ecfnvb@aldridgepite.com, sehlers@aldridgepite.com, and TGaran@aldridgepite.com); (iii) Counsel for Creditor Advantage Leasing Corporation, SHEA LARSEN, Attn: Bart K. Larsen, Esq. and Kyle M. Wyant, Esq. (blarsen@shea.law and kwyant@shea.law); (iv) Attorneys for Creditor NFS Capital, LLC, FOLEY & LARDNER LLP, Attn: Robert T. Stewart, Esq. and Adrienne K. Walker, Esq., and designated resident attorney only for creditor NFS Capital, LLC pursuant to LR IA 11-1(b)(2), JENNINGS & FULTON, LTD, Attn: Adam Fulton, Esq. (rtstewart@foley.com, awalker@foley.com, and afulton@jfnvlaw.com); (v) Accounts Receivable Supervisor for Creditor Restaurant Technologies, Attn: Jill Voelker (jvoelker@rti-inc.com); (vi) Collections Officer for North Star Leasing a Division of Peoples Bank, Attn: Michael R. Major (mmajor@northstarleasing.com); (vii) President of D & H Lawn Irrigation, Inc., Attn: Richard E. Heinzel (rick@dandhlawn.com); (viii) authorized agent for Creditor JPMC c/o National Bankruptcy Services, LLC, BONIAL & ASSOCIATES, P.C., Attn: William Lee (pocquestions@nbsdefaultservices.com); (ix) Partner for creditor Ellenoff Grossman & Schole LLP, Attn: Barry Grossman, Esq. (bgrossman@egsllp.com); (x) attorney for creditor 434 N. Orange Investment, LLC, KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., Attn: Josh M. Rubens, Esq. (jrubens@klugerkaplan.com); (xi) A/R Legal Clerk for creditor Pawnee Leasing Corporation, Attn: Amanda L. Graham (bankruptcy@pawneeleasing.com); and (xii) Asset Recovery Analyst for Old Dominion Freight Line, Inc., Attn: Rusty Frazier (Rusty.frazier@odfl.com); and (xiii) the Office of the United States Trustee, Attn: Justin Valencia (justin.c.valencia@usdoj.gov and USTPRegion17.lv.ecf@usdoj.gov) (collectively, the "Notice Parties"). If a Sale Objection is not filed and served on or before the Sale Objection Deadline, the objecting party may be barred from objecting to the Sale and may not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party. Replies to any Sale Objections may be presented at the Sale Hearing;

- 7 -

**IT IS FURTHER ORDERED THAT** the Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, and the Debtors shall have the exclusive right, in the exercise of their fiduciary obligations and business judgment, to cancel the Sale at any time subject to, and in accordance with, the terms of this Order;

**IT IS FURTHER ORDERED THAT** to the extent the provisions of this Order are inconsistent with the provisions of any Exhibit referenced herein or with the Motion, the provisions of this Order shall control;

**IT IS FURTHER ORDERED THAT** notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry, and the fourteen (14)-day stay provided by Bankruptcy Rule 6004(h) is waived to the extent applicable to this Order; and

**IT IS FURTHER ORDERED THAT** the Court shall retain exclusive jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

**IT IS SO ORDERED.**

Prepared and Respectfully Submitted by:

**Nevada Bankruptcy Attorneys, LLC**

By: _____

Matthew Knepper, Esq.

NEVADA BANKRUPTCY ATTORNEYS, LLC
*Attorney for the Jointly Administered Debtors*

**EXHIBIT 2**

**[PROPOSED] BIDDING PROCEDURES**

## BIDDING PROCEDURES

Velocity Esports, Inc. and Velocity Esports Las Vegas Town Square, LLC (collectively, the "Debtors") propose to conduct an auction for the Sale (as defined in Paragraph 1 below) of the Sale Assets (as defined in Paragraph 2 below) and will proceed in accordance with the following bid procedures (the "Bidding Procedures"), which have been approved pursuant to an order entered by the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") on _____ ____, 2026 (the "Bidding Procedures Order") in the jointly administered chapter 11 cases styled *In re Velocity Esports, Inc.*, Lead Case No. 25-12627-mkn (the "Chapter 11 Cases").

