MATTHEW I. KNEPPER, ESQ.
Nevada Bar No. 12796
BRENDEN J. GOUGEON, ESQ.
Nevada Bar No. 16874
**NEVADA BANKRUPTCY ATTORNEYS LLC**
5940 S Rainbow Blvd., Suite 400
PMB 99721
Las Vegas, NV 89118
Phone/ Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com

*Counsel for Jointly Administered Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: 25-12627-mkn |
| VELOCITY ESPORTS, INC., | Jointly Administered with Case No. 25-12628-mkn |
| ☐ Affects Velocity Esports, Inc. | Case No. 25-12629-mkn |
| ☐ Affects Velocity Esports Las Vegas Town Square, LLC | Case No. 25-12630-mkn |
| ☐ Affects Velocity Esports Chicago Schaumburg, LLC | Case No. 25-12631-mkn |
| ☐ Affects Velocity Esports Newport Kentucky, LLC | Chapter 11 |
| ☐ Affects Velocity Esports Orlando Downtown, LLC | |
| ■ Affects All Debtors | |
| Debtors(s). | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION #2**

**TABLE OF CONTENTS**

Page

1.  DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME ....................................................................................................................1

  1.1  Definitions.........................................................................................1

      1.1.1  Administrative Claim ........................................................1
      1.1.2  Administrative Claim Bar Date ........................................2
      1.1.3  Allowed ............................................................................2
      1.1.4  Assets ................................................................................2
      1.1.5  Avoidance Actions............................................................2
      1.1.6  Bankruptcy Code ..............................................................2
      1.1.7  Bankruptcy Court ..............................................................2
      1.1.8  Bankruptcy Rules ..............................................................2
      1.1.9  Bar Date ............................................................................2
      1.1.10 Business Day......................................................................3
      1.1.11 Cash...................................................................................3
      1.1.12 Causes of Action...............................................................3
      1.1.13 Chapter 11 Case ................................................................3
      1.1.14 Claim.................................................................................3
      1.1.15 Claim Objection Deadline.................................................3
      1.1.16 Claims Register.................................................................3
      1.1.17 Class.................................................................................3
      1.1.18 Confirmation.....................................................................3
      1.1.19 Confirmation Date .............................................................4
      1.1.20 Confirmation Hearing .......................................................4
      1.1.21 Confirmation Order............................................................4
      1.1.22 Creditor .............................................................................4
      1.1.23 Cure ..................................................................................4
      1.1.24 Debtors..............................................................................4
      1.1.25 Disallowed Claim..............................................................4
      1.1.26 Disclosure Statement ........................................................4
      1.1.27 Disputed ............................................................................4
      1.1.28 Distribution .......................................................................4
      1.1.29 Distribution Record Date ..................................................4
      1.1.30 Effective Date ...................................................................5
      1.1.31 Equity Interest...................................................................5
      1.1.32 Estates ...............................................................................5
      1.1.33 Executory Contract ...........................................................5
      1.1.34 Federal Judgment Rate......................................................5
      1.1.35 File ....................................................................................5
      1.1.36 Final Decree ......................................................................5
      1.1.37 Final Order........................................................................5
      1.1.38 General Unsecured Claim .................................................5
      1.1.39 Holder ...............................................................................6
      1.1.40 Impaired ............................................................................6
      1.1.41 Insider ...............................................................................6
      1.1.42 Lien ...................................................................................6
      1.1.43 Litigation Claims ..............................................................6

1.1.44 Newport MIPA ...................................................................................6
1.1.45 Non-Debtor Guarantors ......................................................................6
1.1.46 Non-Debtor Guarantors' Plan Contributions .....................................6
1.1.47 NOTL Resolution Documents .............................................................6
1.1.48 Park City Properties ...........................................................................6
1.1.49 Permitted Encumbrances ....................................................................6
1.1.50 Person..................................................................................................6
1.1.51 Petition Date.......................................................................................7
1.1.52 Plan .....................................................................................................7
1.1.53 Priority Non-Tax Claim .....................................................................7
1.1.54 Priority Tax Claims ............................................................................7
1.1.55 Professional.........................................................................................7
1.1.56 Professional Fees ................................................................................7
1.1.57 Professional Fee Claim .......................................................................7
1.1.58 Proof of Claim....................................................................................7
1.1.59 Pro Rata ..............................................................................................7
1.1.60 Record Date ........................................................................................7
1.1.61 Reorganized Debtors...........................................................................7
1.1.62 Representatives ...................................................................................7
1.1.63 Schedules ............................................................................................7
1.1.64 Secured................................................................................................8
1.1.65 Unexpired Lease .................................................................................8
1.1.66 Unimpaired .........................................................................................8
1.1.67 Unsecured Claim.................................................................................8
1.1.68 U.S. Trustee Fees ...............................................................................8
1.2    Computation of Time...................................................................................8
1.3    Rules of Interpretation ................................................................................8
1.4    Exhibits and Plan Schedules .......................................................................8
2    TREATMENT OF UNCLASSIFIED CLAIMS...........................................................8
2.1    General .........................................................................................................8
2.2    Treatment of Administrative Claims ...........................................................8
       2.2.1  Generally...........................................................................................8
       2.2.2  Requests for Payment .......................................................................9
2.3    Priority Tax Claims......................................................................................9
3    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ...............9
3.1    Overview.......................................................................................................9
3.2    Summary of Classification...........................................................................9
3.3    Class 1: Secured Claim of Newtek Bank, N.A. Secured Claims.................10
       3.3.1  Claims in Class ...............................................................................10
       3.3.2  Treatment ........................................................................................11
       3.3.3  Release of Liens...............................................................................11
       3.3.4  Impairment and Voting ...................................................................11
3.4A   Class 2A: Las Vegas Secured Equipment Lenders.....................................12
       3.4A.1 Claims in Class................................................................................12
       3.4A.2 Treatment .......................................................................................12
       3.4A.3 Release of Liens ..............................................................................13
       3.4A.4 Reservation of Rights; Reconciliation ...........................................13
       3.4A.5 Impairment and Voting...................................................................13

iii

3.4B    Class 2B: Newport Secured Equipment Lenders.................................................13
    3.4B.1 Claims in Class....................................................................................13
    3.4B.2 Treatment ...........................................................................................14
    3.4B.3 Impairment and Voting ......................................................................15
3.5    Class 3: Equipment Lessors and Executory Equipment Contracts for Collateral Located at VES LV ............................................................................................15
    3.5.1    Claims in Class ...............................................................................15
    3.5.2    Treatment .......................................................................................16
    3.5.3    Cure Amounts .................................................................................16
    3.5.4    Reservation of Rights; Reconciliation ...........................................16
    3.5.5    Impairment and Voting ...................................................................17
3.6    Class 4: Allowed Claims of NFS Capital, LLC .............................................17
    3.6.1    Claims in Class ...............................................................................17
    3.6.2    Treatment .......................................................................................19
    3.6.3    Impairment and Voting ...................................................................22
3.7    Class 5: Continuing Landlord Claims.............................................................22
    3.7.1    Claims in Class ...............................................................................22
    3.7.2    Treatment .......................................................................................23
    3.7.3    Impairment and Voting ...................................................................25
3.8    Class 6: Legacy Landlord Lease Claims (Orlando and Schaumburg).................25
    3.8.1    Claims in Class ...............................................................................25
    3.8.2    Treatment .......................................................................................26
    3.8.3    Impairment and Voting ...................................................................27
3.9    Class 7: Insider Secured Claims .....................................................................27
    3.9.1    Claims in Class ...............................................................................27
    3.9.2    Treatment .......................................................................................28
    3.9.3    Impairment and Voting ...................................................................29
3.10    Class 8: General Unsecured Claims.................................................................29
    3.10.1  Claims in Class ...............................................................................29
    3.10.2  Treatment .......................................................................................29
    3.10.3  Impairment and Voting ...................................................................29
3.11    Class 9: Equity Interests.................................................................................29
    3.11.1  Interests in Class .............................................................................29
    3.11.2  Treatment .......................................................................................29
    3.11.3  Impairment and Voting ...................................................................29
3.12    Elimination of Vacant Classes .......................................................................29
3.13    Prepayment ....................................................................................................30
4    PLAN IMPLEMENTATION ..................................................................................30
4.1    Plan Implementation Occurring on Effective Date.........................................30
    4.1.1    Reorganized Debtors.......................................................................30
    4.1.2    Prohibition of Non-Voting Equity Securities ................................30
    4.1.3    Non-Debtor Guarantors' Plan Contributions.................................30
    4.1.4    Material Dependence on Support, Cooperation, and Contributions........30
4.2    Notice of Effectiveness ..................................................................................31
4.3    Operations and Management of Reorganized Debtors .....................................31
4.4    Default Cure Period ........................................................................................31
4.5    Exemption from Certain Transfer Taxes and Further Transactions ...................31
4.6    Final Decree...................................................................................................32

iv

4.7    Effectuating Documents, Further Transactions ...................................................32

5    EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........................................32
5.1    Executory Contracts and Unexpired Leases ......................................................32
5.2    Approval of Assumption, Assignment, Continuation, or Rejection ....................32
5.3    Cure of Defaults.................................................................................................33
5.4    Objection to Cure Amounts ...............................................................................33
5.5    Confirmation Order.............................................................................................33
5.6    Post-Petition Date Contracts and Leases ..........................................................34
5.7    Bar Date ............................................................................................................34
5.8    Modifications, Amendments, Supplements, or Restatements .............................34
5.9    Reservation of Rights.........................................................................................34

6    MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN.........................34
6.1    Distributions on Account of Claims Allowed as of the Effective Date...............34
6.2    Manner of Payment Under the Plan....................................................................34
6.3    Escheat ..............................................................................................................35
6.4    Delivery of Distributions ...................................................................................35
6.4.1    Record Date for Distributions..............................................................35
6.4.2    Delivery of Distributions in General....................................................35
6.4.3    Returned Distributions.........................................................................35
6.4.4    Disputed Distributions.........................................................................36
6.4.5    Setoffs .................................................................................................36
6.4.6    Withholding Taxes...............................................................................36

7    DISPUTED CLAIMS PROCEDURES .......................................................................36
7.1    Objection to and Resolution of Claims..............................................................36
7.1.1    Class 6 Claims.....................................................................................36
7.2    Payments ...........................................................................................................37
7.3    Contingent Claims .............................................................................................37
7.4    Estimation of Claims..........................................................................................37

8    RESERVATION OF RIGHTS ...................................................................................37
8.1    Withdrawal of Plan; Rights if Plan Not Confirmed; Effective Date Does Not Occur
.......................................................................................................................37
8.2    No Admissions or Waiver...................................................................................37
8.3    Term of Bankruptcy Injunction or Stays ...........................................................38

9    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE
.......................................................................................................................38
9.1    Conditions to Confirmation ...............................................................................38
9.2    Conditions to Occurrence of Effective Date.......................................................38

10    EFFECT OF CONFIRMATION OF PLAN..................................................................39
10.1    Discharge ...........................................................................................................39
10.2    Binding Effect of Plan/Injunction......................................................................39
10.3    Exculpation ........................................................................................................40
10.4    Injunctions..........................................................................................................40
10.4.1  Injunction Protecting Exculpation ......................................................40
10.4.2  Injunction in Aid of Performance of the Plan......................................40
10.5    Cash Collateral and Adequate Protection ..........................................................41
10.6    Modification of Debt Instruments......................................................................41
10.7    Revesting of Assets in the Debtors ....................................................................41
10.8    Preservation of Causes of Action......................................................................41

v

10.9    Maintenance of Administrative Claim Status Post Discharge ............................ 42
10.10  No Limitation on Effect of Confirmation ........................................................ 42
11    RETENTION OF JURISDICTION ................................................................................... 42
11.1    Retention of Jurisdiction .................................................................................. 42
11.2    Jurisdiction Unaffected ................................................................................... 44
11.3    Failure of Bankruptcy Court to Exercise Jurisdiction ..................................... 44
11.4    Savings Clause ................................................................................................ 44
12    MISCELLANEOUS PROVISIONS ................................................................................... 44
12.1    Modification of the Plan .................................................................................. 44
12.2    Notices ............................................................................................................ 45
12.3    Headings .......................................................................................................... 45
12.4    Nonseverability of Plan Provisions .................................................................. 45
12.5    Waiver or Estoppel .......................................................................................... 46
12.6    Governing Law ................................................................................................ 46
12.7    Successors and Assigns .................................................................................... 46
12.8    Modification of Payment Terms ....................................................................... 46
12.9    Effectuating Documents; Further Transactions; Timing ................................... 46
12.10  Exemption from Transfer Taxes ....................................................................... 46
12.11  Post Confirmation Conversion or Dismissal .................................................... 47
12.12  Cramdown ....................................................................................................... 47
12.13  Fees and Reporting to the United States Trustee .............................................. 47
12.14  Post Confirmation Reports and Quarterly Fees ................................................ 47
12.15  Entire Agreement ............................................................................................. 47

Velocity Esports, Inc., Velocity Esports Las Vegas Town Square, LLC, Velocity Esports Chicago Schaumburg, LLC, Velocity Esports Newport Kentucky, LLC, and Velocity Esports Orlando Downtown, LLC (collectively, the "Debtors"), by and through their counsel, Nevada Bankruptcy Attorneys, LLC, submit this Chapter 11 Plan of Reorganization #2 ("Plan #2"), which provides for a reorganization of the Debtors and the treatment of the claims of creditors, and respectfully request that the Court confirm this Plan. If confirmed, the Plan will bind all creditors provided for in the Plan regardless of whether a creditor files a proof of claim, accepts the Plan, objects to confirmation, or has its Claim Allowed. All Creditors, Equity Interest Holders, and other parties-in-interest should refer to the Disclosure Statement for a discussion of the Debtors' history, assets, historical financial data, and for a summary and analysis of the Plan and certain related matters. All Holders of Claims against the Debtors, and Equity Interests in the Debtors are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.

The Debtors' proposed restructuring depends materially on consummation of the Las Vegas transaction and the Newport transaction and on the continued availability of support, cooperation, and Non-Debtor Guarantors' Plan Contributions from Philip N. Kaplan and Leonard R. Wanger. The Debtors believe that orderly and centralized determination of the Orange and Woodfield claims in the Bankruptcy Court will promote feasibility, preserve value, and facilitate consummation of the Plan.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Article 12 to the Plan, the Debtors expressly reserve the right to alter, amend, strike, withdraw, or modify the Plan one or more times before its substantial consummation. Your rights may be affected. You should read these papers carefully and discuss them with your attorney.

## 1. DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**1.1** **Definitions.** For the purposes of the Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, in that order of priority. Whenever the context requires, such terms shall include the plural as well as the singular, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. As used in the Plan, the following terms shall have the meanings specified below:

**1.1.1** **Administrative Claim.** A Claim for any cost or expense of administration of the Chapter 11 Cases allowed pursuant to §§ 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Dates and through the Effective Date of preserving the Estates and operating the business of the Debtors, including but not limited to wages, salaries, or commissions for services, and payments for goods and services; (b) compensation and reimbursement of expenses for legal, financial advisory, accounting, and other services, including but not limited to, Allowed Professional Fees, pursuant to §§ 327, 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and ending on the Effective Date; (c) all fees and charges payable pursuant to 28

1

U.S.C. § 1930; and (d) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases, pursuant to §§ 503(b)(3), (4), and (5) of the Bankruptcy Code or otherwise.

**1.1.2    Administrative Claim Bar Date.** The deadline for filing requests for allowance and payment of Administrative Claims, including Professional Fees, which shall be thirty (30) days after the Effective Date.

**1.1.3    Allowed.** With reference to any Claim or Equity Interest with respect to the Debtors: (a) any Claim against or Equity Interest in the Debtors that has been listed by the Debtors in its Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or Equity Interest has been Filed; (b) any Claim or Equity Interest allowed (i) under the Plan, (ii) by Final Order, or (iii) as to which the liability of the Debtors and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court, pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in the Plan, the Confirmation Order or other order of the Bankruptcy Court. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any valid and enforceable claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

**1.1.4    Assets.** All of the assets, property, interests, real and personal, tangible and intangible, wherever situated, of the Debtors, as they exist as of the Effective Date.

**1.1.5    Avoidance Actions.** Any actions commenced, or that may be commenced before or after the Effective Date, pursuant to §§ 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b) and 724(a) of the Bankruptcy Code.

**1.1.6    Bankruptcy Code.** The Bankruptcy Reform Act of 1978, title 11 of the United States Code, as amended from time to time, as applicable to these Chapter 11 Case, as now in effect or hereafter amended.

**1.1.7    Bankruptcy Court.** The United States Bankruptcy Court for the District of Nevada has jurisdiction over the Chapter 11 Case, and to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 151.

**1.1.8    Bankruptcy Rules.** Collectively, the Federal Rules of Bankruptcy Procedure as applicable to the Chapter 11 Case, and the general, local and chambers rules and orders of the Bankruptcy Court, all as now in effect or hereafter amended.

