MATTHEW I. KNEPPER, ESQ.
Nevada Bar No. 12796
BRENDEN J. GOUGEON, ESQ.
Nevada Bar No. 16874
**NEVADA BANKRUPTCY ATTORNEYS LLC**
5940 S. Rainbow Blvd. Ste 400
PMB 99721
Las Vegas, Nevada 89118
Telephone: (702) 805-1659
Fascimile: (702) 805-1659
E-mail: mknepper@nvbankruptcyattorneys.com
E-mail: bgougeon@nvbankruptcyattorneys.com

*Counsel for Jointly Administered Debtors*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>VELOCITY ESPORTS, INC.,<br><br>☐  Affects Velocity Esports, Inc.<br>☐  Affects Velocity Esports Las Vegas Town Square, LLC<br>☐  Affects Velocity Esports Chicago Schaumburg, LLC<br>☐  Affects Velocity Esports Newport Kentucky, LLC<br>☐  Affects Velocity Esports Orlando Downtown, LLC<br>■ Affects All Debtors<br><br>Debtors. | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11 |

**DISCLOSURE STATEMENT TO ACCOMPANY**
**DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION #2**

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659  Fax: (702) 805-1659

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...............................................................................................................1

II.   INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT.........................................................................................................3

III.  GENERAL OVERVIEW OF THE PLAN ..........................................................................4

      A.   General Overview. ....................................................................................................4
      B.   Treatment of Unclassified Claims. ...........................................................................4

           1.   Administrative Claims. ...................................................................................4
           2.   Priority Tax Claims..........................................................................................5

      C.   Class 1: Newtek Bank, N.A. Secured Claims..............................................................5
      D.   Class 2A: Las Vegas Secured Equipment Lenders.....................................................6
      E.   Class 2B: Newport Secured Equipment Lenders........................................................6
      F.   Class 3: Equipment Lessors and Executory Equipment Contracts for Collateral Located at VES LV. ................................................................................7
      G.   Class 4: Allowed Claims of NFS Capital, LLC.........................................................7
      H.   Class 5: Continuing Landlord Claims........................................................................8
      I.   Class 6: Legacy Landlord Lease Claims...................................................................10
      J.   Class 7: Insider Secured Claims. .............................................................................10
      K.   Class 8: General Unsecured Claims.........................................................................11
      L.   Class 9: Equity Interests..........................................................................................12
      M.   Other Miscellaneous Provisions. ............................................................................12

IV.   SUMMARY OF VOTING PROCESS.................................................................................13

      A.   Who May Vote to Accept or Reject the Plan............................................................13
      B.   Summary of Voting Requirements. ..........................................................................13

V.    INFORMATION ABOUT DEBTOR'S BUSINESS AND CHAPTER 11 CASE ..............................................................................................................................14

      A.   Corporate Structure and Operation. ........................................................................14
      B.   Current Operating Business. ...................................................................................14
      C.   Events Leading to the Chapter 11 Filings................................................................15
      D.   Capital Structure and Secured Debt.........................................................................15
      E.   Status of the Chapter 11 Cases................................................................................15

VI.   DETAILED DESCRIPTION OF THE PLAN .....................................................................16

      A.   Means of Implementing the Plan. ............................................................................16

           1.   Reorganized Debtors......................................................................................16
           2.   Las Vegas Transaction and Newport MIPA ...................................................16
           3.   Non-Debtor Guarantors' Plan Contributions.................................................17
           4.   Notice of Effectiveness. ................................................................................17
           5.   Ongoing Management....................................................................................17

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

B.      Executory Contracts and Unexpired Leases. ..................................................17

     1.      Executory Contracts and Unexpired Leases. ...........................................17
     2.      Approval of Assumption or Rejection. .....................................................17
     3.      Cure of Defaults. ......................................................................................18
     4.      Objection to Cure Amounts. .....................................................................18
     5.      Confirmation Order. ..................................................................................19
     6.      Post-Petition Date Contracts and Leases. .................................................19
     7.      Bar Date for Rejection Damages Claims. .................................................19

C.      Manner of Distribution of Property Under the Plan. .....................................19
D.      Conditions to Confirmation of the Plan. ........................................................19

     1.      Conditions to Confirmation. .....................................................................19
     2.      Conditions to Effectiveness. .....................................................................20
     3.      Waiver of Conditions. ...............................................................................20

VII.    RISK FACTORS ...................................................................................................20

A.      The Debtors Have No Duty to Update. ...........................................................20
B.      Information Presented is Based on the Debtors' Books and Records
     and is Unaudited. ............................................................................................20
C.      Projections and Other Forward-Looking Statements are Not
     Assured and Actual Results Will Vary. ..........................................................21
D.      No Legal or Tax Advice is Provided to You by this Disclosure
     Statement. ........................................................................................................21
E.      No Admissions Made. .....................................................................................21
F.      No Waiver of Right to Object or to Recover Transfers and Estate
     Assets. .............................................................................................................21
G.      Bankruptcy Law Risks and Considerations. ..................................................21

     1.      Confirmation of the Plan is Not Assured. .................................................21
     2.      The Effective Date Might Be Delayed or Never Occur. ...........................22
     3.      Risk Relating to Newport Lease Status and Newport
         Occupancy. ................................................................................................22
     4.      Risk Relating to Approval of the Newport MIPA. ...................................22
     5.      Risk Relating to Proposed Insider Allocation Under the
         Newport MIPA. .........................................................................................22
     6.      Risk Relating to Liquor License and Regulatory Operations.
         ....................................................................................................................23
     7.      Allowed Claims in the Various Classes May Exceed
         Projections. ................................................................................................23
     8.      No Representations Outside of this Disclosure Statement
         Are Authorized. .........................................................................................23

H.      Risks Related to the Debtors' Business Operations. ......................................23

     1.      Effect of the Chapter 11 Cases. ................................................................24
     2.      Material Dependence on Critical Transactions and
         Stakeholder Support. ..................................................................................24
     3.      Volatility in Demand for Discretionary Consumer
         Entertainment Services. .............................................................................25
     4.      Risks Relating to Legacy Landlord Disputes, Guarantor
         Exposure, and Liquidity Strain. ................................................................25

ii

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

| | | |
|---|---|---|
| 5. | Management Concentration and Limited Margin for Operational Disruption | 25 |
| 6. | Risk Relating to Liquor License and Regulatory Operations | 26 |

VIII.   POST EFFECTIVE DATE OPERATIONS AND PROJECTIONS ...... 26

A.   Summary of Title to Property and Dischargeability. ...... 26

| | | |
|---|---|---|
| 1. | Vesting of Assets. | 26 |
| 2. | Preservation of Avoidance Actions and Litigation Claims | 26 |
| 3. | Discharge. | 27 |
| 4. | Binding Effect of Plan/Injunction. | 27 |
| 5. | Exculpation. | 28 |
| 6. | Injunction Protecting Exculpation. | 28 |
| 7. | Injunction in Aid of Performance of the Plan. | 29 |

B.   Post-Confirmation Reporting and Quarterly Fees to the U.S. Trustee ...... 29
C.   Certain Federal Income Tax Consequences. ...... 29
D.   Projections ...... 30

IX.   CONFIRMATION OF THE PLAN ...... 30

A.   Confirmation of the Plan. ...... 30
B.   Objections to Confirmation of the Plan. ...... 31

| | | |
|---|---|---|
| 1. | Best Interest of Creditors and Liquidation Analysis. | 31 |
| 2. | Feasibility. | 33 |
| 3. | Accepting Impaired Class. | 34 |
| 4. | Acceptance of Plan. | 34 |
| 5. | Confirmation Over a Dissenting Class. | 34 |

C.   Allowed Claims. ...... 34
D.   Impaired Claims and Equity Interests. ...... 35
E.   Plan Modification. ...... 35
F.   Final Decree. ...... 36
G.   Voting Procedures. ...... 36

| | | |
|---|---|---|
| 1. | Submission of Ballots. | 36 |
| 2. | Incomplete Ballots. | 36 |
| 3. | Withdrawal of Ballots. | 36 |
| 4. | Questions and Lost or Damaged Ballots. | 37 |

X.   ALTERNATIVES TO THE PLAN ...... 37

A.   Debtors' Considerations. ...... 37
B.   Alternative Plans of Reorganization. ...... 37
C.   Liquidation Under Chapter 7. ...... 38

XI.   AVOIDANCE ACTIONS ...... 39

XII.   RECOMMENDATION AND CONCLUSION ...... 40

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

**APPENDIX**

Exhibit "1"              Feasibility / Liquidation Analysis

## I.    INTRODUCTION

Velocity Esports, Inc., Velocity Esports Las Vegas Town Square, LLC, Velocity Esports Chicago Schaumburg, LLC, Velocity Esports Newport Kentucky, LLC, and Velocity Esports Orlando Downtown, LLC (collectively, the "Debtors") are the debtors and debtors in possession in these jointly administered chapter 11 cases. Velocity Esports, Inc. is the holding company for the Debtors' venue-level entities. The Debtors were formed to develop and operate destination-based esports, arcade, bowling, food, beverage, and entertainment venues.

From inception, the Debtors pursued a rapid-growth strategy. Two venues—Newport, Kentucky and Las Vegas, Nevada—opened within the Company's first year and historically represented the Debtors' core operating assets. During these Chapter 11 Cases, the Las Vegas business was sold through a Court-approved transaction that closed on May 8, 2026, and Newport remains the Debtors' remaining operating venue and principal going-concern asset. Newport began operating in March 2022 and later expanded to include bowling. The Las Vegas flagship opened in October 2022. According to the Debtors' principal, the Las Vegas and Newport venues were historically operationally stable or near-profitable, and management believes that preservation or transfer of the remaining Newport business as a going concern offers the best potential recovery for creditors.

The Debtors' growth plan did not unfold as originally intended. The Debtors incurred substantial non-recurring startup debt while building infrastructure for a four-unit system. At the same time, labor costs, equipment costs, construction costs, and the cost of capital increased materially. The Debtors' Chicago expansion at Woodfield Mall encountered delayed possession, undisclosed fire and HVAC damage, code-related repair issues, and increased competitive pressure. Those problems made the Schaumburg location the Debtors' largest source of capital drain and ultimately led to the cessation of Chicago operations on March 13, 2025.

The Debtors' Orlando expansion likewise failed to mature into an operating venue. Although plans and approvals were completed, capital that had been earmarked for Orlando was consumed by Schaumburg overruns, and the projected build-out cost increased dramatically. The Orlando lease was later terminated, but disputes with the Orlando landlord and litigation against the Non-Debtor Guarantors followed. The Debtors contend that continued decentralized litigation over those legacy landlord claims would impair restructuring efforts, divert management time, and reduce the liquidity otherwise available to support plan consummation.

Against that backdrop, the Debtors commenced these chapter 11 cases on May 7, 2025 (the "Petition Date"), in the United States Bankruptcy Court for the District of Nevada, commencing case number 25-12627-mkn and the related jointly administered cases 25-12628-mkn, 25-12629-mkn, 25-12630-mkn, and 25-12631-mkn (collectively, the "Chapter 11 Cases"). The Debtors have continued to operate their businesses and manage their affairs as debtors in possession pursuant to sections 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code").

These Chapter 11 Cases are jointly administered for procedural convenience only. The Debtors are not substantively consolidated. Except as may be expressly provided in the Plan or in a separate final order of the Bankruptcy Court, each Debtor remains a separate legal entity, each Debtor's estate remains separate, each claim remains against the applicable Debtor or Debtors obligated thereon, and no creditor shall be required to look to a different Debtor for payment solely by reason of joint administration.

During these Chapter 11 Cases, the Debtors negotiated and obtained approval of a

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

compromise with NFS Capital, LLC that restructured the Debtors' obligations relating to the former Schaumburg equipment lease and redeployed certain equipment to the Las Vegas and Newport venues. The Las Vegas Sale has closed and is treated as a secured-debt reduction and creditor-payment transaction rather than a source of unrestricted operating liquidity. The Debtors are also pursuing a Newport membership-interest transaction (the "Newport MIPA"), together with the application of sale proceeds and transaction value to secured debt, most significantly the claim of Newtek Bank, N.A. The Debtors' proposed restructuring remains materially dependent upon final reconciliation of the Las Vegas Sale, approval and closing of the Newport MIPA, approval and performance of the NOTL Resolution Documents, and continued support, cooperation, and plan-funding contributions from Philip N. Kaplan and Leonard R. Wanger in their capacities as non-debtor guarantors.

The Newport MIPA remains subject to Bankruptcy Court approval and is intended to address the membership-interest sale of Velocity Esports Newport Kentucky, LLC. The Newport MIPA is not a direct sale of Newport assets and does not, by itself, assume, assign, revive, reinstate, cure, modify, or continue any nonresidential real property lease. The Company's post-closing right to occupy and operate at Newport on the Levee will depend on the Newport MIPA, any final written agreement with NOTL Property Owner LLC, including any new lease, amended-and-restated lease, replacement lease, lease amendment, landlord consent, use-and-occupancy agreement, settlement agreement, guaranty, estoppel, acknowledgment, release, or related agreement approved by the Bankruptcy Court, and any applicable order approving the Newport MIPA, any order approving a compromise under Bankruptcy Rule 9019, any order approving the Company's post-closing occupancy rights, or any other related transaction-approval order entered by the Bankruptcy Court.

The Debtors filed their Joint Chapter 11 Plan of Reorganization #2 on May 28, 2026 (as may be amended, supplemented, or modified, the "Plan"). ECF No. 284. This Disclosure Statement (as may be amended, supplemented, or modified, the "Disclosure Statement") is submitted pursuant to section 1125 of the Bankruptcy Code to provide holders of Claims and Equity Interests with information concerning the Debtors, the Chapter 11 Cases, and the Plan, and to solicit acceptances of the Plan from those holders entitled to vote.

