# EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1 at 001

# EXHIBIT 1
# Liquidation Analysis

**PART I - FEASIBILITY ANALYSIS AND IMPLEMENTATION PROJECTIONS**

    **A.**    **Purpose, Standard, and Consolidated Implementation / Sources-and-Uses Premise**

The Debtors submit the following Feasibility Analysis in support of confirmation of the Plan. Under section 1129(a)(11) of the Bankruptcy Code, the Bankruptcy Court must determine that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors, except to the extent such liquidation or reorganization is proposed in the Plan. The Debtors believe the Plan satisfies this requirement because it is structured as a transaction-driven restructuring and claims-resolution plan, supported by identified transactions, staged payment obligations, claim allowance procedures, and projected sources of funding.

The Debtors do not contend that feasibility depends solely on long-term operating profits retained by the Debtors after the Las Vegas transaction and the Newport MIPA. The Plan is designed to be a transaction-driven restructuring and claims-resolution plan. The Las Vegas Sale closed on May 8, 2026. The Final Seller's Closing Statement reflects total consideration of $1,075,000.00, with disbursements including $633,431.00 to Newtek Lending and $101,000.00 to Pawnee Leasing Corporation. The Disbursement Worksheet identifies a remaining escrow balance that includes $37,394.74 labeled as Seller Proceeds, $134,375.00 labeled as Listing Broker / First Choice Business Brokers, and $12,169.26 labeled as Miscellaneous Taxes payable to the Nevada Department of Taxation. After payment of the Nevada Department of Taxation amount, the remaining non-tax escrow-holdback pool is $171,769.74, consisting of the $134,375.00 First Choice Business Brokers amount and the $37,394.74 Seller Proceeds amount. The Debtors understand that no unrestricted cash will flow to Seller from that pool. Instead, the $171,769.74 pool is available first for any amount allowed by the Bankruptcy Court to First Choice Business Brokers, with the remaining balance to NFS Capital on account of its settlement agreement claim.

Table 1 consolidates implementation-status and effective-date sources-and-uses summaries. It is intended to identify the principal Plan implementation components, the funding or value associated with each component, the corresponding use or obligation, the open items, and the feasibility function. It is not intended to substantively consolidate the Debtors or reallocate value among estates.

Table 2 separately treats the Las Vegas sale closing and escrow allocation detail.

    **B.**    **13-Week Case-Level Implementation Liquidity Bridge**

Table 3 presents a 13-week case-level implementation liquidity bridge, not a consolidated operating projection and not a substantive consolidation of the Debtors' estates. Newport is

1

EXHIBIT 1 at 002

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

currently the only Debtor expected to generate operating receipts. The Las Vegas venue has been sold, Schaumburg is closed, Orlando never commenced operations, and Velocity Esports, Inc. does not independently generate operating income. The bridge is included to show anticipated near-term ability to fund case milestones through disclosure statement approval, Newport MIPA approval, NOTL resolution, confirmation, and the Effective Date.

The Newport operating disbursement row includes projected Newport secured / equipment payments, including Advantage, LEAF, the NFS Newport Lease Agreement payment, and the NFS Settlement Agreement payment. The Class 4 NFS payment assumption used in the bridge is $5,600.24 per month, consisting of $2,934.60 under the NFS Newport Lease Agreement and $2,665.64 under the NFS Settlement Agreement, subject to final reconciliation and any applicable order.

### C.    First 24-Month Plan Payment Schedule

The Debtors anticipate that Plan obligations will be staged over time. Certain obligations will be payable on or shortly after the Effective Date, while others will be due only after the applicable claim becomes Allowed, after a transaction closes, or after entry of a Final Order. Table 4 summarizes the anticipated first 24 months of Plan-related payments and reserves.

### D.    Class 6 Claim Allowance and Payment Timing

The Plan treats Orange and Woodfield as Class 6 legacy landlord claimants. The Debtors dispute the amounts of those claims and reserve all rights to object to, estimate, reconcile, reduce, offset, credit, or otherwise limit them, including under section 502(b)(6) of the Bankruptcy Code and applicable nonbankruptcy law. No payment stream on account of any Class 6 Claim begins unless and until the claim becomes Allowed and is adjusted for all required reductions and credits.

For the avoidance of doubt, allowance of a Class 6 Claim determines the estate-side Plan obligation. The Plan does not adjudicate, release, discharge, or cap any separate liability of any Non-Debtor Guarantor, except to the extent expressly provided in a separate order of the Bankruptcy Court or written agreement approved by the Bankruptcy Court. Any guarantor payments, garnishment proceeds, or other non-Debtor recoveries on account of the same underlying lease obligations must be credited against the corresponding Class 6 Claim to the extent required by applicable law to prevent double recovery.

Table 5 identifies this treatment.

### E.    Non-Debtor Guarantor Support and Contributions

The Plan does not grant any non-Debtor release, discharge, or Plan-based injunction in favor of Philip N. Kaplan, Leonard R. Wanger, or any other non-Debtor guarantor. The Debtors do not contend that guarantor assets are property of the Estates. The Debtors do contend, however, that continued access to the cooperation, services, transaction assistance, historical knowledge, claim reconciliation support, liquidity access, and potential voluntary funding from the Non-Debtor Guarantors is a material component of Plan implementation and consummation.

Unless expressly set forth in a separate Court-approved agreement, Plan Supplement,

2

EXHIBIT 1 at 003

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

confirmation declaration, budget, or order included in the confirmation record, confirmation is not conditioned upon receipt of any fixed minimum dollar amount of Non-Debtor Guarantors' Plan Contributions. The following schedule identifies the anticipated sources, forms, timing, and use of such support. The Debtors will supplement or modify this schedule as appropriate before confirmation.

Table 6 details the non-debtor guarantor support schedule.

**F.      Feasibility Sensitivity Analysis**

Table 7 summarizes the Debtors' base case and selected downside scenarios based on the assumptions currently reflected in the 13-week implementation bridge, 24-month Plan payment schedule, Class 6 claim assumptions, Newport MIPA assumptions, NOTL Resolution Documents, and the Debtors' current restructuring strategy. The figures remain subject to actual results, further settlement negotiations, Court approval, and claim reconciliation.

**G.      Feasibility Conclusion**

Based on the assumptions, sources, uses, staged payment obligations, transaction milestones, and claim allowance procedures described above and in the Plan, the Debtors believe the Plan is feasible. The Debtors believe the Plan is not likely to be followed by liquidation or further financial reorganization except to the extent any transaction, claim resolution, asset sale, wind-down, structured dismissal, or other implementation step is expressly contemplated by the Plan or approved by the Bankruptcy Court. The Debtors further believe the Plan provides a better and more controlled path for creditors than conversion to chapter 7 because it preserves transaction value, avoids duplicative administration, centralizes estate-side claim allowance, and defers payment obligations until the relevant claims are Allowed and adjusted.

**PART II - PROPOSED LIQUIDATION ANALYSIS**

**A.      Purpose of Liquidation Analysis**

The Debtors have prepared this Liquidation Analysis in connection with the Plan and Disclosure Statement for purposes of satisfying section 1129(a)(7) of the Bankruptcy Code, commonly referred to as the "best interests of creditors" test. The Liquidation Analysis estimates the recoveries that Holders of Allowed Claims and Equity Interests would receive if the Debtors' Chapter 11 Cases were converted to cases under Chapter 7 of the Bankruptcy Code and the Debtors' estate assets were liquidated by one or more Chapter 7 trustees.

This Liquidation Analysis is necessarily hypothetical. It is based on the Debtors' books and records, filed schedules and statements, claims information, sale and settlement documents, available payoff and collateral information, management estimates, and other information available as of the date of the Disclosure Statement. Actual results in Chapter 7 could differ materially from the estimates set forth herein.

Nothing in this Liquidation Analysis constitutes, or should be construed as, a valuation, appraisal, stipulation, admission, or binding determination regarding the amount, validity, priority, extent, classification, or allowance of any asset, Claim, lien, security interest, Equity Interest,

3

EXHIBIT 1 at 004

litigation claim, avoidance action, or other right. The Debtors reserve all rights with respect to claim objections, lien and priority disputes, payment-credit issues, settlement-performance issues, asset ownership issues, and final allocation of sale or escrow proceeds.

### B.      Legal Framework, Scope, and General Assumptions

The Debtors' Chapter 11 Cases are jointly administered for procedural convenience only and are not substantively consolidated. Accordingly, this Liquidation Analysis is prepared on an estate-by-estate basis, and it assumes that each Debtor's estate would be administered separately in Chapter 7 unless the Bankruptcy Court ordered otherwise after notice and hearing. Any combined or consolidated summary table is provided for convenience only and does not imply substantive consolidation, pooling of assets, or cross-estate liability.

