Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>■ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>■ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>☐ Affects All Debtors<br><br>Debtor(s). | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>**DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING MEMBERSHIP INTEREST PURCHASE AGREEMENT FOR VELOCITY ESPORTS NEWPORT KENTUCKY, LLC; (II) AUTHORIZING SALE AND TRANSFER OF MEMBERSHIP INTERESTS PURSUANT TO 11 U.S.C. § 363(b); (III) APPROVING RELATED MEMBERSHIP INTEREST ASSIGNMENTS, GOOD-FAITH PURCHASER FINDINGS, AND RELATED RELIEF; AND (IV) GRANTING RELATED RELIEF**<br><br>Hearing Date: **OST REQUESTED**<br>Hearing Time: **OST REQUESTED** |

**I.**

**INTRODUCTION**

Velocity Esports, Inc. ("VES Inc.") and Velocity Esports Newport Kentucky, LLC ("VES Newport," and collectively, the "Debtors"), as debtors and debtors in possession in the above-referenced jointly administered chapter 11 cases (the "Chapter 11 Cases"), by and through undersigned counsel, Nevada

- 1 -

Bankruptcy Attorneys LLC, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004 and 9014 of the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada (the "Local Rules" or "LR"), hereby submit this motion (the "Motion") for entry of an order (the "Sale Order"), substantially in the form attached hereto as **Exhibit 3**: (i) approving that certain Membership Interest Purchase Agreement for Velocity Esports Newport Kentucky, LLC dated July 14, 2026, as may be amended or supplemented before the hearing (the "MIPA"), attached hereto as **Exhibit 1**; (ii) authorizing VES Inc. to sell and transfer eighty percent (80%) of its membership interests in VES Newport to Beth Powers ("Powers" or the "Purchaser"); (iii) authorizing the potential transfer of the remaining twenty percent (20%) of the membership interests, ten percent (10%) each, to April Mountain Properties, LLC and LRW Revocable Trust (collectively, the "Insider Bid Parties"), but only to the extent the Court approves the recipients, consideration, allocation, and legal basis for those transfers; (iv) granting the limited free-and-clear, good-faith purchaser, and related relief described herein; and (v) granting such other and further relief as the Court deems just and proper.

The MIPA attached as Exhibit 1 and the MIPA schedules attached as Exhibit 2 are authenticated by the Declaration of Philip N. Kaplan filed concurrently herewith (the "Kaplan MIPA Declaration" or "Kaplan MIPA Decl."). The Declaration of Beth Powers filed concurrently herewith (the "Powers MIPA Declaration" or "Powers MIPA Decl.") confirms that the MIPA attached as Exhibit 1 is the proposed agreement Powers reviewed for purposes of the requested transaction and supports the purchaser-side facts relevant to the relief requested. Kaplan MIPA Decl. ¶¶ 1-3, 47, 49-52; Powers MIPA Decl. ¶¶ 1-6, 13-26.

The MIPA is structured as a membership-interest transaction, not as a sale of VES Newport's assets and not as a lease-assumption, lease-amendment, landlord-consent, cure, settlement, guaranty, or rent-treatment motion. The proposed transaction is intended to preserve the going-concern value of the Newport operation, facilitate an orderly post-closing ownership and governance structure, and support implementation of the Debtors' pending chapter 11 plan. The MIPA remains subject to Court approval and the Debtors' continuing fiduciary duties, contains no break-up fee or other bid protection, and permits the Debtors to consider higher or better offers. Kaplan MIPA Decl. ¶¶ 6-14, 22, 29-39; Powers MIPA Decl. ¶¶ 5-12, 19-23.

The Debtors recognize that the transaction presents issues requiring a complete evidentiary record, including the absence of a conventional cash purchase price from Powers, the proposed minority transfers to insider-affiliated entities, the marketing history, asserted liens affecting the Seller Interest, and the relationship between the MIPA and the NOTL lease. Those matters are disclosed in the MIPA, its schedules, this Motion, and the supporting declarations. The Debtors seek approval only to the extent supported by the final evidentiary record and the findings expressly made in the Sale Order.

The Motion does not seek authority to assume, assign, amend, revive, cure, replace, settle, or otherwise adjudicate any lease or landlord-related obligation. It likewise does not seek to transfer the Newport liquor license or any other asset owned by a non-Debtor affiliate. Any relief concerning NOTL Property Owner LLC ("NOTL"), the Newport lease, the proposed Second Amendment to Lease, landlord payments, rent treatment, guaranties, use and occupancy, liquor-license arrangements, or assumption under section 365 of the Bankruptcy Code will be addressed, if at all, through separate documents and separate motion practice. Kaplan MIPA Decl. ¶¶ 8-10, 15, 40-43; Powers MIPA Decl. ¶¶ 4, 7-8, 21, 27.

In support of the Motion, the Debtors respectfully represent as follows.

## II.
### JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This Motion concerns the sale and transfer of property of VES Inc.'s bankruptcy estate and therefore constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including subsections 157(b)(2)(A), (N), and (O).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and procedural predicates for the relief requested herein are sections 105(a), 363(b), 363(f), 363(m), 363(n), 541(a), 1107(a), and 1108 of the Bankruptcy Code; Bankruptcy Rules 2002, 6004, and 9014; and Local Rules 6004 and 9014. No credit bid under section 363(k) is requested or approved through this Motion. Any later request to characterize consideration as a credit bid will require supplemental notice, evidence of an allowed secured claim secured by the Seller Interest, and further order of the Court.

5. Pursuant to Local Rule 9014.2, the Debtors consent to entry of final orders and judgments by the Bankruptcy Court. To the extent any matter raised by the Motion is determined not to constitute a core proceeding, the Debtors consent to entry of final orders and judgments by this Court.