As provided below, the Debtors are soliciting bids (each, a "Bid" and collectively, "Bids") for the proposed acquisition of the Sale Assets, in accordance with the procedures below, which require, among other requirements, that Potential Bidders (defined below) submit a duly executed asset purchase agreement. The Debtors will consider all Bids that comply with the terms of these Bidding Procedures; provided, however, that Bids will be evaluated based upon the amount of cash consideration and other value components provided by such offer, as determined by the Debtors in their reasonable business judgment and consistent with these Bidding Procedures.

1. **Sale Proposal.** These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in the Auction (as defined in Paragraph 12 below), thereby competing to make the highest or otherwise best offer for the Sale Assets. The proposed sale of the Sale Assets (the "Sale") shall be free and clear of any and all liens, claims, interests, and encumbrances, pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"),[1] with all such liens, claims, interests, and encumbrances (if any) attaching to the proceeds of the Sale to the same extent and with the same priority as such liens, claims, interests, and encumbrances attached to the Sale Assets prior to the Sale, subject to further order of the Bankruptcy Court.

2. **Sale Assets.** For purposes of these Bidding Procedures, the "Sale Assets" consist of the Debtors' tangible and intangible personal property and related rights used in connection with the Debtors' Las

---

[1] Unless specified otherwise, all "§" or "Section" references are to the Bankruptcy Code.

- 2 -

Vegas Town Square operations, including furniture, fixtures, equipment, and other operating assets, together with contract rights, intellectual property, and other rights to be assumed and assigned to the extent provided in the APA (as defined below) and approved by the Bankruptcy Court, all as more particularly described in the Asset Purchase Agreement and related schedules.

3.    **"As Is, Where Is" Sale.** Except as explicitly set forth in the Winning Bid APA (as defined below), the Sale Assets will be transferred on an "as is, where is" basis, with all faults, and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, whether written, verbal, express, implied, or by operation of law.

4.    **Potential Bidders / Execution of NDA / Financial Information.** To participate in the Auction, any party (a "Potential Bidder") wishing to submit a Bid to purchase the Sale Assets must execute, or be currently subject to, a nondisclosure agreement ("NDA") in form and substance satisfactory to the Debtors (and their Broker, if applicable) before such Potential Bidder may receive due diligence information from the Debtors, including access to the Debtors' electronic data room (the "Diligence Room") or other non-public information relating to the Sale Assets. In addition, any Potential Bidder must provide financial information reasonably requested by the Debtors to evidence such Potential Bidder's ability to consummate the Sale (including proof of funds, equity commitment, financing sources, or other evidence of wherewithal), which information must be satisfactory to the Debtors in their reasonable discretion.

5.    **Due Diligence.** After receipt of an executed NDA, the Debtors shall, upon request by a Potential Bidder, provide such Potential Bidder with reasonable due diligence information as soon as reasonably practicable after such request, including access to the Diligence Room. The Debtors shall not furnish, and shall have no obligation to furnish, any confidential and/or non-public information relating to the Sale Assets or the Debtors (collectively, "Confidential Information"), or grant access to the Diligence Room, to (i) any person that does not qualify as a Potential Bidder, or (ii) to Potential Bidders who, at such time and in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that they intend in good faith to, or have the capacity to, consummate the Sale.

- 3 -

6.  **<u>No Reliance; No Post-Deadline Diligence</u>.** The Debtors make no representation or warranty as to the Confidential Information provided through the due diligence process or otherwise, except to the extent set forth in the Winning Bid APA. No Potential Bidder may conduct any additional due diligence after the Bid Deadline (as defined below), except as the Debtors may expressly permit in writing in their discretion.

7.  **<u>Bid Deadline; Bid Deadline Recipients</u>.** Potential Bidders must submit their Potential Bids so that such Potential Bids are actually received by each of the following parties no later than March 16, 2026 at 5:00 p.m. (Pacific Time) (the "<u>Bid Deadline</u>"):

    a.  Counsel to the Debtors: Nevada Bankruptcy Attorneys, LLC, Attn: Matthew I. Knepper, Esq., 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148; email: mknepper@nvbankruptcyattorneys.com;

    b.  The Debtors: Attn: Philip Kaplan; email: philk@deervalleyventures.com; Attn: Leonard Wanger; email: len_wanger@hotmail.com;

    c.  The Broker: First Choice Business Brokers & Freddie McFinn; email: fmcfinn@fcbb.com; and

    d.  Additional parties entitled to receive Potential Bids: None (collectively, the "<u>Bid Deadline Recipients</u>").