**1.1.9    Bar Date.** In the case of non-governmental Creditors, September 10, 2025, which is the date established by the Bankruptcy Court by which such Creditors are required to file proofs of claim with respect to pre-petition Claims including Claims asserted pursuant to §

2

503(b)(9) of the Bankruptcy Code, except with respect to Administrative Claims, Claims arising from the rejection of any Executory Contracts and Unexpired Leases, and Claims that were scheduled by the Debtors as undisputed, non-contingent, and unliquidated. In the case of governmental Creditors, November 3, 2025, which is the date established by the Bankruptcy Court by which such Creditors are required to file proofs of claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims.

**1.1.10  Business Day.** A day, other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.1.11  Cash.** The legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, negotiable instruments, wire transfers of immediately available funds, or other cash equivalents.

**1.1.12  Causes of Action.** Any Claim, Avoidance Action, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**1.1.13  Chapter 11 Case.** The case under chapter 11 of the Bankruptcy Code involving the Debtors, having case number 25-12627-mkn, jointly Administered with case numbers 25-12628-mkn, 25-12629-mkn, 25-12630-mkn, 25-12631-mkn, including all adversary proceedings pending in connection therewith.

**1.1.14  Claim.** Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date or relating to any event that occurred before the Effective Date, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.1.15  Claim Objection Deadline.** The date that is 180 days from the Effective Date for all Claims, except for Claims for which a specific objection deadline has been set forth elsewhere in the Plan, which deadline may be extended by the Reorganized Debtors upon request after notice and a hearing.

**1.1.16  Claims Register.** The official register of Claims and Equity Interests maintained by the Debtors.

**1.1.17  Class.** A category of Holders of Claims or Equity Interests as classified in the Plan.

**1.1.18  Confirmation.** The entry by the Bankruptcy Court of the Confirmation Order on the docket in the Chapter 11 Case.

3

**1.1.19 Confirmation Date.** The date upon which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.1.20 Confirmation Hearing.** The hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to § 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.1.21 Confirmation Order.** The order entered by the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**1.1.22 Creditor.** Any Holder of a Claim, whether or not such Claim is Allowed.

**1.1.23 Cure.** The distribution on the Effective Date or as soon thereafter as practicable of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or Unexpired Lease pursuant to § 365(b) of the Bankruptcy Code, or with respect to any other debt instrument, in an amount equal to: (i) all unpaid monetary obligations due under such Executory Contract or Unexpired Lease or required to pay to bring current the debt instrument and thereby reinstate the debt and return to the pre-default conditions to the extent such obligations are enforceable under the Bankruptcy Code or applicable non-bankruptcy law; and (ii) with respect to any debt instrument, if a claim arises from the Debtors' failure to perform any non-monetary obligation as set forth in §§ 1124(2)(C) and 1124(2)(D) of the Bankruptcy Code, payment of the dollar amount that compensates the Holder of such a Claim for any actual pecuniary loss incurred by such Holder as a result of any such failure and the dollar amount of the Claim that is established by the Holder's sworn declaration and accompanying admissible evidence filed with the Bankruptcy Court on or before the deadline ordered by the Court for the filing of objections to the Disclosure Statement.

**1.1.24 Debtors.** Velocity Esports, Inc. and the affiliated debtors in these jointly administered Chapter 11 Cases, unless the context requires reference to a specific debtor.

**1.1.25 Disallowed Claim.** Any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

**1.1.26 Disclosure Statement.** The disclosure statement that relates to the Plan, including all exhibits and schedules thereto, as may be amended, supplemented or modified from time to time, that is prepared and distributed in accordance with, among other matters, §§ 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

**1.1.27 Disputed.** A Claim (including any Administrative Claim, Priority Claim or Secured Claim) or Equity Interest, or any portion thereof, that is: (a) listed in the Schedules as disputed, contingent, or unliquidated; or (b) subject to an objection interposed by the Debtors, Reorganized Debtors, or any party-in-interest entitled to file and prosecute such objection in the Chapter 11 Case, if at such time such objection remains unresolved.

**1.1.28 Distribution.** Any distribution made by the Debtors or the Reorganized Debtors to the Holders of Allowed Claims or Allowed Equity Interests pursuant to the terms of the Plan.

**1.1.29 Distribution Record Date.** The Confirmation Date, unless the Bankruptcy

4

Court establishes a different date in the Confirmation Order.

**1.1.30  Effective Date.** The latest to occur of: (i) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (ii) the first (1st) Business Day on which all of the conditions set forth in Section 9 have been satisfied or waived.

**1.1.31  Equity Interest.** Includes the following (i) any equity or other ownership interest in the Debtors, including, but not limited to, all issued and outstanding or reserved for issuance, common stock, preferred stock, membership interests, warrants, options, or other ownership rights or rights to purchase or receive additional shares of stock or membership interests in any Debtors, and/or any other instrument or document to the extent that it directly or indirectly evidences, creates or reserves any equity or ownership interest in any Debtors giving rise to any Claim or Equity Interest, (ii) equity interests, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity interests at any time and all rights arising with respect thereto, and (iii) partnership, limited liability company or similar interest.

**1.1.32  Estates.** The Estates of the Debtors that were created by the commencement of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code.

**1.1.33  Executory Contract.** A contract to which the Debtors is a party that is subject to assumption or rejection pursuant to § 365 of the Bankruptcy Code.

**1.1.34  Federal Judgment Rate.** The rate of interest on judgments as provided for by 28 U.S.C. § 1961 as of the Confirmation Date.

**1.1.35  File.** To file with the Bankruptcy Court in the Chapter 11 Case.

**1.1.36  Final Decree.** An order of the Bankruptcy Court closing the Chapter 11 Case pursuant to § 350 of the Bankruptcy Code.

**1.1.37  Final Order.** An order, judgment or other decree of the Bankruptcy Court and entered on the docket of such court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, stay or rehearing has been waived, or (ii) the time to appeal or seek certiorari, review, stay or rehearing has expired and no appeal or petition for certiorari, review, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, stay or rehearing has been filed, and (i) such appeal or petition for certiorari, review, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, stay or rehearing was sought, and (ii) the time to appeal further or seek certiorari, review, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, stay or rehearing is pending; provided, however, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to §§ 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

**1.1.38  General Unsecured Claim.** A Claim that is not secured by a charge against or interest in property in which the Estates has an interest and is not an unclassified Claim,

5

Administrative Claim, Secured Claim, Priority Tax Claim or Priority Non-Tax Claim. General Unsecured Claims shall also include all Claims arising under § 502(g) of the Bankruptcy Code.

**1.1.39 Holder.** Any Person holding a Claim against or Equity Interest in the Debtors.

**1.1.40 Impaired.** Means impairment within the meaning of § 1124 of the Bankruptcy Code.

**1.1.41 Insider.** Shall include any person having such meaning as set forth in § 101(31) of the Bankruptcy Code.

**1.1.42 Lien.** A charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.1.43 Litigation Claims.** All rights, claims, torts, liens, liabilities, obligations, actions, causes of action, Avoidance Actions, derivative actions, proceedings, debts, contracts, judgments, damages and demands whatsoever in law or in equity, whether known or unknown, contingent or otherwise, that the Debtors or the Estates may have against any person, including but not limited to those listed on Schedule 1.1.43 hereto. Failure to list a Litigation Claim on Schedule 1.1.43 shall not constitute a waiver or release by the Debtors or the Reorganized Debtors of such Litigation Claim.

**1.1.44 Newport MIPA.** Membership Interest Purchase Agreement for Velocity Esports Newport Kentucky, LLC, as may be amended, modified, or supplemented from time to time, and as approved by the Bankruptcy Court pursuant to a Sale Order or other applicable order.

**1.1.45 Non-Debtor Guarantors.** Means Philip N. Kaplan and Leonard R. Wanger, solely in their capacities as non-Debtor guarantors and not as Debtors.

**1.1.46 Non-Debtor Guarantors' Plan Contributions.** Means any cash or other monetary funding contributed or made available, directly or indirectly, by one or both of the Non-Debtor Guarantors to the Debtors or Reorganized Debtors to fund obligations required under the Plan or otherwise facilitate implementation or consummation of the Plan, including obligations arising under the Las Vegas transaction, the Newport transaction, and payments or reserves for Class 5 and Class 6. Non-Debtor Guarantors' Plan Contributions are voluntary Plan funding contributions only, do not constitute distributions on account of any Claim or Equity Interest, and are not conditioned upon any release, discharge, injunction, stay, or limitation of creditor rights against any Non-Debtor Guarantor.

For the avoidance of doubt, the characterization of Non-Debtor Guarantors' Plan Contributions as voluntary, non-reimbursable Plan funding shall not be construed as a concession that such contributions, support, cooperation, services, or access to liquidity are immaterial to Plan implementation, feasibility, or consummation, or that collection activity directed at a Non-Debtor Guarantor could not materially impair the Debtors' ability to implement or consummate the Plan.

**1.1.47 NOTL Resolution Documents.** Any final executed Second Amendment, new lease, amended-and-restated lease, replacement lease, landlord consent, use-and-occupancy agreement, estoppel, acknowledgment, release, guaranty, settlement agreement, Rule 9019

6

compromise, or other Court-approved agreement or order among NOTL Property Owner LLC, Velocity Esports Newport Kentucky, LLC, the Purchaser under the Newport MIPA, and/or any other applicable party governing the Company's occupancy, use, operation, rent obligations, landlord-related settlement obligations, guaranty obligations, or other rights and obligations with respect to the Newport on the Levee premises.

**1.1.48 Park City Properties.** Shall refer to certain real properties commonly known as 4958 W. Ponderosa Court, Park City, Utah 84098, A.P.N. TL-3-A-314, and 745 Quaking Aspen Court, Park City, Utah 84060, A.P.N. PKM-79.

**1.1.49 Permitted Encumbrances.** Means any Liens, encumbrances, restrictions, easements, rights-of-way, covenants, conditions, reservations, title exceptions, and other matters affecting title to or use of property that are expressly permitted to remain, or that are otherwise preserved, under the Plan, the Confirmation Order, or any other applicable order of the Bankruptcy Court.

**1.1.50 Person.** Any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, unincorporated organization or government, governmental agency, governmental unit or political subdivision, or any other entity.

**1.1.51 Petition Date.** May 7, 2025, the date on which the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case.

**1.1.52 Plan.** This Chapter 11 plan of reorganization, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

**1.1.53 Priority Non-Tax Claim.** Any Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority under § 507(a) of the Bankruptcy Code.

**1.1.54 Priority Tax Claims.** Any Claim that is entitled to priority under §§ 502(i) or 507(a)(8) of the Bankruptcy Code.

**1.1.55 Professional.** A Person: (a) employed pursuant to a Bankruptcy Court order in accordance with §§ 327, 328 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date, pursuant to §§ 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court, pursuant to § 503(b) of the Bankruptcy Code.

**1.1.56 Professional Fees.** All reasonable fees and expenses incurred by Professionals and allowed by the Bankruptcy Court.

**1.1.57 Professional Fee Claim.** Any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to §§ 326, 327, 328, 330 or 331 of the Bankruptcy Code and the terms of the Plan.

**1.1.58  Proof of Claim.** A Proof of Claim Filed against the Debtors in the Chapter 11 Case.

**1.1.59  Pro Rata.** With respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

**1.1.60  Record Date.** The Confirmation Date for the purpose of determining the Holders of Equity Interests.

**1.1.61  Reorganized Debtors.** The Debtors, or any successor thereto, whether by sale, transfer, membership-interest transaction, or other transaction contemplated by the Plan on or after the Effective Date.

**1.1.62  Representatives.** With respect to a given Person, its past and current directors, officers, shareholders, managers, members, partners, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

**1.1.63  Schedules.** The schedules of assets and liabilities, the list of Holders of Interests, and the statements of financial affairs filed by the Debtors under § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

**1.1.64  Secured.** When referring to a Claim: (a) secured by a Lien on property in which the Estates has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to § 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a secured Claim.

**1.1.65  Unexpired Lease.** A lease of non-residential real property to which the Debtors is a party that is subject to assumption or rejection pursuant to § 365 of the Bankruptcy Code.

**1.1.66  Unimpaired.** With respect to a Claims or Interest, leaving unaltered the legal, equitable, and contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest.

**1.1.67  Unsecured Claim.** Any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court as a Priority Tax Claim or Priority Non-Tax Claim.

**1.1.68  U.S. Trustee Fees.** Any fees payable pursuant to 28 U.S.C. § 1930.

**1.2     Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

8

**1.3    Rules of Interpretation.** Any term used in the Plan that is not defined in the Plan, either in this Article or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

**1.4    Exhibits and Plan Schedules.** All exhibits and schedules attached to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

## 2.    TREATMENT OF UNCLASSIFIED CLAIMS

**2.1    General.** Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtors set forth in this Article 2 are not designated as Classes. The Holders of such Claims are not entitled to vote on the Plan. The treatment of the Claims set forth below is consistent with the requirements of § 1129(a)(9)(A) of the Bankruptcy Code.

**2.2    Treatment of Administrative Claims.**

**2.2.1    Generally.** Each Allowed Administrative Claim shall be paid by the Reorganized Debtors (or otherwise satisfied in accordance with its terms) upon the latest of: (i) the Effective Date or as soon thereafter as is practicable; (ii) such date as may be fixed by the Bankruptcy Court, or as soon thereafter as practicable; (iii) the fourteenth (14th) Business Day after such Claim is Allowed, or as soon thereafter as practicable; and (iv) such date as the Holder of such Claim and the Reorganized Debtors shall agree upon. The Debtors or the Reorganized Debtors reserve their defenses and offsets to challenge any Administrative Claims.

**2.2.2    Requests for Payment.** All requests for payment of Administrative Claims against the Debtors and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date, or the Holders thereof shall be forever barred from asserting such Administrative Claims against the Debtors and the Reorganized Debtors. All Professional Fees applications must comply with all the terms and provisions of any applicable order of the Bankruptcy Court, including the Confirmation Order, and all other orders governing payment of Professional Fees. Unless otherwise ordered by the Bankruptcy Court, from and after the Effective Date, no professional shall be required to file fee applications with the Bankruptcy Court and the Reorganized Debtors may pay all professionals in the ordinary course for fees and expenses incurred after the Effective Date.

**2.3    Priority Tax Claims.** Each Allowed Priority Tax Claim, if any, will be paid in full by the Reorganized Debtors as follows: (i) until payment in full, each Holder shall retain any and all Liens to the extent provided by applicable federal or state law applicable to such claim; (ii) payable commencing by the 15th day of the first month following the Effective Date, or the date on which an order allowing such Claim becomes a Final Order, whichever is later, or such other time as is agreed to by the holder of such Claim and the Debtors prior to the Effective Date or the Reorganized Debtors after the Effective Date; (iii) payable in twelve (12) equal quarterly installments over four (4) years, together with interest pursuant to § 511 of the Bankruptcy Code, and in all events paid in full within five (5) years following the Petition Date.

## 3.    DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

**3.1    Overview.** Pursuant to the Plan and in accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims against the Debtors and all Equity Interests, other than

9

Administrative Claims and Priority Tax Claims, are classified into the Classes described below. Each Claim or Equity Interest is classified in a particular Class only to the extent it satisfies the description of that Class. To the extent a Claim or Equity Interest includes components that qualify for different treatment, each such component is classified separately in the applicable Class. A Claim or Equity Interest is classified in a Class only if it is an Allowed Claim or Allowed Equity Interest and has not been paid, released, or otherwise satisfied prior to the Effective Date. Except as expressly provided in the Plan, the classification of a Claim as Unimpaired does not limit or waive any legal or equitable rights or defenses of the Debtors or the Reorganized Debtors with respect to such Claim, including any rights of setoff or recoupment.