The Plan and this Disclosure Statement should be read together. The exhibit to this Disclosure Statement are incorporated into and made a part of this Disclosure Statement. Before the Effective Date, the Debtors will ensure that all required monthly operating reports have been filed. The Debtors will also timely file all post-confirmation reports and pay all quarterly fees required by the Office of the United States Trustee until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

After reviewing the Disclosure Statement and the Plan, any interested party desiring further information may contact:

NEVADA BANKRUPTCY ATTORNEYS, LLC
Attn: Matthew I. Knepper, Esq.
5940 S. Rainbow Blvd., Suite 400
PMB 99721
Las Vegas, Nevada 89118
(702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com

2

Interested parties may also obtain information from the Bankruptcy Court through PACER or from the Clerk of the United States Bankruptcy Court for the District of Nevada.

## II.    INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT

The objective of these Chapter 11 Cases is confirmation of the Plan. The Plan describes in detail the means for satisfying Claims against, and Equity Interests in, the Debtors. After the Plan has been filed and approved for solicitation, holders of impaired Claims that are entitled to vote may accept or reject the Plan in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and any solicitation procedures approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide sufficient information to enable creditors and other parties in interest to make an informed judgment about the Plan. After ballots are tabulated, the Bankruptcy Court will conduct a hearing to determine whether the Plan satisfies the applicable requirements for confirmation, including section 1129 of the Bankruptcy Code. At that hearing, the Bankruptcy Court will consider, among other things, whether the Plan has been accepted by the requisite classes, whether the Plan is feasible, whether creditors will receive at least as much under the Plan as they would in a hypothetical chapter 7 liquidation, and whether the Plan complies with other confirmation standards.

**THIS DISCLOSURE STATEMENT IS NOT THE PLAN. FOR THE CONVENIENCE OF CREDITORS AND OTHER PARTIES IN INTEREST, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN SHALL CONTROL.**

Unless otherwise specifically noted, the financial information contained in this Disclosure Statement has not been audited. The Disclosure Statement was prepared from the Debtors' books, records, schedules, claims register information, and information supplied by management in the ordinary course of the Debtors' business.

The Debtors have attempted to be accurate in the preparation of this Disclosure Statement. No person has been authorized to provide any information or make any representation concerning the Debtors or the Plan other than the information contained in this Disclosure Statement, the Plan, the exhibits thereto, and the pleadings of record in these Chapter 11 Cases. Accordingly, parties should not rely on any information relating to the Debtors or the Plan other than the information contained in those materials.

Capitalized terms used but not otherwise defined in this Disclosure Statement shall have the meanings ascribed to them in the Plan. Unless otherwise indicated, references to sections are references to sections of the Bankruptcy Code. To the extent any capitalized term is not defined in this Disclosure Statement or in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, such term shall have the meaning assigned to it there.

As stated above, these Chapter 11 Cases are jointly administered but not substantively consolidated. The joint administration of the cases is intended to reduce expense and duplication by using a consolidated docket, common captioning, and coordinated noticing. It is not intended to merge the Debtors' estates, reallocate assets among estates, or alter the substantive rights of creditors except to the extent expressly provided in the Plan or in another final order of the

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

3

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

Bankruptcy Court.

## III. GENERAL OVERVIEW OF THE PLAN

### A. General Overview.

The following is a general overview of the provisions of the Plan and is qualified in its entirety by reference to the Plan itself. The Plan contemplates, among other things, (a) the application of Park City property sale proceeds, Las Vegas transaction proceeds, and, to the extent provided in any applicable Sale Order, Newport MIPA proceeds to the Newtek claim; (b) final reconciliation and implementation of the closed Las Vegas Sale and preservation or transfer of the Newport business through the Newport MIPA; (c) the continued treatment of the NFS obligations under the approved settlement structure; (d) the treatment of the assigned Las Vegas landlord relationship and the Newport lease / occupancy relationship through any applicable NOTL Resolution Documents; and (e) the centralized resolution and payment over time of the disputed Orange and Woodfield legacy landlord claims. The Plan's treatment of each Class of Claims is summarized in the following table:

| Class | Description | Treatment |
|-------|-------------|-----------|
| Class 1 | Newtek Bank, N.A. Secured Claims | Impaired. Solicitation required. |
| Class 2A | Las Vegas Secured Equipment Lenders | No known unpaid Allowed Claim. No solicitation required unless a Class 2A Claim is later Allowed. |
| Class 2B | Newport Secured Equipment Lenders | Impaired. Solicitation required. |
| Class 3 | Equipment Lessors and Executory Equipment Contracts for Collateral Located at VES LV | Unimpaired except as otherwise provided. No solicitation required. |
| Class 4 | Allowed Claims of NFS Capital, LLC | Impaired. Solicitation required. |
| Class 5 | Continuing Landlord Claims | Impaired. Solicitation required. |
| Class 6 | Legacy Landlord Lease Claims | Impaired. Solicitation required. |
| Class 7 | Insider Secured Claims | Impaired. No Distribution. Deemed to reject. |
| Class 8 | General Unsecured Claims | Impaired. No distribution. Deemed to reject. |
| Class 9 | Equity Interests | Impaired. No distribution. Deemed to reject. |

To the extent there is any inconsistency between the summary table and the class-specific provisions of the Plan, the class-specific provisions of the Plan shall control.

### B. Treatment of Unclassified Claims.

#### 1. Administrative Claims.

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims are not

classified. Holders of Administrative Claims are not entitled to vote on the Plan. Each Allowed Administrative Claim shall be paid by the Reorganized Debtors, or otherwise satisfied according to its terms, on the latest of: (a) the Effective Date or as soon thereafter as practicable; (b) such date as may be fixed by the Bankruptcy Court; (c) the fourteenth (14th) Business Day after such Claim becomes Allowed; or (d) such other date as may be agreed by the holder of the Administrative Claim and the Reorganized Debtors.

The deadline for filing requests for allowance and payment of Administrative Claims, including final applications for Professional Fees, is thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. The Debtors currently estimate unpaid Administrative Claims, including Professional Fees and unpaid quarterly fees due to the United States Trustee, to be approximately $380,000.00 in restructuring professional payments projected in the Feasibility / Liquidation Analysis, plus U.S. Trustee quarterly fees projected at $39,741.00 during the initial implementation period, exclusive of post-Effective Date fees and subject to final fee applications, objections, Court approval, and further reconciliation. However, nothing in this Disclosure Statement or the Plan prevent approval of restructuring professionals from seeking approval of any interim fee application(s).

### 2.      Priority Tax Claims.

Priority Tax Claims, if any, are also unclassified and are not entitled to vote on the Plan. The Plan provides that each Allowed Priority Tax Claim will be paid in full by the Reorganized Debtors, with any required interest under section 511 of the Bankruptcy Code, in twelve (12) equal quarterly installments over four (4) years, and in all events within five (5) years after the Petition Date, unless the holder of such claim agrees to different treatment.

### C.      Class 1: Newtek Bank, N.A. Secured Claims.

<u>Claims in Class</u>. Class 1 consists of the Allowed Secured Claim of Newtek Bank, N.A. arising under the SBA promissory note and related loan documents. According to the Plan, Newtek asserts a claim in the amount of $2,486,502.27, subject to reconciliation, credits, and allowance. The Newtek obligations are secured by, among other things, deeds of trust against certain Park City, Utah properties and blanket security interests in substantially all assets of the applicable Debtors, subject to any superior purchase-money or statutory liens.

<u>Treatment</u>. The Plan provides that the Newtek claim will be satisfied through the application of net proceeds from the sale of the Park City Properties and the net cash proceeds from the Las Vegas transaction, after payment of costs of sale and satisfaction of senior or prior-in-right liens. To the extent the Sale Order approving the Newport MIPA determines that any net Cash proceeds of the Newport MIPA constitute proceeds of Newtek's collateral or are otherwise payable to Newtek, such proceeds shall be applied to Newtek's Allowed Secured Claim in the manner and to the extent provided in the Sale Order. Nothing in the Plan constitutes a determination of the validity, priority, extent, attachment, perfection, or enforceability of any lien, claim, encumbrance, or interest asserted by Newtek or any other party against the Seller Interest in Velocity Esports Newport Kentucky, LLC or any proceeds thereof.

<u>Release of Liens</u>. Upon payment in full, Newtek's liens against property of the Debtors' estates will be released.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

Impairment and Voting. Class 1 Claims are Impaired. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

**D.       Class 2A: Las Vegas Secured Equipment Lenders.**

Claims in Class. Class 2A consists of any Allowed Secured Claims of non-insider equipment lenders secured by equipment located at or used by the VES Las Vegas venue that are not otherwise classified or treated under the Plan. The Debtors are not presently aware of any unpaid Allowed Class 2A Claim. The scheduled Betson Enterprises / H. Betti Industries obligation previously identified in connection with Las Vegas equipment, in the amount of $7,003.63 as of the Petition Date, has been paid in full postpetition in the ordinary course and/or pursuant to the applicable obligation terms. The Debtors therefore do not anticipate any distribution under the Plan on account of Class 2A. To the extent any Class 2A Claim is later Allowed, such Claim shall be treated in accordance with the Plan and any applicable order of the Bankruptcy Court.

Retention of Liens. Until payment in full of the Allowed Class 2A Claims, Claim Holders shall retain any and all Liens in and to their collateral to the extent provided in the applicable loan documents.

Treatment. Under the Plan, each Allowed Class 2A Claim will be satisfied from the net proceeds of asset sales approved under section 363 of the Bankruptcy Code, including the Las Vegas transaction, after payment of costs of sale and any liens or interests entitled to priority. Any deficiency remaining after the application of sale proceeds shall be treated as a General Unsecured Claim.

Impairment and Voting. The Debtors do not presently anticipate that any Holder of a Class 2A Claim will be entitled to receive a distribution under the Plan or vote to accept or reject the Plan because the only currently identified Class 2A obligation, the scheduled Betson Enterprises / H. Betti Industries obligation, has been paid in full postpetition. To the extent any Class 2A Claim is later Allowed and entitled to treatment under this Section, such Claim shall be Impaired under the Plan, and the Holder of such Allowed Class 2A Claim shall be entitled to vote to accept or reject the Plan to the extent required by the Bankruptcy Code or further order of the Bankruptcy Court.

**E.       Class 2B: Newport Secured Equipment Lenders.**

Claims in Class. Class 2B consists of Allowed Secured Claims of non-insider creditors secured by Article 9 security interests in equipment located at and used by Velocity Esports Newport Kentucky, LLC, including the secured equipment claims asserted by Advantage Leasing and LEAF Capital Funding, together with any similarly situated Newport secured equipment lenders, if any.

The Debtors previously identified a scheduled H. Betti Industries / Betson Enterprises obligation in the amount of $7,003.63 as of the Petition Date. According to the Debtors' books and records, that obligation has been paid in full postpetition in the ordinary course and/or pursuant to the applicable lease or equipment-payment terms. The Debtors therefore do not anticipate any distribution under the Plan on account of H. Betti Industries / Betson Enterprises unless a remaining unpaid Claim is timely asserted and Allowed by agreement or Final Order.

6

Treatment. At the election of the Debtors, and as reflected in the Plan Supplement or a post-confirmation agreement, a Class 2B claim may be assumed or restructured and performed according to its contract terms, as modified by agreement, or it may be prepaid in full at any time after the Effective Date.

Retention of Liens. Until payment in full of each respective Allowed Class 2B Claim, the Holder shall retain any and all Liens in and to its collateral to the extent provided in the loan documents.

Reservation of Rights; Reconciliation. Priority disputes, purchase-money security interest issues, guaranty issues, and any related non-debtor liability questions are expressly reserved.

Impairment and Voting. Class 2B is Impaired. The Holder of an Allowed Class 2B Secured Claim is entitled to vote to accept or reject the Plan.

**F.      Class 3: Equipment Lessors and Executory Equipment Contracts for Collateral Located at VES LV.**

Claims in Class. Class 3 consists of the Allowed Claims of counterparties to true equipment leases and executory equipment-related contracts governing equipment located at and used by the Las Vegas Debtors. The Plan identifies, without limitation, Pawnee Leasing and Fortune 5 as members of this class, together with any similarly situated Las Vegas equipment lessors or executory-contract counterparties. The Debtors understand that the Pawnee Leasing Corporation obligation was paid or otherwise satisfied through the Las Vegas Sale closing allocation. Pawnee is identified in this section only to preserve rights and provide disclosure to the extent any remaining obligation, cure issue, release, reconciliation matter, or contract issue is later asserted.

Treatment. If a Class 3 contract is assumed and assigned, including in connection with a section 363 sale, the applicable cure amount will be paid in full in cash, and the assignee must provide adequate assurance of future performance. If a Class 3 contract is not assumed and assigned, it will be deemed rejected as of the effective date of the relevant sale or such other date as the Bankruptcy Court approves. Any rejection damages claim will be treated as a General Unsecured Claim and will not remain in Class 3.

Cure Amounts. The Debtors believe the cure amount for each currently identified Class 3 contract is $0.00 unless otherwise determined under section 365(b) of the Bankruptcy Code.

Impairment and Voting. Class 3 Claims are Unimpaired, except as otherwise provided herein. Holders of Class 3 Claims are conclusively presumed to accept the Plan pursuant to 11 U.S.C. § 1126(f) and are not entitled to vote to accept or reject the Plan.

**G.      Class 4: Allowed Claims of NFS Capital, LLC.**

Claims in Class. Class 4 consists solely of the Allowed Claims of NFS Capital, LLC arising under: (a) the Settlement Agreement dated June 26, 2025 that was approved by order entered November 17, 2025; (b) Master Equipment Lease No. 2025-0269 and related documents for equipment located at the Las Vegas venue; and (c) Master Equipment Lease No. 2025-0270 and related documents for equipment located at the Newport venue. The Plan treats those obligations

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

7

together as a single impaired class.