The assumed liquidation date for this analysis is July 14, 2026. The analysis excludes assets of non-Debtor entities and non-Debtor guarantors, including assets of Philip N. Kaplan, Leonard R. Wanger, any non-Debtor trust or affiliate, and any non-Debtor entity holding a liquor license or other asset used in connection with the Debtors' business operations. The analysis also does not assume any contribution from non-Debtor guarantors, insiders, or affiliates except to the extent expressly provided under the Plan or related Plan documents.

The analysis assumes that, upon conversion, a Chapter 7 trustee would investigate, preserve, sell, abandon, or otherwise administer estate-owned assets and would evaluate asserted Claims, liens, security interests, collateral rights, and estate causes of action. The analysis further assumes that a Chapter 7 trustee would incur additional trustee commissions, professional fees, claims-reconciliation costs, tax/accounting costs, auction or broker costs, storage costs, insurance costs, payroll or employee wind-down costs, landlord access or surrender costs, equipment-related costs, and other Chapter 7 administrative expenses. Those costs would reduce any proceeds otherwise available for distribution.

The Debtors believe that a Chapter 7 conversion would materially reduce or eliminate the going-concern and transaction value associated with the Las Vegas and Newport assets. In chapter 7, a trustee likely would face additional delay, uncertainty, and expense in administering specialized entertainment venue assets, landlord and occupancy issues, equipment relationships, license arrangements, employee continuity, and management transition issues. The Debtors also believe that disruption to the pending Plan-related transactions, including the Newport MIPA and related NOTL Resolution Documents, could materially impair value compared to the recoveries and value preserved under the Plan.

The Debtors prepared this Liquidation Analysis using information from their books and records, schedules and statements, asset reports, claims register, proofs of claim, sale transaction documents, the Newport MIPA, available payoff information, management estimates, and other materials available as of the date of the Disclosure Statement. For the Las Vegas estate, the analysis incorporates the Final Seller's Closing Statement and Disbursement Worksheet for the Las Vegas Sale, which closed on May 8, 2026. The analysis assumes that no unrestricted cash is available to the Debtors from the Las Vegas Sale after closing costs, tax amounts, secured/equipment obligations, the Newtek sale-proceeds disbursement, escrow/holdback treatment, and other closing allocations. After payment of the $12,169.26 Nevada Department of Taxation amount, the

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

4

EXHIBIT 1 at 005

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659  Fax: (702) 805-1659

remaining $171,769.74 non-tax escrow-holdback pool is assumed to be available first for any amount allowed by the Bankruptcy Court to First Choice Business Brokers, with any remaining balance to NFS Capital on account of its settlement agreement claim.

For purposes of this Liquidation Analysis, Newtek's asserted claim and NFS Capital's settlement claim are not multiplied or stacked by the Debtor. Rather, the analysis reflects each creditor's asserted rights only to the extent of available estate value, applicable collateral, sale proceeds, settlement rights, and payment credits, subject in all respects to final payoff, claim allowance, lien, priority, settlement-performance, and credit reconciliation. NFS Capital's collateral/replacement lien rights are separately limited to the specific NFS equipment identified in the Court's order approving the NFS settlement and do not expand NFS Capital's collateral base or prime Newtek's asserted lien rights.

Table 8 provides a debtor-by-debtor asset value summary. The cash values in Table 8 are liquidation-analysis estimates based on the assumed Chapter 7 liquidation scenario and do not include Non-Debtor Guarantors' Plan Contributions unless actually contributed to and retained by the applicable estate before conversion. Table 3, by contrast, is an implementation liquidity bridge that assumes continued Newport operations, approval and availability of Non-Debtor Guarantors' Plan Contributions, payment of administrative and landlord obligations, and continuation toward Plan consummation. The two tables serve different purposes and should not be read as using the same cash-balance premise.

**C.       Secured Claim and Collateral Waterfall**

Table 9 summarizes the secured-claim waterfall by collateral pool and supports the conclusion that, even before considering general unsecured claims, the available liquidation value is consumed by liquidation costs, creditor-specific collateral claims, settlement obligations, and Newtek's asserted blanket lien.

For the VES Inc. estate, the table estimates gross liquidation value of $104,697.63, consisting primarily of IP, cash, and membership-interest-related value. After applying estimated sale or liquidation costs of $15,704.65, the remaining value is insufficient to satisfy asserted senior or specific obligations. The table identifies asserted NFS settlement obligations of $255,645.52 and estimated Advantage Leasing obligations of approximately $180,000.00, for total asserted senior or specific obligations of approximately $435,645.52, capped by available value after sale costs. Newtek's asserted blanket lien then consumes the remaining available value, resulting in $0.00 net estate value.

For the Las Vegas estate, the table uses the completed Las Vegas sale value of $1,075,000.00 as the gross liquidation value. That value is reduced by known fixed closing costs and taxes of $15,549.26, excluding the First Choice Business Brokers allocation. The remaining proceeds are then applied to specific sale-related and secured obligations, including $101,000.00 to Pawnee, the $171,769.74 First Choice / NFS allocation pool, and $153,250.00 in remaining closing allocations or restricted proceeds, subject to final reconciliation. Newtek also received a $633,431.00 disbursement from the Las Vegas sale proceeds. After those deductions and

5

EXHIBIT 1 at 006

allocations, the table projects $0.00 unrestricted seller cash, with any First Choice / NFS allocation remaining subject to court determination and escrow disbursement.

For the Newport estate, the table estimates gross liquidation value of $438,847.93. Applying the assumed 15% liquidation cost produces a deduction of $65,827.19. The table then identifies asserted NFS settlement and equipment obligations of $255,645.52, plus the LEAF claim of $107,853.50, for total specific obligations of $363,499.02. Newtek's asserted blanket lien is also shown as consuming the remaining available collateral value, estimated at $373,020.74 after liquidation costs. The result is $0.00 net estate value for unsecured creditors.

For the Schaumburg residual assets, the table assigns $0.00 in gross liquidation value. Although asserted NFS settlement obligations of $255,645.52 remain subject to reconciliation, there is no available liquidation value to apply to those obligations or to unsecured creditors. The resulting net estate value is $0.00.

For the Orlando residual assets, the table likewise assigns $0.00 in gross liquidation value. No secured recovery or net estate value is projected.

Overall, Table 9 shows that each estate's collateral pool is either fully consumed by specific secured obligations, settlement obligations, sale-related allocations, Newtek's asserted blanket lien, or liquidation costs, or else has no liquidation value at all. The table therefore supports the broader liquidation-analysis conclusion that there is no projected residual estate value available for general unsecured creditors in a hypothetical Chapter 7 liquidation.

### D.  Chapter 7 Administrative Costs and Priority Waterfall

In chapter 7, the Debtors anticipate that one or more chapter 7 trustees would incur additional administrative expenses to investigate, preserve, sell, abandon, or otherwise administer estate assets and claims. These costs would reduce or eliminate proceeds available for distribution to unsecured creditors.

Table 10 estimates the additional administrative and wind-down costs that would likely be incurred if the Velocity cases were converted to Chapter 7. These costs are important because they further reduce any value otherwise available for creditor distributions and support the conclusion that Chapter 7 would not produce a better recovery than the Plan.

The table estimates total additional Chapter 7 costs of $242,059.28. This includes an estimated $30,427.28 Chapter 7 trustee commission, calculated under § 326 based on projected distributions from the Velocity Esports, Inc. and Velocity Esports Newport Kentucky, LLC estates.

The table also includes $35,000.00 for storage, removal, security, and insurance costs, primarily affecting the Newport estate. These costs account for the practical expense of protecting, storing, removing, insuring, or otherwise administering venue assets, equipment, and surrendered premises in a Chapter 7 liquidation.

The largest estate-specific wind-down item is $106,632.00 for Newport payroll and employee wind-down costs. This assumes approximately one month of payroll, together with related WARN Act, benefits, and payroll-tax review issues if applicable. This reflects the reality

EXHIBIT 1 at 007

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659  Fax: (702) 805-1659

that a Chapter 7 trustee would have to address employee and payroll issues if Newport operations were discontinued or wound down.

Finally, the table includes $70,000.00 for Chapter 7 professionals, tax/accounting work, and claims reconciliation. This amount is intended to capture the additional professional and administrative work likely required after conversion, including lien and claim reconciliation, tax review, landlord and equipment issues, and general wind-down matters. Sale-related costs already captured elsewhere in the liquidation analysis are excluded from this estimate to avoid double-counting.

Overall, Table 10 shows that a Chapter 7 conversion would impose substantial additional administrative costs before any distribution could be made to unsecured creditors. These projected costs, when layered on top of secured claims, settlement obligations, collateral-specific claims, and sale-related allocations, further support the conclusion that Chapter 7 would not generate any meaningful unsecured creditor recovery.