### III.
### RELIEF REQUESTED

6. By this Motion, the Debtors request entry of the Sale Order:

   a. approving the MIPA;

   b. authorizing VES Inc. to sell and transfer the Transferred Interest to Purchaser in accordance with the MIPA;

   c. authorizing the transfer of the remaining twenty percent (20%) of the Seller Interest to the Insider Bid Parties only to the extent the Court approves the recipients, consideration, allocation, and legal basis for those transfers;

   d. authorizing the Debtors, Purchaser, VES Newport, and the Insider Bid Parties to execute and deliver the assignments, joinders, amended operating-agreement documents, membership-ledger updates, and other documents necessary to implement the approved membership-interest transfers;

   e. authorizing any transfer free and clear of liens, claims, encumbrances, and other interests only to the extent the requirements of section 363(f) are satisfied, with the validity, priority, extent, and treatment of any asserted interest preserved or determined as expressly provided in the Sale Order;

   f. finding, to the extent supported by the final evidentiary record, that Purchaser is a good-faith purchaser entitled to the protections of section 363(m);

   g. finding, to the extent supported by the final evidentiary record, that the transaction was not the product of collusion or an agreement to control the sale price within the meaning of section 363(n);

   h. confirming that approval of the MIPA does not assume, assign, amend, cure, reinstate, replace, settle, release, or otherwise adjudicate any lease, landlord, guaranty, liquor-license, or other separately documented operational matter;

- 4 -

     i.      waiving or reducing the fourteen-day stay imposed by Bankruptcy Rule 6004(h), or granting such alternative implementation relief as the Court deems appropriate; and

     j.      granting such other and further relief as the Court deems just and proper.

## IV.
## STATEMENT OF FACTS

**A.    The Chapter 11 Cases**

7.    On May 7, 2025 (the "Petition Date"), the Debtors and their affiliated debtors commenced the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

8.    The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.    The Chapter 11 Cases are jointly administered under Case No. 25-12627-mkn.

10.    No trustee or examiner has been appointed in the Chapter 11 Cases. Kaplan MIPA Decl. ¶¶ 4-5; *see also* ECF No. 21.

**B.    The Debtors and the Newport Business**

11.    VES Inc. is the holding company for the Debtors' venue-level entities. VES Newport is a Kentucky limited liability company and operates the Newport entertainment venue. A separate non-Debtor affiliate, Velocity Esports Newport Kentucky II, LLC, holds the liquor license used in connection with the Newport operation. The MIPA does not transfer that liquor license. Kaplan MIPA Decl. ¶¶ 6-10, 54; Powers MIPA Decl. ¶¶ 4, 9, 27.

12.    The Newport venue and the Las Vegas venue have been identified in the Debtors' plan materials as the Debtors' core continuing operating businesses. The Newport transaction is a material component of the Debtors' restructuring strategy and plan feasibility. Kaplan MIPA Decl. ¶¶ 6-10, 13-14, 54.

13.    The Debtors' restructuring record reflects that VES Inc. historically swept and centrally administered cash generated by the venue-level entities, while those entities maintained minimal operating balances. The proposed transaction addresses that legacy structure by transitioning ownership and governance of the Newport business away from the parent-level holding structure and toward a post-closing structure centered on the Newport operating entity. The Debtors submit that this realignment is intended to

- 5 -

preserve value, reduce implementation friction, and permit the Newport business to proceed under a clearer post-closing ownership and governance structure. Kaplan MIPA Decl. ¶¶ 11-14, 22, 29-35.

**C.      Plan #2 and the Newport MIPA**

14.      On May 28, 2026, the Debtors filed their Joint Chapter 11 Plan of Reorganization #2 [ECF No. 284] ("Plan #2"). Plan #2 defines the Newport MIPA as the membership-interest purchase agreement for VES Newport, as it may be amended, modified, or supplemented and approved by the Court pursuant to a Sale Order or other applicable order. Kaplan MIPA Decl. ¶ 14; ECF No. 284.

15.      The proposed ownership transition contemplated by the MIPA is intended to be implemented in coordination with Plan #2 and the Debtors' broader restructuring efforts. Approval of the MIPA does not independently confirm Plan #2 or predetermine the treatment of any creditor, equity holder, or other party under Plan #2.

**D.      The MIPA Transaction and Schedules**

16.      Under the MIPA, VES Inc. proposes to sell, convey, transfer, assign, and deliver to Purchaser an eighty percent (80%) membership interest in VES Newport. The remaining twenty percent (20%) of the Seller Interest may be transferred in equal ten percent (10%) interests to the Insider Bid Parties only if the Court approves the recipients, consideration, allocation, and legal basis for those transfers. Kaplan MIPA Decl. ¶¶ 16-18, 23-25, 49; Powers MIPA Decl. ¶¶ 2-6, 25.

17.      **Exhibit C** to the MIPA discloses that no cash consideration is presently payable by Purchaser to VES Inc. and identifies the non-cash consideration attributed to Purchaser as execution of the transaction documents, cooperation, ownership transition, continuity of operations, and other non-cash consideration approved by the Court. The MIPA does not provide that Purchaser personally assumes VES Newport's debts or landlord obligations merely by acquiring the Transferred Interest. Kaplan MIPA Decl. ¶¶ 20-22, 49-50; Powers MIPA Decl. ¶¶ 8-12, 20, 25-26.

18.      The MIPA separately discloses that the Insider Bid Parties' proposed consideration is tied to the separate NOTL lease-amendment and lease-related payment structure: The Insider Bid Parties shall provide consideration in the aggregate amount of $50,000.00, to be paid to the NOTL Property Owner LLC, $25,000.00 upon the effective date of the Second Amendment to the NOTL Landlord Lease, and $25,000.00

due upon the effective date of the Plan of Reorganization currently pending in the Bankruptcy Cases. Approval of the MIPA does not itself approve the Second Amendment, assume the lease, determine cure, authorize any landlord payment, release any guaranty, or resolve any landlord claim. Those matters are reserved for separate motion practice or order. Kaplan MIPA Decl. ¶¶ 23-25, 40-41; Powers MIPA Decl. ¶¶ 7-8, 20.