    Potential Bidders may email their Potential Bids to the email addresses listed above and/or deliver hard copies to the physical addresses listed above so that they are actually received by the Bid Deadline. The Debtors shall have no obligation to consider any other delivery format (e.g., fax) as acceptable. The Debtors may, in their discretion, extend the Bid Deadline until the commencement of the Auction for one or more Potential Bidders without prior notice to any party, but shall have no obligation to do so.

8.  **<u>Qualified Bid</u>.** To constitute a "<u>Qualified Bid</u>," a Bid must satisfy each of the following requirements (the "<u>Bid Requirements</u>"):

    a.  <u>Timely Delivery</u>. Be submitted in writing and be received by the Bid Deadline Recipients by the Bid Deadline in accordance with Paragraph 7, subject to Paragraph 10 below.

- 4 -

- 5 -

b.  Bona Fide Offer. Constitute a good faith, bona fide offer to purchase the Sale Assets for a proposed cash purchase price ("Purchase Price") identified in the Qualified APA.

c.  Bidder Identity. Identify the legal name of the Potential Bidder (including any direct or indirect equity holders, if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale).

d.  Qualified APA; Redline. Be accompanied by (i) a clean and duly executed asset purchase agreement (the "Qualified APA") based on and redlined against the Debtors' form APA (which shall be the Stalking Horse APA unless the Debtors provide another form), and (ii) a redline reflecting all proposed changes.

e.  Deposit. Unless it is a Credit Bid (as defined below) permitted by these Bidding Procedures, be accompanied by a deposit by wire transfer in the amount equal to ten percent (10%) of the Purchase Price in immediately available funds (the "Deposit"). The Debtors shall provide wire instructions upon request.

f.  Financial Wherewithal. Provide sufficient information to demonstrate to the satisfaction of the Debtors that the Potential Bidder has the financial wherewithal and ability to consummate the Sale in the timeframe contemplated by these Bidding Procedures.

g.  Agreement to Procedures; Jurisdiction. Include a written statement that the Potential Bidder agrees to be bound by these Bidding Procedures and the Bidding Procedures Order and consents to the Bankruptcy Court's jurisdiction in connection with disputes relating to these Bidding Procedures, the Auction, the Sale Hearing, the Sale Order, and/or the closing of the Sale (including waiver of any asserted right to a jury trial to the extent permitted by law).

h.  Disclosures of Connections. Include a written statement outlining the absence or presence, and details thereof, of any relationship, affiliation, or connection of any kind between the Potential Bidder, on the one hand, and the Debtors and/or any of their affiliates, current or former officers, directors, and/or investors, on the other hand.

i.  No Contingencies. Not be conditioned on any due diligence, financing, or other contingencies other than entry of the Sale Order and any contingencies solely to the extent set forth in the Qualified APA.

j.  Irrevocability. Remain irrevocable until forty-eight (48) hours after the conclusion of the Sale Hearing (or such longer period as applies to a Winning Bidder or Back-Up Bidder pursuant to Paragraph 13).

k.  Back-Up Consent. State that the Potential Bidder is willing to serve as a Back-Up Bidder and that its Qualified Bid (as modified at the Auction, if applicable) shall constitute the Back-Up Bid if the Debtors determine that it qualifies as the Back-Up Bid pursuant to Paragraph 13.

l.  Credit Bid Requirements. If the Qualified Bid includes a Credit Bid, it must include evidence of (a) the basis, amount, and priority of the Credit Bidder's secured claim and liens to be credit bid, and (b) authority to make such Credit Bid if held in a representative capacity. No Credit Bid shall qualify as a Qualified Bid unless (a) all secured creditors with valid and perfected liens on the Sale Assets ("Secured Creditors") that are equal or senior to the Credit Bidder's liens consent in writing to such Credit Bid, or (b) the Credit Bid expressly provides for payment in full in cash at closing on account of all valid and perfected equal or senior liens on the Sale Assets.