**3.2      Summary of Classification.**

| Class | Description | Treatment |
|---|---|---|
| Class 1 | Newtek Bank, N.A. Secured Claims | Impaired. Solicitation required. |
| Class 2A | Las Vegas Secured Equipment Lenders | No known unpaid Allowed Claim. No solicitation required unless a Class 2A Claim is later Allowed. |
| Class 2B | Newport Secured Equipment Lenders | Impaired. Solicitation required for Holders of Allowed Class 2B Claims. |
| Class 3 | Equipment Lessors and Executory Equipment Contracts for Collateral Located at VES LV | Unimpaired except as otherwise provided. No solicitation required. |
| Class 4 | Allowed Claims of NFS Capital, LLC | Impaired. Solicitation required. |
| Class 5 | Continuing Landlord Claims | Impaired. Solicitation required. |
| Class 6 | Legacy Landlord Lease Claims (Orlando and Schaumburg) | Impaired. Solicitation required. |
| Class 7 | Insider Secured Claims | Impaired. No Distribution. Deemed to reject. |
| Class 8 | General Unsecured Claims | Impaired. No Distribution. Deemed to reject. |
| Class 9 | Equity Interests | Impaired. No Distribution. Deemed to reject. |

**3.3      Class 1: Newtek Bank, N.A. Secured Claims against Debtors.**

**3.3.1   Claims in Class.** Allowed Secured Claim of Newtek Bank, N.A. ("Newtek") arising under that certain SBA promissory note and related loan documents, including deeds of trust and security agreements, secured by, among other things, (a) deeds of trust against Park City Properties, and (b) blanket security interests in substantially all assets of the applicable Debtors and the proceeds thereof:

**3.3.1.1 Newtek Bank, N.A. Loan.**

Collateral:                    (a) Deeds of trust against certain real property located in Park City, Utah;

10

and

(b) Blanket security interests in substantially all assets of the applicable Debtors, including proceeds thereof, pursuant to the Newtek loan documents and applicable UCC filings.

| | |
|---|---|
| Collateral Value: | Not finally determined. For plan purposes, collateral value is derived from (i) estimated sale proceeds of the Park City Properties and (ii) net proceeds of the Las Vegas Asset Sale, as described in Section 3.3 of the Plan |
| Lien Priority: | First-priority liens on the remaining Park City Properties; blanket first-priority security interests on personal property of the applicable Debtors, subject only to purchase-money security interests, statutory liens, and other liens entitled to priority under applicable law or court order. |
| Claim Amount: | $2,486,502.27, as asserted in Newtek Bank, N.A.'s Proof of Claim, subject to reconciliation, credits, and allowance. |
| Arrearage: | Not finally determined. For plan purposes, no separate arrearage is stated, and all amounts due are treated as part of the Allowed Secured Claim. |
| Payment Terms: | The Allowed Secured Claim of Newtek shall be satisfied through application of net proceeds from asset sales as provided in Section 3.3, including proceeds from the Park City property sales and the Las Vegas asset sale, rather than through long-term amortization |
| Guarantors: | Philip N. Kaplan (individually); Leonard R. Wanger (individually); the Philip N. Kaplan Separate Property Trust dated June 27, 2011; the LRW Revocable Trust; Velocity Esports Schaumburg, LLC; Velocity Esports Las Vegas Town Square, LLC; Velocity Esports Newport Kentucky, LLC; 745 Quaking Aspen, LLC; and 4958 West Ponderosa I, LLC. |

3.3.2 **Treatment.** The Allowed Secured Claim of Newtek shall be paid in cash from the net proceeds of asset sales, as follows:

(a) **Park City Properties.** Net proceeds realized from the sale of the Park City real properties encumbered by Newtek's deeds of trust shall be applied to Newtek's Allowed Secured Claim in accordance with applicable lien priorities. The Debtors have already applied proceeds received from the sale of one such property to reduce Newtek's claim and intend to apply the net proceeds from the sale of the remaining Park City properties in the same manner.

(b) **Las Vegas Asset Sale.** Net cash proceeds from the sale of the Las Vegas assets pursuant to the Asset Purchase Agreement approved under section 363 of the Bankruptcy Code (the "Las Vegas Sale"), after payment of costs of sale and satisfaction of senior or purchase-money security interests and other liens entitled to priority under applicable law or court order, shall be applied to the remaining balance of Newtek's

11

Allowed Secured Claim. Any liens securing Newtek's claim shall attach to such sale proceeds with the same validity, priority, and extent as existed immediately prior to the closing of the Las Vegas Sale, until paid as provided herein.

(c) **Adequate Protection Payments.** Any adequate protection payments previously made to Newtek pursuant to court order shall be credited against Newtek's Allowed Secured Claim to the extent required by applicable law or agreement of the parties.

(d) **Newport MIPA Proceeds.** To the extent the Sale Order approving the Newport MIPA determines that any net Cash proceeds of the Newport MIPA constitute proceeds of Newtek's collateral or are otherwise payable to Newtek, such proceeds shall be applied to Newtek's Allowed Secured Claim in the manner and to the extent provided in the Sale Order. Nothing in this Section shall constitute a determination of the validity, priority, extent, attachment, perfection, or enforceability of any lien, claim, encumbrance, or interest asserted by Newtek or any other party against the Seller Interest in Velocity Esports Newport Kentucky, LLC or any proceeds thereof.

**3.3.3 Release of Liens.** Upon payment in full in cash of Newtek's Allowed Secured Claim, as determined under this Plan and applicable law, including payment from the proceeds described in Section 3.3.2, all liens, security interests, and encumbrances held by Newtek against property of the Debtors' Estates shall be deemed satisfied and released, and Newtek shall be required to deliver, or authorize the filing of, customary lien release documents without further consideration.

**3.3.4   Impairment and Voting.** Class 1 is Impaired. The Holders of Allowed Class 1 Secured Claims are entitled to vote to accept or reject the Plan.

**3.4A   Class 2A: Las Vegas Secured Equipment Lenders, If Any**

**3.4A.1 Claims in Class.** Class 2A consists of any Allowed Secured Claims of non-insider equipment lenders whose claims are secured by Article 9 security interests in equipment located at or used by the VES Las Vegas venue, and which claims do not arise under true leases or executory contracts subject to section 365 of the Bankruptcy Code, to the extent such claims are not otherwise classified or treated under the Plan.

The Debtors are not presently aware of any unpaid Allowed Class 2A Claim. The scheduled Betson Enterprises / H. Betti Industries obligation previously identified in connection with Las Vegas equipment, in the amount of $7,003.63 as of the Petition Date, has been paid in full postpetition in the ordinary course and/or pursuant to the applicable lease or equipment-payment terms. The Debtors therefore do not anticipate any distribution under the Plan on account of Betson Enterprises / H. Betti Industries in Class 2A. For the avoidance of doubt, the inclusion of Class 2A in the Plan is intended to preserve treatment for any Allowed Secured Claim of a similarly situated Las Vegas secured equipment lender, if any, and shall not constitute an admission that any such Claim exists.

12

**3.4A.2 Treatment.**

**3.4A.2.1 Payment from Sale Proceeds or Lien Attachment.** To the extent any Allowed Secured Claim exists in Class 2A, such Allowed Secured Claim shall be satisfied through the application of net proceeds from asset sales approved under section 363 of the Bankruptcy Code, including the sale of the Las Vegas assets, after payment of costs of sale and satisfaction of any liens or interests entitled to priority under applicable law or court order. To the extent such Claim is not paid in full at the closing of the applicable sale, the liens securing such Claim shall attach to the corresponding sale proceeds with the same validity, priority, and extent as existed immediately prior to the closing, until such Claim is paid as provided herein.

**3.4A.2.2 Priority and PMSI Determinations.** The relative priority of any Class 2A Claim, including whether any such Claim constitutes a purchase-money security interest entitled to priority over other secured claims, shall be determined in accordance with applicable nonbankruptcy law and any applicable court orders. Nothing in the Plan shall be deemed to fix, waive, or adjudicate any party's rights with respect to such priority determinations.

**3.4A.3 Release of Liens.** Upon payment in full in cash of any Allowed Secured Claim in Class 2A, whether at the closing of an asset sale or thereafter from sale proceeds, all liens, security interests, and encumbrances securing such Claim shall be deemed satisfied and released, and the holder of such Claim shall deliver, or authorize the filing of, customary lien release documentation without further consideration.

**3.4A.4 Reservation of Rights; Reconciliation.** Nothing in this Section shall constitute a determination of the amount, validity, priority, or extent of any Class 2A Claim or lien for purposes of section 506 of the Bankruptcy Code. The allowance and treatment of any Class 2A Claim shall be subject to reconciliation based on final payoff statements, sale closing statements, payment histories, and any applicable court orders. To the extent any deficiency remains after application of sale proceeds, such deficiency shall be treated as a General Unsecured Claim in accordance with the Plan.

**3.4A.5 Impairment and Voting.** The Debtors do not presently anticipate that any Holder of a Class 2A Claim will be entitled to receive a distribution under the Plan or vote to accept or reject the Plan because the only currently identified Class 2A obligation, the scheduled Betson Enterprises / H. Betti Industries obligation, has been paid in full postpetition. To the extent any Class 2A Claim is later Allowed and entitled to treatment under this Section, such Claim shall be Impaired under the Plan, and the Holder of such Allowed Class 2A Claim shall be entitled to vote to accept or reject the Plan to the extent required by the Bankruptcy Code or further order of the Bankruptcy Court.

**3.4B    Class 2B: Newport Secured Equipment Lenders**

**3.4B.1: Claims in Class.** Class 2B consists of the Allowed Secured Claims of non-insider creditors whose claims are secured by Article 9 security interests in equipment located at and used by Velocity Esports Newport Kentucky, LLC, and which claims do not arise under true leases or executory contracts governed by section 365 of the Bankruptcy Code. Class 2B includes, without limitation, the secured equipment claims asserted by Advantage Leasing and LEAF Capital Funding, together with any similarly situated Newport secured equipment lenders, if any.

13

### 3.4B.1.1: H. Betti Industries / Betson Specialty Coin.

The Debtors previously identified a scheduled obligation owed to H. Betti Industries / Betson Enterprises in the amount of $7,003.63 as of the Petition Date. The Debtors understand that this obligation has been paid in full postpetition in the ordinary course and/or pursuant to the applicable lease or equipment-payment terms. Accordingly, the Debtors do not anticipate any distribution under the Plan on account of H. Betti Industries / Betson Enterprises in Class 2B, and H. Betti Industries / Betson Enterprises shall not be treated as the Holder of an Allowed Class 2B Claim unless a remaining unpaid Claim is timely asserted and Allowed by agreement of the Debtors or Reorganized Debtors or by Final Order of the Bankruptcy Court.

Nothing in this Section shall constitute an admission that H. Betti Industries / Betson Enterprises holds any unpaid Claim, lien, security interest, deficiency, cure claim, administrative claim, rejection claim, or other right to payment against any Debtor or Reorganized Debtor. The Debtors and Reorganized Debtors reserve all rights with respect to any alleged Claim, lien, security interest, payoff, satisfaction, or release documentation.

### 3.4B.1.2: Advantage Leasing Corporation

| | |
|---|---|
| Collateral: | Specific esports equipment installed at the Velocity Esports Newport venue, as identified in that certain Equipment Finance Agreement and related promissory note dated September 24, 2024 (Loan No. 115664), together with all related schedules, invoices, and delivery documentation, and all proceeds thereof, as more particularly described in the security agreement and related Article 9 filings in favor of Advantage. |
| Lien Priority: | Perfected Article 9 PMSI security interest in the identified equipment. Advantage asserts a purchase-money security interest arising from the financing of the acquisition of the collateral, which may entitle Advantage to purchase-money priority under applicable nonbankruptcy law, subject to determination of priority relative to any competing lienholders. |
| Claim Amount: | Approximately $135,000.00–$145,000.00, inclusive of outstanding principal and accrued contractual charges, based on the Proof of Claim filed by Advantage and subject to reconciliation and allowance pursuant to the Plan. |
| Arrearages: | Approximately $40,000.00, representing prepetition and postpetition payment defaults as of the Petition Date, subject to final reconciliation. |
| Guarantors: | Velocity Esports, Inc. (corporate guarantor); Philip N. Kaplan (individually); Leonard R. Wanger (individually). |

### 3.4B.1.3: LEAF Capital Funding, LLC

| | |
|---|---|
| Collateral: | Arcade and amusement equipment located at the Debtors' Newport, Kentucky facility, together with all accessories, attachments, substitutions, replacements, and proceeds thereof. |

14

Loan Terms:          Finance Agreement providing for three initial monthly payments of $0.00 followed by forty-eight (48) monthly payments of $4,118.15.

Claim Amount:      LEAF filed a secured proof of claim in the approximate amount of $107,853.50, representing the discounted balance of remaining payments together with late charges and related fees as of the petition date.

**3.4B.2 Treatment.**

**3.4B.2.1 Priority and PMSI Determinations.** The relative priority of Class 2B Claims, including whether any such Claim constitutes a purchase-money security interest entitled to priority over other secured claims, shall be determined in accordance with applicable nonbankruptcy law and any applicable court orders. Nothing in the Plan shall be deemed to fix or waive any party's rights with respect to such priority determinations

**3.4B.2.2 Retention of Liens.** Each holder of an Allowed Secured Claim in Class 2B shall retain its liens on the collateral securing such Claim, including all proceeds thereof, to the extent of the Allowed Secured Claim, until such Claim is paid in full in accordance with the terms of the operative agreement with each respective Class 2B claimant.

**3.4B.2.3 Assumption or Restructuring.** At the election of the Debtors, as reflected in the Plan Supplement or a post-confirmation agreement, an Allowed Secured Claim in Class 2B shall be assumed by the applicable Reorganized Debtors or an approved successor or transferee and performed in accordance with its contractual terms, as modified by agreement of the parties, in which event such Claim shall be treated as satisfied pursuant to such assumption and performance.

**3.4B.2.4 Optional Payoff.** At any time on or after the Effective Date, the Reorganized Debtors may prepay and satisfy an Allowed Secured Claim in Class 2B in full in cash, without penalty, unless otherwise agreed, which payment shall result in the release of all liens securing such Claim.

**3.4B.2.5 Reservation of Rights.** Nothing in this Section shall constitute a determination of the amount, validity, priority, or extent of any Class 2B Claim or lien for purposes of section 506 of the Bankruptcy Code. All rights with respect to lien priority, purchase-money security interest status, guaranties, and non-Debtor liability are expressly reserved unless otherwise resolved by agreement or court order.

**3.4B.2.6 Payment.** To the extent not prepaid under Section 3.4B.2.4 or otherwise performed under Section 3.4B.2.3, each Allowed Secured Claim in Class 2B shall be paid in accordance with the operative agreement governing such Claim.

**3.4B.3 Impairment and Voting.** Class 2B is Impaired under the Plan. Holders of Allowed Claims in Class 2B are entitled to vote to accept or reject the Plan.

**3.5    Class 3: Equipment Lessors and Executory Equipment Contracts for Collateral Located at VES LV.**

**3.5.1 Claims in Class.** Class 3 consists of the Allowed Claims of counterparties to

15

true equipment leases and executory equipment-related contracts governing equipment located at and used by the Las Vegas Debtors, which are subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code. Class 3 includes, without limitation, claims arising under equipment leases or executory contracts with Pawnee Leasing / Hampton Ridge Financial and Fortune 5, together with any similarly situated Las Vegas equipment lessors or executory contract counterparties. For the avoidance of doubt, Class 3 does not include any compromised or settlement claims arising from the NFS Settlement Agreement, which are treated separately under the Plan.

### 3.5.1.1 Pawnee Leasing / Hampton Ridge Financial

Collateral:     Arcade gaming equipment leased to Velocity Esports, Inc. pursuant to that certain Equipment Lease Agreement identified as Contract No. 395953, originally entered into with Hampton Ridge Financial LLC and subsequently assigned to Pawnee Leasing Corporation, together with all related schedules, invoices, delivery documentation, and any proceeds thereof, as more particularly described in the Pawnee Lease and related documentation.

Collateral Value:     Not separately determined. For plan purposes, the equipment is treated as leased property subject to assumption, assignment, or rejection under section 365 of the Bankruptcy Code.

Lease Status:     Current

Monthly Payment:     $5,473.99

Remaining Term:     22 months remaining as of April 16, 2026

Guarantors:     Philip N. Kaplan (individually); Leonard R. Wanger (individually); Velocity Esports, Inc.

**3.5.2     Treatment.** Except to the extent a holder of a Class 3 Claim agrees otherwise, each Allowed Claim in Class 3 shall be treated as follows:

**3.5.2.1  Assumption and Assignment.** To the extent a Class 3 Contract is assumed and assigned pursuant to section 365 of the Bankruptcy Code, including in connection with a sale of assets approved under section 363 of the Bankruptcy Code, such Contract shall be assumed and assigned in accordance with the applicable Asset Purchase Agreement and any related court orders. Upon assumption and assignment, (i) any Cure Amount required under section 365(b) shall be paid in full in cash, (ii) the assignee shall provide adequate assurance of future performance, and (iii) all defaults under such Contract shall be deemed cured.

**3.5.2.2  Rejection.** To the extent a Class 3 Contract is not assumed and assigned, such Contract shall be deemed rejected as of the effective date of the applicable sale or such other date as may be approved by the Bankruptcy Court. Any Claim arising from the rejection of a Class 3 Contract shall be treated as a General Unsecured Claim in accordance with the Plan.

**3.5.2.3 No Modification of Assumed Contracts.** Except as expressly

16

provided in the applicable Asset Purchase Agreement or assumption and assignment order, the assumption and assignment of a Class 3 Contract shall not alter the rights or obligations of the parties thereto, which shall remain enforceable in accordance with their terms.

**3.5.3 Cure Amounts.** The Debtors believe that the Cure Amount for each Class 3 Contract is $0.00 unless otherwise determined pursuant to section 365(b) of the Bankruptcy Code. Any counterparty asserting a different Cure Amount must do so in accordance with procedures established by the Bankruptcy Court. Cure Amounts, if any, shall be paid in full in cash as a condition to assumption.

**3.5.4 Reservation of Rights; Reconciliation.** Nothing in this Section shall constitute a determination of whether any agreement constitutes a true lease or an executory contract for purposes of section 365 of the Bankruptcy Code, or of the validity or enforceability of any such agreement. All rights of the Debtors, the Reorganized Debtors, and counterparties to Class 3 Contracts are expressly reserved until assumption or rejection is approved by the Bankruptcy Court.

**3.5.5  Impairment and Voting.** Class 3 is Unimpaired under the Plan with respect to any Class 3 Contract that is assumed and assigned. To the extent any Class 3 Contract is rejected, any resulting rejection damages claim shall be treated as a General Unsecured Claim and shall not remain in Class 3.