Treatment. The settlement component is based on the NFS compromise that resolved prepetition obligations arising from the Schaumburg lease and allowed specified equipment to be retained and redeployed to Las Vegas and Newport. According to the Plan, the settlement component balance was approximately $213,232.57 as of the February 15, 2026 payoff statement, with arrearages of approximately $42,412.95 through that date, subject to reconciliation. Under the Plan, the Reorganized Debtors will cure any unpaid settlement arrearages and accrued charges existing as of the Effective Date in six (6) equal monthly installments commencing on the first day of the first full calendar month following the Effective Date. Thereafter, the remaining settlement payment stream will continue in accordance with the payment schedule contained in the Settlement Agreement. The Las Vegas lease component and Newport lease component shall be performed in accordance with their respective lease documents and any applicable sale order, MIPA order, written agreement with NFS, or other transaction-specific order. To the extent any treatment, transfer, continuation, or performance of NFS-related agreements occurs before the Effective Date pursuant to one or more sale orders, stipulations, or other orders of the Bankruptcy Court, such transactions shall govern and shall not be modified by the Plan.

The Las Vegas Sale escrow / closing allocation also contemplates that NFS Capital may receive the residual seller-proceeds amount remaining after the Court-approved First Choice Business Brokers payment, currently identified in the Feasibility / Liquidation Analysis as $37,394.74, on account of the NFS settlement agreement claim, subject to final escrow reconciliation and payment-credit treatment.

Reservation of Rights. Except as expressly agreed by NFS, the Plan does not release or impair any rights NFS may have against non-debtor guarantors or co-obligors.

Impairment and Voting. Class 4 Claims are Impaired. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

**H.      Class 5: Continuing Landlord Claims.**

Claims in Class. Class 5 consists of the Allowed Claims of SRMF Town Square Owner LLC, as landlord under the Las Vegas lease, and NOTL Property Owner LLC, as landlord under the Newport lease and/or under any Court-approved NOTL Resolution Documents. With respect to NOTL, Class 5 includes claims and obligations arising under any Court-approved lease, replacement lease, amended-and-restated lease, use-and-occupancy agreement, settlement, landlord consent, guaranty, or other occupancy arrangement approved in connection with the Newport MIPA. This class includes any unpaid pre-Effective Date rent, additional rent, percentage rent, taxes, deferred rent, fees, Cure amounts, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, replacement-lease obligations, and other monetary obligations required to be satisfied in connection with continuation, assumption, assignment, consent, replacement, settlement, use-and-occupancy, or approval of the applicable transaction.

With respect to NOTL, the Company's Newport occupancy and operating rights remain subject to final written resolution through the Newport MIPA, any final written agreement with NOTL Property Owner LLC, including any new lease, amended-and-restated lease, replacement

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

8

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

lease, lease amendment, landlord consent, use-and-occupancy agreement, settlement agreement, guaranty, estoppel, acknowledgment, release, or related agreement approved by the Bankruptcy Court, and any applicable order approving the Newport MIPA, any order approving a compromise under Bankruptcy Rule 9019, any order approving the Company's post-closing occupancy rights, or any other related transaction-approval order entered by the Bankruptcy Court. The Plan does not determine that the original NOTL lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4). If the original NOTL lease was deemed rejected, the Company's post-closing occupancy and operating rights may instead be governed by any such new lease, amended-and-restated lease, replacement lease, use-and-occupancy agreement, settlement agreement, or other agreement with NOTL Property Owner LLC approved by the Bankruptcy Court.

Treatment. Each Allowed Claim in Class 5 shall be treated as a continuing landlord claim arising under an ongoing nonresidential real property lease or, with respect to NOTL, any Court-approved NOTL Resolution Documents. The applicable lease relationship or NOTL occupancy / landlord-resolution arrangement shall continue, be replaced, be amended and restated, be settled, or otherwise be implemented only to the extent set forth in the Plan, the operative lease documents, the NOTL Resolution Documents, and the applicable transaction-specific order or orders of the Bankruptcy Court. Any unpaid pre-Effective Date monetary obligations under the applicable lease or NOTL Resolution Documents, including any unpaid rent, additional rent, percentage rent, taxes, deferred rent, fees, Cure-related amounts, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, replacement-lease amounts, or other landlord-related amounts, if any, shall be paid, cured, settled, or otherwise satisfied in the amount and manner set forth in the applicable Final Order entered in connection with the relevant transaction, after notice and an opportunity to object by the affected landlord.

Cure Amounts. The Plan does not fix the final Cure, arrearage, Landlord Resolution Amount, settlement amount, use-and-occupancy amount, replacement-lease amount, or other landlord-related amount owed to SRMF or NOTL. Instead, those amounts are to be resolved by agreement or by Final Order in the relevant transaction-approval process. With respect to NOTL, if the original lease was deemed rejected under 11 U.S.C. § 365(d)(4), such amounts shall not be characterized as Cure of the original lease unless NOTL expressly agrees and the Bankruptcy Court approves that characterization.

Reservation of Rights. Nothing in the Plan is intended to compel landlord consent, determine any landlord-consent requirement, determine whether the original NOTL lease was timely assumed or deemed rejected, or release, modify, impair, or replace any guarantor liability absent an express written agreement approved by the Bankruptcy Court to the extent required. Any guaranty, joinder, reaffirmation, replacement guaranty, or other credit support delivered by Purchaser or any other non-Debtor in favor of NOTL shall be governed solely by the NOTL Resolution Documents and any applicable Sale Order or other Final Order.

Impairment and Voting. Holders of Class 5 Claims shall be Impaired, and the Holder shall be entitled to vote to accept or reject the Plan.

9

### I.       Class 6: Legacy Landlord Lease Claims.

Claims in Class. Class 6 consists of the Allowed unsecured claims of 434 N. Orange Investment, LLC ("Orange") and Woodfield Mall LLC ("Woodfield") arising from the Debtors' former nonresidential lease relationships for the Orlando and Schaumburg locations, respectively. The Plan provides that Class 6 includes only claims against the Debtors and their estates. It does not, by reason of plan treatment alone, adjudicate or release any separate liability of Philip N. Kaplan, Leonard R. Wanger, or any other non-debtor guarantor. According to the Plan, Orange filed Proof of Claim No. 11 in the Velocity Esports, Inc. case in the amount of $2,377,910.22, and Woodfield filed Proof of Claim No. 4 asserting a general unsecured claim of $1,135,053.73 and a stated cure amount of $72,873.67.

Treatment. Except to the extent a holder agrees otherwise in writing, each Allowed Class 6 Claim is to be paid in full in equal quarterly installments over twenty (20) years, commencing on the first day of the first calendar quarter following the later of the Effective Date or the date on which the claim becomes Allowed. Interest is to accrue at the 20-year U.S. Treasury yield as published on January 1 of each payment year, using simple interest on unpaid principal. No payment stream commences until the applicable claim becomes Allowed after giving effect to all required reductions and credits. The Debtors believe that centralized adjudication of the Orange and Woodfield claims in the Bankruptcy Court is a key component of feasibility because it avoids piecemeal enforcement, reduces the risk of double recovery, and allows those claims to be resolved within the framework of the Plan.

Reservations of Rights; Reconciliation. The Debtors dispute those claims and reserve the right to object, reconcile, estimate, reduce, offset, credit, or otherwise limit them, including under section 502(b)(6) of the Bankruptcy Code, based upon mitigation, reletting, security deposits, prepaid rent, insurance proceeds, third-party recoveries, guarantor payments, garnishment proceeds, and any other amounts required to be credited under applicable law.

Impairment and Voting. Class 6 Claims are Impaired. Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

### J.       Class 7: Insider Secured Claims.

Claims in Class. Class 7 consists of the Allowed Secured Claims of insiders against Velocity Esports, Inc., including without limitation claims asserted by Leonard R. Wanger 2018 Family Irrevocable Perpetuities Trust, Ralph Wanger Trust dated 12-16-94, Philip N. Kaplan Separate Property Trust dated 6/27/2011, LRW Revocable Trust dated 3/9/2012, 4958 West Ponderosa I, LLC, 4958 West Ponderosa II, LLC, and LP Consulting.

Treatment. Under the Plan, no holder of an Allowed Class 7 Claim will receive any payment, distribution, or other consideration on account of such claim. Those claims are subordinated in right of payment to Administrative Claims, Priority Tax Claims, and all obligations required to be paid or performed under Classes 1 through 6. The Plan also states that any funds contributed by Philip N. Kaplan, Leonard R. Wanger, or any insider affiliate to fund the Plan are deemed voluntary capital or new-value contributions and not distributions on account of Class 7 claims. Any transfer of any membership interest in Velocity Esports Newport Kentucky, LLC to any Insider Bid Party pursuant to the Newport MIPA, if approved, shall occur solely under the

10

Sale Order and only in exchange for consideration expressly approved by the Bankruptcy Court. Such transfer shall not constitute a payment, distribution, reimbursement, subrogation, contribution, indemnity, or other consideration on account of any Allowed Class 7 Claim.

Retention of Liens. To the extent a holder of a Class 7 claim has a valid lien, that lien remains of record only to the extent not otherwise avoided, released, recharacterized, subordinated, or disallowed by Final Order. The Plan prohibits Class 7 holders from exercising enforcement remedies during the term of the Plan unless otherwise ordered by the Bankruptcy Court or agreed by the Debtors or Reorganized Debtors.

Impairment and Voting. Class 7 Claims are Impaired and will receive no distribution under the Plan. Holders of Class 7 Claims are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g) and are not entitled to vote to accept or reject the Plan.

**K.    Class 8: General Unsecured Claims.**

Claims in Class. Class 8 consists of the Allowed General Unsecured Claims against the Debtors that are not otherwise classified under the Plan, including, without limitation, the following filed Proofs of Claim, all of which remain subject to allowance, objection, reconciliation, setoff, credit, reduction, reclassification, collateral valuation, deficiency analysis, mitigation, and any other defenses or adjustments available under the Bankruptcy Code or applicable law:

**Velocity Esports, Inc.**

| Creditor Name: | Filed Claim Amount |
| --- | --- |
| D&H Lawn Irrigation, Inc. | $ 1,025.00 |
| Ellenoff Grossman & Schole LLP | $ 165,222.13 |
| Herbert Kenneth Bowman II | $1,259.25 |
| JPMorgan Chase Bank, N.A. (*2294) | $ 35,315.77 |
| JPMorgan Chase Bank, N.A. (*5161) | $ 5,833.59 |
| JPMorgan Chase Bank, N.A. (*6070) | $ 4,668.11 |
| North Star Leasing, a Division of Peoples Bank | $ 117,180.00 |
| Restaurant Technologies Inc. (*1478) | $ 6,625.07 |

**Velocity Esports Las Vegas Town Square, LLC**

| Creditor Name: | Filed Claim Amount |
| --- | --- |
| Old Dominion Freight Line (*6937) | $ 16,988.86 |

**Velocity Esports Chicago Schaumburg, LLC**

| Creditor Name: | Filed Claim Amount |
| --- | --- |
| Brinks Capital LLC (*5200) | $ 29,143.26 |
| Commonwealth Edison Company (*9679) | $ 3,092.76 |
| Johnson Controls Security Solutions LLC (*4116) | $ 600.00 |

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659  Fax: (702) 805-1659

| | |
|---|---|
| Sun Ray Heating, Inc. (*4413) | $ 1,410.00 |

**Velocity Esports Newport Kentucky, LLC**

| Creditor Name: | Filed Claim Amount |
|---|---|
| Bonita Marie International, Inc. (*0318) | $ 1,823.64 |

**Total Unsecured Claims:**                                                   **$ 390,187.44**

The foregoing schedule is provided for disclosure purposes only and excludes Claims separately classified elsewhere in the Plan, including Class 6 Legacy Landlord Lease Claims and any Claim treated as secured, priority, administrative, or otherwise separately classified under the Plan. All listed amounts remain subject to objection, reconciliation, setoff, recoupment, reduction, reclassification, or disallowance.

The Debtors presently contend that North Star Leasing, a Division of Peoples Bank ("North Star"), should be treated as an unsecured creditor because the equipment identified as collateral was located at the former Schaumburg site, the Debtors abandoned that location and notified North Star to retrieve its equipment, North Star did not do so, and the Debtors do not presently possess or control such collateral or derive value from it.

Treatment. Holders of Allowed Class 8 Claims shall not receive a distribution under the Plan.

Impairment and Voting. Class 8 Claims are Impaired and will receive no distribution under the Plan. Holders of Class 8 Claims are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g) and are not entitled to vote to accept or reject the Plan.

**L.      Class 9: Equity Interests.**

Interests in Class. Class 9 consists of all Equity Interests in the Debtors not otherwise separately provided for under the Plan.

Treatment. Holders of Equity Interests shall not receive or retain any distribution or other property under the Plan on account of such Equity Interests. Any transfer of membership interests in Velocity Esports Newport Kentucky, LLC to Purchaser or any Insider Bid Party pursuant to the Newport MIPA, if approved, shall occur solely under the applicable Sale Order and shall not constitute a distribution or retention of property under the Plan on account of any prepetition Equity Interest.

Impairment and Voting. Class 9 Equity Interests are Impaired and will receive no distribution under the Plan. Holders of Class 9 Equity Interests are deemed to reject the Plan pursuant to 11 U.S.C. § 1126(g) and are not entitled to vote to accept or reject the Plan.

**M.      Other Miscellaneous Provisions.**

Elimination of Vacant Classes. Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

Prepayment. The Debtors are permitted to make pre-payments of principal of any Claim at any time and without paying a pre-payment penalty or other similar charge, including, and such pre-payments shall reduce the amount of principal that the Debtors owe.

## IV.    SUMMARY OF VOTING PROCESS

### A.    Who May Vote to Accept or Reject the Plan.

Generally, holders of Allowed Claims or equity interests that are "Impaired" under a plan are permitted to vote on the plan. A "Claim" is defined by the Bankruptcy Code and the Plan to include a right to payment from a debtor. An equity security represents an ownership stake in a debtor, such as a share. To vote, a creditor must first have an Allowed Claim.