E.      **Chapter 7 Distribution Summary**

As summarized in Table 11, the hypothetical Chapter 7 distribution analysis projects that conversion to Chapter 7 would not generate any meaningful recovery for unsecured creditors across the jointly administered Velocity estates. Although the combined gross liquidation value is estimated at approximately $1,618,545.56, the table assumes that this value would be fully consumed by secured claims, settlement obligations, sale-related allocations, collateral-specific obligations, and Chapter 7 administrative costs. As a result, the projected recovery for general unsecured creditors is 0.00%.

For Velocity Esports, Inc., the table estimates gross liquidation value of $104,697.63, but that value is consumed by asserted NFS settlement obligations, Advantage Leasing obligations, and Newtek's asserted blanket lien claim, all subject to final claim, lien, priority, payment-credit, and settlement reconciliation. After allocating Chapter 7 costs of $20,085.45, no residual value is projected for unsecured creditors.

For Velocity Esports Las Vegas Town Square, LLC, the table uses the actual Las Vegas sale value of $1,075,000.00 as the gross liquidation value. However, those proceeds are treated as fully absorbed by the Newtek disbursement of $633,431.00, the Pawnee payment of $101,000.00, the $171,769.74 First Choice / NFS pool, fixed costs, taxes, and closing allocations. After Chapter 7 cost allocation, no unrestricted sale cash is projected to remain for unsecured creditors.

For Velocity Esports Newport Kentucky, LLC, the table estimates gross liquidation value of $438,847.93. That value is projected to be consumed by NFS settlement and equipment-specific obligations, the LEAF claim, Newtek's asserted blanket lien claim, and Newport-specific Chapter 7 wind-down costs of $161,717.46. No net value is projected for unsecured creditors.

For Velocity Esports Chicago Schaumburg, LLC and Velocity Esports Orlando Downtown, LLC, the table projects no gross liquidation value. Schaumburg remains subject to asserted NFS settlement obligations and Newtek's blanket lien claim, but there is no liquidation value available. Orlando likewise has no projected liquidation value. Each estate is allocated $20,085.45 in shared Chapter 7 costs, further confirming that no unsecured distribution is projected.

7

EXHIBIT 1 at 008

In total, the analysis projects $242,059.28 in Chapter 7 administrative and wind-down costs. Those costs would be incurred on top of the secured claims, settlement obligations, sale allocations, and collateral-specific claims that already consume the available liquidation value. The table therefore supports the conclusion that a Chapter 7 conversion would not produce a distribution to general unsecured creditors and that the Plan provides no less than what creditors would receive in a hypothetical Chapter 7 liquidation.

**F.      Plan Versus Chapter 7 Comparison**

Table 12 compares each Plan class against the estimated Chapter 7 recovery and supports the Debtors' best-interest argument under § 1129(a)(7). The table projects that each class will receive treatment under the Plan that is at least as favorable as what the class would receive in a hypothetical Chapter 7 liquidation.

Administrative claims are projected to be paid as provided under the Plan or applicable Court orders. In Chapter 7, those claims would be paid only to the extent funds remained after secured claims and Chapter 7 administrative costs. Because Chapter 7 would add an estimated $242,059.28 in trustee commissions, professional fees, wind-down costs, storage, security, insurance, payroll, and related costs, the Plan is projected to provide not less than the Chapter 7 recovery.

Priority tax claims are treated as paid in full over the Plan period as allowed. In Chapter 7, those claims would be paid only to the extent required by priority and only if estate funds were available. The table therefore concludes that the Plan provides not less than the Chapter 7 recovery.

For Class 1 — Newtek, the Plan treatment applies collateral proceeds and payment credits, including the $633,431.00 Las Vegas sale disbursement. The estimated Chapter 7 recovery would likewise depend on collateral value, sale proceeds, payment credits, lien rights, and final claim reconciliation. Because Newtek's recovery in Chapter 7 would be limited to the same collateral and payment-credit framework, the Plan is projected to satisfy the best-interest test.

For Class 2A — Las Vegas equipment, no known unpaid allowed claim or additional sale proceeds are projected. The estimated Chapter 7 recovery is $0.00 beyond any applicable collateral rights, so the Plan provides not less than the Chapter 7 recovery.

For Class 2B — Newport secured equipment, the Plan contemplates restructuring, continuation, or prepayment as applicable. In Chapter 7, recovery would be limited to collateral value after liquidation costs and the disruption caused by a forced liquidation. Because Chapter 7 could impair collateral value and create additional administrative costs, the Plan is projected to provide at least equivalent treatment.

For Class 3 — Las Vegas equipment lessors / executory contracts, the Plan provides assumption, assignment, or rejection treatment as applicable. In Chapter 7, those counterparties would likely be limited to collateral, rejection, repossession, or deficiency rights, with no projected estate distribution. The table therefore concludes that the Plan provides not less than Chapter 7.

For Class 4 — NFS, the Plan treats the settlement and lease components under the Plan and contemplates that NFS may receive the remaining balance, if any, of the $171,769.74 First

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

8

EXHIBIT 1 at 009

Choice / NFS allocation pool after payment of any Court-approved First Choice amount. In Chapter 7, NFS's recovery would be limited to equipment-specific collateral value, settlement rights, and any remaining allocation pool, subject to payment-credit and claim reconciliation. The table also notes that NFS's settlement claim is not multiplied by Debtor and that NFS's replacement lien is limited to identified NFS equipment and does not prime Newtek or expand NFS's collateral base. On that basis, the Plan provides not less than Chapter 7.

For Class 5 — continuing landlords, the Plan relies on agreement, Final Order, and NOTL Resolution Documents. In Chapter 7, landlord recovery would be limited to allowed priority or administrative amounts and available estate funds, with no residual unsecured recovery projected. Chapter 7 could also cause lease rejection, loss of occupancy, or loss of venue value. The Plan therefore provides treatment no worse than liquidation.

For Class 6 — legacy landlord claims, the Plan provides payment over 20 years after allowance and adjustment. The estimated Chapter 7 recovery is $0.00, because the estate-side claims remain disputed and subject to reductions, and the liquidation analysis projects no residual estate value for unsecured distributions. Accordingly, the Plan provides a better or at least equal recovery compared with Chapter 7.

For Class 7 — insider secured claims, the Plan provides no distribution. Chapter 7 recovery is also projected at $0.00, because those claims are subordinated to senior obligations and no residual value is projected. The Plan therefore satisfies the best-interest comparison for that class.

For Class 8 — general unsecured claims, the Plan provides no distribution, but the estimated Chapter 7 recovery is also $0.00. The table specifically notes that no residual cash from the Las Vegas sale is assumed to be available for Class 8 distributions. Because Chapter 7 does not improve the projected recovery, the Plan provides not less than Chapter 7.

For Class 9 — equity interests, the Plan provides no distribution, and Chapter 7 recovery is also projected at $0.00 because there is no residual value after secured claims, priority claims, and Chapter 7 costs.

Overall, Table 12 supports the conclusion that the Plan satisfies the best-interest test because no class is projected to receive more in Chapter 7 than under the Plan. The Plan preserves transaction value, avoids additional Chapter 7 administrative costs, maintains structured treatment of disputed claims, and provides a more controlled claims-resolution framework than liquidation.

G.    Chapter 7 Impact on Going-Concern and Transaction Value

The Debtors believe that a chapter 7 conversion would materially reduce value because a chapter 7 trustee would be required to administer specialized venue assets, lease and occupancy issues, equipment relationships, secured claims, and landlord disputes under compressed and uncertain conditions. The completed Las Vegas Sale provides actual evidence of transaction value: $1,075,000.00 in gross consideration, with identified creditor disbursements, transaction costs, and holdbacks, and no unrestricted sale cash projected for Seller. A chapter 7 trustee likely would face additional professional, auction, storage, landlord-access, tax, insurance, payroll, and delay costs, and could face reduced buyer interest if the assets were sold outside the negotiated sale structure. Similarly, the Debtors believe that disruption to the Newport MIPA, NOTL occupancy

9

EXHIBIT 1 at 010

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

arrangements, NFS/equipment continuity, license arrangements, employee continuity, and management support would likely reduce or eliminate going-concern value. For these reasons, the Debtors believe that the Plan and related transactions provide a superior value outcome compared with a hypothetical chapter 7 liquidation.

### H.    Liquidation Analysis Conclusion

Based on the assumptions and estimates set forth above, the Debtors believe that conversion of these Chapter 11 Cases to cases under chapter 7 would not produce greater recoveries for holders of Claims or Equity Interests than the recoveries provided or preserved under the Plan. This conclusion is supported by the Debtors' estate-by-estate liquidation analysis, which reflects that projected liquidation proceeds would be consumed by collateral-specific obligations, asserted secured claims, settlement obligations, sale-related allocations, and the additional administrative costs of chapter 7.