19.     The MIPA Schedules identify known or potential liens, claims, restrictions, and relationships relevant to the transaction. Schedule 2.02 identifies Newtek Bank, N.A. ("Newtek"), insider secured creditors, operating-agreement restrictions, the Bankruptcy Court approval requirement, and operational counterparties whose rights or claims may affect the Seller Interest or the value of VES Newport. Schedules 3.06 and 3.09 disclose or require certification of purchaser relationships, insider status, and management, employee, compensation, consulting, or equity arrangements. Kaplan MIPA Decl. ¶¶ 27-28, 50-51; Powers MIPA Decl. ¶¶ 13-16, 26.

20.     The MIPA contains no break-up fee, expense reimbursement, topping fee, no-shop provision, or comparable bid protection. It preserves the Debtors' right to solicit, consider, respond to, and accept higher or better offers consistent with their fiduciary duties and any procedures approved by the Court. If a concrete and executable superior proposal is presented, the Debtors may modify the requested relief, seek additional procedures, conduct an auction, or terminate the MIPA if doing so is in the best interests of the estates. Kaplan MIPA Decl. ¶¶ 36-39; Powers MIPA Decl. ¶ 19.

21.     The Debtors do not ask the Court to approve the MIPA based on contract recitals alone. The Kaplan MIPA Declaration addresses the Debtors' business judgment, the limited standalone realizable value of the Seller Interest under the circumstances, the alternatives considered, the role of the MIPA in Plan implementation, the absence of material cash consideration from Purchaser, the insider-related disclosures, the rights preserved for Newtek and other potential lienholders, and the separate treatment of lease matters. The Powers MIPA Declaration addresses Purchaser's diligence, willingness to close, relationship disclosures, absence of undisclosed side agreements or collusion, lack of pre-closing control, and the obligations actually undertaken by Purchaser. Kaplan MIPA Decl. ¶¶ 20-52; Powers MIPA Decl. ¶¶ 2-26.

///

## V.
## MATERIAL TERMS OF THE MIPA

| TERM | DISCLOSURE |
|---|---|
| Seller | Velocity Esports, Inc., a Nevada corporation and debtor in possession. Kaplan MIPA Decl. ¶ 6. |
| Company / Target | Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company and debtor in possession. Kaplan MIPA Decl. ¶ 7. |
| Purchaser | Beth Powers. Powers MIPA Decl. ¶ 2. |
| Property to be Transferred | Eighty percent (80%) of VES Inc.'s membership interests in VES Newport, together with the economic and governance rights transferred under the MIPA and Sale Order. Kaplan MIPA Decl. ¶ 16; Powers MIPA Decl. ¶¶ 4–6, 25. |
| Potential Minority Transfers | Subject to Court approval, ten percent (10%) to April Mountain Properties, LLC and ten percent (10%) to LRW Revocable Trust. Such transfers are not distributions under the Plan and are effective only if the Sale Order approves the recipients, consideration, and legal basis. Kaplan MIPA Decl. ¶¶ 17–18, 23–25. |
| Purchaser Consideration | Purchaser provides only the consideration, if any, identified in Exhibit C and approved by the Sale Order. Purchaser does not personally assume Company debts or landlord obligations unless expressly identified in the MIPA, Exhibit C, Sale Order, or a separate written agreement signed by Purchaser. Powers MIPA Decl. ¶¶ 8, 20. |
| Insider Bid Party Consideration | The Insider Bid Parties shall provide consideration in the aggregate amount of $50,000.00, to be paid to the NOTL Property Owner LLC, $25,000.00 upon the effective date of the Second Amendment to the NOTL Landlord Lease, and $25,000.00 due upon the effective date of the Plan of Reorganization currently pending in the Bankruptcy Cases, subject to separate Court approval and without characterization as payment on account of old equity or insider claims unless expressly approved. Kaplan MIPA Decl. ¶¶ 23–25. |
| Lease Matters Excluded | The MIPA does not assume, assign, amend, cure, settle, revive, replace, or modify any lease or landlord-related obligation. NOTL lease matters will be addressed separately. Kaplan MIPA Decl. ¶¶ 40–41; Powers MIPA Decl. ¶¶ 7–8. |
| Higher and Better Offers | Seller may solicit, consider, respond to, and accept higher or better offers consistent with its fiduciary duties and any Court-approved procedures. No break-up fee, expense reimbursement, topping fee, or similar bid protection is requested. Kaplan MIPA Decl. ¶¶ 36–39; Powers MIPA Decl. ¶ 19. |
| Closing | Closing occurs within five (5) business days after all conditions are satisfied or waived and the Sale Order has been entered with no stay in effect, unless the Court waives or reduces the Bankruptcy Rule 6004(h) stay. Purchaser confirms her willingness to close subject to Court approval and satisfaction of the applicable conditions. Powers MIPA Decl. ¶¶ 5–6, 23. |

| TERM | DISCLOSURE |
|---|---|
| No Deposit | No good-faith deposit is required unless later disclosed and approved. Kaplan MIPA Decl. ¶ 45. |
| Books and Records | Purchaser and the Company must preserve and provide access to records reasonably necessary for administration of the Chapter 11 Cases. Kaplan MIPA Decl. ¶ 44; Powers MIPA Decl. ¶ 22. |

## VI.

## LOCAL RULE 6004 MATERIAL TERM DISCLOSURES

Local Rule 6004 requires chapter 11 sale motions to include or explain the proposed purchase agreement, lienholder list, proposed sale order, consumer privacy ombudsman issues, and material sale terms. The Debtors provide the following disclosure chart and will supplement these disclosures if further facts are identified before the hearing. Notice of the Motion will be provided as described in Section VII below.