9.  **Stalking Horse Bid; Opening Bid; Stalking Horse Protections.** Illusion Attractions LLC is the stalking horse bidder (the "Stalking Horse Bidder") pursuant to the Bidding Procedures Order. The Stalking Horse Bidder's Bid under that certain Asset Purchase Agreement dated February ____, 2026 (the "Stalking Horse APA") constitutes the stalking horse bid (the "Stalking Horse Bid") and shall serve as the opening bid at the Auction (the "Opening Bid"), if an Auction is held.

The stalking horse protections approved under the Bidding Procedures Order (the "Stalking Horse Protections") include (a) a break-up fee equal to three percent (3%) of "Transaction Value" (the "Break-Up Fee"), and (b) expense reimbursement items (including capped third-party diligence expenses) (the "Expense Reimbursement"). Any Break-Up Fee, to the extent payable, shall be payable only upon the occurrence of the applicable triggering event(s) under the Stalking Horse APA and shall be payable at the closing of a Competing Transaction (as defined in the Stalking Horse APA) with a party other than the Stalking Horse Bidder. Any Expense Reimbursement, to the extent payable, shall be payable only upon the occurrence of the applicable triggering event(s) under the Stalking Horse APA and shall be payable at the earlier of (i) the closing of any Competing

Transaction or (ii) ten (10) business days following the Debtors' termination of the Stalking Horse APA in favor of a Competing Transaction.

10.     **Determination of Qualified Bids; Auction Notice.** A Bid, other than the Stalking Horse Bid, that satisfies each of the Bid Requirements, as determined by the Debtors in their reasonable discretion, constitutes a "Qualified Bid," and the Potential Bidder submitting such Bid constitutes a "Qualified Bidder." For the avoidance of doubt, the Stalking Horse Bidder shall be permitted to participate in the Auction, and the Stalking Horse Bid shall be the Opening Bid, but the Stalking Horse Bid shall not constitute a Qualified Bid. No later than one (1) business day(s) prior to the Auction, the Debtors shall determine whether any submitted Bids constitute Qualified Bids and shall file and serve on each Potential Bidder that submitted a Bid a notice identifying: (i) each Qualified Bidder; and (ii) the Opening Bid that will commence the Auction (the "Auction Notice"). The Debtors may decline to designate a Bid as a Qualified Bid in their discretion for any reason, including, without limitation, insufficient cash consideration or inability to demonstrate financial wherewithal.

11.     **Credit Bid.** Any party with a valid, properly perfected prepetition or post-petition security interest in the Sale Assets may credit bid (any such bid, a "Credit Bid" and any party submitting a Credit Bid, each a "Credit Bidder") for such Sale Assets in connection with the Sale in accordance with and pursuant to section 363(k) of the Bankruptcy Code, except as otherwise limited by the Bankruptcy Court for cause; provided, however, that no Credit Bidder may credit bid unless (a) all Secured Creditors with valid and perfected liens on the Sale Assets that are equal or senior to the Credit Bidder's liens consent in writing to such Credit Bid or (b) the Credit Bid expressly provides for payment in full in cash at closing on account of all equal or senior liens. Nothing herein limits the rights of any party-in-interest to seek relief from the Bankruptcy Court related to the right or alleged right of any creditor to credit bid.

12.     **Auction.** If the Debtors receive one or more Qualified Bids, the Debtors shall conduct an auction on March 18, 2026 at 10:00 a.m., Pacific Time, at the offices of Nevada Bankruptcy Attorneys, LLC, 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148. Debtors may hold the auction by other remote means noticed to the Qualified Bidders as determined by the Debtors in their discretion (the "Auction"). The Auction will be conducted to determine the highest or otherwise best Qualified

- 7 -

Bid (the "Winning Bid," with such bidder being the "Winning Bidder"). Subject to Paragraph 17 below, the Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a. Only Qualified Bidders and the Stalking Horse Bidder, in person or through duly-authorized representatives, may bid at the Auction, and every Qualified Bidder and the Stalking Horse Bidder must have at least one (1) duly-authorized representative with authority to bind the Qualified Bidder at the Auction.

b. Only such authorized representatives of each Qualified Bidder and the Stalking Horse Bidder, the Debtors, the Broker, and such other parties permitted by the Bidding Procedures Order (including Secured Creditors and their advisors, and any committee if appointed) shall be permitted to attend the Auction.