**3.6  Class 4: Allowed Claims of NFS Capital, LLC**

**3.6.1 Claims in Class.** Class 4 consists of the Allowed Claims of NFS Capital, LLC ("NFS") arising under and related to: (i) that certain Settlement Agreement dated June 26, 2025, approved by Order entered November 17, 2025; (ii) that certain Master Equipment Lease No. 2025-0269 and related schedules, security agreement, guaranties, and related documents for equipment located at Velocity Esports Las Vegas Town Square, LLC; and (iii) that certain Master Equipment Lease No. 2025-0270 and related schedules, security agreement, guaranties, and related documents for equipment located at Velocity Esports Newport Kentucky, LLC. NFS shall be the sole holder of Class 4 Claims.

**3.6.1.1 Settlement Agreement Component.** Allowed Claim arising under that certain Settlement Agreement dated June 26, 2025 between NFS Capital, LLC, Velocity Esports Chicago Schaumburg, LLC, Velocity Esports, Inc., Velocity Esports Las Vegas Town Square, LLC, Velocity Esports Newport Kentucky, LLC, Philip N. Kaplan, and Leonard R. Wanger, approved pursuant to Rule 9019 by Order entered November 17, 2025.

Collateral:          To the extent secured, the Settlement Agreement component is supported by the replacement lien and security interest approved by the Bankruptcy Court and strictly limited to the specific items of NFS equipment identified in Sub-Schedule 1A to Master Lease No. 2025-0269 and Sub-Schedule 1A to Master Lease No. 2025-0270, together with all rights and remedies preserved under the Settlement Agreement and related approved transaction documents.

Collateral Value:    Not separately determined. For plan purposes, collateral value is derived solely from the specific NFS Equipment identified in the amended Las

17

Vegas and Newport lease schedules, subject to the limitations imposed by the Rule 9019 approval order.

Lien Priority: Replacement lien and security interest limited to the identified NFS Equipment, and continuing only to the same extent, validity, and priority as NFS's prepetition purchase-money security interest in such equipment, without priming or expanding into collateral or proceeds subject to any valid, perfected, and enforceable lien of Newtek Bank, N.A. or any other creditor entitled to priority under applicable law or court order.

Claim Amount: Approximately $213,232.57, based on NFS's updated payoff demand as of February 15, 2026, subject to reconciliation, credits, and allowance.

Arrearages: Approximately $42,412.95 in past-due settlement payments through February 15, 2026, plus accrued default interest and related contractual charges, subject to reconciliation.

Interest Rate: 5.00% per annum under the Settlement Agreement, and 1.5% per month upon default to the extent provided in the Settlement Agreement and applicable law.

Guarantors: Velocity Esports Chicago Schaumburg, LLC; Velocity Esports, Inc.; Velocity Esports Las Vegas Town Square, LLC; Velocity Esports Newport Kentucky, LLC; Philip N. Kaplan (individually); Leonard R. Wanger (individually), jointly and severally, solely to the extent provided in the Settlement Agreement and related guaranty documents.

**3.6.1.2 Las Vegas Lease Component.** Allowed Claim arising under Master Equipment Lease No. 2025-0269, dated June 26, 2025, between NFS Capital, LLC, as lessor, and Velocity Esports Las Vegas Town Square, LLC, as lessee, together with Schedule No. 1, Sub-Schedules 1A, 1B, and 1C, the related security agreement, guaranties, and related lease documents.

Collateral: Specific arcade and esports equipment located at 6587 S. Las Vegas Blvd., #171, Las Vegas, Nevada 89119, including the equipment identified in Sub-Schedule 1A to Master Lease No. 2025-0269, together with replacements, substitutions, additions, accessions, attachments, and proceeds thereof, to the extent recognized under the amended lease documents and Rule 9019 order.

Collateral Value: Not separately determined. For plan purposes, collateral value is derived from the NFS Equipment located at the Las Vegas venue as identified in Sub-Schedule 1A to Master Lease No. 2025-0269.

Lien Priority: Replacement lien and security interest in the specific NFS Equipment located at the Las Vegas venue, continuing only to the same extent, validity, and priority as NFS's prepetition PMSI in such equipment, and expressly limited by the Rule 9019 approval order.

Claim Amount: Approximately $159,684.75, based on NFS's updated payoff demand as of

18

February 15, 2026, subject to reconciliation, credits, and allowance.

Arrearages: $0.00 as reflected in the updated payoff demand, exclusive of post-quote accruals, taxes, and ordinary course charges.

Monthly Payment: $2,837.62 per month, plus applicable sales, use, and property taxes.

Remaining Term: Approximately 39–40 months as of February 15, 2026, subject to reconciliation based on actual commencement and payment dates.

End-of-Term Option: Fair market value purchase option not to exceed $21,199.50, or extension on mutually agreed terms, or return of the equipment, all as provided in the amended lease documents.

Interest: Contractual charges as provided in the lease documents, including late fee and default interest rights to the extent enforceable under applicable law.

Guarantors: Philip N. Kaplan (individually); Leonard R. Wanger (individually).

**3.6.1.3 Newport Lease Component**. Allowed Claim arising under Master Equipment Lease No. 2025-0270, dated June 26, 2025, between NFS Capital, LLC, as lessor, and Velocity Esports Newport Kentucky, LLC, as lessee, together with Schedule No. 1, Sub-Schedules 1A, 1B, and 1C, the related security agreement, guaranties, and related lease documents.

Collateral: Specific arcade and esports equipment located at 1 Levee Way, Suite 2130, Newport, Kentucky 41071, including the equipment identified in Sub-Schedule 1A to Master Lease No. 2025-0270, together with replacements, substitutions, additions, accessions, attachments, and proceeds thereof, to the extent recognized under the amended lease documents and Rule 9019 order.

Collateral Value: Not separately determined. For plan purposes, collateral value is derived from the NFS Equipment located at the Newport venue as identified in Sub-Schedule 1A to Master Lease No. 2025-0270.

Lien Priority: Replacement lien and security interest in the specific NFS Equipment located at the Newport venue, continuing only to the same extent, validity, and priority as NFS's prepetition PMSI in such equipment, and expressly limited by the Rule 9019 approval order.

Claim Amount: Approximately $162,162.42, based on NFS's updated payoff demand as of February 15, 2026, subject to reconciliation, credits, and allowance.

Arrearages: $0.00 as reflected in the updated payoff demand, exclusive of post-quote accruals, taxes, and ordinary course charges.

Monthly Payment: $2,934.60 per month, plus applicable sales, use, and property taxes.

Remaining Term: Approximately 39–40 months as of February 15, 2026, subject to

19

reconciliation based on actual commencement and payment dates.

End-of-Term Option: Fair market value purchase option not to exceed $21,924.00, or extension on mutually agreed terms, or return of the equipment, all as provided in the amended lease documents.

Interest: Contractual charges as provided in the lease documents, including late fee and default interest rights to the extent enforceable under applicable law.

Guarantors: Philip N. Kaplan (individually); Leonard R. Wanger (individually).

**3.6.2 Treatment.** Except to the extent NFS agrees otherwise in writing, the Allowed Claims in Class 4 shall be treated as follows:

**3.6.2.1 Integrated Treatment of NFS Obligations.** The Settlement Agreement component, the Las Vegas Lease component, and the Newport Lease component shall be treated together as a single impaired Class 4 for voting and treatment purposes. Except as expressly modified by the Plan, the Settlement Agreement, Master Lease No. 2025-0269, Master Lease No. 2025-0270, and the related approved transaction documents shall remain binding and enforceable according to their terms.

For the avoidance of doubt, the NFS obligations are being treated under the Plan as integrated restructured obligations and not as separate executory contracts to be assumed or rejected under section 365 of the Bankruptcy Code.

**3.6.2.2 Cure and Reinstatement of Settlement Agreement Component.** The Reorganized Debtors shall cure any unpaid arrearages and accrued charges under the Settlement Agreement component existing as of the Effective Date, including any unpaid scheduled settlement payments, in six (6) equal monthly installments commencing on the first day of the first full calendar month following the Effective Date. After payment of such cure installments, the remaining Settlement Agreement payment stream shall continue in accordance with the payment schedule set forth in Exhibit 1 to the Settlement Agreement, together with any contractually required interest or charges not inconsistent with the Plan. NFS shall not exercise any acceleration, collection, or enforcement rights based solely on pre-Effective Date defaults under the Settlement Agreement so long as the Reorganized Debtors timely make the cure installments and thereafter remain current under the Settlement Agreement as modified by the Plan.

**3.6.2.3 Continued Performance of Las Vegas Lease Component.** Velocity Esports Las Vegas Town Square, LLC, or its Reorganized successor, or any purchaser or assignee of the Las Vegas operations or assets pursuant to a transaction approved by the Bankruptcy Court (including Illusion), shall perform the Las Vegas Lease component in accordance with Master Lease No. 2025-0269, including payment of monthly rent in the amount of $2,837.62, plus applicable taxes and charges, for the remaining term of the agreement.

In connection with the Las Vegas Sale or any other transaction approved by the Bankruptcy Court before the Effective Date, the treatment, transfer, continuation, or performance of the Las Vegas Lease component shall be governed by the applicable sale order, transaction documents, and any written agreement or consent of NFS Capital, LLC. To the extent

20

such treatment occurs before the Effective Date, such transaction shall govern and shall not be modified by the Plan.

Any unpaid taxes, fees, late charges, or other accrued amounts under the Las Vegas Lease component existing as of the Effective Date, if any, shall be paid by the Reorganized Debtors or such assignee, as applicable, on the first regular monthly payment due after the Effective Date or, in the case of an assignment, the first payment due following the effective date of such assignment. NFS shall not exercise acceleration or repossession rights based solely on pre-Effective Date defaults so long as such cure payments are timely made and the Las Vegas Lease component thereafter remains current.

**3.6.2.4 Continued Performance of Newport Lease Component.** Velocity Velocity Esports Newport Kentucky, LLC, or its Reorganized successor under the Newport MIPA, shall perform the Newport Lease component in accordance with Master Lease No. 2025-0270, except to the extent otherwise provided in the Newport MIPA, the Sale Order, any agreement with NFS Capital, LLC, or any other order of the Bankruptcy Court.

Because the Newport transaction is structured as a membership-interest sale rather than a direct lease assignment, the Newport Lease component shall continue as an obligation of Velocity Esports Newport Kentucky, LLC unless otherwise provided in a written agreement approved by the Bankruptcy Court.

Any unpaid taxes, fees, late charges, or other accrued amounts under the Newport Lease component existing as of the Effective Date, if any, shall be paid by Velocity Esports Newport Kentucky, LLC, its Reorganized successor under the Newport MIPA, or such other responsible party identified in the applicable transaction documents or Final Order, in six (6) equal monthly installments commencing with the first regular monthly payment due after the Effective Date, unless otherwise provided in a sale order, the Newport MIPA, or a written agreement with NFS Capital, LLC approved by the Bankruptcy Court. NFS shall not exercise acceleration or repossession rights based solely on pre-Effective Date defaults so long as such cure payments are timely made and the Newport Lease component thereafter remains current.

**3.6.2.5 Retention of Liens and Security Interests.** Until payment in full of the Allowed Claims in Class 4, NFS shall retain its valid liens and security interests solely to the extent recognized in the Rule 9019 approval order and the approved transaction documents. For the avoidance of doubt:

(a) NFS's replacement lien and security interest are limited to the specific items of NFS Equipment identified in the Las Vegas and Newport lease schedules;

(b) such lien and security interest continue only to the same extent, validity, and priority as NFS's prepetition PMSI in such equipment; and

(c) nothing in the Plan shall be construed to expand the collateral base securing NFS's claims or to prime, impair, or subordinate any valid, perfected, and enforceable lien rights of Newtek Bank, N.A. or any other creditor entitled to priority under applicable law or court order.

21

**3.6.2.6 Optional Prepayment.** At any time on or after the Effective Date, the Reorganized Debtors may prepay any one or more of the Class 4 components in full by paying the amount stated in NFS's then-current written payoff statement for the applicable component. Upon payment in full of any component, NFS shall release its lien and security interest in the collateral securing that component to the extent required by the applicable agreement and nonbankruptcy law.

**3.6.2.7 Preservation of Guaranty and Non-Debtors Rights.** Except as expressly provided in the Plan or agreed in writing by NFS, nothing in this Class 4 treatment shall release, impair, or waive NFS's rights, if any, against any non-Debtors guarantor, co-obligor, or other non-Debtors party liable on the NFS obligations. Nothing herein shall be construed as an admission regarding the scope or enforceability of any such non-Debtors liability.

**3.6.2.8 Reconciliation and Updated Payoff Amounts.** The component balances stated in this Class 4 treatment are based on the NFS payoff demand dated February 3, 2026 reflecting amounts due as of February 15, 2026. All such balances shall remain subject to reconciliation based on updated payoff statements, post-quote payments, accrued taxes, credits, fees, and any other adjustments required by the governing agreements or applicable law.

To the extent any assumption, assignment, transfer, or continuation of equipment leases or related agreements with NFS occurred prior to the Effective Date pursuant to one or more sale orders, stipulations, or other orders of the Bankruptcy Court, such transactions shall govern and shall not be modified by the Plan.

**3.6.3 Impairment and Voting.** Class 4 is Impaired under the Plan. NFS Capital, LLC, as the sole holder of Allowed Class 4 Claims, shall be entitled to vote to accept or reject the Plan.

**3.7    Class 5: Continuing Landlord Claims**

**3.7.1    Claims in Class.** Class 5 consists of the Allowed Claims of (a) SRMF Town Square Owner LLC ("SRMF"), as landlord under that certain lease for the Las Vegas venue, and (b) NOTL Property Owner LLC ("NOTL"), as landlord under that certain lease for the Newport venue and/or under any Court-approved NOTL Resolution Documents, in each case arising under the continuing nonresidential real property leases governing the Debtors' Las Vegas and Newport operating locations or, with respect to NOTL, any Court-approved lease, replacement lease, use-and-occupancy, settlement, landlord-consent, or other occupancy arrangement, including any unpaid pre-Effective Date rent, additional rent, percentage rent, taxes, deferred rent, fees, Cure amounts, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, replacement-lease obligations, and other monetary obligations required to be satisfied in connection with the continuation, assumption, assignment, consent, replacement, settlement, use-and-occupancy arrangement, or approval of the applicable transaction.

**3.7.1.1 SRMF Town Square Owner LLC.**

**Premises:**  Space B-171 at Town Square Las Vegas, commonly known as 6587 Las Vegas Boulevard South, Las Vegas, Nevada 89119.

**Lease Status:** Continuing nonresidential real property lease. The Debtors

22

and SRMF are negotiating a postpetition lease modification and transaction-specific consent structure in connection with the contemplated Las Vegas sale transaction.

**Transaction Status:** The Debtors contemplate the sale of the Las Vegas operations and assets pursuant to the Las Vegas asset purchase transaction. The Las Vegas lease is expected to continue through a court-approved sale structure, whether by assumption and assignment, entry into a replacement lease, or other consensual transfer structure approved by the Bankruptcy Court and accepted by SRMF.

**Current Rent Structure:** Minimum Rent at the rates and in the amounts provided under the operative lease documents, including any postpetition modification, together with all additional rent, taxes, utilities, pass-throughs, and other charges required thereunder.

**Cure / Arrearage Status:** Any unpaid pre-Effective Date monetary obligations, including any deferred rent, additional rent, taxes, fees, and other amounts, if any, shall be determined by agreement of the parties or by Final Order entered in connection with the Las Vegas transaction and shall not be fixed in the Plan.

**Guarantors:** Velocity Esports, Inc.; Philip N. Kaplan (individually); Leonard R. Wanger (individually).

**Special Terms:** The operative Las Vegas lease relationship remains subject to landlord-consent requirements, any assignment-related conditions, any gross-sales termination rights, and any provisions governing the timing of payment of deferred rent or other unpaid lease obligations upon assignment or transfer, all as set forth in the operative lease documents and any further agreement or Final Order.

### 3.7.1.2 NOTL Property Owner LLC.

**Premises:** The Newport on the Levee premises leased by Velocity Esports Newport Kentucky, LLC, consisting of approximately 49,805 rentable square feet, including the expansion premises, in Newport, Kentucky.

**Lease/Occupancy Status:** The Company's Newport occupancy and operating rights are subject to final written resolution with NOTL through the Newport MIPA, the NOTL Resolution Documents, and any applicable Sale Order, NOTL Resolution Order, Rule 9019 order, or other transaction-approval order. Nothing in this Plan constitutes a determination that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4).

**Transaction Status:** The Debtors contemplate a membership-interest transaction for Velocity Esports Newport Kentucky, LLC pursuant to the Membership Interest Purchase Agreement (the "Newport MIPA"). The Company's post-closing right to occupy and operate at Newport on the Levee, and any related lease, replacement lease, use-and-occupancy, settlement, guaranty, landlord-consent, or other obligations, shall be governed by the Newport MIPA, the NOTL Resolution Documents, and any applicable Sale Order, NOTL Resolution Order, Rule 9019 order, or other transaction-approval order of the Bankruptcy Court.