The solicitation of votes on the Plan will be sought only from those Holders of Allowed Claims whose Claims are Impaired and will receive property or rights under the Plan. As explained more fully below, to be entitled to vote, a Claim must be both "Allowed" and "Impaired."

Based on this Disclosure Statement, the classes to be solicited are Class 1 (Newtek Bank, N.A. Secured Claims), Class 2B (Newport Secured Equipment Lenders), Class 4 (Allowed Claims of NFS Capital, LLC), Class 5 (Continuing Landlord Claims), and Class 6 (Legacy Landlord Lease Claims). Class 2A has no known unpaid Allowed Claim and will not be solicited unless a Class 2A Claim is later Allowed or otherwise determined by the Bankruptcy Court to be entitled to vote.

### B.    Summary of Voting Requirements.

For the Plan to be confirmed, the Plan must be accepted by at least one non-insider, Impaired Class of Claims, excluding the votes of Insiders. A class of Claims is deemed to have accepted a plan when allowed votes representing at least two-thirds (2/3) in amount and a majority in number of the Claims of the class actually voting cast votes in favor of a plan. A class of equity interests has accepted a plan when votes representing at least two-thirds (2/3) in amount of the outstanding equity interests of the Class actually voting cast votes in favor of a plan.

In addition to the class voting requirements, section 1129(a)(10) of the Bankruptcy Code generally requires that at least one impaired accepting class of claims, determined without including insider votes, accept the Plan. The Debtors believe that the requirement can be satisfied through acceptance by one or more impaired non-insider voting classes. The Debtors do not intend to rely on any insider vote for purposes of satisfying section 1129(a)(10).

**A VOTE FOR ACCEPTANCE OF THE PLAN BY THOSE HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE IS MOST IMPORTANT. DEBTORS ASSERT THAT THE TREATMENT OF CREDITORS UNDER THE PLAN IS THE BEST ALTERNATIVE FOR CREDITORS, AND THUS THE DEBTORS RECOMMEND THAT THE HOLDERS OF ALLOWED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN DO VOTE IN FAVOR OF THE PLAN.**

13

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

## V.      INFORMATION ABOUT DEBTOR'S BUSINESS AND CHAPTER 11 CASE

### A.      Corporate Structure and Operation.

Velocity Esports, Inc. is the Debtors' parent company and holds one hundred percent (100%) of the ownership interests in each of the Debtors' venue-level entities. The equity ownership of Velocity Esports, Inc. is held among the LRW Revocable Trust dated 3/9/2012, the Philip N. Kaplan Separate Property Trust dated 6/27/2011, Mindshare Holdings, Inc., Phoebe S. Telser Self-Declaration of Revocable Trust dated 1-12-78, Leftin Investment Co. PSP, Debra J. Wanger 2018 Family Irrevocable Perpetuities Trust, Leonard R. Wanger Remainder Trust, and Wanger Income and Growth Fund LP. None of the Debtors' equity securities are publicly traded.

Velocity Esports Las Vegas Town Square, LLC is a Nevada limited liability company that operates the Las Vegas venue and owns the Las Vegas liquor license. Velocity Esports Newport Kentucky, LLC is the Kentucky limited liability company that operates the Newport venue. Velocity Esports Newport Kentucky II, LLC, which is not a debtor in these Chapter 11 Cases, holds only the liquor license used in the Newport operations and has no creditors. Velocity Esports Chicago Schaumburg, LLC is an Illinois limited liability company that formerly operated the Schaumburg venue and owns the Chicago liquor license. Velocity Esports Orlando Downtown, LLC is a Florida limited liability company that never commenced operations but became obligated under the Orlando lease and termination arrangements.

The holding company historically swept surplus cash from the venue-level debtors for payment of debt service and shared operating expenses. The Debtors' cases, therefore, involve a coordinated operating structure, even though each estate remains legally separate for purposes of claims allowance and distribution.

### B.      Current Operating Business.

As of the Petition Date, the Debtors' active operating venues were Las Vegas and Newport. As of the date of this Disclosure Statement, the Las Vegas Sale has closed, the Las Vegas venue is no longer operated by the Debtors for their own account, and Newport is the Debtors' remaining operating venue expected to generate operating receipts during the implementation period. Management characterizes the historical Las Vegas and Newport operations as profitable or near-profitable core assets, but as of the date of this Disclosure Statement Newport is the Debtors' remaining operating venue expected to generate operating receipts during the implementation period. Management also believes that modest increases in revenue at those venues would have a disproportionately favorable effect on profitability because core game-play and beverage revenues carry relatively high margins, while several fixed costs do not scale proportionally.

The Debtors' senior managers remain deeply involved in the restructuring process. Leonard R. Wanger, the founding president, oversees product development, technology, and operations matters. Philip N. Kaplan, who assumed the chief executive role in the fall of 2024 after previously serving as board chair, is focused on management of the Las Vegas location, sales, marketing, and general administration. Together with the Debtors' chief financial officer, management is actively monitoring liquidity and restructuring strategy.

14

## C.      Events Leading to the Chapter 11 Filings.

The Debtors attribute their financial distress to a combination of startup leverage, operational expansion costs, inflationary pressures, venue-specific setbacks, and landlord disputes. The Chicago venue at Woodfield Mall was delayed by landlord-related possession issues and by substantial repair and buildout complications that management states were not timely disclosed. Those delays materially increased construction and operating costs and eroded the benefit of negotiated rent concessions.

The Orlando venue never opened. Although the Debtors completed plans and approvals, capital overruns in Chicago depleted funds that had been expected to support the Orlando launch, and later cost estimates increased dramatically. The Orlando lease was terminated, but default under the termination obligations resulted in litigation against the Non-Debtor Guarantors. The Debtors assert that the resulting landlord disputes should be resolved centrally in the Bankruptcy Court because those disputes bear directly on the feasibility of any reorganization.

## D.      Capital Structure and Secured Debt.

The Debtors' capital structure includes a large Newtek Bank, N.A. SBA-backed secured loan made on March 29, 2024, in the original principal amount of $2,500,000.00, with variable interest tied to prime plus 3.00%. That loan is guaranteed by several Debtors and non-debtor affiliates or insiders and is secured by deeds of trust against certain Park City, Utah, real property as well as a blanket security interest in holding-company assets.

The Debtors also describe insider secured debt held by various Wanger and Kaplan-affiliated trusts and entities, together with certain secured equipment claims and the obligations resolved through the NFS settlement. Those obligations, together with continuing landlord relationships and disputed legacy landlord claims, are addressed through the Plan's classification and treatment provisions.

## E.      Status of the Chapter 11 Cases.

The Debtors filed these cases on May 7, 2025, and have continued to operate as debtors in possession. No chapter 11 trustee or examiner has been appointed. The Office of the United States Trustee has not appointed an official committee of unsecured creditors. The Bankruptcy Court has entered first-day and other interim or final orders permitting the Debtors to continue operations while pursuing transactions and a reorganization strategy.

The Debtors' restructuring strategy depends materially on final implementation and reconciliation of the closed Las Vegas Sale, approval and closing of the Newport MIPA, approval and performance of the NOTL Resolution Documents, continued cooperation and support of Philip N. Kaplan and Leonard R. Wanger, and the ability to centralize and resolve disputed landlord claims in these Chapter 11 Cases.

15

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

## VI.     DETAILED DESCRIPTION OF THE PLAN

### A.     Means of Implementing the Plan.

#### 1.     Reorganized Debtors.

On the Effective Date, the Debtors will continue in existence as the Reorganized Debtors, except to the extent ownership interests or assets are transferred pursuant to one or more transactions approved by the Bankruptcy Court. The Debtors anticipate that the Plan will be implemented through a combination of sale transactions, assignment or continuation of leases and contracts, application of sale proceeds to secured debt, and ongoing performance of surviving obligations.

#### 2.     Las Vegas Transaction and Newport MIPA

The Las Vegas Sale has closed and is treated under the Plan and Feasibility / Liquidation Analysis as a secured-debt reduction and creditor-payment transaction, subject to final escrow, payment-credit, and closing-allocation reconciliation. The Plan also contemplates a Newport MIPA involving the sale of membership interests in Velocity Esports Newport Kentucky, LLC or a comparable transaction affecting the Newport operations. The Newport MIPA is expected to be presented to the Bankruptcy Court for approval under section 363 of the Bankruptcy Code, and, to the extent applicable, Bankruptcy Rule 9019 and/or Bankruptcy Rule 6006. The Newport MIPA contemplates that the Company's post-closing occupancy and operating rights at Newport on the Levee will be governed by the Newport MIPA, any final written agreement with NOTL Property Owner LLC, including any new lease, amended-and-restated lease, replacement lease, lease amendment, landlord consent, use-and-occupancy agreement, settlement agreement, guaranty, estoppel, acknowledgment, release, or related agreement approved by the Bankruptcy Court, and any applicable order approving the Newport MIPA, any order approving a compromise under Bankruptcy Rule 9019, any order approving the Company's post-closing occupancy rights, or any other related transaction-approval order entered by the Bankruptcy Court. The Newport MIPA also contemplates that any transfer of minority interests to insider bid parties must be separately approved by the Bankruptcy Court and supported by Court-approved consideration. The precise structure of those transactions may be reflected in the Plan Supplement, approved purchase agreements, any order approving the Newport MIPA, any final written agreement with NOTL Property Owner LLC, or other motion practice under section 363 of the Bankruptcy Code. The Disclosure Statement should be read together with those transaction documents once filed.

The Newport MIPA is subject to several conditions, including entry of an order approving the Newport MIPA, resolution of the NOTL lease and occupancy issues through a final written agreement with NOTL Property Owner LLC or another Bankruptcy Court-approved process, completion of schedules identifying assumed obligations and landlord-related amounts, treatment of equipment obligations, liquor-license or regulatory arrangements, and any necessary amendments or conforming modifications to the Plan and Disclosure Statement. No closing under the Newport MIPA will occur unless any required order approving the Newport MIPA, any required order approving a final agreement with NOTL Property Owner LLC, any required order approving a compromise under Bankruptcy Rule 9019, any required assumption or assignment order, or any other required transaction order has been entered and no stay of any such order is in

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

effect.

### 3.      Non-Debtor Guarantors' Plan Contributions.

The Plan is materially dependent on support, cooperation, and plan contributions from Philip N. Kaplan and Leonard R. Wanger or their affiliates. Those contributions are intended to help bridge liquidity needs, facilitate the transactions contemplated by the Plan, and support payment of obligations required for plan consummation. The Plan characterizes such contributions as new value or capital contributions rather than as distributions on account of insider debt.

### 4.      Notice of Effectiveness.

The Reorganized Debtors will file and serve a notice of the occurrence of the Effective Date as soon as practicable after the Effective Date occurs.

### 5.      Ongoing Management.

After the Effective Date, management of the Reorganized Debtors or any surviving debtor entities will remain with the persons designated under the Plan, the applicable transaction documents, or any separate governance documents. The Debtors presently expect that management continuity by persons already familiar with the operations will assist in preserving value and implementing the restructuring.

### B.      Executory Contracts and Unexpired Leases.

### 1.      Executory Contracts and Unexpired Leases.

Except for executory contracts and unexpired leases specifically addressed in the Plan or set forth on Schedule 5.1 to the Plan, all executory contracts and unexpired leases that exist on the Confirmation Date shall be deemed rejected by the Reorganized Debtors on the Effective Date. Because SRMF Town Square Owner LLC and NOTL Property Owner LLC are listed on Schedule 5.1, their treatment is governed by the Plan, Schedule 5.1, the applicable transaction documents, and any applicable order entered by the Bankruptcy Court in connection with the Las Vegas transaction or the Newport transaction, as applicable. With respect to the Newport premises, Schedule 5.1 and the Plan do not determine that the original Newport lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4), and do not limit the parties' ability to proceed through any final written agreement with NOTL Property Owner LLC, including any new lease, amended-and-restated lease, replacement lease, lease amendment, landlord consent, use-and-occupancy agreement, settlement agreement, guaranty, estoppel, acknowledgment, release, or related agreement approved by the Bankruptcy Court.

### 2.      Approval of Assumption or Rejection.

Entry of the Confirmation Order shall constitute, as of the Effective Date, approval of the assumptions and rejections described in Section 5 of the Plan, except to the extent otherwise provided in the Plan or by separate order of the Bankruptcy Court. The Class 5 lease and occupancy arrangements shall be continued, assumed, assigned, replaced, modified, settled, or otherwise treated only to the extent and in the manner provided in Section 3.7 of the Plan, Schedule 5.1 to

17

the Plan, the applicable transaction documents, any final written agreement with the affected landlord, and any applicable order entered by the Bankruptcy Court. No provision of the Disclosure Statement, Plan, or Confirmation Order shall be construed to determine that the original Newport lease was timely assumed, timely extended, or not deemed rejected under 11 U.S.C. § 365(d)(4).

Nothing in this Disclosure Statement, the Plan, or the Confirmation Order shall be deemed to provide, compel, or substitute for any consent required under an Executory Contract, Unexpired Lease, NOTL Resolution Document, equipment agreement, landlord agreement, or applicable law, except to the extent expressly set forth in a separate Final Order or written agreement approved by the Bankruptcy Court. Any consent, adequate assurance, cure, assignment, transfer, continuation, replacement, or settlement issue shall be governed by the applicable transaction-specific motion, agreement, or order.