The Debtors' analysis incorporates the completed Las Vegas Sale, which generated $1,075,000.00 in gross consideration but is not projected to provide unrestricted residual sale cash to the Debtors after payment or allocation of closing costs, tax amounts, secured/equipment obligations, the Newtek sale-proceeds disbursement, and the First Choice Business Brokers / NFS escrow-holdback treatment. The analysis also reflects that the Newport asset pool is projected to be fully consumed by liquidation costs, NFS settlement/equipment-specific obligations, Leaf obligations, Newtek's asserted blanket lien claim, and Newport-specific chapter 7 wind-down costs. The remaining Debtor estates are not projected to generate liquidation value available for unsecured creditor distributions.

The Debtors further estimate that a chapter 7 conversion would impose approximately $242,059.28 in additional trustee commission, professional, tax/accounting, claims reconciliation, payroll, storage, removal, security, insurance, and wind-down costs. Those additional costs would further reduce or eliminate any value otherwise available for distribution to unsecured creditors.

For purposes of this Liquidation Analysis, neither Newtek's asserted claim nor NFS's settlement claim is multiplied or stacked by Debtor. Rather, the analysis reflects each creditor's asserted rights only to the extent of available estate value, applicable collateral, sale proceeds, settlement rights, and payment credits, subject in all respects to final payoff, claim allowance, lien, priority, settlement-performance, and credit reconciliation. The Debtors reserve all rights with respect to claim objections, lien disputes, payment-credit issues, and final allocation of sale or escrow proceeds.

The Debtors also believe that chapter 7 would materially reduce going-concern and transaction value by disrupting the Newport MIPA, NOTL Resolution Documents, landlord and equipment relationships, license arrangements, employee continuity, and management support. A chapter 7 trustee likely would face additional delay, uncertainty, professional expense, storage and access issues, and reduced buyer interest if the Debtors' assets were administered or sold outside the negotiated Plan and transaction structure.

Accordingly, based on the Debtors' current estimates, no recovery is projected for Class 8 General Unsecured Claims or Class 9 Equity Interests in a hypothetical chapter 7 liquidation.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

10

EXHIBIT 1 at 011

Because the Plan provides treatment that is not less favorable than the projected chapter 7 liquidation recovery for each impaired accepting or rejecting class, the Debtors believe that the Plan satisfies the best-interest test under section 1129(a)(7) of the Bankruptcy Code, subject to completion of final numerical assumptions, exhibits, claim reconciliation, and any further Bankruptcy Court determinations.

NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S. Rainbow Blvd., Ste 400
PMB 99721
Las Vegas, Nevada 89118
Tel: (702) 805-1659   Fax: (702) 805-1659

11

EXHIBIT 1 at 012

| Implementation Component | Status / Timing | Source, Funding, or Value | Use / Payment Treatment | Open Items / Conditions | Feasibility Function |
|---|---|---|---|---|---|
| Las Vegas Sale and escrow holdback | Closed May 8, 2026; June 17, 2026 hearing completed; First Choice Business Brokers amount treated as allowed / paid at $134,375.00, with the remaining $37,394.74 seller-proceeds amount allocated to NFS Capital on account of its settlement agreement claim, subject to final escrow reconciliation and applicable order. | Gross sale consideration: $1,075,000.00. | $633,431.00 to Newtek; $101,000.00 to Pawnee; $12,169.26 to Nevada Department of Taxation; $134,375.00 to First Choice Business Brokers; $37,394.74 to NFS Capital. No unrestricted cash to Seller. | Closed. | Completed transaction reduces secured / equipment obligations and provides actual sale value evidence, but does not provide free operating liquidity. |
| Newport MIPA | Drafted / pending approval. | No unrestricted cash proceeds currently modeled. Transaction value reflected through Newport going-concern preservation, specified obligation treatment, NOTL Resolution Documents, and final MIPA / Exhibit C / Sale Order terms. | Transfer of membership interests in Velocity Esports Newport Kentucky, LLC; treatment of specified obligations under Sale Order. | Sale Order; any procedures order; final Exhibit C; no stay; purchaser proof of funding; insider allocation approval if pursued. | Preserves Newport going-concern value and supports Plan value / feasibility. |
| NOTL Resolution Documents | Negotiating lease / resolution | Landlord-resolution value, lease economics, use-and-occupancy | Payment, deferral, settlement, replacement-lease, use- | Final NOTL documents; any Rule 9019, 365, or 363 | Preserves Newport occupancy and operating rights. |

EXHIBIT 1 at 013

Case 25-12627-mkn    Doc 294-1    Entered 07/08/26 14:40:54    Page 14 of 39

EXHIBIT 1 at 014

| Implementation Component | Status / Timing | Source, Funding, or Value | Use / Payment Treatment | Open Items / Conditions | Feasibility Function |
|---|---|---|---|---|---|
| | documents; draft near completion. | terms, or settlement consideration. | and-occupancy, or other occupancy treatment as approved by Court. | order; landlord consent; guaranty terms. | |
| Newtek collateral / proceeds treatment | Ongoing application of Park City and Las Vegas collateral proceeds. | Kaplan has sold two personal investment properties netting $858,384.14 to Newtek; LV Sale paid / allocated $633,431.00; final Park City property listed with expected net sufficient to satisfy balance. | Apply proceeds and credits to Newtek claim subject to final reconciliation and any -order. | Confirm remaining Newtek balance, final Park City sale, and lien / proceeds treatment. | Reduces or satisfies senior secured debt and improves confirmation feasibility. |
| NFS settlement and equipment arrangements | Settlement approved; ongoing obligations remain. | NFS may receive remaining balance of $37,394.74 after First Choice amount is allowed and paid. | Apply balance to NFS settlement agreement claim; continue remaining lease / settlement obligations as applicable. | June 17 ruling; compute remaining NFS balance after escrow application; confirm ongoing payment schedule. | Preserves access to essential equipment and fixes payment structure. |
| Class 5 landlord treatment | SRMF / Las Vegas and NOTL / Newport treated through Class 5 and transaction-specific orders. | SRMF / Las Vegas: lease assigned to buyer;<br><br>NOTL / Newport structured repayment / settlement of $225,000.00 against outstanding rent, consisting of a $50,000.00 amendment repayment split into two $25,000.00 Philip N. Kaplan-funded tranches (first payable upon entry of the order approving | Amounts paid, deferred, settled, or otherwise treated by agreement or Final Order. For feasibility purposes, the 13-week bridge includes only first $25,000.00 Kaplan-funded amendment repayment tranche, plus ongoing rent and monthly future repayment amounts due during the bridge period; the second | SRMF / Las Vegas assigned pursuant to ECF 269; finalize NOTL Resolution Documents, obtain order approving Second Amendment / NOTL resolution, and document Kaplan-funded timing for the two $25,000.00 amendment repayment tranches. | Maintains or resolves critical premises relationships without fixing uncertain amounts in Plan. |

EXHIBIT 1 at 015

| Implementation Component | Status / Timing | Source, Funding, or Value | Use / Payment Treatment | Open Items / Conditions | Feasibility Function |
|---|---|---|---|---|---|
| | | the Second Amendment to the NOTL lease; second payable at the end of December 2026) and $175,000.00 future repayment payable over 84 months at $2,083.33 per month. Ongoing rent and monthly future repayment are funded by Newport operations, subject to approval of the NOTL Resolution Documents and final order. | $25,000.00 tranche is modeled outside the 13-week bridge and within the first six months of Plan implementation. | | |
| Class 6 claim allowance / estimation | Pending settlement discussions, claim objections, or estimation. | Allowed-claim scenarios after 502(b)(6), credits, mitigation, guarantor recoveries, and offsets; or settlement. | No payment stream begins until applicable Class 6 claim is Allowed and adjusted. | Claim objection / estimation / settlement path; payment start date; low/base/high scenarios. | Determines long-term payment burden while avoiding immediate liquidity drain. |
| Administrative Claims and professional fees | Subject to interim fee application; otherwise accruing through Confirmation / Effective Date. | Funded by Non-Debtor Guarantor support. | Pay as allowed by Court, agreement, or Plan terms. | Update fee estimates; UST fees; admin tax and postpetition trade amounts. | Determines administrative solvency and ability to reach Effective Date. |
| Non-Debtor Guarantor support | Expected / to be evidenced in confirmation record. Wanger restricted Merrill Lynch account funds are expected to be made available subject to | Wanger restricted Merrill Lynch accounts: $386,454.00; Kaplan non-exempt personal assets: $343,103.00, payable in eight equal quarterly installments of $42,887.88 over two | Potential voluntary funding; transaction support; management continuity; claim reconciliation; liquidity support. The 13-week bridge models $429,341.88 in near- | Declarations, budgets, contribution agreements, Plan Supplement, and/or Court order releasing funds; avoid treating guarantor assets as estate property before | Supports transactions, claims administration, liquidity, reserves, and implementation without creating a Plan-based release. |