| LOCAL RULE 6004 ITEM | DISCLOSURE / PROPOSED TREATMENT |
|---|---|
| Proposed Purchase Agreement | The MIPA is attached as Exhibit 1. The MIPA schedules are attached as Exhibit 2. Kaplan MIPA Decl. ¶¶ 49–50; Powers MIPA Decl. ¶¶ 25–26. |
| Lienholder List | Schedule 2.02 identifies known or potential parties asserting liens, claims, encumbrances, restrictions, or interests affecting the Seller Interest, including Newtek, insider secured lenders, the Operating Agreement, the Bankruptcy Court approval requirement, and operational counterparties. Kaplan MIPA Decl. ¶¶ 27–28, 50–51. |
| Proposed Sale Order | A proposed form of Sale Order will be filed concurrently or lodged before the hearing as Exhibit 3 or by separate filing. Kaplan MIPA Decl. ¶ 52. |
| Consumer Privacy Ombudsman | The transaction is a membership-interest transfer. No sale or transfer of personally identifiable information inconsistent with a privacy policy is requested. The Debtors do not believe a consumer privacy ombudsman is required. Kaplan MIPA Decl. ¶ 43; Powers MIPA Decl. ¶ 21. |

| LOCAL RULE 6004 ITEM | DISCLOSURE / PROPOSED TREATMENT |
|---|---|
| Insider Sale / Insider Relationship | Purchaser is not presently disclosed as an insider, subject to her sworn relationship disclosures. April Mountain Properties, LLC and LRW Revocable Trust are Insider Bid Parties and proposed minority recipients. Their relationships and consideration must be expressly disclosed and approved. Kaplan MIPA Decl. ¶¶ 18, 23–27; Powers MIPA Decl. ¶¶ 13–19, 26. |
| Management or Key Employee Agreements | Any management, employee, compensation, consulting, or equity arrangements are disclosed or reserved in Schedule 3.09. The Debtors are not aware of undisclosed bid-protection, employment, or compensation arrangements, subject to Purchaser and Insider Bid Party certification. Kaplan MIPA Decl. ¶ 26; Powers MIPA Decl. ¶¶ 15–16. |
| Releases or Claim Waivers | The MIPA does not release, waive, or modify NOTL lease rights, Newtek lien rights, equipment-lender rights, avoidance actions, or non-Debtor guaranty obligations, except to the extent expressly stated in the Sale Order or separate Court-approved documents. Kaplan MIPA Decl. ¶¶ 40–42; Powers MIPA Decl. ¶¶ 7–8. Plan #2 lists a gross Newtek claim of $2,486,502.27 before application of subsequent payments, collateral proceeds, and other credits. The current balance remains subject to reconciliation. |
| Auction / No-Shop | No no-shop is requested. The MIPA preserves the Debtors' right to solicit, consider, respond to, and accept higher or better offers and to modify procedures consistent with their fiduciary duties and Court approval. Kaplan MIPA Decl. ¶¶ 36–39; Powers MIPA Decl. ¶ 19. |
| Closing Deadlines | Closing is to occur within five (5) business days after satisfaction or waiver of the applicable conditions and entry of the Sale Order with no stay in effect, unless otherwise agreed and approved. Purchaser states she is willing to close subject to |

| LOCAL RULE 6004 ITEM | DISCLOSURE / PROPOSED TREATMENT |
|---|---|
| | Court approval and satisfaction of the applicable conditions. Powers MIPA Decl. ¶¶ 5–6, 23. |
| Deposit | No good-faith deposit is presently required or forfeitable unless later disclosed and approved. Kaplan MIPA Decl. ¶ 45. |
| Interim Arrangements | Purchaser may not exercise pre-closing control over the Company or its operations except under a Court-approved interim arrangement. None is requested by this Motion. Kaplan MIPA Decl. ¶ 48; Powers MIPA Decl. ¶ 20. |
| Sale Proceeds / Allocation | The MIPA does not presently create unrestricted cash sale proceeds from Purchaser. Any cash, new value, credit-bid, or other consideration from the Insider Bid Parties must be specifically approved in the Sale Order or separate applicable order. Kaplan MIPA Decl. ¶¶ 20, 23–25, 28; Powers MIPA Decl. ¶¶ 8, 20. |
| § 1146(a) Tax Exemption | No relief under section 1146(a) is requested by this Motion unless expressly stated in the proposed Sale Order. If requested later, the Debtors will identify the specific tax and jurisdiction. |
| Books and Records | The MIPA requires post-closing access to records reasonably necessary for administration of the Chapter 11 Cases. The Debtors and any estate representative preserve such access. Kaplan MIPA Decl. ¶ 44; Powers MIPA Decl. ¶ 22. |
| Avoidance Claims | No avoidance claims are being sold, assigned, released, or limited by the MIPA. Kaplan MIPA Decl. ¶ 42. |
| Successor Liability | The transaction is a membership-interest transfer and does not itself transfer assets or create Purchaser liability for Company obligations except as expressly assumed. No broad successor-liability injunction is sought beyond the terms approved in the Sale Order. Powers MIPA Decl. ¶¶ 4, 8. |
| Possessory Interests / Leases | The Motion does not seek to sell property free and clear of a possessory leasehold interest, license, or occupancy right. Lease and landlord matters, including NOTL |

| LOCAL RULE 6004 ITEM | DISCLOSURE / PROPOSED TREATMENT |
|---|---|
| | issues, are excluded and will be addressed separately. Kaplan MIPA Decl. ¶¶ 40–41; Powers MIPA Decl. ¶¶ 7–8. |
| Credit Bidding | No section 363(k) credit bid is approved unless the Court determines that the applicable Insider Bid Party holds an allowed secured claim secured by the Seller Interest and authorizes such credit bid. The Debtors preserve all objections and reservations. Kaplan MIPA Decl. ¶¶ 23–25. |
| Rule 6004(h) Stay | The Debtors request waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) to allow prompt closing if the Court finds cause. Alternatively, the Debtors request a reduced stay or authority to take non-closing implementation steps while preserving appellate rights. Kaplan MIPA Decl. ¶ 46; Powers MIPA Decl. ¶¶ 5–6, 23. |

## VII.
## NOTICE

Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the proposed relief and afford them a meaningful opportunity to object. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15 (1950). In the Ninth Circuit, inadequate notice to a lienholder or another affected party may render sale relief ineffective as to that party's interest. *In re Ctr. Wholesale, Inc.*, 759 F.2d 1440, 1448–49 (9th Cir. 1985). Bankruptcy Rules 2002, 6004, and, where applicable, 9014 implement those notice requirements for relief requested under section 363. *In re Ex-Cel Concrete Co.*, 178 B.R. 198, 203–05 (B.A.P. 9th Cir. 1995).