c. If participation by remote means is permitted, a Qualified Bidder and the Stalking Horse Bidder that wish to participate remotely must notify Debtors' counsel no later than 24 hours prior to the Auction.

d. Prior to commencement of the Auction, the Debtors and other permitted parties may confer with each Qualified Bidder and the Stalking Horse Bidder regarding the terms and conditions of its Qualified Bid or Stalking Horse Bid. Because Illusion Attractions LLC is the Stalking Horse Bidder, the Stalking Horse Bid shall be the Opening Bid.

e. Bidding shall commence at the Opening Bid. Other Qualified Bidders and the Stalking Horse Bidder may submit successive Bids, provided that the first bid over the Opening Bid must exceed the Opening Bid by at least $75,000.00 and all subsequent Bids must be at least $50,000.00 higher than the previous Bid, in each case as provided in the Stalking Horse APA.

f. No bidder shall communicate bids directly to another bidder.

g. Qualified Bidders may submit additional Bids that include modifications to their Qualified APA at the Auction, provided any such modifications, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than any prior Bid by such Bidder, as determined by the Debtors in their reasonable discretion. The Debtors may negotiate bid terms at the Auction, provided that any material modifications resulting from such

negotiations shall be disclosed on the record at the Auction and shall be subject to further competitive bidding.

h.    In determining the Winning Bid, the Debtors shall consider, among other factors, (i) the amount and form of consideration, (ii) assumed liabilities and cure costs, (iii) likelihood and timing of closing, (iv) proposed changes to transaction documents, and (v) overall net value to the estates.

i.    The bidding will be transcribed by a certified court reporter employed by the Debtors, or otherwise recorded in a manner the Debtors deem appropriate, to ensure an accurate record of the Auction.

j.    Each Qualified Bidder and the Stalking Horse Bidder shall be required to confirm that they have not engaged in collusion with respect to the bidding or the proposed Sale and is not in violation of section 363(n) of the Bankruptcy Code.

k.    Absent irregularities in the conduct of the Auction, the Debtors will not consider any Bids made after the Auction is closed.

13.    **Acceptance of Winning Bid; Designation of Back-Up Bid.**

a.    Upon conclusion of the Auction (if conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, shall identify (i) the Winning Bid, which is the highest or otherwise best Bid submitted at the Auction, and (ii) the next highest or otherwise best Bid (the "Back-Up Bid," and the party submitting it, the "Back-Up Bidder").

b.    Each of the Winning Bidder and Back-Up Bidder shall execute definitive documentation conforming to their final bids as soon as practicable, but in no event later than prior to the Sale Hearing. The definitive agreement executed by the Winning Bidder shall be the "Winning Bid APA," and by the Back-Up Bidder shall be the "Back-Up Bid APA."

c.    The Back-Up Bidder must keep its Back-Up Bid open and irrevocable until the earlier of (i) 5:00 p.m. (Pacific Time) on the date that is thirty (30) days after entry of the Sale Order (the "Outside Back-Up Date"), or (ii) the closing of the Sale to the Winning Bidder.

d.    Within one (1) business day after conclusion of the Auction, the Winning Bidder and Back-Up Bidder shall each deposit an additional amount in cash such that, when combined with

- 9 -

their existing Deposit, each such bidder's aggregate Deposit equals twenty percent (20%) of the Purchase Price reflected in its final bid (such additional amount included in the definition of "Deposit").

e. The Debtors shall be deemed to have accepted the Winning Bid (conditioned upon Court approval) only when (i) the Bid is declared the Winning Bid, (ii) definitive documentation has been executed, and (iii) any additional Deposit required has been provided.

f. The Debtors shall promptly give notice to the Back-Up Bidder if the Winning Bid is terminated and shall provide the Back-Up Bidder with a reasonable period within which to close as set forth in the Back-Up Bid APA.