**Current Rent Structure:** Minimum Rent, use-and-occupancy amounts,

23

settlement payments, replacement-lease payments, percentage rent, tax pass-throughs, utilities, additional rent, and other charges, if any, in the amounts required under the operative Newport lease documents or the NOTL Resolution Documents, as applicable, and any applicable Final Order.

**Cure / Arrearage Status:** Any unpaid pre-Effective Date monetary obligations, including any back rent, percentage rent, taxes, fees, use-and-occupancy amounts, settlement amounts, Landlord Resolution Amounts, replacement-lease amounts, or other amounts, if any, shall be determined by agreement of the parties or by Final Order entered in connection with the Newport MIPA, the NOTL Resolution Documents, or any related Rule 9019 or transaction-approval process, and shall not be fixed in the Plan. If the original NOTL lease was deemed rejected under 11 U.S.C. § 365(d)(4), such amounts shall not be characterized as Cure of the original lease unless NOTL expressly agrees and the Bankruptcy Court approves that characterization.

**Guarantors:** Velocity Esports, Inc.; Philip N. Kaplan (individually); Leonard R. Wanger (individually). Any guaranty, joinder, reaffirmation, replacement guaranty, or other credit support delivered by Purchaser or any other non-Debtor in favor of NOTL shall be governed solely by the NOTL Resolution Documents and any applicable Sale Order or other Final Order, and shall not release, modify, or replace any existing guaranty unless NOTL expressly agrees in writing and the Bankruptcy Court approves such treatment to the extent required.

**Special Terms:** The operative Newport lease relationship or NOTL Resolution Documents, as applicable, remains subject to landlord-consent requirements, percentage-rent provisions, tax-escalation and pass-through provisions, use restrictions and exclusives, the continued effect of any guaranty obligations, and any new or replacement lease, use-and-occupancy, settlement, landlord-consent, or guaranty terms approved by the Bankruptcy Court, all as set forth in the operative lease documents, NOTL Resolution Documents, and any further agreement or Final Order.

**3.7.2    Treatment.** Except to the extent a Holder of an Allowed Class 5 Claim agrees otherwise in writing, each Allowed Claim in Class 5 shall be treated as follows:

**3.7.2.1 General Treatment of Class 5 Claims.** Each Allowed Claim in Class 5 shall be treated as a continuing landlord claim arising under an ongoing nonresidential real property lease or, with respect to NOTL, any Court-approved NOTL Resolution Documents. The applicable lease relationship or NOTL occupancy / landlord-resolution arrangement shall continue, be replaced, be amended and restated, be settled, or otherwise be implemented only to the extent set forth in the Plan, the operative lease documents, the NOTL Resolution Documents, and the applicable transaction-specific order or orders of the Bankruptcy Court. Any unpaid pre-Effective Date monetary obligations under the applicable lease, the NOTL Resolution Documents, or any applicable transaction-specific order, including any unpaid rent, additional rent, percentage rent, taxes, deferred rent, fees, Cure-related amounts, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, replacement-lease amounts, or other landlord-related amounts, if any, shall be cured, paid, settled, or otherwise satisfied in the amount and manner set forth in the applicable Final Order entered in connection with the relevant transaction, after notice and an opportunity to object by the affected landlord.

24

For the avoidance of doubt, the Class 5 Leases are listed on Schedule 5.1 solely to ensure that they are not deemed rejected by operation of Section 5 of the Plan, and their treatment shall be governed by this Section 3.7 and the applicable transaction-specific order or orders of the Bankruptcy Court. With respect to NOTL, such listing does not constitute a determination that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4) and does not limit the parties' ability to proceed through the NOTL Resolution Documents. With respect to NOTL, such listing does not constitute a determination that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4), and does not limit the parties' ability to proceed through the NOTL Resolution Documents.

**3.7.2.2 Las Vegas Lease Treatment.** In connection with the contemplated Las Vegas transaction, the Debtors shall be authorized to continue, assume and assign, enter into a replacement lease, or otherwise transfer the Las Vegas lease relationship to the purchaser of the Las Vegas operations or assets, in each case subject to the terms of the Plan, the operative Las Vegas transaction documents, any sale order, any assumption and assignment order, and the written consent of SRMF to the extent required under the operative lease documents or applicable law. Upon the effective date of such court-approved transaction and any required landlord consent, the purchaser or other approved transferee shall perform the obligations arising under the Las Vegas lease relationship from and after the effective date of such transaction, and the Debtors shall be relieved of further performance to the extent provided in the applicable transaction documents, Final Order, and nonbankruptcy law. Any unpaid pre-Effective Date monetary obligations, deferred amounts, or other lease-related Cure obligations required to be paid in connection with such transaction shall be paid or otherwise satisfied in the amount and manner provided in the applicable Final Order or written agreement approved by the Bankruptcy Court.

**3.7.2.3 Newport Lease Treatment.** In connection with the contemplated Newport MIPA, Velocity Esports Newport Kentucky, LLC, or its Reorganized successor under the Newport MIPA, shall perform its obligations to NOTL from and after closing in accordance with the Newport MIPA, the NOTL Resolution Documents, any applicable Sale Order, NOTL Resolution Order, Rule 9019 order, or other transaction-approval order, and the written consent of NOTL to the extent required under applicable law or the applicable documents. Because the Newport transaction is structured as a membership-interest sale rather than a direct lease assignment, nothing in this Plan shall be deemed to assume, assign, revive, reinstate, cure, modify, or continue the original NOTL lease except to the extent expressly provided in the NOTL Resolution Documents and approved by the Bankruptcy Court. If the original NOTL lease remains assumable, any assumption or assignment shall comply with 11 U.S.C. §§ 365(b) and 365(f), Bankruptcy Rule 6006, and applicable law. If the original NOTL lease was deemed rejected under 11 U.S.C. § 365(d)(4), the Company's post-closing occupancy and operating rights shall be governed by any new lease, amended-and-restated lease, replacement lease, use-and-occupancy agreement, Rule 9019 settlement, or other NOTL Resolution Documents approved by the Bankruptcy Court. Any unpaid pre-Effective Date monetary obligations, back rent, percentage rent, taxes, fees, Landlord Resolution Amounts, use-and-occupancy amounts, settlement amounts, replacement-lease amounts, or other amounts required to be satisfied in connection with the Newport MIPA shall be paid or otherwise satisfied in the amount and manner provided in the applicable Final Order or written agreement approved by the Bankruptcy Court.

**3.7.2.4 Cure Amount Determination and Objection Rights.** The Debtors

25

do not fix in the Plan the precise Cure, arrearage, Landlord Resolution Amount, settlement amount, use-and-occupancy amount, replacement-lease amount, or other landlord-related amount, if any, owing to SRMF or NOTL. Instead, such amounts shall be determined by agreement of the parties or by Final Order entered in connection with the Las Vegas transaction, the Newport MIPA, the NOTL Resolution Documents, or any related Rule 9019 or transaction-approval process, as applicable. Nothing herein shall prejudice the rights of SRMF or NOTL to assert a different Cure amount, Landlord Resolution Amount, settlement amount, or other landlord-related amount in the applicable transaction-approval process, or the Debtors' rights to object to the same. With respect to NOTL, if the original lease was deemed rejected under 11 U.S.C. § 365(d)(4), such amounts shall not be characterized as Cure of the original lease unless NOTL expressly agrees and the Bankruptcy Court approves that characterization.

**3.7.2.5 No Deemed Consent; No Guarantor Release.** Nothing in this Section shall be deemed to provide, compel, or substitute for any landlord consent required under the operative lease documents or applicable law, except to the extent expressly set forth in a Final Order or written agreement approved by the Bankruptcy Court. Nothing in this Section shall release, modify, impair, or waive any guaranty obligations or guarantor liabilities unless such release or modification is expressly set forth in a written agreement executed by the affected landlord and approved by the Bankruptcy Court. Any NOTL Guaranty executed by Purchaser or any other Person shall arise only under the NOTL Resolution Documents or applicable Sale Order and shall not release, replace, modify, impair, or waive any existing guaranty unless NOTL expressly agrees in writing and the Bankruptcy Court approves such treatment to the extent required.

**3.7.2.6 Reservation of Rights.** Except as expressly provided in the Plan or in any Final Order approving the applicable transaction, nothing in this Section shall constitute a determination of the amount, validity, priority, or enforceability of any Class 5 Claim, any Cure amount, any Landlord Resolution Amount, any settlement amount, any use-and-occupancy amount, any landlord-consent requirement, any guaranty obligation, any rights arising under the operative lease documents, or whether any nonresidential real property lease was timely assumed, timely extended, deemed rejected, replaced, modified, or otherwise resolved. All rights of the Debtors, the Reorganized Debtors, and the Holders of Class 5 Claims are reserved.

**3.7.3    Impairment and Voting.** Class 5 is Impaired under the Plan. Holders of Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

**3.8 Class 6: Legacy Landlord Lease Claims**

**3.8.1 Claims in Class.** Class 6 consists of the Allowed unsecured claims of 434 N. Orange Investment, LLC ("Orange") and Woodfield Mall LLC ("Woodfield") arising from the Debtors' former nonresidential real property lease relationships for the Orlando and Schaumburg locations, respectively, including any claim for unpaid rent, additional rent, lease damages, termination damages, rejection damages, cure, attorneys' fees, costs, taxes, common-area maintenance charges, or other amounts to the extent allowed under the Bankruptcy Code and applicable nonbankruptcy law.

For the avoidance of doubt, Class 6 includes only claims against the Debtors and their Estates. Any judgment, garnishment, collection, or other enforcement rights asserted by

26

Orange or Woodfield against Non-Debtor Guarantors are not, by reason of such judgment or enforcement posture alone, separate claims against the Debtors, but may be relevant to claim allowance, credit, offset, reduction, or satisfaction to the extent provided by applicable law.

### 3.8.1.1 434 N. Orange Investment, LLC.

**Basis of Claim:** Lease-derived unsecured claims arising from the Orlando lease transaction and related documents, including Orange's filed proofs of claim against the Debtors arising from the same underlying lease relationship.

**Claim Amount:** Disputed and subject to objection, reconciliation, mitigation issues, credits, and allowance. Orange filed Proof of Claim No. 11 in the Velocity Esports, Inc. case in the amount of $2,377,910.22, and Orange has also asserted a related claim in the Orlando Debtors case arising from the same lease relationship. All such amounts remain subject to objection, reconciliation, credits, offsets, and allowance.

**Guarantor Judgment Context**: Orange has obtained a Florida default final judgment against Philip N. Kaplan and Leonard R. Wanger and has pursued post-judgment garnishment. Such guarantor judgment and collection activity are not claims against the Debtors, but any recovery on account of the underlying lease obligations shall be credited to the extent required by applicable law.

### 3.8.1.2 Woodfield Mall LLC.

**Basis of Claim:** Lease-derived unsecured claims arising from the Schaumburg / Woodfield Mall lease and related documents, including any unpaid rent, lease damages, cure, and rejection or termination damages to the extent allowed.

**Claim Amount:** Disputed and subject to objection, reconciliation, mitigation issues, credits, and allowance. Woodfield filed Proof of Claim No. 4 asserting a general unsecured lease claim of $1,135,053.73 and a stated cure amount of $72,873.67. The Debtors contend that the Woodfield claim remains subject to objection, mitigation issues, credits, and the statutory limitation on landlord termination damages under 11 U.S.C. § 502(b)(6).

**Guarantor Judgment Context:** Woodfield has obtained Indiana default judgments against Philip N. Kaplan and Leonard R. Wanger arising from the same underlying lease obligations. Any such guarantor judgments or related enforcement activity are not claims against the Debtors, but any recovery on account of the underlying lease obligations shall be credited to the extent required by applicable law.

**3.8.2 Treatment.** Except to the extent a Holder of an Allowed Class 6 Claim agrees otherwise in writing, each Allowed Claim in Class 6 shall be treated as follows:

**3.8.2.1 General Treatment of Class 6 Claims.** Each Allowed Class 6 Claim shall be paid in full in equal quarterly installments over a period of twenty (20) years, commencing on the first day of the first calendar quarter following the later of: (a) the Effective Date; or (b) the date on which such Class 6 Claim becomes Allowed by Final Order or by written

settlement approved by, or otherwise authorized under, the Plan and the Bankruptcy Court. All holders in Class 6 shall receive the same default treatment unless a Holder agrees in writing to different treatment, in which event such Holder shall be deemed to have consented to such treatment for purposes of 11 U.S.C. § 1123(a)(4).

**3.8.2.2 Centralized Claim Allowance, Estimation, Reconciliation, and Reduction**. All Class 6 Claims shall be subject to centralized allowance, estimation, reconciliation, objection, compromise, limitation, and reduction before the Bankruptcy Court. Without limitation, the Debtors and Reorganized Debtors reserve the right to seek: (a) limitation of any Class 6 Claim under 11 U.S.C. § 502(b)(6); (b) estimation under 11 U.S.C. § 502(c); and (c) reduction, offset, credit, or satisfaction of any Class 6 Claim based on deposits, prepaid rent, mitigation or reletting credits, insurance recoveries, third-party recoveries, payments by guarantors, garnishment proceeds, or any other recovery or value received on account of the same underlying lease obligations to the extent required by applicable law. The Bankruptcy Court shall be the principal forum for determination of such matters to the extent they affect allowance, estimation, or distributions under the Plan.

**3.8.2.3 No Fixed Payment Stream Unless and Until Allowed and Adjusted.** No payment stream on account of any Class 6 Claim shall be fixed, commence, or become due unless and until the applicable Class 6 Claim becomes Allowed after giving effect to all required reductions, offsets, credits, and non-Debtor recoveries under applicable law. Prior to such Allowance and adjustment, no holder of a Class 6 Claim shall have any right under the Plan to compel distributions, reserves, or other payment treatment on account of the asserted amount of such claim.

**3.8.2.4 Interest.** Interest shall accrue on each Allowed Class 6 Claim at a rate equal to the 20-year U.S. Treasury yield as published on January 1 of each payment year, beginning on the first payment date applicable to such Allowed Class 6 Claim and continuing until such Allowed Class 6 Claim is paid in full. Such interest shall be simple interest on unpaid principal only, recalculated annually as of January 1 of each payment year. The amortization and interest methodology set forth in this Section are intended to provide the present value of Allowed Class 6 Claims as of the Effective Date.

**3.8.2.5 Credits and Satisfaction.** Each Allowed Class 6 Claim shall be reduced dollar-for-dollar by all amounts that must be credited, offset, or applied under applicable law, including without limitation: security deposits, prepaid rent, mitigation and reletting credits, insurance recoveries, third-party recoveries, payments by guarantors, garnishment proceeds, settlement payments, or other amounts received on account of the same underlying lease obligations. Such credits and offsets shall apply only to the extent required by applicable nonbankruptcy law or the Bankruptcy Code to prevent double recovery. Nothing in this Section limits the Debtors' or Reorganized Debtors' right to assert that any non-Debtor recovery must reduce the corresponding Class 6 Claim against the Estates.

The crediting provisions in this Section are intended solely to prevent double recovery and to ensure accurate allowance, estimation, reconciliation, and distribution treatment of Class 6 Claims. Nothing in this Section shall be construed as a determination that unilateral collection activity against any Non-Debtor Guarantor cannot impair Plan feasibility, centralized claim administration, implementation of the Plan, or the Debtors' ability to obtain Non-

28

Debtor Guarantors' Plan Contributions, nor shall this Section limit the Debtors' right to seek separate temporary, enforcement-only relief after notice and hearing.

**3.8.2.6 Separate Settlements Permitted.** Nothing in this Plan shall prevent the Debtors or Reorganized Debtors from entering into a separate written settlement with Orange or Woodfield concerning all or any portion of a Class 6 Claim, and any Holder agreeing to different treatment shall be deemed to have consented to such treatment for purposes of 11 U.S.C. § 1123(a)(4).

**3.8.2.7 No Determination of Non-Debtor Guarantor Liability; No Plan-Based Release or Injunction.** Nothing in this Class 6 treatment shall constitute a determination of the amount, validity, enforceability, or collectability of any claim, judgment, or right asserted against any Non-Debtor Guarantor. Nothing in this Plan shall release, discharge, enjoin, impair, or adjudicate any such Non-Debtor Guarantor liability, except to the extent expressly set forth in a separate order of the Bankruptcy Court entered after notice and hearing. The preservation of such non-Debtor liability shall not constitute an admission or determination that temporary, enforcement-only relief may not be sought or granted by separate order where necessary to protect Plan consummation, centralized claim administration, or value maximization for creditors.

**3.8.2.8 Reservation of Rights.** Except as expressly set forth in the Plan, all rights of the Debtors, Reorganized Debtors, Orange, and Woodfield are reserved, including all rights with respect to claim allowance, estimation, objection, reduction, mitigation, offsets, credits, and settlement.

**3.8.3 Impairment and Voting.** Class 6 is Impaired under the Plan. Holders of Allowed Class 6 Claims are entitled to vote to accept or reject the Plan.

**3.9 Class 7: Insider Secured Claims.**

**3.9.1 Claims in Class.** Class 7 consists of the Allowed Secured Claims of insider creditors against Velocity Esports, Inc., including, without limitation, claims asserted by:

- Leonard R. Wanger 2018 Family Irrevocable Perpetuities Trust;
- Ralph Wanger Trust dated 12-16-94;
- Philip N. Kaplan Separate Property Trust dated 6/27/2011;
- LRW Revocable Trust dated 3/9/2012;
- 4958 West Ponderosa I, LLC;
- 4958 West Ponderosa II, LLC; and
- LP Consulting.