### 3.    Cure of Defaults.

The Debtors or Reorganized Debtors shall Cure any defaults respecting each Executory Contract or Unexpired Lease assumed pursuant to Section 5 of the Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by the Debtors, and after the Effective Date, the Reorganized Debtors; or (iii) the fourteenth (14th) Business Day after the entry of a Final Order resolving any dispute regarding: (a) a Cure amount; (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" under the Executory Contract or Unexpired Lease assumed pursuant to the Plan in accordance with § 365(b)(1) of the Bankruptcy Code; or (c) any matter pertaining to assumption, assignment, or the Cure of a particular Executory Contract or an Unexpired Lease.

With respect to the Newport premises, if the original lease was deemed rejected under 11 U.S.C. § 365(d)(4), any amounts payable in connection with the Newport MIPA, any final written agreement with NOTL Property Owner LLC, or any related order entered by the Bankruptcy Court shall not be characterized as cure of the original lease unless NOTL Property Owner LLC expressly agrees and the Bankruptcy Court approves that characterization. Such amounts may instead be characterized as settlement amounts, use-and-occupancy amounts, replacement-lease amounts, lease-resolution amounts, or other amounts as provided in the applicable written agreement and related order entered by the Bankruptcy Court.

### 4.    Objection to Cure Amounts.

Any party to an Executory Contract or Unexpired Lease who objects to a Cure amount must file and serve an objection by the deadline established by the Bankruptcy Court or by the applicable transaction-specific motion or order. With respect to SRMF and NOTL, any objection concerning Cure, arrearages, Landlord Resolution Amounts, settlement amounts, use-and-occupancy amounts, deferred rent, additional rent, percentage rent, taxes, fees, adequate assurance, landlord consent, assignment, continuation, replacement lease, amended-and-restated lease, use-and-occupancy agreement, Rule 9019 settlement, or any other transaction-specific treatment shall be asserted in the applicable Las Vegas or Newport transaction-approval process, or by such other deadline as the Bankruptcy Court establishes.

### 5. Confirmation Order.

The Confirmation Order will constitute an order approving the assumptions and rejections described in Section 5 of the Plan, except to the extent otherwise provided in the Plan or by separate order of the Bankruptcy Court. The Confirmation Order shall not, by itself, constitute final approval of the continuation, assumption, assignment, replacement, modification, settlement, or other treatment of the Class 5 Leases or NOTL Resolution Documents except to the extent expressly provided in the Plan and in the applicable transaction-specific order.

### 6. Post-Petition Date Contracts and Leases.

Executory Contracts and Unexpired Leases entered into and other obligations incurred after the Petition Date by the Debtors shall be assumed by the Debtors on the Effective Date. Each such Executory Contract and Unexpired Lease shall be performed by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of the applicable Debtor's or Reorganized Debtor's business.

### 7. Bar Date for Rejection Damages Claims.

All proofs of claim with respect to Claims arising from rejection of any Executory Contract or Unexpired Lease shall be filed no later than twenty-one (21) days after the Effective Date or, if later, twenty-one (21) days after entry of the order approving such rejection, unless the Bankruptcy Court orders otherwise. With respect to Class 5 Leases or NOTL Resolution Documents, any claim deadline arising from rejection, deemed rejection, settlement, use-and-occupancy, or landlord-resolution treatment shall be governed by the applicable order of the Bankruptcy Court.

### C. Manner of Distribution of Property Under the Plan.

The Reorganized Debtors shall be responsible for making the distributions described in the Plan. Except as otherwise provided in the Plan or the Confirmation Order, the Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan may be obtained from existing Cash balances and Debtors' operations.

The Reorganized Debtors shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date and all Holders as of the Record Date of Equity Interests of the Debtors for purposes of mailing Distributions to them. The Reorganized Debtors may rely on the name and address set forth in the Debtors' Schedules and/or proofs of Claim and the ledger and records regarding Holders of Equity Interests as of the Record Date as being true and correct unless and until notified in writing.

### D. Conditions to Confirmation of the Plan.

### 1. Conditions to Confirmation.

The Confirmation Order shall have been entered and be in form and substance reasonably acceptable to the Debtors.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

19

**2.      Conditions to Effectiveness.**

The following are conditions precedent to occurrence of the Effective Date: (1) The Confirmation Order shall be a Final Order, except that the Debtors reserve the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order; (2) No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending, including any appeal; (3) All documents necessary to implement the transactions contemplated by the Plan shall be in form and substance reasonably acceptable to the Debtors, including, to the extent applicable, documents necessary to implement the Las Vegas Sale, the Newport MIPA, any order approving the Newport MIPA, any final written agreement with NOTL Property Owner LLC regarding Velocity Esports Newport Kentucky, LLC's post-closing occupancy or operating rights at Newport on the Levee, any order approving such agreement, the treatment of equipment obligations, liquor-license or regulatory arrangements, and any other transaction designated by the Debtors as necessary to implement the Plan; and (4) as of the Effective Date, the Debtors shall have filed all Monthly Operating Reports due through the month immediately preceding the Effective Date, and shall have paid all quarterly fees owed to the United States Trustee then due and payable.

**3.      Waiver of Conditions.**

The Debtors, in their sole discretion, may waive any and all of the other conditions set forth in the Plan and specifically Sections 9.1 and 9.2 of the Plan without leave of or order of the Bankruptcy Court and without any formal action.

## VII.   RISK FACTORS

In addition to risks discussed elsewhere in this Disclosure Statement, the Plan involves the following risks, which should be taken into consideration.

**A.      The Debtors Have No Duty to Update.**

The statements in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein. The delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtors have no duty to update this Disclosure Statement unless ordered to do so by the Bankruptcy Court.

**B.      Information Presented is Based on the Debtors' Books and Records and is Unaudited.**

While the Debtors have endeavored to present information fairly and accurately in this Disclosure Statement, there is no assurance that the Debtors' books and records, which this Disclosure Statement is based, are complete and accurate. The financial information contained herein has not been audited.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

**C.      Projections and Other Forward-Looking Statements are Not Assured and Actual Results Will Vary.**

Certain information in this Disclosure Statement is, by nature, forward looking, and contains estimates and assumptions which might ultimately prove to be incorrect, and projections which may differ materially from actual future results. There are uncertainties associated with all assumptions, projections, and estimates, and they should not be considered assurances or guarantees of the amount of Claims in the various Classes that will be allowed. The allowed amount of Claims in each Class, as well as Administrative Claims, could be significantly more than projected, which in turn could cause the value of Distributions to be reduced or to be tendered over a longer period of time than anticipated.

**D.      No Legal or Tax Advice is Provided to You by this Disclosure Statement.**

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Creditor or Holder of an Equity Interest should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters concerning his, her, or its Claim or Equity Interest.

**E.      No Admissions Made.**

Nothing contained herein shall constitute an admission of any fact or liability by any party (including the Debtors) or shall be deemed evidence of the tax or other legal effects of the Plan on the Debtors or on Holders of Claims or Equity Interests.

**F.      No Waiver of Right to Object or to Recover Transfers and Estate Assets.**

A Creditor's vote for or against the Plan does not constitute a waiver or release of any claims or rights of the Debtors (or any other party in interest) to object to that Creditor's Claim, or recover any preferential, fraudulent, or other voidable transfer of Estate assets, regardless of whether any claims of the Debtors or their Estate is specifically or generally identified herein.

**G.      Bankruptcy Law Risks and Considerations.**

**1.      Confirmation of the Plan is Not Assured.**

Confirmation requires, among other things, a finding by the Bankruptcy Court that it is not likely there will be a need for further financial reorganization and that the value of distributions to dissenting members of Impaired Classes of Creditors and Holders of Equity Interests would not be less than the value of distributions such Creditors and Holders of Equity Interests would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Although the Debtors believe that the Plan will not be followed by a need for further financial reorganization and that dissenting members of Impaired Classes of Creditors and Holders of Equity Interests will receive distributions at least as great as they would receive in a liquidation under chapter 7, there can be no assurance that the Bankruptcy Court will conclude that this test has been met.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

Although the Debtors believe the Plan satisfies all additional requirements for Confirmation, the Bankruptcy Court might not reach that conclusion. It is also possible that modifications to the Plan will be required for Confirmation and that such modifications would necessitate a re-solicitation of votes if the modifications are material.

**2.      The Effective Date Might Be Delayed or Never Occur.**

There is no assurance as to the timing of the Effective Date or that it will occur. If the conditions precedent to the Effective Date have not occurred or have been waived within the prescribed time frame, the Confirmation Order will be vacated. In that event, the Holders of Claims and Equity Interests would be restored to their respective positions as of the day immediately preceding the Confirmation Date, and the Debtors' obligations for Claims and Equity Interests would remain unchanged as of such day.

**3.      Risk Relating to Newport Lease Status and Newport Occupancy.**

The Debtors are conducting a final docket audit concerning whether the original Newport lease was timely assumed, timely extended, or deemed rejected under 11 U.S.C. § 365(d)(4). If the original Newport lease was deemed rejected, the Company's post-closing right to occupy and operate at Newport on the Levee may depend on NOTL Property Owner LLC's agreement to a new lease, amended-and-restated lease, replacement lease, lease amendment, landlord consent, use-and-occupancy agreement, settlement agreement, guaranty, estoppel, acknowledgment, release, or other written agreement approved by the Bankruptcy Court. There can be no assurance that NOTL Property Owner LLC will agree to such documentation on terms acceptable to the Debtors, the proposed purchaser, or the Bankruptcy Court, or that the Bankruptcy Court will approve the required relief. Failure to resolve the Newport lease and occupancy issues could prevent or delay closing of the Newport MIPA and could materially impair Plan feasibility.

**4.      Risk Relating to Approval of the Newport MIPA.**

The Newport MIPA remains subject to Bankruptcy Court approval. Approval may require notice, a hearing, and findings under section 363 of the Bankruptcy Code and, to the extent applicable, Bankruptcy Rule 9019 and/or Bankruptcy Rule 6006. Parties in interest, including Newtek, NOTL Property Owner LLC, equipment lenders, the United States Trustee, and other creditors, may object to the Newport MIPA, the proposed consideration, any requested free-and-clear relief, any proposed insider allocation, any pledge structure, or the proposed treatment of the Company's liabilities. If the Bankruptcy Court does not approve the Newport MIPA, or approves it only on materially different terms, the Debtors may be required to modify the Plan, amend this Disclosure Statement, resolicit votes, pursue an alternative transaction, or liquidate assets.

**5.      Risk Relating to Proposed Insider Allocation Under the Newport MIPA.**

The Newport MIPA contemplates that up to twenty percent (20%) of the membership interests in Velocity Esports Newport Kentucky, LLC may be transferred to insider-affiliated purchasers, including ten percent (10%) to a Kaplan-related entity and ten percent (10%) to a Wanger-related entity, only if approved by the Bankruptcy Court after notice and hearing. Such transfer must be supported by consideration expressly approved by the Bankruptcy Court and shall

22

not be treated as a credit bid under section 363(k) unless the Bankruptcy Court determines that the applicable insider-affiliated purchaser holds an Allowed Secured Claim secured by the membership interests proposed to be transferred. Parties in interest may object that the proposed insider allocation violates the absolute-priority rule, constitutes improper old-equity retention, provides an improper insider benefit, or is not supported by reasonably equivalent or otherwise sufficient value. If the Bankruptcy Court does not approve the insider allocation, the Newport MIPA may need to be modified, and the Plan or Disclosure Statement may require further amendment.

### 6. Risk Relating to Liquor License and Regulatory Operations.

The Newport operations depend on the ability to lawfully operate food, beverage, liquor, amusement, and related entertainment operations. A non-Debtor affiliate, Velocity Esports Newport Kentucky II, LLC, reportedly holds the liquor license used in the Newport operations. The Newport MIPA does not itself transfer any non-Debtor affiliate asset or liquor license. Closing may require separate agreements with the non-Debtor license holder and/or governmental approvals. Failure to obtain or maintain necessary license, permit, regulatory, or operating approvals could delay or prevent closing of the Newport MIPA or impair post-closing operations.

### 7. Allowed Claims in the Various Classes May Exceed Projections.

The Debtors have projected the amount of Allowed Claims in each Class in the Best Interests Analysis. Certain Classes, and the Classes below them in priority, could be affected by the Allowance of Claims in an amount that is greater than projected.

### 8. No Representations Outside of this Disclosure Statement Are Authorized.

No representations concerning or related to the Debtors, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

### H. Risks Related to the Debtors' Business Operations.

The following discussion of risks relating to the Debtors' business should be read as also being applicable to the Reorganized Debtors on and after the Effective Date. Although the Debtors believe the Plan provides the best available path to preserve and realize value through the closed Las Vegas Sale, the Newport MIPA, and the continued operation or transfer of the Newport business, the Debtors remain subject to substantial business, transactional, litigation, and execution risks. Newport is currently the Debtors' remaining operating venue expected to generate operating receipts during the implementation period. That concentration may preserve value, but it also increases the Debtors' exposure to any adverse event affecting Newport, including landlord disputes, transaction delays, equipment issues, regulatory issues, or downturns in customer traffic.

23

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

1.      **Effect of the Chapter 11 Cases.**

If these Chapter 11 Cases continue for a prolonged period, the proceedings could adversely affect the Debtors' operations, vendor relationships, lease negotiations, and transaction efforts. The longer these cases remain pending, the more likely it is that landlords, lenders, counterparties, vendors, and other stakeholders may lose confidence in the Debtors' ability to consummate the Plan and stabilize operations. The Debtors' restructuring strategy depends materially on final implementation and reconciliation of the closed Las Vegas Sale, approval and closing of the Newport MIPA, approval and performance of the NOTL Resolution Documents, and timely confirmation, and any material delay, adverse modification, or failure of those matters could impair those efforts and reduce the Debtors' flexibility.

So long as these Chapter 11 Cases remain pending, the Debtors' management must continue to devote substantial time and effort to claim reconciliation, litigation management, transaction negotiations, landlord issues, lender issues, and bankruptcy administration, rather than focusing exclusively on day-to-day business operations. The Debtors also must continue to incur significant professional fees, United States Trustee fees, and other administrative costs associated with the cases. Those burdens are especially significant here because the Debtors' restructuring depends heavily on the direct efforts of a small management group, including Leonard Wanger, Philip Kaplan, and the Debtors' chief financial officer, who are actively monitoring liquidity and restructuring matters on a near-daily basis.