EXHIBIT 1 at 016

| Implementation Component | Status / Timing | Source, Funding, or Value | Use / Payment Treatment | Open Items / Conditions | Feasibility Function |
|---|---|---|---|---|---|
|  | Court order; Kaplan contribution is proposed to be paid in eight equal quarterly installments over two years, beginning in Q3 2026. | years (first installment due Q3 2026; second installment due Q4 2026; remaining installments due quarterly thereafter), plus non-cash support. | term guarantor support, consisting of the Wanger funds plus the first Kaplan quarterly installment; later Kaplan installments are modeled as post-bridge Plan funding support. | contribution or Court-approved funding mechanism. |  |

**Table 2 - Las Vegas Sale Closing and Escrow Allocation Detail**

| Line Item | Amount | Treatment in Feasibility Model | Notes |
|---|---|---|---|
| Total consideration | $1,075,000.00 | Gross sale value / transaction value | Final Seller's Closing Statement. |
| Newtek Lending | ($633,431.00) | Creditor claim disbursement / secured claim reduction | Treat as reducing Newtek claim subject to claim reconciliation. |
| Pawnee Leasing Corporation | ($101,000.00) | Creditor claim disbursement / equipment claim reduction | Treat as satisfying Pawnee claim. |
| Escrow fee | ($2,500.00) | Fixed closing cost | Escrow charge. |
| UCC search | ($630.00) | Fixed closing cost | Escrow charge. |
| File maintenance fee | ($250.00) | Fixed closing cost | Escrow charge. |
| Nevada Department of Taxation | ($12,169.26) | Tax / debit - excluded from distributable pool | To be paid to Nevada Department of Taxation. |
| First Choice Business Brokers holdback | ($134,375.00) | Restricted escrow-holdback component | Payable only to extent allowed by Bankruptcy Court; any unused portion available for NFS Capital. |
| NFS Settlement Agreement allocation pool | ($37,394.74) | Restricted escrow allocation pool | First to Court-approved First Choice amount, remainder to NFS Capital. |
| Unrestricted cash to Seller | $0.00 | No unrestricted net sale proceeds | No Las Vegas Sale residual cash is treated as available operating liquidity. |
| Disbursement Worksheet total issued receipts | $925,130.00 | Reconciliation item | Reconciliation item; worksheet shows total issued receipts of $925,130.00 and a remaining escrow balance of $183,939.00, consisting of First Choice Business |

EXHIBIT 1 at 017

| Line Item | Amount | Treatment in Feasibility Model | Notes |
|---|---|---|---|
| | | | Brokers, Seller Proceeds / NFS allocation, and Nevada Department of Taxation amounts. |
| NFS Assumed Secured Equipment Lease credit/non-cash consideration | $153,250.00 | Non-cash credit or assumed-obligation component reflected in the Las Vegas Sale closing economics; not an escrowed cash disbursement. | Non-cash credit or assumed-obligation component reflected in Las Vegas Sale closing economics; not an additional escrowed cash receipt. Debtors reserve all rights to reconcile the relationship among the $1,075,000.00 total consideration, the $925,130.00 issued receipts, and the NFS-related assumed-obligation / cash-credit treatment. |

## Table 3 - 13-Week Case-Level Implementation Liquidity Bridge

| Line Item | Opening / Week 1 | Weeks 2-4 | Weeks 5-8 | Weeks 9-13 | Ending / Total |
|---|---|---|---|---|---|
| Beginning unrestricted cash / liquidity carryforward | $58,433.00 | $89,465.37 | $98,618.04 | $150,860.21 | N/A |
| Newport operating receipts | $55,000.00 | $206,000.00 | $405,000.00 | $356,810.00 | $1,022,810.00 |
| Newport operating disbursements, including equipment / secured payments | ($23,967.63) | ($152,759.88) | ($244,587.50) | ($222,669.13) | ($643,984.14) |
| VES Inc. / LV / Schaumburg / Orlando operating receipts | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Nevada Department of Taxation payment from escrow | $0.00 | $0.00 | $0.00 | $0.00 | Paid pre-bridge from VES LV escrow |
| First Choice amount allowed and paid from restricted pool | $0.00 | $0.00 | $0.00 | $0.00 | Paid pre-bridge from VES LV escrow |
| NFS payment from remaining restricted pool | $0.00 | $0.00 | $0.00 | $0.00 | Paid pre-bridge from VES LV escrow |
| Non-Debtor Guarantor support / bridge funding | $0.00 | $429,341.88 | $0.00 | $0.00 | $429,341.88 |
| Administrative / professional payments | $0.00 | ($380,000.00) | $0.00 | $0.00 | ($380,000.00) |

EXHIBIT 1 at 018

| Line Item | Opening / Week 1 | Weeks 2-4 | Weeks 5-8 | Weeks 9-13 | Ending / Total |
|---|---|---|---|---|---|
| MIPA / NOTL transaction costs and landlord amounts due in bridge period | $0.00 | ($93,429.33) | ($68,429.33) | ($68,429.33) | ($230,287.99) |
| Taxes / UST / priority payments | $0.00 | $0.00 | ($39,741.00) | $0.00 | ($39,741.00) |
| Implementation reserve / contingency | $0.00 | $0.00 | $0.00 | ($50,000.00) | ($50,000.00) |
| Ending unrestricted implementation liquidity | $89,465.37 | $98,618.04 | $150,860.21 | $166,571.75 | $166,571.75 |
| Ending restricted funds balance | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

## Table 4 - First 24-Month Plan Payment Schedule

| Obligation / Class | Trigger for Payment | Months 1-6 | Months 7-12 | Months 13-24 | Notes |
|---|---|---|---|---|---|
| Administrative Claims / Professional Fees | Allowance by Court or agreed payment date | $360,000.00 (restructuring professionals)<br><br>$39,741.00 (UST Quarterly Fees) | $50,763.00 (UST Quarterly Fees) | $0.00 (assuming confirmed plan) and voluntary dismissal | Subject to final applications and Court approval. |
| Priority Tax Claims | Effective Date / Plan schedule | $0.00 | $0.00 | $0.00 | There are no priority tax claims filed in the jointly administered cases, subject to final verification. |
| Class 1 - Newtek | Collateral proceeds / Plan terms | $633,431.00 closing disbursement + expected proceeds from remaining Park City property retire Newtek secured claim | $0.00 | $0.00 | Remaining claim subject to reconciliation and additional collateral credits. |

EXHIBIT 1 at 019

| Obligation / Class | Trigger for Payment | Months 1-6 | Months 7-12 | Months 13-24 | Notes |
|---|---|---|---|---|---|
| Class 2B - Newport secured equipment | Ongoing | Combined Secured Equipment monthly payment: $7,813.15/month comprised of the following:<br><br>**Advantage Leasing** $3,695.00 (monthly payment retires September 2029)<br><br>**Leaf** $4,118.15 (monthly payment retires September 1, 2027) | $7,813.15/month<br><br>Combined monthly payments remain unchanged during this period<br><br>Comprised of Advantage Leasing $3,695.00, and LEAF $4,118.15, subject to any prepayment, restructuring, or further order. | Step-down payment period:<br><br>$7,813.15/month through the period before LEAF retires; and then<br><br>Advantage Leasing monthly payment through its September 2029 retirement. | May be restructured, continued, or prepaid. |
| Class 4 – NFS Capital | Plan / settlement agreement / transaction order | Combined monthly payment: $5,600.24 comprised of the following two payment streams:<br><br>NFS Newport Lease Agreement: $2,934.60 (monthly | $5,600.24 /month<br><br>Combined monthly payment remains unchanged.<br><br>Comprised of the NFS Newport Lease Agreement payment $2,934.60 and NFS Settlement | $5,600.24 /month<br><br>No scheduled step-down during this period.<br><br>The NFS Newport Lease Agreement payment continues through May 2029, and the NFS Settlement Agreement | Subject to any credit, prepayment, or modification resulting from application of the NFS escrow-holdback balance of $37,394.74. |

EXHIBIT 1 at 020

| Obligation / Class | Trigger for Payment | Months 1-6 | Months 7-12 | Months 13-24 | Notes |
|---|---|---|---|---|---|
| | | payment retires May 2029) <br><br> NFS Settlement Agreement Payment: $2,665.64 (monthly payment retires 6/1/2031) | Agreement payment $2,665.64, | payment continues through June 1, 2031. | |
| Class 5 – NOTL LANDLORD <br><br><br> (SRMF Town Square Lease was assumed and assigned to Illusion Attractions under the now closed Asset Purchase Agreement for the VES LV Debtor and is not considered here) | NOTL Resolution Order, agreement, or Final Order. | First payment due upon entry of the NOTL Resolution Order: $93,429.33. <br><br> (Initial amendment repayment tranche funded by Philip N. Kaplan: $25,000.00; ongoing monthly future repayment: $2,083.33; ongoing monthly rent: $66,346.00.) <br><br> Second amendment repayment tranche funded | $68,429.33/month. <br><br> Ongoing monthly rent of $66,346.00 plus monthly future repayment of $2,083.33. The $50,000.00 amendment repayment is separately funded by Philip N. Kaplan in two $25,000.00 tranches as described in Months 1-6. | $68,429.33/month. <br><br> Ongoing monthly rent of $66,346.00 plus monthly future repayment of $2,083.33, subject to the NOTL Resolution Documents and any further Court order. | Settlement, use-and-occupancy, replacement lease, lease-resolution, or ongoing rent amounts, if any, as approved by the Court. The two $25,000.00 amendment repayment tranches are modeled as third-party guarantor-funded payments by Philip N. Kaplan and not as ordinary Newport operating disbursements. |