Notice of the Motion and the hearing thereon will be served upon: (i) the Office of the United States Trustee for Region 17; (ii) Beth Powers and her counsel, if any; (iii) the Insider Bid Parties and their counsel or authorized representatives; (iv) Newtek Bank, N.A. and its counsel; (v) NOTL Property Owner LLC and its counsel; (vi) all known creditors and other parties asserting liens, claims, encumbrances, restrictions, or interests against the Seller Interest or any consideration arising from the proposed transaction; (vii) all known equipment lenders, equipment lessors, and material counterparties whose asserted rights may be

- 12 -

affected by the relief requested; (viii) all parties that have requested notice in the Chapter 11 Cases; (ix) the Debtors' twenty largest unsecured creditors, to the extent not otherwise included; and (x) all other parties entitled to notice under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or any applicable order of the Court.

The Debtors submit that the proposed notice is reasonably calculated to inform all affected parties of the nature and terms of the proposed membership-interest transaction, the relief requested in the Motion, the applicable objection deadline, and the date and time of the hearing. The proposed notice therefore satisfies the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable due-process requirements.

## VIII.

### ARGUMENT

**A.      The MIPA Is a Sound Exercise of the Debtors' Business Judgment Under Section 363(b)**

Section 363(b)(1) authorizes a debtor in possession, after notice and a hearing, to use, sell, or lease property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b)(1). A debtor in possession has the powers of a trustee under section 1107(a) and may operate its business under section 1108. In the Ninth Circuit, a sale outside the ordinary course requires an articulated business justification, and the sufficiency of that justification depends on the facts of the case. *In re Walter*, 83 B.R. 14, 19–20 (B.A.P. 9th Cir. 1988); see also *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983).

The Court must also evaluate value, disclosure, and transactional integrity. The Ninth Circuit Bankruptcy Appellate Panel has stated that a section 363 sale requires a valid business justification and good faith, which encompass fair value and the integrity of the transaction. *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996). The proponent must establish that the sale is fair and reasonable, adequately marketed or otherwise supported by the circumstances, negotiated and proposed in good faith, and in the estate's best interests. *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841–42 (Bankr. C.D. Cal. 1991). The Court's overarching obligation is to assure that optimal value is realized by the estate under the circumstances. *In re Lahijani*, 325 B.R. 282, 289–90 (B.A.P. 9th Cir. 2005).

The MIPA satisfies that standard. The Seller Interest is property of VES Inc.'s estate under section 541(a). The proposed transfer is a Court-supervised realignment of the Debtors' Newport ownership structure and is designed to preserve a continuing operating business whose value would otherwise remain impaired by ownership uncertainty, parent-level restructuring constraints, liquor-license coordination issues, separate lease matters, and the absence of a stable post-closing governance platform. The supporting record addresses the Debtors' reasons for selecting the MIPA over the realistic alternatives available under the circumstances and the role of the proposed transaction in implementing Plan #2. Kaplan MIPA Decl. ¶¶ 13, 22, 29–35, 54; Powers MIPA Decl. ¶¶ 5–12, 20–23, 27.

The MIPA does not generate a substantial cash purchase price payable by Powers directly to VES Inc., and the Debtors do not seek to obscure that fact. The absence of a conventional cash price does not automatically preclude approval, but it requires the Debtors to establish why the transaction provides the greatest reasonably available benefit under the circumstances. The Debtors will present evidence that the Seller Interest has limited standalone realizable value absent continuing operations, landlord cooperation, equipment continuity, liquor-license coordination, and a workable post-closing ownership and governance structure. They will also address the operational and restructuring consequences of retaining the existing parent-level ownership arrangement or failing to complete an orderly ownership transition. Kaplan MIPA Decl. ¶¶ 20–22, 29–35, 54; Powers MIPA Decl. ¶¶ 8, 11–12, 20, 27.

The proposed transaction is not a transfer of a liquid asset with an established cash market under a locked-up agreement. The MIPA contains no break-up fee, no expense reimbursement, no no-shop covenant, and no other term that prevents a superior proposal from emerging. The Debtors' declarations address the transaction's business rationale, the alternatives considered, the relevant relationships, the absence of known undisclosed side agreements, and the Debtors' continuing ability to consider a higher or better proposal. Kaplan MIPA Decl. ¶¶ 26–39; Powers MIPA Decl. ¶¶ 13–19, 24–26.

Accordingly, subject to the final evidentiary record and the limitations stated in the Sale Order, approval of the MIPA reflects a sound exercise of the Debtors' business judgment and is in the best interests of their estates and stakeholders.

/ / /

- 14 -

**B.       The Non-Cash Consideration and Operational Benefits Are Properly Disclosed and Should Be Evaluated on the Evidentiary Record**

The Debtors do not ask the Court to approve the MIPA based on labels, contractual recitals, or the mere continuation of VES Newport's preexisting liabilities. Exhibit C expressly distinguishes Purchaser's consideration from obligations that remain liabilities of VES Newport by operation of law or separate agreement. It further discloses that no cash consideration is presently payable by Purchaser to VES Inc. and that Purchaser does not personally assume Company debts or landlord obligations merely by acquiring the Transferred Interest.

The relevant question under section 363 is whether the transaction, evaluated in its entirety and against the available alternatives, provides a cognizable benefit to the estate. Courts assessing section 363 transactions consider the value of the sale as a whole rather than isolating one component, including where value derives from operational preservation, structural benefits, assumption of risk, or avoidance of deterioration. *In re GSC, Inc.*, 453 B.R. 132, 178–79 (Bankr. S.D.N.Y. 2011); see also *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983). At the same time, *Lahijani* requires meaningful scrutiny of value, disclosure, and process where a transaction includes non-cash or compromise-like elements. *In re Lahijani*, 325 B.R. at 289–90.