14. **Sale Hearing; Notice of Results.**

a. The sale hearing (the "Sale Hearing") is presently scheduled to take place on March 20, 2026 at 9:30 a.m., Pacific Time, or as soon thereafter as the Court may determine, before the Bankruptcy Court at Courtroom 2.

b. Within one (1) business day after conclusion of the Auction (and in advance of the Sale Hearing), the Debtors will file a notice of the Winning Bid and Back-Up Bid, along with copies of the Winning Bid APA, Back-Up Bid APA, and the proposed sale order (the "Sale Order") (the "Notice of Winning Bid and Back-Up Bid"), redacted as necessary to protect commercially sensitive information. Except to the extent revised by the Debtors in their discretion, after consultation with the Winning Bidder, the proposed Sale Order presented to the Bankruptcy Court at the Sale Hearing shall be consistent with the Winning Bid and will preserve the rights of the Secured Creditors with respect to any proceeds received from the Sale.

c. Any objections to approval of the Sale shall be filed and served by March 13, 2026 at 5:00 p.m. (Pacific Time) (the "Sale Objection Deadline"), in accordance with the Bidding Procedures Order and applicable rules.

d. At the Sale Hearing, the Debtors will present the results of the Auction, if any, and request approval of the Winning Bid and, if applicable, the Back-Up Bid. The Debtors will also seek findings, among other things, that (i) the Auction was properly conducted, (ii) the Winning

- 10 -

Bid and Back-Up Bid were properly selected, (iii) the Auction was fair in substance and procedure, (iv) the Winning Bid and Back-Up Bid were Qualified Bids, (v) the Sale provides the highest or otherwise best value, and (vi) the Winning Bidder (and Back-Up Bidder, if applicable) are good faith purchasers under section 363(m).

e.  At the Sale Hearing, the Debtors shall also request, as part of the Sale Order, authorization from the Bankruptcy Court to accept the Back-Up Bid as the Winning Bid, and consummate such bid, if the Winning Bid is not consummated when and as required by its terms without further order of the Bankruptcy Court. The Debtors and the Back-Up Bidder shall be bound to consummate the Back-Up Bid if the Winning Bid terminates, at which time the Back-Up Bidder shall be deemed the Winning Bidder. The Debtors shall promptly give notice to the Back-Up Bidder if the Winning Bid is terminated and shall provide the Back-Up Bidder with a reasonable period within which to close as set forth in the Back-Up Bid APA.

15.  **Treatment of Deposits.**

a.  Deposits shall be held pursuant to an escrow arrangement acceptable to the Debtors.

b.  Upon closing of the Sale with the Winning Bidder, the Winning Bidder's Deposit shall be credited against the Purchase Price. If the Winning Bidder fails to close, the Deposit shall be retained by the Debtors or returned as set forth in the Winning Bid APA or as otherwise ordered by the Bankruptcy Court.

c.  Deposits of Qualified Bidders or the Stalking Horse Bidder, other than the Winning Bidder and Back-Up Bidder, shall be returned within two (2) business days after the conclusion of the Sale Hearing. The Back-Up Bidder's Deposit shall be returned at the earlier of (i) closing of the Sale to the Winning Bidder, or (ii) thirty (30) days after entry of the Sale Order.

d.  The Deposit of any Potential Bidder determined not to be a Qualified Bidder shall be returned within two (2) business days of such determination (or as otherwise provided by the Debtors).

e.  As shall be set forth in the Winning Bid APA, if the Winning Bidder fails to close, then the Deposit, which is the subject of the Winning Bid, shall be retained by the Debtors or returned to the Winning Bidder as shall be set forth in the Winning Bid APA or as otherwise ordered by the Bankruptcy Court.

- 11 -

16.    **Break-Up Fee / Expense Reimbursement.** If the Stalking Horse Bidder is not the Winning Bidder, the Debtors shall pay any Break-Up Fee and/or Expense Reimbursement, to the extent payable, only as set forth in the Stalking Horse APA and the Bidding Procedures Order. The Break-Up Fee, to the extent payable, shall be payable at the closing of a Competing Transaction (as defined in the Stalking Horse APA). The Expense Reimbursement, to the extent payable, shall be payable at the earlier of (i) the closing of any Competing Transaction or (ii) ten (10) business days following the Debtors' termination of the Stalking Horse APA in favor of a Competing Transaction, in each case in accordance with the Stalking Horse APA.