**3.9.2 Treatment.** Except to the extent a holder of an Allowed Class 7 Claim agrees otherwise in writing, each Allowed Claim in Class 7 shall be treated as follows:

**3.9.2.1 No Plan Distributions.** No holder of an Allowed Class 7 Claim shall receive any payment, distribution, or other consideration under the Plan on account of such Claim. No cash flow generated by the Debtors or Reorganized Debtors and no payment stream required under the Plan shall be allocated to Class 7.

29

**3.9.2.2 Subordination in Right of Payment.** The Allowed Claims in Class 7 shall be subordinate in right of payment under the Plan to: all Allowed Administrative Claims; all Allowed Priority Tax Claims;  all Allowed secured and unsecured claims in Classes 1 through 6; and  all other obligations required to be paid or performed under the Plan.

No payment shall be made on account of any Allowed Class 7 Claim unless and until all obligations required under the Plan to holders of senior classes and unclassified claims have been paid in full in Cash or otherwise satisfied in accordance with the Plan.

**3.9.2.3 No Reimbursement on Account of Plan Funding Contributions.** Any funds contributed directly or indirectly by Philip N. Kaplan, Leonard R. Wanger, or any insider affiliate for the purpose of funding Plan obligations, including without limitation payments required for the benefit of the continuing landlords and legacy landlord classes, shall be deemed voluntary capital contributions or new value contributions made to support consummation of the Plan and shall not constitute payments or distributions on account of any Allowed Class 7 Claim. No holder of a Class 7 Claim shall assert any right to reimbursement, contribution, subrogation, indemnity, administrative expense, or other claim against the Debtors or Reorganized Debtors arising solely from such Plan funding contributions.  For the avoidance of doubt, any transfer of any membership interest in Velocity Esports Newport Kentucky, LLC to any Insider Bid Party pursuant to the Newport MIPA, if approved, shall occur solely under the Sale Order and only in exchange for consideration expressly approved by the Bankruptcy Court. Such transfer shall not constitute a payment, distribution, reimbursement, subrogation, contribution, indemnity, or other consideration on account of any Allowed Class 7 Claim.

**3.9.2.4 Retention of Liens; No Enforcement During Plan Term.** To the extent any holder of an Allowed Class 7 Claim holds a valid lien, such lien shall remain of record only to the extent not otherwise avoided, released, recharacterized, subordinated, or disallowed by Final Order. Notwithstanding the foregoing, no holder of an Allowed Class 7 Claim shall exercise any enforcement rights or remedies against property of the Debtors or Reorganized Debtors during the term of the Plan unless otherwise ordered by the Bankruptcy Court or agreed in writing by the Debtors or Reorganized Debtors.

**3.9.2.5 Reservation of Rights; Claim Reconciliation.** Nothing in this Section shall constitute a final determination of the amount, validity, priority, extent, perfection, or enforceability of any Class 7 Claim or lien. The Debtors and Reorganized Debtors reserve all rights to object to, reconcile, recharacterize, equitably subordinate, avoid, offset, or otherwise contest any Class 7 Claim or any lien securing such Claim.

**3.9.2.6 No Default Based on Nonpayment Under the Plan.** Because Class 7 shall receive no distribution under the Plan, no holder of an Allowed Class 7 Claim shall assert that the absence of payments under the Plan constitutes a default under the Plan.

**3.9.3 Impairment and Voting.** Class 7 Claims are Impaired and will receive no distribution under the Plan. Holders of Class 7 Claims are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g) and are not entitled to vote to accept or reject the Plan.

**3.10 Class 8: General Unsecured Claims.**

30

**3.10.1 Claims in Class.** Class 8 consists of all Allowed General Unsecured Claims not otherwise classified under the Plan. For the avoidance of doubt, Class 8 includes all unsecured claims against the Debtors that are not Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, continuing landlord claims, legacy landlord lease claims, insider secured claims, or any other claims separately classified under the Plan.

**3.10.2 Treatment.** Holders of Allowed Class 8 Claims shall not receive any payment, distribution, or other property under the Plan on account of such Claims.

**3.10.3 Interest.** No postpetition or post-Effective Date interest shall accrue or be paid on account of Allowed Class 8 Claims under the Plan.

**3.10.4 Reservation of Rights.** Nothing in this Section shall constitute an allowance of any Class 8 Claim. The Debtors and Reorganized Debtors reserve all rights to object to, reconcile, estimate, compromise, settle, recharacterize, offset, reduce, or otherwise contest any Class 8 Claim. Any recovery, credit, offset, setoff, recoupment, or reduction applicable under nonbankruptcy law or the Bankruptcy Code shall reduce the amount of any Allowed Class 8 Claim to the extent permitted by applicable law.

**3.10.5 Impairment and Voting.** Class 8 is Impaired under the Plan. Holders of Allowed Class 8 Claims are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g) and therefore are not entitled to vote to accept or reject the Plan.

**3.11 Class 9: Equity Interests.**

**3.11.1 Interests in Class.** Class 9 consists of all Equity Interests in the Debtors not otherwise separately provided for under the Plan.

**3.11.2 Treatment.** Except as otherwise expressly provided in the Plan or in a transaction-specific order of the Bankruptcy Court, holders of Equity Interests shall not receive or retain any property under the Plan on account of such interests. For the avoidance of doubt, any transfer of membership interests in Velocity Esports Newport Kentucky, LLC to Purchaser or any Insider Bid Party pursuant to the Newport MIPA, if approved, shall occur solely under the applicable Sale Order and shall not constitute a distribution or retention of property under the Plan on account of any prepetition Equity Interest.

**3.11.3 Impairment and Voting.** Class 9 is Impaired under the Plan. Holders of Equity Interests are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g) and therefore are not entitled to vote to accept or reject the Plan.

**3.12    Elimination of Vacant Classes.** Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

**3.13    Prepayment.** The Debtors or Reorganized Debtors, as applicable, may prepay principal on any Claim at any time without paying a prepayment penalty or similar charge, unless otherwise expressly provided in the Plan, the applicable agreement, or an order of the Bankruptcy Court. Any such prepayment shall reduce the principal amount owed on the applicable Claim.

31

## 4.    PLAN IMPLEMENTATION

**4.1    Plan Implementation Occurring on Effective Date.** On the Effective Date, without any further action by the Debtors or the Reorganized Debtors, all Assets of the Estates that are not sold, transferred, assigned, or otherwise disposed of pursuant to the Plan or any transaction-specific order shall vest in the applicable Reorganized Debtor, subject to the terms and conditions of the Plan, and the following events shall occur in the following sequence:

**4.1.1    Reorganized Debtors.** On and after the Effective Date, the Reorganized Debtors shall continue to exist as separate entities in accordance with applicable law, and shall retain all licenses necessary to each applicable Reorganized Debtor's operations that existed as of the Petition Date. The Debtors' existing articles of incorporation or organization, bylaws, corporate resolutions, operating agreement (as amended, supplemented or modified, and as applicable) will continue in effect for the Reorganized Debtors following the Effective Date, except to the extent such documents are amended in conformance with the Plan or by proper corporate action after the Effective Date.

**4.1.2    Prohibition of Non-Voting Equity Securities.** The Reorganized Debtors' articles of incorporation and/or bylaws shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, which shall include, among other matters, pursuant to § 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity interests, to the extent required by the Bankruptcy Code.

**4.1.3    Non-Debtor Guarantors' Plan Contributions.** The means for implementation of the Plan include anticipated Non-Debtor Guarantors' Plan Contributions. Such contributions may include, without limitation, cash funding, payment support, reserve funding, transaction support, managerial services, cooperation in claim reconciliation and litigation, access to financial information, support for sale or settlement transactions, and other value necessary or useful to implementation and consummation of the Plan. The Debtors and Reorganized Debtors are authorized to receive and apply Non-Debtor Guarantors' Plan Contributions in accordance with the Plan, the Confirmation Order, and any separate agreement or order approved by the Bankruptcy Court. Non-Debtor Guarantors' Plan Contributions may be used to fund, among other things, obligations arising under the Las Vegas transaction, the Newport transaction, payments or reserves required for Class 5 and Class 6, and other costs necessary to consummate the Plan. Non-Debtor Guarantors' Plan Contributions are not offered as, and are not conditioned upon, any release, discharge, injunction, stay, or limitation of creditor rights against any Non-Debtor Guarantor, and no such relief is granted by this Plan. The absence of a Plan-based release, discharge, injunction, or stay in favor of any Non-Debtor Guarantor does not constitute a finding that enforcement activity against such Non-Debtor Guarantor would be harmless to the Debtors, their Estates, creditor recoveries, or Plan consummation

**4.1.4 Material Dependence on Support, Cooperation, and Contributions.** The Debtors' ability to consummate the Plan depends in material part upon: (a) consummation of the Las Vegas transaction; (b) consummation of the Newport transaction; (c) continued access to the cooperation, support, and services of Philip N. Kaplan and Leonard R. Wanger; and (d) the Debtors' continued ability to obtain Non-Debtor Guarantors' Plan Contributions to the extent necessary to fund obligations required under the Plan. The Debtors' ability to implement the treatment of Class 6 and to consummate the transactions contemplated by the Plan may be

materially impaired by collection activity, asset restraints, garnishments, or other enforcement efforts directed at Philip N. Kaplan or Leonard R. Wanger by holders of Class 6 Claims or by persons seeking to recover on account of the same underlying lease obligations.

Unless expressly set forth in a separate Court-approved agreement, Plan Supplement, confirmation declaration, budget, or order included in the confirmation record, Confirmation of the Plan is not conditioned upon receipt of any fixed minimum dollar amount of Non-Debtor Guarantors' Plan Contributions. Nothing in the preceding sentence shall be construed to mean that the Debtors' continued access to the cooperation, services, liquidity, transaction support, or potential Plan funding contributions of the Non-Debtor Guarantors is immaterial to feasibility, implementation, or consummation of the Plan. The Debtors reserve all rights to seek separate relief, after notice and hearing, if collection activity, asset restraints, garnishments, or other enforcement efforts materially impair the Debtors' ability to obtain such support or otherwise consummate the Plan.

**4.2     Notice of Effectiveness.** When the conditions to the Effective Date have been satisfied or waived and the transactions contemplated by the Plan have been implemented, the Reorganized Debtors shall file with the Bankruptcy Court and serve upon all Creditors and all potential holders of Administrative Claims known to the Reorganized Debtors (whether or not disputed), a Notice of Effective Date of Plan. The Notice of Effective Date of Plan shall include notice of the Administrative Claim Bar Date.

**4.3     Operations and Management of Reorganized Debtors.** From and after the Effective Date, each Reorganized Debtor shall manage and operate its remaining business and assets, subject to any sale, assignment, transfer, MIPA, or other transaction contemplated by the Plan.

**4.4     Default Cure Period.** Notwithstanding anything to the contrary in any pre-petition loan documents, in the event of an asserted default or event of default under the Plan, the affected creditor shall be required to provide the Reorganized Debtors with written notice of such default or event of default. Upon receipt of such written notice, the Reorganized Debtors shall thereafter be permitted fifteen (15) Business Days to cure any monetary event of default, or, in the event of a non-monetary event of default, thirty (30) days; provided, however, that with respect to a non-monetary default or event of default, if the Reorganized Debtors uses commercially reasonable efforts to begin curing such default within such thirty (30) day period and should the default not be cable of being cured within such cure period notwithstanding such efforts, then the Reorganized Debtors shall be permitted a reasonable time thereafter to cure. In the event of any default or event of default that remains uncured after expiration of the applicable cure period(s) herein, then the affected shall then be required to file a motion with the Bankruptcy Court for a determination regarding whether a default has occurred and the Debtors shall be entitled to contest the occurrence or continuation of such alleged default. Only after the Bankruptcy Court has heard and determined the occurrence and continuation of an event of default shall the moving creditor be then permitted to exercise any rights or remedies at law or under the applicable Plan documents or operative post-confirmation transaction documents.

**4.5     Exemption from Certain Transfer Taxes and Further Transactions.** Pursuant to § 1146(c) of the Bankruptcy Code, (i) the issuance, distribution, transfer or exchange of Estates property; (ii) the creation, modification, consolidation or recording of any deed of trust or other

33

security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with this Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, Confirmation Order or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real Estates transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state of local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**4.6** **Final Decree.** Notwithstanding otherwise applicable law, the Chapter 11 Case shall be closed and a Final Decree entered as soon as possible after the occurrence of the Effective Date, unless and until: (a) all adversary proceedings and contested matters pending before the Bankruptcy Court have been resolved by a Final Order; and (b) all Claims have either: (i) become Allowed Claims and payments have begun in accordance with the treatment to be given such Allowed Claim pursuant to the Plan; (ii) been disallowed by a Final Order or deemed to be a Disallowed Claim, in accordance with the terms of the Plan; (iii) been assumed by the Debtors, or (iv) reinstated.

**4.7** **Effectuating Documents, Further Transactions.** On and after the Effective Date, the Debtors and Reorganized Debtors are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the applicable Debtor or Reorganized Debtor, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

## 5. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1 Executory Contracts and Unexpired Leases**. Except for Executory Contracts and Unexpired Leases specifically addressed in the Plan or set forth on Schedule 5.1, all Executory Contracts and Unexpired Leases that exist on the Confirmation Date shall be deemed rejected by the Reorganized Debtors on the Effective Date. The nonresidential real property lease with SRMF Town Square Owner LLC for the Las Vegas venue and the Newport lease / occupancy arrangement with NOTL Property Owner LLC, including any NOTL Resolution Documents approved by the Bankruptcy Court (collectively, the "Class 5 Leases"), shall not be deemed rejected by operation of this Section 5.1, and instead shall be treated exclusively in accordance with Section 3.7 (Class 5) of the Plan and the applicable transaction-specific order or orders entered by the Bankruptcy Court in connection with the Las Vegas transaction and the Newport transaction. With respect to NOTL, this Section 5.1 does not constitute a determination that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4).

**5.2 Approval of Assumption, Assignment, Continuation, or Rejection.** Entry of the Confirmation Order shall constitute, as of the Effective Date:

34

(i) approval, pursuant to section 365(a) of the Bankruptcy Code, of the assumption by the Debtors or Reorganized Debtors of each Executory Contract and Unexpired Lease listed on Schedule 5.1 and designated for assumption, except to the extent otherwise provided in the Plan or by separate order of the Bankruptcy Court; and

(ii) approval of the rejection of all Executory Contracts and Unexpired Leases not listed on Schedule 5.1 and not otherwise specifically addressed in the Plan.

Notwithstanding the foregoing, the Class 5 Leases shall be continued, assumed, assigned, replaced, modified, or otherwise treated only to the extent and in the manner provided in Section 3.7 of the Plan and the applicable transaction documents and Final Order or Orders entered by the Bankruptcy Court. No provision of this Section 5.2 shall be construed to predetermine whether the Las Vegas lease will be continued through assumption and assignment, replacement lease, or other consensual transfer structure, or whether the Newport lease or occupancy arrangement will continue, be assumed, be assigned, be replaced, be amended and restated, be settled, or otherwise be resolved through the Newport MIPA, the NOTL Resolution Documents, or otherwise, all of which shall be governed by Section 3.7 and the applicable transaction-specific order. With respect to NOTL, no assumption, assignment, cure, reinstatement, revival, modification, or continuation of the original lease shall occur by operation of this Plan unless expressly provided in the NOTL Resolution Documents and approved by the Bankruptcy Court.

**5.3 Cure of Defaults.** The Debtors or Reorganized Debtors shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to this Section 5 upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such date as may be fixed by the Bankruptcy Court or agreed upon by the applicable counterparty and the Debtors or Reorganized Debtors; or (iii) the first Business Day following the fourteenth (14th) day after entry of a Final Order resolving any dispute regarding the amount of Cure, adequate assurance of future performance, or any other matter pertaining to assumption or assignment.

Notwithstanding the foregoing, the Cure amounts, arrearages, deferred rent, additional rent, percentage rent, taxes, fees, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, replacement-lease amounts, and all other monetary obligations, if any, arising under or relating to the Class 5 Leases or the NOTL Resolution Documents shall be determined by agreement of the parties or by the applicable transaction-specific order or Final Order entered by the Bankruptcy Court in connection with the Las Vegas transaction or the Newport transaction, as applicable. With respect to NOTL, if the original lease was deemed rejected under 11 U.S.C. § 365(d)(4), such amounts shall not be characterized as Cure of the original lease unless NOTL expressly agrees and the Bankruptcy Court approves that characterization.

**5.4 Objection to Cure Amounts.** Any party to an Executory Contract or Unexpired Lease who objects to the Cure amount listed on Schedule 5.1 must file and serve an objection no later than the deadline set by the Bankruptcy Court for filing objections to confirmation of the Plan, unless the Bankruptcy Court establishes a different deadline.