2.      **Material Dependence on Critical Transactions and Stakeholder Support**

The Debtors' proposed reorganization is materially dependent on the successful implementation and final reconciliation of the closed Las Vegas Sale, approval and closing of the Newport MIPA, approval and performance of the NOTL Resolution Documents, and continued support from Philip N. Kaplan and Leonard R. Wanger. Any material delay, adverse modification, disruption, or failure involving these transactions or funding sources could impair Plan implementation and feasibility. Although the Las Vegas Sale has closed, escrow allocations, creditor-payment credits, assumed-obligation credits, and other post-closing reconciliation issues may remain subject to final accounting, Court order, or creditor reconciliation, and the Debtors do not expect unrestricted cash to flow to Seller from that sale.

Newport feasibility also depends on preserving occupancy and operating rights through the Newport MIPA and NOTL Resolution Documents, as well as continued performance under key lease, equipment, access, and replacement-lease arrangements, including NFS-related arrangements for equipment redeployed from Chicago to Las Vegas and Newport. The Feasibility / Liquidation Analysis includes a stress case showing that if the modeled $729,557.00 in Non-Debtor Guarantor support is not funded, the 13-week implementation bridge would project a liquidity deficit of approximately $287,770.13. While the Plan does not grant any non-debtor release or Plan-based injunction in exchange for such contributions, the Debtors' ability to implement the Plan remains materially dependent on those contributions or replacement funding, deferrals, settlement concessions, or other equivalent liquidity support.

24

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

**3.    Volatility in Demand for Discretionary Consumer Entertainment Services.**

The Debtors operate in a discretionary consumer entertainment business centered on esports, arcade, bowling, food, and beverage operations. Demand for those services can be sensitive to changes in consumer discretionary spending, local and regional economic conditions, inflation, labor costs, tourism patterns, competitive pressures, and shifts in customer preferences. The Debtors' principal has stated that, over the last several years, the Company experienced significant increases in labor costs, equipment pricing, construction expenses, and cost of capital, while consumer spending also became more volatile. Those same pressures may continue after confirmation and could reduce the cash flow available to satisfy obligations under the Plan.

Although management believes that modest year-over-year revenue growth at Las Vegas and Newport can have a disproportionately positive effect on profitability because gameplay and beverage sales are relatively high-margin, there can be no assurance that those revenue gains will occur or be sustained. Because the Debtors now rely primarily on those two venues, a decline in foot traffic, event activity, local demand, or customer spending at either venue could have an outsized adverse effect on the Debtors' performance and on their ability to fund Plan obligations.

**4.    Risks Relating to Legacy Landlord Disputes, Guarantor Exposure, and Liquidity Strain.**

The Debtors' business operations and reorganization efforts remain materially affected by the unresolved legacy landlord claims associated with the Schaumburg and Orlando locations. The Debtors contend that continued decentralized litigation over those claims could impair restructuring efforts, divert management attention, and reduce liquidity otherwise available to support consummation of the Plan. In particular, Philip Kaplan stated that litigation by the Orlando landlord against the Non-Debtor Guarantors would significantly strain management resources and could absorb substantial personal funds that otherwise may be needed to support the Debtors' successful reorganization. He further stated that he and Leonard Wanger may need to contribute several hundred thousand dollars of personal funds to help the Company reach a positive cash position. If those disputes are not resolved in an orderly manner, or if management and guarantor resources are materially depleted, the Debtors' operations and feasibility may be adversely affected.

**5.    Management Concentration and Limited Margin for Operational Disruption.**

The Debtors' current restructuring and operating strategy depends heavily on a relatively small group of senior decision-makers. Mr. Wanger oversees product, technology, and operations matters, while Mr. Kaplan is focused on Las Vegas operations, sales, marketing, and general administration. Both have invested significant effort in the restructuring and, according to the Kaplan declaration, are working without salary. That concentration of responsibility may promote continuity, but it also creates operational risk if either individual becomes unavailable, distracted by litigation or financing issues, or unable to continue providing the required support. The Debtors' limited margin for disruption is heightened by the fact that the business is now concentrated in two venues and remains in an active restructuring process.

25

**6.        Risk Relating to Liquor License and Regulatory Operations.**

The Newport operations depend on the ability to lawfully operate food, beverage, liquor, amusement, and related entertainment operations. A non-Debtor affiliate, Velocity Esports Newport Kentucky II, LLC, reportedly holds the liquor license used in the Newport operations. The Newport MIPA does not itself transfer any non-Debtor affiliate asset or liquor license. Closing may require separate agreements with the non-Debtor license holder and/or governmental approvals. Failure to obtain or maintain necessary license, permit, regulatory, or operating approvals could delay or prevent closing of the Newport MIPA or impair post-closing operations.

## VIII.    POST EFFECTIVE DATE OPERATIONS AND PROJECTIONS

**A.        Summary of Title to Property and Dischargeability.**

**1.        Vesting of Assets.**

Subject to the provisions of the Plan, pursuant to Section 4.1 of the Plan and as permitted by section 1123(a)(5)(B) of the Bankruptcy Code, all of the Debtors' assets shall vest in the Reorganized Debtors on the Effective Date, except to the extent otherwise transferred pursuant to the Plan, the Confirmation Order, or any separate order approving a sale, assignment, transfer, or other transaction. As of the Effective Date, all such property shall be free and clear of all Liens, Claims, and Equity Interests except as otherwise provided in the Plan, the Confirmation Order, or any such separate order. On and after the Effective Date, the Reorganized Debtors may manage the Debtors' financial affairs and may operate and oversee the Debtors' business activities, free from any restrictions of the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, other than restrictions expressly imposed by the Plan, the Confirmation Order, or any other applicable order.

The Newport MIPA, if approved and consummated, will transfer membership interests in Velocity Esports Newport Kentucky, LLC as provided in the applicable order approving the Newport MIPA. The Newport MIPA is not a direct sale of the Company's assets and does not itself transfer any non-Debtor affiliate assets, including any Newport liquor license held by a non-Debtor affiliate. Any valid liens, claims, encumbrances, or interests asserted against the membership interests proposed to be transferred or any proceeds of such transfer shall be determined, preserved, or otherwise treated only as provided in the applicable order approving the Newport MIPA or another order entered by the Bankruptcy Court.

**2.        Preservation of Avoidance Actions and Litigation Claims.**

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, all Litigation Claims, Avoidance Actions, Causes of Action, and rights of action shall be retained by, assigned to, and transferred to the Reorganized Debtors pursuant to Section 4.1 of the Plan. Notwithstanding the foregoing, on and after the Effective Date, the prosecution of such Litigation Claims, Avoidance Actions, Causes of Action, and rights of action shall lie in the sole and absolute discretion of the Reorganized Debtors.

There may also be other Litigation Claims, Avoidance Actions, Causes of Action, and rights of action that currently exist or may subsequently arise that are not specifically set forth in

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

this Disclosure Statement because the facts underlying such matters are not currently known or sufficiently known by the Debtors. The failure to list any such matter in this Disclosure Statement is not intended to limit the rights of the Debtors or the Reorganized Debtors to pursue any such matter to the extent the facts underlying it become more fully known in the future. Furthermore, any potential net proceeds from Litigation Claims, Avoidance Actions, Causes of Action, or other rights of action identified in this Disclosure Statement or any notice filed with the Bankruptcy Court, or which may subsequently arise or otherwise be pursued, are speculative and uncertain.

Unless Litigation Claims, Avoidance Actions, Causes of Action, or rights of action against any individual or entity are expressly waived, relinquished, released, compromised, or settled by the Plan or any Final Order, the Debtors expressly reserve for their benefit, and for the benefit of the Reorganized Debtors, all such matters, including all unknown Litigation Claims, Avoidance Actions, Causes of Action, and rights of action for later adjudication, and therefore no preclusion doctrine, including res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches, shall apply to such matters after confirmation or consummation of the Plan.

In addition, the Debtors expressly reserve for their benefit, and for the benefit of the Reorganized Debtors, the right to pursue, assert, or adopt any claims or defenses alleged in any lawsuit, contested matter, or proceeding in which any Debtor is a plaintiff, defendant, or interested party, against any individual or entity, including any plaintiff, defendant, co-defendant, guarantor, lender, landlord, vendor, contract counterparty, or other party in interest.

### 3. Discharge.

These Chapter 11 Cases involve corporate and limited liability company debtors. Accordingly, the Debtors' discharge shall be governed by section 1141 of the Bankruptcy Code, other than section 1141(d)(5), which only applies to individual chapter 11 debtors.

Upon the Effective Date, and except as otherwise provided in the Plan, the Confirmation Order, or applicable provisions of the Bankruptcy Code, the Debtors shall be discharged from all debts that arose before the Effective Date, and from debts of the kind specified in sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based on such debt was filed or deemed filed, (ii) such Claim was Allowed, or (iii) the Holder accepted the Plan.

Nothing in the Plan or Confirmation Order shall be construed to release, discharge, exculpate, or otherwise modify the obligations of any non-debtor Person or entity, including any Non-Debtor Guarantor, co-obligor, surety, or affiliated non-debtor entity, on account of such Person's or entity's own liabilities, except to the extent expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court entered after notice and hearing.

### 4. Binding Effect of Plan/Injunction.

From and after the Effective Date, the provisions of section 1141(a) of the Bankruptcy Code shall be applicable, and the Plan and the Confirmation Order shall be binding upon the Debtors, the Reorganized Debtors, and all Holders of Claims and Equity Interests, whether or not such Holder filed a proof of claim, whether or not such Claim or Equity Interest is Allowed, and whether or not such Holder accepted the Plan.

27

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

To effectuate the binding nature of the Plan and to implement the distributions and other obligations set forth therein, and except as otherwise expressly provided in the Plan or the Confirmation Order, from and after the Effective Date, each Holder of a Claim or Equity Interest is enjoined from commencing or continuing any action or employing any process to collect, recover, or offset such Claim or Equity Interest against the Debtors or property dealt with by the Plan other than in accordance with the Plan and the Confirmation Order; provided, however, that (a) this injunction does not apply to the enforcement of rights relating to post-Effective Date obligations or post-Effective Date defaults, and (b) nothing herein shall be construed to enjoin or impair any creditor's rights against any non-debtor obligor, including any Non-Debtor Guarantor, except as expressly provided by the Plan, the Confirmation Order, or applicable non-bankruptcy law.

This Section is intended to implement and enforce section 1141(a) and the Plan and Confirmation Order.

5.    **Exculpation.**

The Debtors, the Reorganized Debtors, and their respective Representatives acting in connection with the Chapter 11 Cases shall not have or incur any liability to any Holder of a Claim against or Interest in the Debtors, or any other party in interest, for any act, omission, transaction, or other occurrence arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except and solely to the extent such liability is based upon fraud, gross negligence, or willful misconduct. The Debtors and the Reorganized Debtors shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Cases.

No Holder of a Claim against or Interest in the Debtors, or any other party in interest, including their respective Representatives, shall have any right of action against the Debtors, the Reorganized Debtors, or their respective Representatives for any act, omission, transaction, or other occurrence arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except to the extent arising from fraud, gross negligence, or willful misconduct.

Nothing in this Article shall be deemed an exculpation of any non-debtor Person or entity on account of such Person's or entity's own guaranty obligations, judgment obligations, or other non-debtor liabilities, except to the extent expressly provided in the Plan or a separate order of the Bankruptcy Court.

6.    **Injunction Protecting Exculpation.**

All Holders of Claims against or Interests in the Debtors, and any other parties in interest, along with any of their Representatives and any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors, the Reorganized Debtors, or any other exculpated party identified in the Plan, in respect of any potential liability for which exculpation is granted pursuant to the Plan, (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, or

28

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

any such exculpated party in respect of any potential liability for which exculpation is granted pursuant to the Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized Debtors, or any such exculpated party in respect of any potential liability for which exculpation is granted pursuant to the Plan, or (iv) asserting any right of setoff, subrogation, or recoupment of any kind against the Debtors, the Reorganized Debtors, or the property or interests in property of the Debtors or Reorganized Debtors, in respect of any potential liability for which exculpation is granted pursuant to the Plan.

**7.      Injunction in Aid of Performance of the Plan.**

Upon the Effective Date, and to the extent expressly provided in the Plan or any separate order entered by the Bankruptcy Court, all Holders of Claims against the Debtors, and their respective successors and assigns, may be restrained and enjoined from pursuing collection of, or enforcing, such obligations in a manner that would interfere with the Debtors' or Reorganized Debtors' performance of the Plan, implementation of the transactions contemplated thereby, or administration of the Chapter 11 Cases; provided, however, that nothing in this Section shall be construed as a release of any non-debtor liability or as an automatic injunction against proceedings against any Non-Debtor Guarantor absent a separate order of the Bankruptcy Court. Any relief sought in aid of performance of the Plan against actions involving non-debtor parties shall be limited to the extent authorized by the Plan and ordered by the Bankruptcy Court after notice and hearing.

**B.      Post-Confirmation Reporting and Quarterly Fees to the U.S. Trustee.**

Before the Effective Date, the Debtors will ensure that all Monthly Operating Reports due are filed on the docket. After the Effective Date, the Reorganized Debtors will timely file all post-confirmation operating reports as required by 28 U.S.C. § 1930, the U.S. Trustee Guidelines, and any applicable order of the Bankruptcy Court, until an order is entered converting the cases to another chapter, dismissing the cases, or closing the cases, whichever occurs first.