EXHIBIT 1 at 021

| Obligation / Class | Trigger for Payment | Months 1-6 | Months 7-12 | Months 13-24 | Notes |
|---|---|---|---|---|---|
| | | by Philip N. Kaplan: $25,000.00 due at the end of December 2026.<br><br>Ongoing monthly payment Months 2-6: $68,429.33. | | | |
| Class 6 - Orange / Woodfield | Allowed and adjusted claim | Subject to settlement; resolution of claim disputes | | | No payment stream begins until applicable claim is Allowed and adjusted. |
| Implementation reserve | Effective Date / ongoing | Modeled first-six-month Non-Debtor Guarantor support of $472,229.76, consisting of Wanger funds of $386,454.00 plus Kaplan Q3/Q4 2026 quarterly installments totaling $85,775.76. Not all retained as reserve; funds support professional fees, NOTL resolution, implementation liquidity, and | Kaplan Q1/Q2 2027 quarterly installments totaling $85,775.76, plus $50,000.00 minimum implementation reserve target, subject to actual liquidity and Plan funding requirements. | Kaplan Q3 2027 through Q2 2028 quarterly installments totaling $171,551.52, plus $50,000.00 minimum implementation reserve target, subject to Class 6 settlement terms, claim allowance, and available cash. | Reserve for contingencies, litigation, transaction needs, and Plan implementation. Kaplan contribution is modeled as eight equal quarterly installments of $42,887.88 over two years, beginning Q3 2026. |

EXHIBIT 1 at 022

| Obligation / Class | Trigger for Payment | Months 1-6 | Months 7-12 | Months 13-24 | Notes |
|---|---|---|---|---|---|
| | | Plan funding needs. | | | |

**Table 5 - Class 6 Claim Allowance / Payment Timing**

| Claimant | Asserted Claim Amount | Debtors' Position / Objection Issues | Expected Allowance / Estimation Path | Payment Commencement Assumption | Reserve / Payment Assumption |
|---|---|---|---|---|---|
| 434 N. Orange Investment, LLC | $2,377,910.22 (per POC 11 filed in 25-12627)<br><br>$5,810,312.22 (per POC 2 filed in 25-12631) | Disputed; subject to allowance, section 502(b)(6), credits, offsets, guarantor payments, mitigation, and other defenses | Currently subject to temporary restraining order extended pursuant to stipulation by the parties to explore settlement | Effective Date, Allowance / Final Order, or Settlement, whichever occurs earliest. | Potential shared Class 6 settlement / plan reserve from identified guarantor contribution sources, currently estimated at up to $729,557.00 before deductions over the full two-year contribution horizon, consisting of $386,454.00 in restricted Merrill Lynch / LFW Trust funds and $343,103.00 from Kaplan personal assets. Reserve is not claimant-specific unless settlement or order allocates it. The 13-week bridge models $429,341.88 of near-term guarantor support and projects ending unrestricted implementation liquidity of $166,571.75 after funding administrative / professional payments, modeled NOTL amounts, UST quarterly fees, and a $50,000 implementation reserve. Any Class 6 settlement allocation or upfront payment would reduce that projected liquidity dollar-for- |

EXHIBIT 1 at 023

| Claimant | Asserted Claim Amount | Debtors' Position / Objection Issues | Expected Allowance / Estimation Path | Payment Commencement Assumption | Reserve / Payment Assumption |
|---|---|---|---|---|---|
| | | | | | dollar unless separately funded or deferred. |
| Woodfield Mall LLC | $1,135,053.73 (Per POC 4 filed in 25-12629) | Disputed; subject to allowance, section 502(b)(6), credits, offsets, guarantor payments, mitigation, and other defenses | Currently subject to extended responsive pleading deadlines to allow the parties to explore settlement | Effective Date, Allowance / Final Order, or Settlement, whichever occurs earliest. | Same shared Class 6 settlement / plan reserve concept. Amount actually available for Woodfield depends on allowed/admin costs, confirmation costs, final settlement terms, allocation between Orange and Woodfield, and any Court-approved payment priority. The 13-week bridge models $429,341.88 of near-term guarantor support and projects ending unrestricted implementation liquidity of $166,571.75 after modeled bridge-period uses and reserve. |

/ / /

## Table 6 - Non-Debtor Guarantor Support Schedule

| Contributor | Type of Support | Amount / Estimated Value | Timing | Binding Status | Intended Use / Feasibility Function | Evidence to be Filed |
|---|---|---|---|---|---|---|
| Philip N. Kaplan | Cash contribution | $343,103.00 total; $42,887.88 per quarter | Eight equal quarterly installments over two years; first installment due Q3 2026, second installment due Q4 2026, and remaining installments due quarterly thereafter through Q2 2028. | Binding only upon filed contribution agreement, declaration, Plan Supplement, or Court order. | Administrative solvency; Class 5 / NOTL payment support; transaction support; reserve funding; and other Plan implementation needs. The initial $25,000.00 NOTL amendment repayment tranche and the December 2026 $25,000.00 second tranche are modeled as Kaplan-funded payments. | Declaration |
| Leonard R. Wanger | Cash contribution | $386,454.00 | Subject to Court order; modeled as available during the 13-week implementation bridge. | Binding only upon filed contribution agreement, declaration, Plan Supplement, or Court order. | Administrative solvency; Class 5 or transaction support; reserve funding. | Declaration |
| Philip N. Kaplan | Management / transaction support | Non-cash | Ongoing | [Expected / ongoing] | Newport transaction, claims reconciliation, operations, negotiations. | Declaration |
| Leonard R. Wanger | Product / operations / technology support | Non-cash | Ongoing | [Expected / ongoing] | Operations support, equipment / vendor issues, plan implementation. | Declaration |

EXHIBIT 1 at 024

EXHIBIT 1 at 025

**Table 7 - Feasibility Sensitivity / Stress Case Summary**

| Scenario | Key Assumptions | Resulting Liquidity / Plan Impact | Mitigation / Fallback |
|---|---|---|---|
| Base Case | Las Vegas Sale closed; Newport MIPA closes; NOTL Resolution Documents approved; Class 6 claims settled / allowed. | Projected ending unrestricted implementation liquidity of $166,571.75 after funding the $50,000 implementation reserve. Restricted funds balance projected at $0.00. The 13-week bridge models $429,341.88 of near-term Non-Debtor Guarantor support, consisting of Wanger funds plus the first Kaplan quarterly installment. Remaining Kaplan installments are expected outside the 13-week bridge and over the two-year quarterly contribution schedule. No Class 6 payment stream is assumed during the 13-week bridge unless a Class 6 claim is Allowed, settled, or otherwise becomes payable by separate order or agreement. | Proceed to confirmation and implementation; use actual Las Vegas closing results and final Newport / NOTL terms. |
| No Fixed Guarantor Cash Case | No fixed minimum guarantor cash contribution; non-cash support continues; transaction proceeds and available operating cash fund initial needs. | Projected liquidity deficit of approximately ($262,770.13) by the end of the 13-week bridge if the $429,341.88 in near-term Non-Debtor Guarantor support modeled during the bridge is not funded.<br><br>The bridge would first turn materially negative during Weeks 2-4, when the Debtors project professional/admin payments and NOTL-related payments. Under this scenario, the Plan would require deferral of administrative/professional payments, | Reduce reserve, defer contingent payments, seek settlements, or modify Plan if needed. |

Case 25-12627-mkn    Doc 294-1    Entered 07/08/26 14:40:54    Page 26 of 39

EXHIBIT 1 at 026

| Scenario | Key Assumptions | Resulting Liquidity / Plan Impact | Mitigation / Fallback |
|---|---|---|---|
| | | alternative funding, reduced reserve, further settlement concessions, or modification. | |
| High Class 6 Case | Orange / Woodfield claims allowed above base estimate after credits and objections. | No immediate 13-week liquidity impact unless a settlement or order requires an upfront Class 6 payment during the bridge period. Long-term Plan impact depends on the Allowed Class 6 amount.<br><br>If Class 6 is modeled using Orange's lower filed claim amount of $2,377,910.22 plus Woodfield's $1,135,053.73 claim, the combined Class 6 amount would be approximately $3,512,963.95, producing an estimated 20-year straight-line payment burden of approximately $175,648.20 annually / $43,912.05 quarterly / $14,637.35 monthly, before interest, if any. If Class 6 is modeled using Orange's higher asserted amount of $5,810,312.22 plus Woodfield's $1,135,053.73 claim, the combined Class 6 amount would be approximately $6,945,365.95, producing an estimated 20-year straight-line payment burden of approximately $347,268.30 annually / $86,817.07 quarterly / $28,939.02 monthly, before interest, if any.<br><br>Payments should begin only after allowance, estimation, settlement, or Final Order. | Payments begin only after allowance and are amortized under Plan terms. |