The evidentiary record is intended to permit that scrutiny. The Kaplan MIPA Declaration addresses the limits on the parent's ability to monetize the Seller Interest independently, the anticipated benefit of a clearer Newport-level ownership and governance structure, the relationship between the transaction and Plan #2, and the consequences of delay or operational deterioration. The Powers MIPA Declaration addresses Purchaser's diligence, willingness to close, actual contractual undertakings, relationship disclosures, and absence of undisclosed side agreements. The MIPA schedules identify the relevant parties, interests, and proposed consideration. Kaplan MIPA Decl. ¶¶ 20–35, 47, 49–51; Powers MIPA Decl. ¶¶ 9–18, 20–26.

The Debtors recognize that benefits flowing principally to VES Newport, its landlord, or its operational counterparties do not automatically constitute value to VES Inc.'s estate merely because they support continued operations. The Court should therefore approve the MIPA only if the final record establishes that the proposed ownership transition preserves estate value or provides a greater overall benefit

than the reasonably available alternatives. If the Court concludes that additional evidence, additional consideration, or revised terms are necessary, the Debtors request authority to supplement or modify the proposed transaction rather than denial without an opportunity to cure the identified concern.

The transaction's value also depends in part on matters outside the MIPA, including the NOTL relationship, equipment arrangements, and liquor-license coordination. The MIPA appropriately preserves those issues for separate documentation and separate relief rather than attempting to convert unresolved third-party matters into undisclosed purchase consideration. That separation permits the Court to evaluate the membership-interest transfer without prematurely adjudicating contractual, regulatory, or non-Debtor rights that require different notice and legal standards. Kaplan MIPA Decl. ¶¶ 8–10, 15, 40–43, 54; Powers MIPA Decl. ¶¶ 4, 7–8, 21, 27.

C.      **The Debtors Have Preserved Market Exposure and Will Not Chill Superior Offers**

The Debtors do not contend that the MIPA's fiduciary-out provisions are identical to a formal auction or extensive competitive bidding process. The applicable question, however, is whether the process is reasonably designed to identify and preserve the best available value under the circumstances. The Bankruptcy Court has discretion to forego formal overbid or auction procedures where they are unlikely to produce a better result, and the appropriate process depends on the dynamics of the particular transaction. *In re Open Med. Inst., Inc.*, 639 B.R. 169, 188–90 (B.A.P. 9th Cir. 2022). The touchstone remains whether the process and proposed transaction realize optimal value under the circumstances. *In re Lahijani*, 325 B.R. at 289–90.

The MIPA contains no no-shop provision, break-up fee, topping fee, expense reimbursement, or other bid protection. It does not grant Purchaser exclusivity or restrict the Debtors from soliciting, considering, responding to, or accepting higher or better offers. Kaplan MIPA Decl. ¶¶ 36–39; Powers MIPA Decl. ¶ 19. Those features distinguish the proposed transaction from a locked-up management or insider sale lacking adequate market safeguards. *See In re Bidermann Indus. U.S.A., Inc.*, 203 B.R. 547, 552–54 (Bankr. S.D.N.Y. 1997).

The property at issue is an impaired membership interest in a venue-level debtor whose value is affected by separate landlord, equipment, liquor-license, and restructuring considerations. Nevertheless, any party asserting that a more valuable transaction is available may present a concrete competing proposal

before or at the hearing. The Debtors request that the hearing provide an opportunity for parties in interest to identify such a proposal or to request additional procedures upon a showing that a superior transaction may be available. Kaplan MIPA Decl. ¶¶ 29–39; Powers MIPA Decl. ¶ 19.

If a qualified competing proposal is presented, the Debtors reserve the right to adjourn the hearing, seek overbid procedures, conduct an auction, modify the requested relief, or terminate the MIPA under the fiduciary-out provisions. Conversely, the absence of any concrete competing proposal after notice of the Motion will be relevant evidence concerning the availability of greater value. This framework preserves the proposed transaction without insulating it from market competition.

**D.      Insider Participation Is Disclosed, Subject to Heightened Scrutiny, and Severable From the Non-Insider Transfer if Necessary**

The proposed minority transfers to the Insider Bid Parties require heightened scrutiny because those entities are affiliated with the Debtors' management and insider lender groups. Insider status is not a per se bar to purchasing estate property, but it requires complete disclosure and careful scrutiny of value, fairness, process, and good faith. *In re Wilde Horse Enters., Inc.*, 136 B.R. at 841; *In re Roussos*, 541 B.R. 721, 730–31 (Bankr. C.D. Cal. 2015); *In re Collab9, LLC*, 631 B.R. 255, 275–77 (Bankr. C.D. Cal. 2021).

The MIPA is structured to permit that review. The Insider Bid Parties are identified. Their proposed consideration and relationships are disclosed. They receive no membership interest unless the Court approves the recipient, consideration, allocation, and legal basis for the transfer. The MIPA further provides that no minority transfer constitutes a distribution on account of old equity, Class 7 insider claims, reimbursement, subrogation, contribution, indemnity, or guaranty claims unless the Court expressly approves that treatment. Purchaser also certifies that she has no undisclosed side agreements concerning bidding, valuation, equity allocation, management, compensation, releases, claim treatment, lease treatment, or post-closing operations. Kaplan MIPA Decl. ¶¶ 17–18, 23–27; Powers MIPA Decl. ¶¶ 13–18, 24–26.

These provisions directly address the concern that the proposed minority transfers could operate as disguised distributions to insiders. The Insider Bid Parties receive nothing merely because they hold insider-related claims or have relationships with the Debtors. Their proposed interests arise only if the Court determines that the disclosed consideration and transaction structure independently justify the transfers after notice and a hearing.