17.    **Reservation of Rights.** **THE DEBTORS RESERVE THEIR RIGHTS TO MODIFY THESE BIDDING PROCEDURES IN ANY MANNER CONSISTENT WITH THE BIDDING PROCEDURES ORDER THAT WILL BEST PROMOTE THE GOALS OF THE BIDDING PROCESS. WITHOUT LIMITING THE FOREGOING, THE DEBTORS RESERVE THE RIGHT, IN THEIR REASONABLE, GOOD-FAITH BUSINESS JUDGMENT, TO: (I) EXTEND OR MODIFY DEADLINES; (II) ADJOURN OR CONTINUE THE AUCTION AND/OR SALE HEARING IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER; (III) WAIVE MINOR DEFECTS IN A BID; (IV) REJECT ANY OR ALL BIDS THAT ARE (A) INADEQUATE OR INSUFFICIENT, (B) NOT IN CONFORMITY WITH THESE BIDDING PROCEDURES OR APPLICABLE LAW, OR (C) CONTRARY TO THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES; AND (V) WITHDRAW FROM THE SALE PROCESS AND/OR DECLINE TO CONSUMMATE A SALE AT ANY TIME SUBJECT TO THE TERMS OF THE BIDDING PROCEDURES ORDER AND THE APA.**

**EXHIBIT 3**

**[PROPOSED] NOTICE OF BIDDING PROCEDURES**

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*[Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re

VELOCITY ESPORTS, INC.,

■ Affects Velocity Esports, Inc.
■ Affects Velocity Esports Las Vegas Town
　Square, LLC
☐ Affects Velocity Esports Chicago
　Schaumburg, LLC
☐ Affects Velocity Esports Newport
　Kentucky, LLC
☐ Affects Velocity Esports Orlando
　Downtown, LLC
☐ Affects All Debtors

Debtor(s).

Case No.: 25-12627-mkn

Jointly Administered with
Case No. 25-12628-mkn
Case No. 25-12629-mkn
Case No. 25-12630-mkn
Case No. 25-12631-mkn

Chapter 11

**NOTICE OF BIDDING PROCEDURES IN CONNECTION WITH SALE OF CERTAIN SALE ASSETS OF THE DEBTORS**

Hearing Date: **OST REQUESTED**
Hearing Time: **OST REQUESTED**

**PLEASE TAKE NOTICE THAT** on March _____, 2026, Velocity Esports, Inc. and Velocity Esports Las Vegas Town Square, LLC (collectively, "Debtors"), debtors and debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), filed *Debtors' Motion for Entry of an Order: (I) (A) Approving the Designation of Illusion Attractions LLC as the Stalking Horse Bidder; (B) Approving the Stalking Horse Asset Purchase Agreement as the Stalking Horse Bid; and (C) Approving Stalking Horse Protections; (II) Approving Bidding Procedures for the Sale of Certain Assets; (III) Approving the Form and Manner of Notice; (IV) Scheduling an Auction and a Hearing to Consider Approval of the Sale to the Highest or Otherwise Best Bidder; and (V) Granting Related Relief* [ECF No. ***] (the

- 2 -

"Motion")[1] with the United States Bankruptcy Court for the District of Nevada (the "Court") pursuant to §§ 105(a), 363 and 365 of title 11 of the United States Code (the Bankruptcy Code)[2], Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004 of the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court, District of Nevada (the "Local Rules" or "LR"), for entry of an order (the "Bidding Procedures Order"), (i) approving and authorizing the bidding procedures, substantially in the form annexed to the Motion as Exhibit 2 (the "Bidding Procedures"), in connection with the sale (the "Sale") of certain assets of the Debtors (the "Sale Assets"); (ii) approving and authorizing an auction process (the "Auction") to sell the Sale Assets in accordance with the Bidding Procedures; (iii) approving the form and manner of notice of the bidding procedures (the "Sale Notice"), substantially in the form annexed to the Motion as Exhibit 3; (iv) scheduling a hearing to approve a sale to the successful bidder and, if applicable, back-up bidder resulting from the Auction; and (v) granting the Debtors such other and further relief as is just and appropriate under the circumstances.

PLEASE TAKE FURTHER NOTICE THAT on March ____, 2026, the Court entered the Bidding Procedures Order approving the Bidding Procedures and this Sale Notice. [ECF No. ***].