Notwithstanding the foregoing, any objection by SRMF Town Square Owner LLC or NOTL Property Owner LLC concerning Cure, arrearages, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, deferred rent, additional rent, percentage rent, taxes, fees, adequate assurance, landlord consent, assignment, continuation, replacement lease,

35

amended-and-restated lease, use-and-occupancy agreement, Rule 9019 settlement, or any other transaction-specific treatment under the Class 5 Leases or NOTL Resolution Documents shall be asserted in connection with the applicable Las Vegas transaction or Newport transaction approval process, or by such other date as may be established by the Bankruptcy Court in the relevant transaction-specific motion or order.

**5.5 Confirmation Order.** The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions and rejections described in this Section 5, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date.

Notwithstanding the foregoing, the Confirmation Order shall not, by itself, constitute the final approval of the continuation, assumption, assignment, replacement, modification, or other treatment of the Class 5 Leases, except to the extent expressly provided in Section 3.7 of the Plan and in the applicable transaction-specific order or orders entered by the Bankruptcy Court. The rights and obligations of the Debtors, the Reorganized Debtors, SRMF Town Square Owner LLC, and NOTL Property Owner LLC with respect to the Class 5 Leases, the Newport MIPA, and the NOTL Resolution Documents shall be governed by Section 3.7, the applicable transaction documents, and the applicable Final Order or Orders of the Bankruptcy Court. With respect to NOTL, the Confirmation Order shall not, by itself, determine that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4).

**5.6    Post-Petition Date Contracts and Leases.** Each such Executory Contract and Unexpired Lease shall be performed by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of the applicable Debtor's or Reorganized Debtor's business.

**5.7    Bar Date.** All proofs of claim with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be filed no later than twenty-one (21) days after the Effective Date or, if later, twenty-one (21) days after entry of the order approving such rejection, unless the Bankruptcy Court orders otherwise. Any Claim not filed within such time shall be forever barred.

For the avoidance of doubt, this Section 5.7 shall not apply to the Class 5 Leases unless and until the Bankruptcy Court enters an order specifically authorizing rejection of the applicable Class 5 Lease, confirming deemed rejection of the applicable Class 5 Lease, approving a settlement of rejection-related claims, or establishing a separate deadline for filing any rejection, termination, use-and-occupancy, settlement, or landlord-resolution claim. With respect to NOTL, any claim deadline arising from a determination that the original lease was deemed rejected under 11 U.S.C. § 365(d)(4), or from approval of any NOTL Resolution Documents, shall be governed by the applicable order of the Bankruptcy Court.

**5.8    Modifications, Amendments, Supplements, or Restatements.** Unless otherwise provided, each Executory Contract and Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such matter, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan. Modifications, amendments, supplements, and restatements to pre-petition Executory Contracts and Unexpired Leases that have

been executed by the Debtors during the Chapter 11 Case shall not be deemed to alter the pre-petition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

Notwithstanding the foregoing, nothing in this Section shall limit the ability of the Debtors, NOTL, the Purchaser under the Newport MIPA, or any other applicable party to enter into NOTL Resolution Documents that are approved by the Bankruptcy Court as a new lease, replacement lease, amended-and-restated lease, use-and-occupancy agreement, settlement agreement, Rule 9019 compromise, or other postpetition arrangement, nor shall this Section be construed to characterize any such Court-approved NOTL Resolution Documents as merely a modification of a prepetition lease.

**5.9     Reservation of Rights.** Neither the exclusion nor inclusion of any contract or lease, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**6.     MANNER OF DISTRIBUTION OF PROPERTY UNDER THE PLAN**

**6.1     Distributions on Account of Claims Allowed as of the Effective Date.** Distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date, except as otherwise set forth in the Plan, or on the first date thereafter as is reasonably practicable.

**6.2     Manner of Payment Under the Plan.** Distributions of Cash to be made by the Debtors or the Reorganized Debtors pursuant to the Plan shall be made, at the discretion of the Debtors or the Reorganized Debtors, by check drawn on a bank account, ACH, or by wire transfer.

**6.3     Escheat.** Holders of Allowed Claims shall have three (3) months from the check date to negotiate Distribution checks issued by the Debtors or the Reorganized Debtors under the terms of the Plan, otherwise payment on such checks may at the Debtors' or the Reorganized Debtors' sole discretion be stopped and the funds shall escheat to the Debtors or the Reorganized Debtors and shall be promptly distributed to the Debtors or the Reorganized Debtors in accordance with § 347 of the Bankruptcy Code.

**6.4     Delivery of Distributions.**

**6.4.1   Record Date for Distributions.** On the Distribution Record Date, the Claims Register shall be closed, and any Person responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Reorganized Debtors shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer forms contain an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

**6.4.2  Delivery of Distributions in General.** Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, Distributions to all Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Debtors or the Reorganized Debtors:

**6.4.2.1** In accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004;

**6.4.2.2** To the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein, or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address;

**6.4.2.3** To the addresses set forth in any written notices of address changes delivered to the Debtors after the date of any related Proof of Claim;

**6.4.2.4** To the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtors or the Reorganized Debtors has not received a written notice of change of address; or

**6.4.2.5** To any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.

**6.4.3  Returned Distributions.** In the case of Distributions to the Holders of Allowed Claims that are returned to the Debtors or the Reorganized Debtors due to an incorrect or incomplete address, the Debtors or the Reorganized Debtors shall retain any such returned Distribution in a segregated account established by the Debtors or the Reorganized Debtors to keep track of any returned Distributions. Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Debtors or the Reorganized Debtors (or its designee) within three (3) months from the date on which such Distribution was returned and provides the Debtors or the Reorganized Debtors (or its designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under the Plan. In such event, the Claim for which such Distributions was issued shall be treated as a Disallowed Claim and the Distribution on account of such Disallowed Claim shall promptly be distributed to the Debtors.

**6.4.4  Disputed Distributions.** In the event of any dispute between or among Holders of Claims as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under the Plan, the Debtors or the Reorganized Debtors, in lieu of making such Distribution to such Holder, may make it instead into an escrow account for payment as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves. Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Debtors or the Reorganized Debtors shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair, or otherwise restrict the use of any such Distribution.

**6.4.5  Setoffs.** The Debtors or the Reorganized Debtors may, but shall not be required to, set-off against any Distributions to be made pursuant to the Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that the Debtors may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the

38

allowance of any Claim held by such Holder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim the Debtors may have, or may have had, against such Holder.

**6.4.6   Withholding Taxes.** The Debtors or the Reorganized Debtors shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with § 346 of the Bankruptcy Code.

## 7.   DISPUTED CLAIMS PROCEDURES.

**7.1   Objection to and Resolution of Claims.** Except as to applications for allowance of compensation and reimbursement of expenses under §§ 330, 331, and/or 503 of the Bankruptcy Code, the Debtors shall, on and after the Effective Date, have the exclusive right to make and file objections to Claims. On and after the Effective Date, the Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to any Claims and compromise, settle, or otherwise resolve Disputed Claims without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Debtors and, on and after the Effective Date, the Reorganized Debtors, shall file all objections to Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses with respect to Professional Fee Claims) and serve such objections upon the Holder of the Claim as to which the objection is made as soon as is practicable, but in no event later than one (1) year after the Effective Date or such later date as may be approved by the Bankruptcy Court.

**7.1.1 Class 6 Claims.** Without limiting Section 7.1, the Debtors and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to, estimate, reconcile, limit, compromise, settle, reduce, or otherwise contest any Class 6 Claim, including the right to seek reduction of any such claim on account of: (a) any limitation under 11 U.S.C. § 502(b)(6); (b) any security deposit, prepaid rent, or similar credit; (c) mitigation or reletting; (d) insurance proceeds or other third-party recoveries; (e) payments by guarantors; (f) garnishment proceeds or other enforcement recoveries; or (g) any other recovery, credit, or reduction required by applicable law. The Bankruptcy Court shall be the principal forum for determination of such matters unless otherwise ordered by the Bankruptcy Court.

**7.2   Payments.** Payments and Distributions to each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provision of the Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs. Without limiting the generality of the foregoing, the Debtors shall not be required to object to any Claim irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

**7.3   Contingent Claims.** Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to Distributions under the Plan. The Holder of a contingent Claim will only be entitled to a Distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

**7.4   Estimation of Claims.** The Debtors shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the

39

Bankruptcy Code, regardless of whether the Debtors previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors may elect to pursue any supplemental proceedings to object to the allowance of such Claim. For the avoidance of doubt, the Debtors may seek estimation or temporary allowance of any Class 6 Claim for purposes of feasibility, voting, reserve-setting, or implementation of the Plan while preserving all rights to object to the final amount, character, and allowable components of such claim.

## 8.    RESERVATION OF RIGHTS

**8.1    Withdrawal of Plan; Rights if Plan Not Confirmed; Effective Date Does Not Occur.** The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revokes or withdraws the Plan, or if Confirmation of the Plan or the Effective Date does not ultimately occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against or any Person; (b) prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Person.

**8.2    No Admissions or Waiver.** Without limiting the generality of any similar provision in the Plan, notwithstanding anything in the Plan to the contrary, nothing contained in the Plan or in the Disclosure Statement shall be deemed an admission by the Debtors or any Person with respect to any matter set forth herein. If Confirmation of the Plan or the Effective Date does not ultimately occur, no statement contained in the Plan or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding, or controversy within or outside of the Chapter 11 Case against the Debtors. The Debtors reserve any and all of its rights as against all Persons and Entities in the event Confirmation of the Plan or the Effective Date does not ultimately occur.

**8.3    Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in the Chapter 11 Case under §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

## 9.    CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

**9.1    Conditions to Confirmation.** As a condition precedent to the Confirmation of the Plan, the Confirmation Order shall be in form and substance reasonably acceptable to the Debtors.

40

**9.2    Conditions to Occurrence of Effective Date.** The following are conditions precedent to the occurrence of the Effective Date:

**9.2.1.** The Confirmation Order shall be a Final Order, except that the Debtors reserve the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

**9.2.2.** No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal;

**9.2.3.** All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonably acceptable to the Debtors;

**9.2.4.** Sufficient Cash and other assets are set aside, reserved, and withheld to make the distributions required by the Bankruptcy Code and the Plan.

**9.2.5.** All conditions precedent to the closing of the Las Vegas Sale, the Newport MIPA, including any required Sale Order, NOTL Resolution Documents, NOTL Resolution Order, equipment-obligation treatment, liquor-license or regulatory arrangement, and any other transaction designated by the Debtors as a condition to the Effective Date have been satisfied or waived; and

**9.2.6.** The Debtors, in its sole discretion, may waive the Final Order condition in Section 9.2.1 above at any time from and after the Confirmation Date. In that event, the Debtors will be entitled to render any or all performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived; including, but not limited to, the right to perform under any circumstances which would moot any appeal, review or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review or other challenge.

## 10.    EFFECT OF CONFIRMATION OF PLAN

**10.1    Discharge.** In conjunction with § 1141 of the Bankruptcy Code, except as otherwise provided for herein, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever against the Debtors, and of the assets or properties of the Estates, including any interest accrued on such Claims from and after the petition date. Without limiting the generality of the foregoing, except as provided in the Confirmation Order, confirmation discharges the Debtors from all claims, or other debts that arose before the Effective Date, and all debts of the kind specified in § 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (i) a proof of claim based on such a debt has been filed, or deemed to have been filed, under §§ 501 or 1111(a) of the Bankruptcy Code; (ii) a Claim based on such debt is allowed under § 502 of the Bankruptcy Code; or (iii) the holder of a Claim based on such debt has accepted the Plan. Except as otherwise provided in the Plan, (i) on the Effective Date, all Claims against the Debtors that arose before the Effective Date shall be satisfied, discharged and released in full, and (ii) all persons shall be precluded from asserting against the Debtors or any of their assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date, as well as any debt of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, irrespective

41

of whether (i) a proof of claim based on such a debt has been filed, or deemed to have been filed, under §§ 501 or 1111(a) of the Bankruptcy Code, (ii) such Claim is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of the claim has accepted the Plan. The discharge of the Debtors as set forth in the Plan shall not release or discharge the Debtors' Representatives from any personal obligations they may have to any Creditor under any personal guaranty or otherwise.

**10.2    Binding Effect of Plan/Injunction.** Upon the Effective Date, § 1141 of the Bankruptcy Code shall become applicable with respect to the Plan and the Plan shall be binding on all parties to the fullest extent permitted by § 1141(a) of the Bankruptcy Code. In accordance with § 1141 of the Bankruptcy Code, all property of the Estates shall vest in the applicable Reorganized Debtor or be transferred as provided under the Plan, free and clear of all claims, liens, and interests except as expressly provided in the Plan, the Confirmation Order, any Class 5 lease treatment, any Class 4 NFS treatment, any retained lien under the Plan, or any transaction-specific order. Upon the Effective Date, all persons and entities shall be permanently enjoined by the Plan from (i) commencing or continuing any action, employing any process, asserting or undertaking an act to collect, recover, or offset, directly or indirectly, any claim, rights, causes of action, liabilities, or interests in or against any property distributed or to be distributed under the Plan, or vested in the Debtors, based upon any act, omission, transaction, or other activity that occurred before the Effective Date, (ii) creating, perfecting or enforcing any lien or encumbrance against any property distributed or to be distributed under the Plan other than as permitted under the Plan, and (iii) without limiting the generality of the foregoing, asserting any claims against the Debtors based on successor liability or similar or related theory, except to the extent a person or entity holds an allowed claim under the plan and is entitled to a distribution and/or lien under the plan in accordance with its terms, and to enforce its rights to distribution under the Plan. On and after the Effective Date, each holder of any claim against or interest in the Debtors is permanently enjoined from taking or participating in any action that would interfere or otherwise hinder the Debtors from implementing the Plan, the Confirmation Order, or any operative documents in accordance with the terms thereof. The discharge of the Debtors as set forth in the Plan shall not release or discharge the Debtors' Representatives from any personal obligations they may have to any Creditor pursuant to any personal guaranty or otherwise.

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, nothing herein operates as a discharge, release, injunction, stay, impairment, or adjudication of any claim or remedy against any Non-Debtor Guarantor, co-obligor, surety, or other non-Debtor, or their property, absent a separate order of the Bankruptcy Court entered after notice and hearing. Any successor-liability protections for purchasers, assignees, or transferees arise solely from the applicable sale, assignment, MIPA, or other transaction-approval order, and nothing in this Section grants broader protection. Nothing herein limits the Debtors' or Reorganized Debtors' right to seek separate relief from the Bankruptcy Court, if necessary, to protect consummation of the Plan, centralized claim administration, or the transactions contemplated by the Plan. The Confirmation Order shall incorporate the foregoing limitations.

**10.3    Exculpation.** Neither the Debtors, the Reorganized Debtors, nor their respective court-approved professionals, officers, directors, managers, employees, or agents, solely in their capacities acting for the Debtors or Reorganized Debtors in connection with the Chapter 11 Cases, shall have or incur any liability to any Holder of a Claim against or Interest in the Debtors, or any other party in interest, for any act, omission, transaction, or other occurrence arising out of the Chapter 11 Cases, the formulation, solicitation, confirmation, and consummation of the Plan, or

42

the administration of the Plan, except solely to the extent such liability is based on fraud, gross negligence, or willful misconduct.

For the avoidance of doubt, and subject in all respects to Section 10.2, nothing in this Section exculpates any liability arising under any prepetition guaranty, judgment, or other non-Debtor obligation, including any obligation of Philip N. Kaplan or Leonard R. Wanger as Non-Debtor Guarantors. This exculpation applies only to conduct undertaken from the Petition Date through the Effective Date and through implementation of the Plan, and does not apply to post-Effective Date ordinary-course conduct except to the extent directly related to implementation of the Plan.

**10.4    Injunctions.**

**10.4.1  Injunction Protecting Exculpation.** All Holders of Claims against or Interests in the Debtors and any other parties in interest, together with their respective successors and assigns, are permanently enjoined, from and after the Effective Date, from commencing or continuing any action against the exculpated parties described in Section 10.3 to the extent such action seeks to impose liability for Exculpated Conduct. This injunction applies only to claims based on Exculpated Conduct and, subject in all respects to Section 10.2, shall not enjoin, stay, release, or impair any action against any Non-Debtor Guarantor on account of that Person's own guaranty obligations, judgment obligations, or other non-Debtor liabilities, except to the extent expressly provided by a separate order of the Bankruptcy Court entered after notice and hearing.

**10.4.2  Injunction in Aid of Performance of the Plan.** Nothing in this Plan shall itself constitute an injunction against prosecution or enforcement of any claim against any Non-Debtor Guarantor, including Philip N. Kaplan and Leonard R. Wanger. The foregoing preserves the requirements of separate motion practice and separate Court approval, but shall not be construed as a finding, admission, or concession that enforcement activity against a Non-Debtor Guarantor is harmless to the Debtors, the Estates, Plan feasibility, centralized Class 6 administration, or creditor recoveries. The Debtors and Reorganized Debtors expressly reserve the right to seek, by separate motion, contested matter, or adversary proceeding, temporary, enforcement-only, or other narrowly tailored relief under applicable law, including 11 U.S.C. § 105(a), to protect consummation of the Plan, implementation of the Las Vegas transaction and the Newport transaction, centralized administration and adjudication of Class 6 Claims, and value maximization for creditors. Any request for such relief shall be strictly limited to temporarily restraining acts to collect, execute upon, or enforce judgments or liens against Philip N. Kaplan or Leonard R. Wanger that would materially impair Plan consummation or centralized Class 6 administration, and shall not seek to enjoin prosecution or adjudication of liability against such Non-Debtor Guarantors. No such relief is granted by the Plan absent a separate order of the Bankruptcy Court entered after notice and hearing.