The Debtors, and after the Effective Date the Reorganized Debtors, shall pay all quarterly fees payable to the U.S. Trustee as they come due, and shall continue to do so until an order is entered converting the cases to another chapter, dismissing the cases, or closing the cases, whichever occurs first. These fees accrue throughout the pendency of the Chapter 11 Cases. All U.S. Trustee quarterly fees accrued before confirmation shall be paid on or before the Effective Date pursuant to section 1129(a)(12) of the Bankruptcy Code. All U.S. Trustee fees accrued post-confirmation shall be timely paid on a calendar-quarterly basis and reported on post-confirmation operating reports. Final fees shall be paid on or before entry of a final decree.

**C.      Certain Federal Income Tax Consequences.**

THE FOLLOWING SUMMARY DOES NOT CONSTITUTE EITHER A TAX OPINION OR TAX ADVICE TO ANY PERSON. NO REPRESENTATIONS REGARDING THE EFFECT OF IMPLEMENTATION OF THE PLAN ON INDIVIDUAL CREDITORS, EQUITY HOLDERS, OR OTHER PERSONS ARE MADE HEREIN OR OTHERWISE. RATHER, THE TAX DISCLOSURE IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL CREDITORS, EQUITY HOLDERS, AND

29

**OTHER PARTIES IN INTEREST ARE URGED TO CONSULT THEIR RESPECTIVE TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.**

Creditors, Holders of Equity Interests, and any Person affiliated with the foregoing are strongly urged to consult their respective tax advisors regarding the federal, state, local, and foreign tax consequences that may result from confirmation and consummation of the Plan.

This Disclosure Statement shall not in any way be construed as making any representations regarding the particular tax consequences of confirmation and consummation of the Plan to any Person. This Disclosure Statement is general in nature and is merely a summary discussion of potential tax consequences and is based upon the Internal Revenue Code of 1986, as amended, and pertinent regulations, rulings, court decisions, and treasury decisions, all of which are potentially subject to material and retroactive change. Under the Internal Revenue Code, there may be federal income tax consequences to the Debtors, their Creditors, Holders of Equity Interests, and any Persons affiliated therewith because of confirmation and consummation of the Plan.

Upon confirmation and consummation of the Plan, the federal income tax consequences to Creditors and their Affiliates arising from the Plan will vary depending upon, among other things, the type of consideration received by the Creditor in exchange for its Claim, whether the Creditor reports income using the cash or accrual method of accounting, whether the Creditor has taken a bad debt deduction with respect to its Claim, whether the Creditor receives consideration in more than one tax year, and the Creditor's particular tax status.

**CREDITORS SHOULD CONSULT THEIR TAX ADVISORS REGARDING THE TAX TREATMENT, INCLUDING FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES, OF THEIR RESPECTIVE ALLOWED CLAIMS OR EQUITY INTERESTS. THIS DISCLOSURE IS NOT A SUBSTITUTE FOR TAX PLANNING OR SPECIFIC ADVICE FOR PERSONS AFFECTED BY THE PLAN.**

D.    **Projections.**

The Debtors' feasibility projections and implementation analysis are included in **Exhibit 1** to this Disclosure Statement. Exhibit 1 includes, among other things, a 13-week case-level implementation liquidity bridge, a 24-month Plan payment schedule, Class 6 claim allowance and payment timing assumptions, non-debtor guarantor contribution assumptions, and a feasibility sensitivity / stress-case analysis ("Feasibility Analysis"). Those projections are based on the Debtors' current books and records, transaction documents, operating assumptions, settlement assumptions, and management estimates, and remain subject to actual results, Court approval of pending transactions and settlements, claim allowance, and further reconciliation.

IX.    **CONFIRMATION OF THE PLAN**

A.    **Confirmation of the Plan.**

Pursuant to § 1128(a) of the Bankruptcy Code, the Bankruptcy Court will hold hearings regarding Confirmation of the Plan at the U.S. Bankruptcy Court, 300 Las Vegas Blvd. South, Las Vegas, Nevada 89101, on a date decided by the Bankruptcy Court. To the extent necessary, the Bankruptcy Court will schedule additional hearing dates.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659  Fax: (702) 805-1659

**B.        Objections to Confirmation of the Plan.**

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of a plan. Any objections to Confirmation of the Plan must be in writing, must state with specificity the grounds for such objection, and must be timely filed with the Bankruptcy Court and served upon counsel for the Debtors at the following address:

NEVADA BANKRUPTCY ATTORNEYS, LLC
Attn: Matthew I. Knepper, Esq.
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
(702) 805-1659
Email: mknepper@nvbankruptcyattorneys.com

For the Plan to be confirmed, the Plan must satisfy the requirements stated in § 1129 of the Bankruptcy Code. In this regard, the Plan must satisfy, among other things, the following requirements.

**1.        Best Interest of Creditors and Liquidation Analysis.**

Pursuant to § 1129(a)(7) of the Bankruptcy Code, for the Plan to be confirmed, it must provide that Creditors and Holders of Equity Interests will receive at least as much under the Plan as they would receive in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test with respect to each impaired Class requires that each Holder of an Allowed Claim or Equity Interest of such Class either: (i) accepts the Plan; or (ii) receives or retains under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the value received under the Plan by the Holders of Allowed Claims in each Class of Creditors or Equity Interests equals or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan meets the Best Interest Test and provides value which is not less than that which would be recovered by each such holder in a chapter 7 bankruptcy proceeding.

Generally, to determine what Holders of Allowed Claims and Equity Interests in each impaired Class would receive if the Debtors were liquidated, the Bankruptcy Court must determine what funds would be generated from the liquidation of the Debtors' Assets and properties in the context of a chapter 7 liquidation case, which for unsecured creditors would consist of the proceeds resulting from the disposition of the Assets of the Debtors, including the unencumbered Cash held by the Debtors at the time of the commencement of the liquidation case. Such Cash amounts would be reduced by the costs and expenses of the liquidation and by such additional Administrative Claims and Priority Claims as may result from the termination of the Debtors' businesses and the use of chapter 7 for the purpose of liquidation.

Because these Chapter 11 Cases are jointly administered but not substantively consolidated, conversion to chapter 7 would not create a single pooled estate. Rather, each

31

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

Debtor's case would remain separate absent further order of the Bankruptcy Court, and a chapter 7 trustee would administer only the assets of each particular Debtor's estate, subject to applicable liens, priorities, and inter-estate issues. Moreover, certain assets and property interests relevant to the Debtors' capital structure and operations are not property of the Debtors' estates, including assets of non-debtor affiliates and guarantors. For example, Velocity Esports Newport Kentucky II, LLC is not a debtor in these cases and holds the Newport liquor license, and certain Park City real properties securing the Newtek obligations are owned by non-debtor affiliates of Philip N. Kaplan and Leonard R. Wanger rather than by the Debtors. Accordingly, a chapter 7 liquidation would likely require estate-by-estate administration and could involve additional litigation or delay concerning ownership, lien rights, guaranties, intercompany relationships, and allocation of value, all of which could further reduce recoveries available to creditors.

The Liquidation Analysis estimates combined gross liquidation value of approximately $1,618,545.56 across the jointly administered Debtors, without substantive consolidation. The analysis projects that such value would be consumed by secured claims, settlement obligations, sale-related allocations, collateral-specific obligations, and additional Chapter 7 administrative and wind-down costs. The analysis estimates additional Chapter 7 administrative and wind-down costs of approximately $242,059.28. After applying asserted secured claims, collateral-specific obligations, settlement obligations, sale allocations, and Chapter 7 costs, the Liquidation Analysis projects no net proceeds available for distribution to general unsecured creditors and an estimated 0.00% recovery for Class 8 General Unsecured Claims in a hypothetical Chapter 7 liquidation.

The Debtors believe that a chapter 7 liquidation would likely result in reduced recoveries because of, among other things: (a) additional Administrative Expenses arising from the appointment of one or more chapter 7 trustees and the retention of professionals to assist them; (b) delay and expense associated with liquidating assets outside the Plan structure; (c) potential loss of going-concern value associated with the Las Vegas and Newport operations; (d) the need to litigate or reconcile the same disputed claim issues, including the Orange and Woodfield claims, in a liquidation context; and (e) the absence of any substantive consolidation, which would require estate-by-estate administration.

The liquidation analysis should also account for the fact that the Newport MIPA, if approved, is expected to preserve going-concern value that may not be realized in a chapter 7 liquidation. Conversely, if the Newport MIPA is not approved, if the Debtors do not obtain a final written agreement with NOTL Property Owner LLC regarding the Company's post-closing occupancy or operating rights at Newport on the Levee, or if the Newport lease and occupancy issues cannot be resolved, liquidation recoveries may be materially lower than projected because Newport may lose going-concern value and may require separate litigation regarding lease status, landlord claims, equipment obligations, liquor-license access, and membership-interest value.

The Debtors therefore believe that each Holder in any impaired Class will receive not less under the Plan than such Holder would receive in a hypothetical chapter 7 liquidation and that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

Thus, the Debtors strongly encourage all Impaired Classes to vote in favor of Confirmation of the Plan.

32

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

## 2.      Feasibility.

The Bankruptcy Code requires that to confirm the Plan, the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors (the "Feasibility Test"). For the Plan to meet the Feasibility Test, the Bankruptcy Court must find by a preponderance of the evidence that the Debtors and Reorganized Debtors will possess the resources, working capital, transaction proceeds, and stakeholder support necessary to meet their obligations under the Plan. As demonstrated by the discussion throughout this Disclosure Statement, the Debtors' feasibility depends materially on the Las Vegas transaction, the Newport MIPA, any required final written agreement with NOTL Property Owner LLC regarding the Company's post-closing occupancy or operating rights at Newport on the Levee, continued treatment of equipment obligations, and Non-Debtor Guarantors' Plan Contributions.

The Debtors' ongoing business is centered on the Las Vegas and Newport operations, together with the transactions and claim treatments contemplated by the Plan. The Debtors believe that the Plan is feasible because it is structured around: (a) the contemplated Las Vegas transaction; (b) the contemplated Newport MIPA transaction; (c) the application of collateral proceeds and transaction proceeds to senior secured debt; (d) the continued treatment of the NFS obligations and continuing landlord obligations; (e) the long-term payment structure for the disputed Class 6 legacy landlord claims; and (f) the continuing support, cooperation, and plan contributions of Philip N. Kaplan and Leonard R. Wanger.

The Feasibility Analysis reflects that the Plan is structured as a transaction-driven restructuring and claims-resolution plan. The Las Vegas Sale has closed and is treated principally as a secured-debt reduction and creditor-payment transaction, not as a source of unrestricted operating liquidity. The 13-week implementation bridge projects ending unrestricted implementation liquidity of approximately $441,786.87 after funding a $50,000 implementation reserve, assuming the modeled Newport operating receipts and disbursements, Non-Debtor Guarantors' Plan Contributions of $729,557.00, administrative / professional payments of $380,000.00, U.S. Trustee quarterly fees of $39,741.00, and NOTL / Newport landlord-related payments of $255,287.99 during the bridge period.

The Feasibility Analysis further reflects that no Class 6 payment stream is assumed during the 13-week bridge unless a Class 6 claim is Allowed, settled, or otherwise becomes payable by separate order or agreement. The Debtors believe that the combination of the closed Las Vegas Sale, the projected Newport operating runway, the Newport MIPA, the NOTL Resolution Documents, the staged treatment of secured and landlord obligations, and the Non-Debtor Guarantors' Plan Contributions provides a feasible path to confirmation and consummation of the Plan.

The Debtors further believe that they will be able to satisfy their obligations under the Plan over time through the combined effect of transaction implementation, continued operations at Las Vegas and Newport, structured treatment of Claims, and continuing stakeholder support. Although feasibility is subject to execution risk, litigation risk, and operational risk, the Debtors are confident that they can establish, and that the Bankruptcy Court will find, that the Plan is feasible within the

33

meaning of section 1129(a)(11) of the Bankruptcy Code.

### 3.    Accepting Impaired Class.

Since various Classes of Claims are impaired under the Plan, for the Plan to be confirmed, the Plan must be accepted by at least one impaired Class of Claims (not including the votes of insiders of the Debtors).

### 4.    Acceptance of Plan.

For an impaired Class of Claims to accept the Plan, those representing at least two-thirds (2/3) in amount and a majority (1/2) in number of the Allowed Claims voted in that Class must be cast for acceptance of the Plan.

### 5.    Confirmation Over a Dissenting Class.

If there is less than unanimous acceptance of the Plan by impaired Classes of Claims or Equity Interests, the Bankruptcy Court nevertheless may confirm the Plan at the Debtors' request. Section 1129(b) of the Bankruptcy Code provides that if all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, and if the Bankruptcy Court finds that: (i) the Plan does not discriminate unfairly; and (ii) the Plan is fair and equitable with respect to the rejecting Class or Classes of Claims or Equity Interests impaired under the Plan, then the Bankruptcy Court may confirm the Plan despite the rejection of the Plan by a dissenting impaired Class of Claims or Equity Interests.

The Debtors will request Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any impaired Class of Claims or Equity Interests that does not vote to accept the Plan. The Debtors believe that the Plan satisfies all of the statutory requirements for Confirmation, that the Debtors have complied or will have complied with all statutory requirements for Confirmation of the Plan, and that the Plan has been proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the statutory requirements for Confirmation.

### C.    Allowed Claims.

You have an "Allowed Claim" if: (i) you or your representative timely file a Proof of Claim and no objection has been filed to your Claim within the time period set for the filing of such objections; (ii) you or your representative timely filed a Proof of Claim and an objection was filed to your Claim upon which the Bankruptcy Court has ruled and Allowed your Claim; (iii) your Claim is listed by the applicable Debtor(s) in its Schedules or any amendments thereto, which are on file with the Bankruptcy Court as a public record, as liquidated in amount and undisputed and no objection has been filed to your Claim; or (iv) your Claim is listed by the applicable Debtor(s) in its Schedules as liquidated in amount and undisputed and an objection was filed to your Claim upon which the Bankruptcy Court has ruled to Allow your Claim.