EXHIBIT 1 at 027

| Scenario | Key Assumptions | Resulting Liquidity / Plan Impact | Mitigation / Fallback |
|---|---|---|---|
| Newport Delay Case | Newport MIPA or NOTL Resolution Documents delayed but not terminated. | No immediate liquidity failure is projected if Newport continues operating under the current run-rate and the NOTL arrangement is delayed but not terminated. Under the updated 13-week bridge, projected ending unrestricted implementation liquidity remains approximately $166,571.75 after reserve, assuming the same receipt/disbursement assumptions, $429,341.88 in near-term guarantor support, and no additional unmodeled professional, landlord, or transaction costs.<br><br>Using the current 13-week run-rate, Newport operations plus NOTL obligations appear approximately cash-positive before additional extraordinary case costs. Any extended delay would reduce liquidity dollar-for-dollar by any additional professional fees, landlord charges, consent costs, or transaction expenses not presently modeled. | Seek extension, interim use-and-occupancy, or alternate transaction. |
| Newport Failure Case | MIPA or NOTL resolution fails. | Plan impact is material and likely requires Plan modification, alternative transaction, conversion analysis, or structured dismissal analysis. The current liquidation analysis projects Newport gross liquidation value of approximately $438,847.93, but no net value for unsecured creditors after liquidation costs, NFS/equipment-specific obligations, LEAF obligations, | Plan modification, alternative sale, chapter 7 comparison, or structured dismissal alternative. |

EXHIBIT 1 at 028

| Scenario | Key Assumptions | Resulting Liquidity / Plan Impact | Mitigation / Fallback |
|---|---|---|---|
| | | and Newtek's asserted blanket lien treatment.<br><br>The projected Chapter 7 recovery for general unsecured creditors remains 0.00%. Failure of the Newport MIPA / NOTL resolution would therefore impair Plan feasibility primarily by eliminating the going-concern transaction path, not by creating a better liquidation alternative. | |

**Table 8 - Estimated Chapter 7 Asset Values by Estate**

| Asset Category | VES Inc. | VES Las Vegas | VES Newport | VES Schaumburg | VES Orlando | Notes / Assumptions |
|---|---|---|---|---|---|---|
| Cash / bank accounts | $ 73,298.15 | $ 0.00 | $ 9,226.33 | $ 0.00 | $ 0.00 | Cash as of assumed liquidation date; subject to cash collateral and account restrictions. |
| Accounts receivable | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | Net collectible receivables after collection discount. |
| Inventory | $ 0.00 | $ 0.00 | $ 65,308 | $ 0.00 | $ 0.00 | Food, beverage, redemption, merchandise, or other inventory at liquidation value. |
| Owned FF&E / equipment | $ 0.00 | $ 0.00 | $ 315,633.35 | $ 0.00 | $ 0.00 | Exclude leased / encumbered equipment unless equity exists. |

Case 25-12627-mkn   Doc 294-1   Entered 07/08/26 14:40:54   Page 29 of 39

EXHIBIT 1 at 029

| Asset Category | VES Inc. | VES Las Vegas | VES Newport | VES Schaumburg | VES Orlando | Notes / Assumptions |
|---|---|---|---|---|---|---|
| Leased / PMSI / NFS equipment equity | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | Equity after liens, leases, repossession, and sale costs. |
| IP, brand, domain, digital assets | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | Likely higher as going-concern support than forced liquidation value. |
| Membership interests / equity interests | $ 0.00 | N/A | N/A | N/A | N/A | Includes VES Inc. ownership interests, subject to liens and transaction value. |
| Leasehold / going-concern value | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | Discounted for chapter 7 disruption, landlord consent, and NOTL / SRMF issues. |
| Sale proceeds / MIPA proceeds | N/A | $1,075,000.00 gross / $0.00 unrestricted seller cash; First Choice Business Brokers amount treated as allowed / paid at $134,375.00, with the remaining $37,394.74 seller-proceeds amount allocated to NFS Capital | $ 0.00 | N/A | N/A | Actual Las Vegas Sale closed May 8, 2026; gross value realized, but no unrestricted net sale proceeds assumed. |

EXHIBIT 1 at 030

| Asset Category | VES Inc. | VES Las Vegas | VES Newport | VES Schaumburg | VES Orlando | Notes / Assumptions |
|---|---|---|---|---|---|---|
| Deposits / refunds / claims / Prepayments | $ 31,399.48 | $ 0.00 | $ 48,680.25 | $ 0.00 | $ 0.00 | Security deposits, utility deposits, insurance, tax refunds, vendor credits. |
| Litigation / avoidance actions | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | Speculative unless separately valued. |
| Gross estimated liquidation value | $ 104,697.63 | $ 1,075,000.00 | $ 438,847.93 | $ 0.00 | $ 0.00 | Before liens and liquidation costs. |

/ / /

**Table 9 - Secured Claim Waterfall by Collateral Pool**

Case 25-12627-mkn    Doc 294-1    Entered 07/08/26 14:40:54    Page 31 of 39

EXHIBIT 1 at 031

| Collateral Pool / Debtor Estate | Gross Liquidation Value | Sale / Liquidation Costs (assumed 15% of Gross Liquidation Value unless specifically known) | Asserted Senior / Specific Liens and Secured Claims (subject to reconciliation and claim allowance) | Newtek / Blanket Lien Treatment | Net Estate Value |
|---|---|---|---|---|---|
| VES Inc. Estate - IP / cash / membership interests | $ 104,697.63 | ($ 15,704.65) | (Asserted NFS settlement obligations of $255,645.52 and estimated Advantage Leasing obligations of approximately $180,000.00; total asserted senior/specific obligations approximately $435,645.52, capped by available value after sale costs) | ($ 88,992.98); Newtek asserts a blanket lien against any residual value, if any, after liquidation costs and senior / specific lien or settlement obligations. Asserted liens and obligations exceed available value. The $88,992.98 reflects estimated value after liquidation costs, not a separate additional recovery pool. | $ 0.00 |
| Las Vegas Estate - owned assets / sale proceeds | $ 1,075,000 | ($ 15,549.26 fixed closing costs / taxes, excluding First Choice Business Broker allocation) | (Pawnee: $101,000.00; First Choice Business Brokers amount treated as allowed/paid at $134,375.00, with the remaining $37,394.74 seller-proceeds amount allocated to NFS Capital on account of its settlement agreement claim, subject to final escrow | ($ 633,431.00 Newtek disbursement) | $ 0.00 unrestricted seller cash |

Case 25-12627-mkn   Doc 294-1   Entered 07/08/26 14:40:54   Page 32 of 39

EXHIBIT 1 at 032

| Collateral Pool / Debtor Estate | Gross Liquidation Value | Sale / Liquidation Costs (assumed 15% of Gross Liquidation Value unless specifically known) | Asserted Senior / Specific Liens and Secured Claims (subject to reconciliation and claim allowance) | Newtek / Blanket Lien Treatment | Net Estate Value |
|---|---|---|---|---|---|
| | | | reconciliation. NFS Capital lease credit/non-cash consideration - $153,250.00) | | |
| Newport Estate - owned assets / MIPA proceeds | $ 438,847.93 | ($ 65,827.19) | (Asserted NFS settlement/equipment obligations of $255,645.52 plus Leaf claim of $107,853.50, for total specific obligations of $363,499.02) | ($ 373,020.74); Newtek asserts a blanket lien against any residual value, if any, after liquidation costs and senior / specific lien or settlement obligations. Asserted liens and obligations exceed available value; no net estate value is projected. The $ 373,020.74 reflects estimated value after liquidation costs, not a separate additional recovery pool. | $ 0.00 |
| Schaumburg residual assets | $ 0.00 | N/A | (Asserted NFS settlement obligations of $255,645.52, subject to reconciliation.) | ($ 0.00) | $ 0.00 |

EXHIBIT 1 at 033

| Collateral Pool / Debtor Estate | Gross Liquidation Value | Sale / Liquidation Costs (assumed 15% of Gross Liquidation Value unless specifically known) | Asserted Senior / Specific Liens and Secured Claims (subject to reconciliation and claim allowance) | Newtek / Blanket Lien Treatment | Net Estate Value |
|---|---|---|---|---|---|
| Orlando residual assets | $ 0.00 | N/A | ($ 0.00) | ($ 0.00) | $ 0.00 |