- 17 -

The Court may also sever the proposed minority transfers from the eighty percent (80%) transfer to Powers. If the record supports approval of Powers' acquisition but does not yet support one or both insider transfers, the Court may approve the non-insider transfer and reserve, deny without prejudice, or condition the minority transfers on supplemental declarations, additional disclosures, further notice, revised consideration, or a separate hearing. That approach preserves any value supported by the non-insider transaction while preventing an unsupported insider allocation. See *In re Fam. Christian, LLC*, 533 B.R. 600, 619–22 (Bankr. W.D. Mich. 2015).

Whether a particular insider-related transaction was negotiated at arm's length is a fact-intensive inquiry. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 138 S. Ct. 960 (2018). The Debtors will present a record permitting the Court to evaluate the relevant relationships, communications, consideration, side agreements, and allocation of value. The Sale Order should approve no insider transfer unless that record is sufficient.

**E.      The Requested Free-and-Clear Relief Is Appropriate Under Section 363(f) and Preserves the Rights of Lienholders**

Section 363(f) permits a debtor to sell property free and clear of interests only if at least one statutory predicate is satisfied. 11 U.S.C. § 363(f). Section 363(f) permits a sale free and clear if: (1) applicable nonbankruptcy law permits it; (2) the affected entity consents; (3) the sale price exceeds the aggregate value of all liens; (4) the interest is in bona fide dispute; or (5) the affected entity could be compelled to accept a money satisfaction of its interest. 11 U.S.C. § 363(f)(1)–(5). The Debtors do not seek an order extinguishing any valid lien or other interest without satisfaction of section 363(f), adequate protection as required by section 363(e), and constitutionally sufficient notice. *In re PW, LLC*, 391 B.R. 25, 40–46 (B.A.P. 9th Cir. 2008); *Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 900–03 (9th Cir. 2017).

The MIPA does not presently create unrestricted cash proceeds from Powers. Accordingly, the Sale Order should not rely mechanically on language providing that liens attach to proceeds if no meaningful proceeds exist. Rather, the Sale Order should identify the statutory basis for any free-and-clear relief and should preserve, transfer, condition, or reserve asserted interests in a manner appropriate to the final record.

The Debtors therefore seek limited relief. Any valid, perfected, and enforceable lien or interest in the Seller Interest should be preserved, attached to legally cognizable proceeds or consideration to the extent

applicable, or reserved for later adjudication as the Court determines. Nothing in the MIPA or Sale Order should constitute a determination that Newtek or any other party does or does not hold a valid lien, claim, encumbrance, or interest unless the Court expressly decides that issue after proper notice and an opportunity to be heard. See *Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d at 900–03. Kaplan MIPA Decl. ¶¶ 27–28, 50–51.

If no section 363(f) predicate is established as to a particular interest, the transfer should remain subject to that interest or the Court should provide other appropriate treatment rather than purporting to strip the interest without statutory authority. See *In re PW, LLC*, 391 B.R. at 41–46; *In re Jolan, Inc.*, 403 B.R. 866, 869–70 (Bankr. W.D. Wash. 2009). This approach protects lienholders while preserving the Debtors' rights to dispute validity, priority, perfection, attachment, and the extent of any claimed interest.

**F.      Powers Should Be Entitled to the Protections of Section 363(m) Based on the Disclosed Transaction Process and Evidentiary Record**

Section 363(m) protects the validity of a sale to a good-faith purchaser notwithstanding reversal or modification of the sale authorization on appeal, unless the authorization and sale were stayed pending appeal. 11 U.S.C. § 363(m). In the Ninth Circuit, good faith is a factual determination that generally turns on whether the purchaser bought in good faith and for value and whether the purchaser engaged in fraud, collusion, or an attempt to take grossly unfair advantage. *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992); *Namba v. Kohn (In re Thomas)*, 287 B.R. 782, 785–86 (B.A.P. 9th Cir. 2002). Where good faith is challenged, it must be established by evidence; boilerplate findings in a sale order are insufficient without an evidentiary foundation. *In re M Cap. Corp.*, 290 B.R. 743, 746–47 (B.A.P. 9th Cir. 2003).

The Debtors seek a section 363(m) finding only as to Powers and only with respect to the transfer of the Transferred Interest. They do not seek a section 363(m) finding for either Insider Bid Party through this Motion.

The MIPA's good-faith representations are not offered as a substitute for evidence. Powers has submitted a declaration addressing her diligence, relationships, communications, absence of undisclosed side agreements, lack of pre-closing control, and absence of any agreement to chill bidding, control the sale price, or obtain undisclosed consideration. The Kaplan MIPA Declaration addresses the Debtors'

negotiations, disclosures, process, and knowledge of relevant relationships and side agreements. Kaplan MIPA Decl. ¶¶ 26–27, 39; Powers MIPA Decl. ¶¶ 13–19, 23–26.

The Debtors also request a finding under section 363(n) that the transaction was not the product of collusion or an agreement to control the sale price, but only to the extent supported by the final evidentiary record. Section 363(n) addresses agreements intended to control the sale price, not merely disclosed relationships or aligned interests. *In re New York Trap Rock Corp.*, 42 F.3d 747, 752–53 (2d Cir. 1994); *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271–72 (10th Cir. 2019). Disclosed coordination is not itself collusive where the record shows no agreement to suppress price or chill bidding. *In re New Energy Corp.*, 739 F.3d 1077, 1080–81 (7th Cir. 2014); *In re Hat*, 310 B.R. 752, 758–59 (Bankr. E.D. Cal. 2004); *In re Collab9, LLC*, 631 B.R. at 276–77.

If the Court determines that the current record is insufficient to support a section 363(m) or section 363(n) finding, the Debtors request that the Court approve such other portions of the transaction as are adequately supported and reserve the requested finding pending supplemental declarations or certifications rather than deny the entire Motion solely on that basis.