PLEASE TAKE FURTHER NOTICE THAT this Sale Notice is being served on the Notice Parties and all parties required to be served pursuant to Bankruptcy Rules 2002 and 6004.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the Bidding Procedures Order and the Bidding Procedures, parties interested in submitting a Bid must first become a Potential Bidder (including, among other things, by executing, or being bound by, a nondisclosure agreement acceptable to the Debtors) and must satisfy the requirements to submit a Qualified Bid by the Bid Deadline (each as defined in the Bidding Procedures).

PLEASE TAKE FURTHER NOTICE THAT the Bidding Procedures provide the following dates and deadlines (all times Pacific Time):

    a.      Indication of Interest Deadline: March 9, 2026 at 5:00 p.m.

    b.      Qualified Bid Deadline (Bid Deadline): March 16, 2026, at 5:00 p.m.

    c.      Auction (if necessary): March 18, 2026 at 10:00 a.m., at Nevada Bankruptcy Attorneys, LLC, 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148, or

- 3 -

by such other remote means noticed to Qualified Bidders as provided in the Bidding Procedures.

d.       Sale Objection Deadline: March 13, 2026 at 5:00 p.m.

e.       Sale Hearing: March 20, 2026 at 9:30 a.m., before the Court (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE THAT** if the Debtors receive one or more Qualified Bids by the Bid Deadline, the Debtors will conduct the Auction on the date/time set forth above (or such later date/time or alternative location/remote format as may be permitted under the Bidding Procedures and/or directed by the Bankruptcy Court). If the Debtors do not receive at least one Qualified Bid by the Bid Deadline, the Debtors may not conduct the Auction.

**PLEASE TAKE FURTHER NOTICE THAT** a Potential Bidder that desires to submit a Bid must deliver its Qualified Bid (including all materials required under the Bidding Procedures, such as an executed asset purchase agreement and the required Deposit, if applicable) so that it is actually received by the Bid Deadline Recipients identified in the Bidding Procedures no later than the Bid Deadline. Any person or entity that does not submit a Qualified Bid by the Bid Deadline (as such deadline may be extended in accordance with the Bidding Procedures) shall not be permitted to participate in the Auction.

**PLEASE TAKE FURTHER NOTICE THAT** objections, if any, to the sale of the Sale Assets (a "Sale Objection") must be filed with the Bankruptcy Court and served so as to be actually received no later than the Sale Objection Deadline upon the Notice Parties identified in the Bidding Procedures Order and/or the Bidding Procedures. If a Sale Objection is not timely filed and served, the objecting party may be barred from objecting to the sale and may not be heard at the Sale Hearing, and the Bankruptcy Court may enter the sale order without further notice to such party.

**PLEASE TAKE FURTHER NOTICE THAT** the Bankruptcy Court will conduct the Sale Hearing on the date/time set forth above to consider approval of the sale to the Winning Bidder and, if applicable, the Back-Up Bidder, as determined pursuant to the Bidding Procedures. The Sale Hearing may be continued or adjourned without further notice except as may be announced in open court or otherwise noticed in accordance with the Bankruptcy Court's procedures.

/ / /

- 4 -

- 5 -

**PLEASE TAKE FURTHER NOTICE THAT** any person or entity wishing to submit a bid for the Sale Assets is urged to review the Bidding Procedures, the Bidding Procedures Order, and the Motion. Copies of the Motion and the Bidding Procedures Order, including the Bidding Procedures annexed as **Exhibit 2** to the Motion and incorporated by reference into the Bidding Procedures Order, may be reviewed (a) during regular Court hours at the United States Bankruptcy Court, 300 Las Vegas Boulevard South, Las Vegas, Nevada, (b) electronically at www.nvb.uscourts.gov, the official website for the Court, or (c) upon written request to counsel for Debtors, Nevada Bankruptcy Attorneys, LLC, 5502 S. Fort Apache Rd., Suite 200, Las Vegas, Nevada 89148, Attention: Matthew Knepper, mknepper@nvbankruptcyattorneys.com.

DATED this ____ day of March, 2026.

**Nevada Bankruptcy Attorneys, LLC**

By: _____
Matthew Knepper, Esq.
NEVADA BANKRUPTCY ATTORNEYS, LLC
*Attorney for Debtor(s)*

- 5 -