**10.5    Cash Collateral and Adequate Protection.** As of the Effective Date, all obligations of the Debtors under interim cash collateral and adequate protection orders shall terminate on the Effective Date, except to the extent any lien, payment, crediting, or other rights are expressly preserved under the Plan, the Confirmation Order, or applicable transaction-specific orders.

**10.6    Modification of Debt Instruments.** On the Effective Date, all instruments

43

evidencing indebtedness of the Debtors held by Holders of Claims that are Impaired by the Plan or have been paid in full pursuant thereto shall be deemed modified as against the Debtors as set forth in the Plan.

**10.7    Revesting of Assets in the Debtors.** Except as otherwise expressly provided herein, in the Confirmation Order, in any Sale Order, in any order approving the Newport MIPA, in any NOTL Resolution Documents approved by the Bankruptcy Court, or in any other transaction-specific order, on the Effective Date the applicable Reorganized Debtor shall vest with the remaining property of its Estate that has not been sold, transferred, assigned, or otherwise disposed of pursuant to a prior Court order, wherever situate, free and clear of all Claims, Liens, except for Liens provided or authorized pursuant to the Plan and Permitted Encumbrances. Without limiting the generality of the foregoing, on and after the Effective Date, the Debtors and Reorganized Debtors shall be vested with all of the property of the Estates, wherever situated, free and clear of any Claims based on any form of successor liability or similar or related theory of liability. On and after the Effective Date, (i) the Debtors shall be free of any restrictions imposed by the Bankruptcy Code or Bankruptcy Court, may operate its business and may use, acquire or dispose of its assets free of any restrictions imposed by the Bankruptcy Code and the Bankruptcy Rules and without supervision or approval by the Bankruptcy Court, other than the obligations set forth in the Plan, or the Confirmation Order. Without limiting the generality of the foregoing and except as otherwise expressly provided herein or in the Confirmation Order, any Causes of Action will be preserved and retained solely for the Debtors' commencement, prosecution, use and benefit.

On and after the Effective Date, the applicable Reorganized Debtor may operate its business and use, acquire, or dispose of its assets, subject to the Plan, Confirmation Order, any applicable Sale Order, the Newport MIPA, any NOTL Resolution Documents, and any other applicable Final Order.

**10.8    Preservation of Causes of Action.** Pursuant to § 1123(b) of the Bankruptcy Code, the Debtors shall retain and reserve the right to enforce all rights to commence and pursue Causes of Action whether arising prior to or after the Petition Dates, and whether pending as of or Filed after the Effective Date, in any court or other tribunal. Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtors on behalf of themselves expressly reserve all Causes of Action for later adjudication and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Causes of Action upon Confirmation or the Effective Date. No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that the Debtors will not pursue all available Causes of Action against them. The Debtors expressly reserve all rights to prosecute all Causes of Action against any Person, except as otherwise expressly provided in the Plan.

**10.9    Maintenance of Administrative Claim Status Post Discharge.** Notwithstanding any discharge granted to the Debtors, Allowed Administrative Claims shall maintain their administrative priority status under § 507(a)(2) of the Bankruptcy Code until paid in full.

**10.10    No Limitation on Effect of Confirmation.** Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth

44

in § 1141 of the Bankruptcy Code. Confirmation will bind the Debtors, all Creditors, Equity Interest Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Equity Interest of such Creditor or Equity Interest Holder is Impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted the Plan and whether or not a proof of Claim or Equity Interest has been filed or deemed to have been filed under §§ 501 or 1111(a) of the Bankruptcy Code, or such Claim or Equity Interest is allowed under § 502 of the Bankruptcy Code.

## 11.   RETENTION OF JURISDICTION

**11.1    Retention of Jurisdiction.** Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by the Debtors, or the parties specified herein:

**11.1.1.** To hear and determine any objections to the allowance of Claims, including any objections by the Debtors with respect to any Claims which have been reinstated or assumed in accordance with the terms of the Plan;

**11.1.2.** To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under the Plan and applicable provisions of the Bankruptcy Code;

**11.1.3.** To determine any and all applications for the rejection or assumption and assignment of Executory Contracts or for the rejection or assumption and assignment, as the case may be, of Unexpired Leases to which the Debtors is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom;

**11.1.4.** To modify the Plan pursuant to § 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

**11.1.5.** To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of the Plan;

**11.1.6.** To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in the Chapter 11 Case;

**11.1.7.** To adjudicate all controversies concerning the classification of any Claim;

**11.1.8.** To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

**11.1.9.** To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof;

**11.1.10.** To adjudicate all Claims or controversies arising out of any purchases,

sales or contracts made or undertaken by the Debtors;

**11.1.11.** To determine all questions and disputes regarding recovery of and entitlement to any property of the Debtors, or in any proceeds thereof;

**11.1.12.** To adjudicate all Causes of Action with respect to which the Debtors is a party, whether or not such Claim or controversy is raised or filed before or after the Effective Date;

**11.1.13.** To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to the Plan;

**11.1.14.** To enter any order, including injunctions, necessary to enforce the rights, titles, powers, limitations, restrictions, and terms and conditions of the Plan and the Confirmation Order with respect to the Debtors and Reorganized Debtors as the Bankruptcy Court may deem necessary or appropriate;

**11.1.15.** To determine such other matters as may be provided for in the Confirmation Order and the Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

**11.1.16.** To enter a Final Decree closing the Chapter 11 Case;

**11.1.17.** To enforce the provisions of any Administrative Claim Bar Date entered by the Bankruptcy Court;

**11.1.18.** To make such orders as are necessary or appropriate to carry out the provisions of the Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof;

**11.1.19.** To determine issues and disputes with respect to the Las Vegas Sale, the Newport MIPA, the Class 5 Leases, and any other transaction documents arising after the Effective Date; and

**11.1.20.** Without limiting the generality of any of the foregoing, to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 345, 505, and 1146 of the Bankruptcy Code.

**11.1.21**. To hear and determine all disputes concerning the allowance, estimation, reconciliation, limitation, reduction, crediting, or satisfaction of any Class 6 Claim, including disputes concerning deposits, prepaid rent, mitigation or reletting, insurance proceeds, third-party recoveries, payments by guarantors, garnishment proceeds, and other amounts received on account of the same underlying lease obligations.

**11.1.22.** To hear and determine any motion seeking temporary, enforcement-only injunctive or similar protective relief that is narrowly tailored and necessary to prevent immediate and irreparable harm to the feasibility or consummation of the Plan, the implementation of the Las Vegas transaction or the Newport transaction, or the Bankruptcy Court's centralized administration and adjudication of Class 6 Claims; provided that no such relief shall arise by virtue of the Plan itself absent a separate order after notice and hearing.

46

**11.1.23.** To hear and determine all matters concerning Non-Debtor Guarantors' Plan Contributions to the extent they affect Plan feasibility, implementation, reserves, or payments required under the Plan, including availability, sufficiency, timing, and application for Plan purposes; provided that nothing herein authorizes adjudication of any independent liability of any non-Debtor or grants any injunctive or other relief absent a separate order after notice and hearing.

**11.1.24**. To enter such other orders as are necessary or appropriate to preserve centralized claim administration, protect Plan consummation, and implement the transactions contemplated by the Plan, to the extent consistent with applicable law and only upon separate notice and hearing where required.

**11.2    Jurisdiction Unaffected.** The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article 11 or the Confirmation Order.

**11.3    Failure of Bankruptcy Court to Exercise Jurisdiction.** If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising under, arising in or related to the Bankruptcy Case, including any of the matters set forth in the Plan, the Plan shall not prohibit or limit the exercise of jurisdiction by any other court of competent jurisdiction with respect to such matter.

**11.4 Savings Clause.** Nothing in this Article 11 expands the Bankruptcy Court's jurisdiction beyond that conferred by applicable law or grants any release, discharge, injunction, stay, or adjudication of any non-Debtor obligation absent a separate order of the Bankruptcy Court entered after notice and hearing.

## 12.    MISCELLANEOUS PROVISIONS

### 12.1    Modification of the Plan.

**12.1.1** The Debtors may alter, amend or modify the Plan at any time before the entry of the Confirmation Order, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with § 1125 of the Bankruptcy Code. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modifies the Plan before Confirmation.

**12.1.2** The Debtors may also seek to alter, amend or modify the Plan at any time after Confirmation so long as (i) the Plan has not been substantially consummated, (ii) as altered, amended or modified the Plan satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and (iii) the Bankruptcy Court authorizes the proposed modification after notice and a hearing under § 1129 of the Bankruptcy Code.

**12.1.3** A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder. Prior to the Effective Date, the Debtors may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Equity Interest.

47

**12.1.4** The Debtors further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**12.1.5** The Debtors reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan before or after the Confirmation Date, including making any amendments or modifications to satisfy the requirements of § 1129(b) of the Bankruptcy Code, if necessary.

**12.2    Notices.** Except as otherwise set forth below, all notices, requests, elections or demands in connection with the Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under the Plan, shall be in writing and shall be delivered by electronic mail and addressed to both of the following:

**If to Debtors:**          Velocity Esports Inc., et al.
                            Attn: Philip Kaplan
                            philk@deervalleyventures.com
                            Attn: Leonard Wanger
                            len_wanger@hotmail.com

**With a Copy to:**         Nevada Bankruptcy Attorneys LLC
                            Attn: Matthew I. Knepper, Esq.
                            5940 S. Rainbow Blvd., Ste 400
                            PMB 99721
                            Las Vegas, Nevada 89118
                            Email: mknepper@nvbankruptcyattorneys.com

**12.2.1.** All notices and requests to Holders of Claims of any Class shall be sent to them at their known address. Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt. The address in a Holder's filed proof of claim shall be deemed an appropriate address unless an updated address is provided to the Debtors in writing.

**12.3    Headings.** The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

**12.4    Nonseverability of Plan Provisions.** If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of the Debtors and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing,

48

is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and any other Person affected by such provision; and (c) nonseverable and mutually dependent.

12.5    **Waiver or Estoppel.** Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or its counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

12.6    **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any contract, instrument, release or other agreement entered into in connection with the Plan or in any document which remains unaltered by the Plan, the rights, duties and obligations of the Debtors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada without giving effect to Nevada's choice of law provisions.

12.7    **Successors and Assigns.** The rights and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

12.8    **Modification of Payment Terms.** The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim or Allowed Equity Interest in any manner adverse only to the holder of such Allowed Claim or Allowed Equity Interest at any time after the Effective Date upon the prior written consent of the holder whose Allowed Claim or Allowed Equity Interest treatment is being adversely affected.

12.9    **Effectuating Documents; Further Transactions; Timing.** The Debtors and the Reorganized Debtors are each authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued, transferred or canceled pursuant to the Plan. All transactions that are required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously. The Debtors and the Reorganized Debtors are authorized and directed to do such acts and execute such documents as are necessary to implement the Plan.

12.10    **Exemption from Transfer Taxes.** Pursuant to § 1146(c) of the Bankruptcy Code, (i) the issuance, distribution, transfer or exchange of Estates' property; (ii) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, or connection with the Plan or the Confirmation Order; (iii) the making, assignment, modification or recording of any lease or sublease; or (iv) the making, delivery or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by or in any way related to the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment and the appropriate state or local government

49

officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.11  Post Confirmation Conversion or Dismissal.** A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Cases under § 1112(b) of the Bankruptcy Code, after the Plan is confirmed, if there is a material, continuing and uncured default in performance of the Plan or if cause exists under § 1112(b) of the Bankruptcy Code. If the Bankruptcy Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Estates, and that has not been disbursed or distributed pursuant to the Plan, will revest in the Chapter 7 Estates, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during these Chapter 11 Cases. In addition, any Allowed Administrative Claims which are not paid on the Effective Date shall continue to be entitled to administrative priority under § 507(a)(2) of the Bankruptcy Code in any such subsequent Chapter 7 case to which this case is converted.

**12.12  Cramdown.** If any impaired Class is determined to have rejected the Plan in accordance with § 1126 of the Bankruptcy Code, the Debtors may invoke the provisions of § 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of the Plan. The Debtors reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires modification.

**12.13  Fees and Reporting to the United States Trustee.** Prior to the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors, are obligated to pay the Office of the U.S. Trustee all U.S. Trustee Fees. All U.S. Trustee Fees that accrue prior to Confirmation of the Plan will be paid on or before the Effective Date pursuant to § 1129(a)(12) of the Bankruptcy Code. All U.S. Trustee Fees accruing post-confirmation are due on a calendar quarter basis and will be reported on post-confirmation operating reports as required by the U.S. Trustee Guidelines.

**12.14  Post Confirmation Reports and Quarterly Fees.** Until the entry of the final decree, the Debtors shall File, not later than twenty (20) days after the end of the calendar quarter which occurs after the entry of the Confirmation Order, and every three (3) months thereafter, a report of the action taken by the Reorganized Debtors and the progress made toward consummation of the confirmed Plan. U.S. Trustee Fees continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to Final Decree.

/ / /

**12.15  Entire Agreement.** The Plan, as described herein, the Disclosure Statement and exhibits thereto, set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto may rely on or shall be bound by any terms, conditions, definitions, warrants, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed by the parties in writing.

Submitted by:

| Debtors: | NEVADA BANKRUPTCY ATTORNEYS LLC |
|---|---|
| /s/ *Philip Kaplan* | /s/ *Matthew I. Knepper* |
| Philip Kaplan, Manager<br>Jointly Administered Debtors | Matthew I. Knepper, Esq.<br>Nevada Bar No. 12796<br>*Counsel for Jointly Administered Debtors* |

**SCHEDULE 1.1.44**

**PRESERVED LITIGATION CLAIMS**

All defined terms used herein shall have the meanings set forth in the Plan. The following is a non-exhaustive list of potential parties against whom the Debtors, and/or the Reorganized Debtors, may hold Litigation Claims. The Debtors and the Reorganized Debtors reserve the right to modify this list to amend or add parties or causes of action but disclaim any obligation to do so. In addition to the Litigation Claims listed below, the Debtors and Reorganized Debtors have or may have, in the ordinary course of their business, numerous causes of action and claims or rights against contractors, vendors, suppliers, and others with whom they deal in the ordinary course of their business (the "Ordinary Course Claims"). The Debtors and the Reorganized Debtors reserve their right to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) the Ordinary Course Claims, as well as the Litigation Claims listed below and all other claims and causes of action. The Debtors and the Reorganized Debtors also have, or may have, and are retaining, various claims or causes of action arising under or pursuant to their insurance policies, and all rights arising under, relating to, or in connection with such policies are expressly reserved and retained. Additionally, the following Litigation Claims held by the Debtors are expressly reserved and retained:

1. All actions or claims asserted against the Debtors or the Reorganized Debtors by any Person asserting a personal injury or loss claim.

2. All actions relating to any tax refunds due and owing to the Debtors.

3. Avoidance Actions and Litigation Claims arising out of or in connection with the Debtors' business, property, or operations.

4. All other rights, privileges, claims, actions, or remedies, whether arising at law or in equity.

**SCHEDULE 5.1**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED, CONTINUED, OR OTHERWISE NOT DEEMED REJECTED**

| Counterparty | Description | Cure |
|---|---|---|
| SRMF Town Square Owner LLC | Nonresidential real property lease for the Las Vegas venue. This lease shall not be deemed rejected by the Plan. Treatment shall be governed by Section 3.7 (Class 5) and the applicable Las Vegas transaction documents and Bankruptcy Court order, including any order approving continuation, assumption and assignment, replacement lease, or other consensual transfer structure. | Cure / arrearage amount, if any, shall be determined by agreement of the parties or by Final Order entered in connection with the Las Vegas transaction. |
| NOTL Property Owner LLC | Newport lease / occupancy arrangement with NOTL Property Owner LLC, including any existing Newport lease documents, Second Amendment, new lease, amended-and-restated lease, replacement lease, use-and-occupancy agreement, landlord consent, Rule 9019 settlement, guaranty, estoppel, acknowledgment, release, or other NOTL Resolution Documents approved by the Bankruptcy Court. This listing prevents any surviving rights or Court-approved NOTL Resolution Documents from being deemed rejected by operation of Section 5 of the Plan, but does not constitute a determination that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4). Treatment shall be governed by Section 3.7 (Class 5), the Newport MIPA, the NOTL Resolution Documents, and the applicable Newport transaction documents and Bankruptcy Court order. | Cure, arrearage, Landlord Resolution Amount, settlement amount, use-and-occupancy amount, replacement-lease amount, or other landlord-related amount, if any, shall be determined by agreement of the parties or by Final Order entered in connection with the Newport MIPA, NOTL Resolution Documents, or other Newport transaction approval process. If the original NOTL lease was deemed rejected, such amounts shall not be characterized as Cure unless NOTL expressly agrees and the Bankruptcy Court approves that characterization. |