Under the Plan, the deadline for filing objections to Claims is one hundred eighty (180) calendar days following the Effective Date, except for Claims for which a specific objection deadline is set forth elsewhere in the Plan, which deadline may be extended by the Reorganized

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

Debtors upon request after notice and a hearing. If your Claim is not an Allowed Claim, it is a Disputed Claim, and you will not be entitled to vote on the Plan unless the Bankruptcy Court temporarily or provisionally allows your Claim for voting purposes pursuant to Bankruptcy Rule 3018.

If you are uncertain as to the status of your Claim or Equity Interest, or if you have a dispute with the Debtors, you should check the Bankruptcy Court record carefully, including the Debtors' Schedules, and you should seek appropriate legal advice. The Debtors and their professionals cannot advise you about such matters.

**D.      Impaired Claims and Equity Interests.**

Impaired Claims and Equity Interests include those whose legal, equitable, or contractual rights are altered by the Plan, even if the alteration is beneficial to the Creditor or Equity Interest Holder, or if the full amount of the Allowed Claim will not be paid under the Plan. Holders of Claims or Equity Interests that are not impaired under the Plan are deemed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code, and the Debtors need not solicit acceptances of the Plan from such unimpaired Classes.

As reflected in this Disclosure Statement, Class 3 is Unimpaired, except as otherwise provided therein, and is not entitled to vote. Classes 7, 8, and 9 are Impaired, receive no distribution under the Plan, and are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, only Holders of Claims in impaired voting Classes 1, 2B, 4, 5, and 6 are presently entitled to vote on the Plan. Class 2A will not be solicited unless a Class 2A Claim is later Allowed or otherwise determined by the Bankruptcy Court to be entitled to vote.

**E.      Plan Modification.**

The Plan may be modified at any time before Confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtors modify the Plan before Confirmation in a manner requiring further disclosure or re-solicitation.

The Debtors may also seek to alter, amend, or modify the Plan at any time after Confirmation so long as: (i) the Plan has not been substantially consummated; (ii) as altered, amended, or modified, the Plan satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code; and (iii) the Bankruptcy Court authorizes the proposed modification after notice and a hearing. A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of such Holder's Claim.

The Debtors may seek conforming amendments, supplements, or modifications to the Plan and this Disclosure Statement to reflect the final Newport MIPA, any order approving the Newport MIPA, any final written agreement with NOTL Property Owner LLC regarding the Company's post-closing occupancy or operating rights at Newport on the Levee, any order approving a compromise under Bankruptcy Rule 9019, the treatment of equipment obligations, liquor-license arrangements, any insider allocation approved by the Bankruptcy Court, or any other transaction documents or orders necessary to implement the Newport transaction. If any such modification

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

35

materially and adversely affects creditors or voting rights, the Debtors will seek approval under 11 U.S.C. § 1127, Bankruptcy Rule 3019, or such other procedure as the Bankruptcy Court requires.

Before the Effective Date, the Debtors may make appropriate technical or non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Equity Interests. The Debtors further reserve the right to modify the treatment of any Allowed Claim after the Effective Date with the consent of the affected Creditor, so long as no other Creditors are materially and adversely affected. The Debtors also reserve the right, in accordance with the Bankruptcy Code, to amend or modify the Plan before or after Confirmation, including making any amendments or modifications necessary to satisfy section 1129(b) of the Bankruptcy Code if required.

**F.      Final Decree.**

Once the Estates have been fully administered, the Debtors or Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree closing these Chapter 11 Cases. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**G.      Voting Procedures.**

**1.      Submission of Ballots.**

All Creditors entitled to vote will be sent a Ballot, together with instructions for voting, a copy of this approved Disclosure Statement, and a copy of the Plan. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot that was sent with this Disclosure Statement. You should complete your Ballot and return it as follows:

NEVADA BANKRUPTCY ATTORNEYS, LLC
Attn: Matthew I. Knepper, Esq.
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Email: mknepper@nvbankruptcyattorneys.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS LISTED ABOVE BY _____, 2026 at 5:00 p.m. (Pacific Time).**

**2.      Incomplete Ballots.**

Unless otherwise ordered by the Bankruptcy Court, Ballots that are signed, dated, and timely received, but on which a vote to accept or reject the Plan has not been indicated, will be counted as a vote to accept the Plan.

**3.      Withdrawal of Ballots.**

A Ballot may not be withdrawn or changed after it is cast unless the Bankruptcy Court permits you to do so after notice and a hearing to determine whether sufficient cause exists to

permit the change.

### 4.    Questions and Lost or Damaged Ballots.

If you have any questions concerning these voting procedures, if your Ballot is damaged or lost, or if you believe you should have received a Ballot but did not receive one, you may contact Debtors' counsel as listed above regarding the submission of Ballots.

## X.    ALTERNATIVES TO THE PLAN

### A.    Debtors' Considerations.

The Debtors believe that the Plan provides Creditors with the best and most complete form of recovery available under the circumstances. As a result, the Debtors believe that the Plan serves the best interests of all Creditors, Holders of Equity Interests, and other parties in interest in these Chapter 11 Cases. The Debtors believe not only that the Plan, as described herein, fairly adjusts the rights of the various Classes of Claims and Equity Interests and enables Creditors to realize the greatest recovery reasonably available under the circumstances, but also that rejection of the Plan in favor of some theoretical alternative method of reconciling Claims and Equity Interests would not result in a better recovery for any Class.

In particular, the Plan is designed around the Debtors' actual capital structure and operating realities, including the closed Las Vegas Sale, the Newport MIPA, the continued treatment of NFS obligations, the continued treatment or resolution of necessary landlord relationships, and the centralized treatment of the disputed Class 6 legacy landlord claims. The Debtors further believe that final implementation of the Las Vegas Sale and preservation or transfer of the Newport business through the Newport MIPA offers materially greater value than attempting to dismantle the remaining business assets in a liquidation environment. The Debtors' principal has represented that preserving Newport's going-concern value offers the best available recovery scenario for creditors.

### B.    Alternative Plans of Reorganization.

Under section 1121 of the Bankruptcy Code, a debtor ordinarily has an exclusive period of one hundred twenty (120) days from the order for relief to file a plan and an additional period within which to solicit acceptances. The Debtors' exclusive periods under section 1121 have expired absent further extension. To the Debtors' knowledge, however, no creditor or other party in interest has filed a competing chapter 11 plan in these jointly administered cases.

Although another party in interest could theoretically propose an alternative plan, the Debtors are not aware of any presently proposed alternative plan structure that would offer a superior recovery to creditors while preserving the same degree of operational value, transaction flexibility, and centralized claim resolution contemplated by the Plan. Any alternative plan likely would still need to address the same core issues addressed by the Plan, including the treatment of the Newtek secured claim, the treatment of secured equipment lenders and equipment lessors, the treatment of continuing landlord claims, the treatment of the NFS settlement obligations, the treatment of the Orange and Woodfield claims, and the fact that these cases are jointly administered but not substantively consolidated.

37

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659  Fax: (702) 805-1659

**C.      Liquidation Under Chapter 7.**

If a plan cannot be confirmed, these Chapter 11 Cases may be converted to cases under chapter 7, in which one or more chapter 7 trustees would be appointed to liquidate the assets of the Debtors for distribution to creditors and Holders of Equity Interests in accordance with the priorities established by the Bankruptcy Code.

As previously stated, the Debtors believe that liquidation under chapter 7 would likely result in substantially reduced recoveries to creditors because of: (i) additional Administrative Expenses involved in the appointment of one or more chapter 7 trustees and the retention of attorneys, accountants, auctioneers, brokers, and other professionals to assist such trustees; (ii) additional expenses and Claims, some of which may be entitled to priority, that would be generated during the chapter 7 liquidation process; (iii) the possibility that secured creditors, equipment lenders, equipment lessors, landlords, or other parties in interest would seek and obtain relief from the automatic stay or otherwise exercise rights in collateral, thereby reducing the recovery available to junior creditors; (iv) the likely loss of going-concern value associated with the Las Vegas and Newport businesses if those operations were disrupted or liquidated outside the structure contemplated by the Plan; and (v) the additional delay, expense, and uncertainty associated with litigating disputed Claims, including the Orange and Woodfield claims, in a chapter 7 context rather than resolving them through the Plan.

Because these Chapter 11 Cases are jointly administered but not substantively consolidated, conversion to chapter 7 would not create a single pooled estate. Rather, each Debtor's case would remain separate absent further order of the Bankruptcy Court, and a chapter 7 trustee would administer only the assets of each Debtor's estate, subject to applicable liens, priorities, and inter-estate issues. Moreover, certain assets and property interests relevant to the Debtors' capital structure and operations are not property of the Debtors' estates, including assets of non-debtor affiliates and guarantors. For example, Velocity Esports Newport Kentucky II, LLC is not a debtor in these cases and holds the Newport liquor license, and certain Park City real properties securing the Newtek obligations are owned by non-debtor affiliates of Philip N. Kaplan and Leonard R. Wanger rather than by the Debtors. Accordingly, a chapter 7 liquidation would likely require estate-by-estate administration and could involve additional litigation or delay concerning ownership, lien rights, guaranties, intercompany relationships, and allocation of value, all of which could further reduce recoveries available to creditors.

The Debtors also believe that chapter 7 liquidation would be particularly inefficient here because the Debtors' restructuring strategy is built around preserving or transferring operating relationships and venue value, rather than simply liquidating hard assets. The Debtors' principal has stated that the Las Vegas and Newport venues are operationally stable core assets with meaningful upside, and the Plan is designed to preserve that value through coordinated transactions and continued performance of key obligations. By contrast, a forced liquidation could significantly impair the value of those operations, disrupt customer-facing businesses, and diminish the value otherwise available for distribution.

Accordingly, the Debtors believe that Holders of Claims would receive a smaller distribution under a chapter 7 liquidation than under the Plan.

38

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

## XI.    AVOIDANCE ACTIONS

A bankruptcy trustee, or a debtor-in-possession under chapter 11, may avoid as a preference certain transfers of property made by a debtor to a creditor on account of an antecedent debt while the debtor was insolvent, where the creditor received more than it would have received in a liquidation of the debtor under chapter 7 of the Bankruptcy Code had the transfer not been made, if: (i) the transfer was made within ninety (90) days before the commencement of the Chapter 11 Cases; or (ii) if the creditor was an "insider" as defined in the Bankruptcy Code, within one (1) year before the commencement of the Chapter 11 Cases. Under the Bankruptcy Code, a debtor is presumed to have been insolvent during the ninety (90) days preceding the commencement of the case.

A bankruptcy trustee, or a debtor-in-possession under chapter 11, may also avoid as a fraudulent transfer certain transfers of property made by a debtor within two (2) years before the commencement of the Chapter 11 Cases, and potentially longer under applicable non-bankruptcy law, including Nevada law, if the debtor received less than reasonably equivalent value in exchange for such transfer and was insolvent on the date of such transfer, became insolvent as a result of such transfer, was left with unreasonably small capital, or intended to incur debts beyond its ability to pay as such debts matured.

In these jointly administered Chapter 11 Cases, and except as otherwise expressly provided in the Plan or by Final Order, the Debtors and the Reorganized Debtors expressly reserve all rights with respect to Causes of Action, including Avoidance Actions under chapter 5 of the Bankruptcy Code, objections to Claims, turnover actions, contract claims, tort claims, equitable subordination, recharacterization, setoff, recoupment, and all other claims and rights belonging to the Estates. The Debtors' current draft further provides that nothing in the Disclosure Statement or Plan is intended to constitute a waiver, release, compromise, or settlement of any such matter unless expressly stated therein or approved by Final Order.

The Debtors have not undertaken to describe in this Disclosure Statement every potential Avoidance Action or other Cause of Action that may exist. There may be other Litigation Claims, Avoidance Actions, Causes of Action, and rights of action that currently exist or may subsequently arise that are not specifically set forth in this Disclosure Statement because the facts underlying such matters are not currently known or are not yet sufficiently developed. The failure to identify any particular potential cause of action herein shall not be deemed a waiver of such cause of action, and the Debtors and Reorganized Debtors expressly reserve the right to investigate, commence, prosecute, settle, compromise, or otherwise administer any such matter after Confirmation to the fullest extent permitted by the Plan, the Confirmation Order, and applicable law. The current draft likewise preserves all such matters unless they are expressly waived or released.

Any potential recoveries from Avoidance Actions or other Causes of Action are speculative and uncertain. Accordingly, no assurance can be given regarding whether any such claims will be pursued, whether any such claims will be successful, or the amount or timing of any net recovery. Nothing in this Disclosure Statement shall constitute an admission by the Debtors regarding the validity, priority, amount, or enforceability of any Claim, Lien, transfer, defense, or cause of action.

## XII.    RECOMMENDATION AND CONCLUSION

In the Debtors' opinion, the Plan provides the best possible recovery for all Creditors as a whole, and therefore they recommend that all Creditors who are entitled to vote on the Plan VOTE TO ACCEPT THE PLAN.

Dated: July 8, 2026.

| **Debtors**: | **Prepared and submitted**: |
|---|---|
| By: /s/ Philip Kaplan<br>Philip Kaplan<br>*Authorized Representative for Velocity Esports, Inc., Velocity Esports Las Vegas Town Square, LLC, Velocity Esports Chicago Schaumburg, LLC, Velocity Esports Newport Kentucky, LLC, and Velocity Esports Orlando Downtown, LLC* | By:  /s/ Matthew I. Knepper<br>NEVADA BANKRUPTCY ATTORNEYS, LLC<br>MATTHEW I. KNEPPER, ESQ., NBN 12796<br>BRENDEN J. GOUGEON, ESQ., NBN 16874<br>5940 S. Rainbow Blvd., Ste 400<br>PMB 99721<br>Las Vegas, Nevada 89118<br><br>*Attorneys for Debtors* |

40