**Table 10 - Estimated Chapter 7 Administrative and Wind-Down Costs**

| Cost Category | Estimated Amount | Affected Estate(s) | Assumption / Notes |
|---|---|---|---|
| Chapter 7 trustee commission | $ 30,427.28 | All Jointly Administered Debtors | Estimated under section 326 based on projected distributions from Velocity Esports, Inc. and Velocity Esports Newport Kentucky, LLC. |
| Storage/removal/security/insurance | $ 35,000.00 | Velocity Esports Newport Kentucky, LLC | Especially for equipment, venue assets, and surrendered premises. |
| Payroll/employee wind-down | $ 106,632.00 | Velocity Esports Newport Kentucky, LLC | Final one (1) month of payroll, WARN/benefits/payroll tax review if applicable. |
| Chapter 7 professionals/tax/accounting/claims reconciliation | $ 70,000.00 | All Jointly Administered Debtors | Estimated costs for the additional professional and administrative work likely required in a Chapter 7 conversion, including claim and lien reconciliation, tax review, landlord/equipment issues, and wind-down matters, excluding sale-related costs already captured in the separate liquidation-cost assumptions. |

EXHIBIT 1 at 034

| Cost Category | Estimated Amount | Affected Estate(s) | Assumption / Notes |
|---|---|---|---|
| Total estimated Chapter 7 costs | $ 242,059.28 | | |

**Table 11 - Hypothetical Chapter 7 Distribution by Estate**

| Estate | Gross Liquidation Value | Less Liens / Secured Claims | Less Chapter 7 Costs (shared costs allocated equally; estate-specific costs separately assigned) | Less Admin / Priority Claims | Net for Unsecured Claims | Estimated GUC Recovery |
|---|---|---|---|---|---|---|
| Velocity Esports, Inc. | $ 104,697.63 | NFS settlement obligations, Advantage Leasing obligations, and Newtek blanket lien claim, each subject to claim, lien, priority, payment-credit, and settlement reconciliation; asserted secured/settlement obligations exceed available value. | ($ 20,085.45) | ($ 0.00) | $ 0.00 | 0.00 % |
| Velocity Esports Las Vegas Town Square, LLC | $ 1,075,000.00 | ($ 633,431.00 Newtek; $ 101,000.00 Pawnee; $ 134,375.00 First Choice; $ 37,394.74 NFS; $153,250.00 NFS assumed | ($ 20,085.45) | ($ 0.00) | $0.00 unrestricted sale cash assumed; no residual projected | 0.00 % |

EXHIBIT 1 at 035

| Estate | Gross Liquidation Value | Less Liens / Secured Claims | Less Chapter 7 Costs (shared costs allocated equally; estate-specific costs separately assigned) | Less Admin / Priority Claims | Net for Unsecured Claims | Estimated GUC Recovery |
|---|---|---|---|---|---|---|
| | | secured equipment lease credit / non-cash closing consideration; $ 15,549.26 fixed costs / taxes + closing allocations) | | | | |
| Velocity Esports Newport Kentucky, LLC | $ 438,847.93 | NFS settlement/equipment-specific obligations, Leaf claim, and Newtek blanket lien claim, each subject to claim, lien, priority, payment-credit, and settlement reconciliation; asserted obligations exceed available value. | ($ 161,717.48) | ($ 0.00) | $ 0.00 | 0.00 % |
| Velocity Esports Chicago Schaumburg, LLC | $ 0.00 | NFS settlement obligations and Newtek blanket lien claim, subject to reconciliation; no liquidation value available. | ($ 20,085.45) | ($ 0.00) | $ 0.00 | 0.00 % |

Case 25-12627-mkn   Doc 294-1   Entered 07/08/26 14:40:54   Page 36 of 39

| Estate | Gross Liquidation Value | Less Liens / Secured Claims | Less Chapter 7 Costs (shared costs allocated equally; estate-specific costs separately assigned) | Less Admin / Priority Claims | Net for Unsecured Claims | Estimated GUC Recovery |
|---|---|---|---|---|---|---|
| Velocity Esports Orlando Downtown, LLC | $ 0.00 | ($ 0.00 Newtek) | ($ 20,085.45) | ($ 0.00) | $ 0.00 | 0.00 % |
| Total / Combined Summary (not substantive consolidation) | $ 1,618,545.56 | See Table 9; asserted secured claims, settlement obligations, sale allocations, and collateral-specific obligations consume available liquidation value. Amounts are not multiplied or stacked across Debtor estates. | ($ 242,059.28) | ($ 0.00) | $ 0.00 | 0.00 % |

EXHIBIT 1 at 036

**Table 12 - Plan Recovery Compared to Estimated Chapter 7 Recovery**

| Class / Claim Type | Plan Treatment | Estimated Chapter 7 Recovery | Best-Interest Conclusion | Notes |
|---|---|---|---|---|
| Administrative Claims | Paid as provided in Plan / Court orders | Paid only to the extent funds are available after | Plan provides not less than chapter 7 recovery. | Chapter 7 would add an estimated $242,059.28 in trustee, professional, wind-down, storage, security, |

EXHIBIT 1 at 037

| Class / Claim Type | Plan Treatment | Estimated Chapter 7 Recovery | Best-Interest Conclusion | Notes |
|---|---|---|---|---|
|  |  | secured claims and chapter 7 costs. |  | insurance, payroll, and related costs. Included for disclosure and feasibility comparison; Administrative Claims are not classified and are separately governed by applicable Bankruptcy Code provisions and Court orders. |
| Priority Tax Claims | Paid in full over Plan period as allowed | Paid only to the extent required by priority and available estate funds. | Plan provides not less than chapter 7 recovery. | Subject to section 1129(a)(9) treatment. Included for disclosure and feasibility comparison; Priority Tax Claims are unclassified and separately governed by section 1129(a)(9). |
| Class 1 - Newtek | Collateral / sale proceeds / credits, including $633,431.00 from Las Vegas Sale closing statement | Collateral value / sale proceeds / credits, including $633,431.00 Las Vegas Sale credit, subject to payoff and claim reconciliation. | Plan provides not less than chapter 7 recovery. | Newtek's asserted claim is not multiplied by Debtor; recovery depends on collateral value, lien rights, payment credits, and final claim reconciliation. |
| Class 2A - Las Vegas equipment | No known unpaid allowed claim or sale proceeds as applicable | $0.00 additional projected recovery. | Plan provides not less than chapter 7 recovery. | Subject to final allowance. |

Case 25-12627-mkn   Doc 294-1   Entered 07/08/26 14:40:54   Page 38 of 39

EXHIBIT 1 at 038

| Class / Claim Type | Plan Treatment | Estimated Chapter 7 Recovery | Best-Interest Conclusion | Notes |
|---|---|---|---|---|
| Class 2B - Newport equipment | Restructure / continue / prepay as applicable | Limited to collateral value after liquidation costs and chapter 7 disruption. | Plan provides not less than chapter 7 recovery. | Chapter 7 forced liquidation may impair collateral value. |
| Class 3 - LV equipment lessors / executory contracts | Assume/assign or reject as provided | $0.00 projected estate distribution, except collateral/rejection rights, if any. | Plan provides not less than chapter 7 recovery. | Chapter 7 may result in rejection / repossession / deficiency claims. |
| Class 4 - NFS | Settlement / lease components treated under Plan; NFS expected to receive the remaining balance, if any, of $ 37,394.74 after payment of any Court-approved First Choice amount. | Limited to equipment-specific collateral value, settlement rights, and the remaining $37,394.74 seller-proceeds amount allocated to NFS Capital, subject to payment-credit and claim reconciliation. | Plan provides not less than chapter 7 recovery. | NFS's settlement claim is not multiplied by Debtor; NFS's replacement lien is limited to identified NFS equipment and does not expand NFS's collateral base or prime Newtek. |
| Class 5 - Continuing landlords | Agreement / Final Order / NOTL Resolution Documents | Limited to any allowed priority/admin amounts and available estate funds; no residual unsecured recovery projected. | Plan provides not less than chapter 7 recovery. | Chapter 7 may cause rejection, occupancy, or loss of venue value. |
| Class 6 - Legacy landlord claims | Paid over 20 years after allowance and adjustment | $ 0.00 | Plan provides not less than chapter 7 recovery. | Estate-side claims remain disputed and subject to reductions. |
| Class 7 - Insider secured claims | No Plan distribution | $ 0.00 | Plan provides not less than chapter 7 recovery. | Subordinated to senior obligations. |

EXHIBIT 1 at 039

| Class / Claim Type | Plan Treatment | Estimated Chapter 7 Recovery | Best-Interest Conclusion | Notes |
|---|---|---|---|---|
| Class 8 - General unsecured claims | No Plan distribution | $ 0.00 | Plan provides not less than chapter 7 recovery. | No Las Vegas Sale residual cash is assumed to be available for Class 8 distributions. |
| Class 9 - Equity interests | No Plan distribution | $ 0.00 | Plan provides not less than chapter 7 recovery. | No residual value after secured claims, priority claims, and chapter 7 costs. |