G. **The MIPA Properly Separates the Membership-Interest Sale From Lease and Landlord Relief**

The continued operation and value of VES Newport depend materially on its ability to occupy the Newport premises. That business reality does not convert the MIPA itself into a lease-assumption, lease-amendment, cure, guaranty-release, or landlord-settlement motion.

The MIPA's limited scope protects due process by preventing the membership-interest Motion from operating as a hidden request for lease or landlord relief. It expressly excludes any assumption, assignment, amendment, cure, reinstatement, replacement, settlement, rent treatment, guaranty modification, or other adjudication of the NOTL relationship. Any such relief will require separate written documents, appropriate notice, supporting evidence, and application of the governing legal standards. Kaplan MIPA Decl. ¶¶ 15, 40–41; Powers MIPA Decl. ¶¶ 4, 7–8, 20.

A transfer of equity in a tenant is generally distinct from a direct assignment of the tenant's lease, although change-of-control or assignment provisions may create separate landlord rights requiring adjudication. *In re Ames Dep't Stores, Inc.*, 127 B.R. 744, 750–52 (Bankr. S.D.N.Y. 1991); see also *In re Crow Winthrop Operating P'ship*, 241 F.3d 1121, 1124–25 (9th Cir. 2001); *In re Washington Cap. Aviation*

*& Leasing*, 156 B.R. 167, 171–75 (Bankr. E.D. Va. 1993). The MIPA does not purport to override any such right.

The Sale Order should therefore state expressly that approval of the MIPA does not assume, assign, amend, cure, revive, reinstate, replace, settle, release, or otherwise adjudicate the NOTL lease, any rent or occupancy obligation, any guaranty, or any landlord right. The same reservation should apply to the Newport liquor-license arrangement and any regulatory or non-Debtor affiliate documentation required for post-closing operations. Approval of the MIPA should be without prejudice to NOTL, the Debtors, Purchaser, existing guarantors, the non-Debtor liquor-license holder, or any other party in interest with respect to those separate matters.

**H.    Cause Exists to Waive or Reduce the Bankruptcy Rule 6004(h) Stay; Alternatively, the Court May Authorize Non-Closing Implementation Steps**

Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property is stayed for fourteen (14) days after entry unless the Court orders otherwise. Fed. R. Bankr. P. 6004(h). The stay is intended to afford an objecting party sufficient time to seek appellate review before a transaction is consummated.

Cause exists to waive or reduce the stay because the MIPA is a material component of the Debtors' Plan implementation and Newport value-preservation strategy. Delay may impair the Debtors' ability to coordinate the post-closing ownership and governance structure, prepare related transaction documents, and proceed on the broader confirmation timetable. Kaplan MIPA Decl. ¶¶ 13, 34–35, 46; Powers MIPA Decl. ¶¶ 5–6, 23.

The Debtors recognize that waiver should not eliminate a meaningful opportunity for an objecting party to seek a stay pending appeal. The Rule permits the Court to waive or reduce the fourteen-day period based on the facts of the particular transaction. *In re Borders Grp., Inc.*, 453 B.R. 477, 485–86 (Bankr. S.D.N.Y. 2011). Courts may consider the need for prompt implementation, whether adequate notice was provided, whether an objection was filed, and whether appellate rights remain meaningfully protected. See *In re Verity Health Sys. of Cal., Inc.*, 598 B.R. 283, 291 (Bankr. C.D. Cal. 2018).

If no party objects to waiver, the Debtors request that the Sale Order become effective immediately. If an objection is filed and overruled, the Debtors request waiver or reduction of the stay to the extent the

Court finds that the transaction's timing needs outweigh any identified prejudice and that the objecting party retains a meaningful opportunity to seek appellate relief.

If the Court determines that a full waiver is not warranted, the Debtors request, in the alternative, that the stay be reduced to the minimum period the Court deems appropriate and that the Debtors be authorized during the stay period to prepare, but not consummate, assignments, amended operating-agreement documents, membership-ledger updates, closing certificates, and other implementation materials. No membership-interest transfer would close until expiration or further waiver of the applicable stay.

## IX.

## CONCLUSION

The MIPA is a disclosed, Court-supervised membership-interest transaction intended to preserve the value of VES Newport and support the Debtors' restructuring. The Debtors do not seek hidden lease relief, undisclosed insider consideration, unsupported lien stripping, or categorical good-faith findings divorced from the evidentiary record. The proposed framework provides full disclosure, preserves the Debtors' ability to consider higher or better offers, conditions the insider transfers on separate Court findings, reserves lienholder rights except to the extent expressly adjudicated, and separates lease, landlord, guaranty, and liquor-license issues for appropriate documentation and motion practice.

WHEREFORE, the Debtors respectfully request that the Court enter the Sale Order, substantially in the form filed or lodged in connection with this Motion:

1.      granting this Motion;

2.      approving the MIPA under sections 105(a) and 363(b);

3.      authorizing VES Inc. to sell and transfer the Transferred Interest to Powers in accordance with the MIPA;

4.      authorizing the proposed minority transfers only to the extent supported by the final evidentiary record and expressly approved by the Court;

5.      authorizing the Debtors and the transaction parties to execute and deliver the documents necessary to implement the approved transfers;

6.      granting only such free-and-clear relief under section 363(f) as is supported by the record while preserving or determining the rights of Newtek and other parties in interest as provided in the Sale Order;

7.      finding, to the extent supported by the record, that Powers is a good-faith purchaser under section 363(m) and that the transaction was not collusive within the meaning of section 363(n);

8.      confirming that the MIPA does not approve or adjudicate any separate lease, landlord, guaranty, liquor-license, or other operational matter;

9.      waiving or reducing the stay under Bankruptcy Rule 6004(h), or alternatively authorizing non-closing implementation steps during the stay period; and

10.     granting such other and further relief as the Court deems just and proper.

Respectfully submitted on July 15, 2026, by:

By: /s/ Matthew Knepper, Esq.
Matthew Knepper, Esq.
NEVADA BANKRUPTCY ATTORNEYS, LLC
*Attorney for Debtor(s)*