# EXHIBIT 1

## PROPOSED MEMBERSHIP INTEREST PURCHASE AGREEMENT

**MEMBERSHIP INTEREST PURCHASE AGREEMENT**
**FOR**
**VELOCITY ESPORTS NEWPORT KENTUCKY, LLC**
**A KENTUCKY LIMITED LIABILITY COMPANY**

This Membership Interest Purchase Agreement (this "Purchase Agreement") is made and entered into as of July 14, 2026 (the "Effective Date"), by and among Velocity Esports, Inc., a Nevada corporation, as debtor and debtor in possession ("Seller"), Elizabeth Powers ("Purchaser"), Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company, as debtor and debtor in possession (the "Company"), solely for purposes of the Company Joinder Provisions, and the Insider Bid Parties solely for purposes of Section 7.14. "Company Joinder Provisions" means Sections 1.02(b), 1.03, 1.04, 1.05, 4.02(a), 4.02(f), 4.02(g)-(j), 5.01(b), 6.01, 6.02, 6.03, 6.04, 7.04, 7.06, 7.14, Exhibits B, C, and E, and all transaction documents requiring action, consent, acknowledgment, record access, member admission, operating-agreement amendment, or bankruptcy-case cooperation by or on behalf of the Company. All capitalized terms used herein, unless otherwise defined, shall have the meanings ascribed to such terms in this Purchase Agreement or, if not defined herein, in the Operating Agreement (as defined below).

**RECITALS**

A.      Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company was formed pursuant to Articles of Organization filed with the Secretary of State of Kentucky on January 3, 2022.

B.      The Company is governed by that certain Limited Liability Company Agreement dated January 3, 2022, as amended, supplemented, or modified only by written instruments disclosed to Purchaser, filed with the Court to the extent required, and approved by the Court to the extent such approval is required (the "Operating Agreement"), a true and complete copy of which is attached as Exhibit A.

C.      Seller shall deliver and attach to this Purchase Agreement a true, correct, and complete copy of the Operating Agreement, all amendments, all member consents, and the current membership ledger before this Purchase Agreement is filed with the Court unless the sale motion includes a declaration explaining why any such document is not yet attached.

D.      Seller owns one hundred percent (100%) of the issued and outstanding membership interests of the Company, together with all economic, voting, governance, and other rights associated therewith (the "Seller Interest"). The Seller Interest is property of Seller's bankruptcy estate and may be subject to liens, claims, encumbrances, restrictions, or interests asserted by Newtek, other creditors, the Operating Agreement, applicable law, or order of the Court, all of which shall be treated only as provided in the Sale Order.

E.      Purchaser desires to purchase eighty percent (80%) of the Seller Interest (the "Transferred Interest").

F.      This Agreement is subject to approval by the United States Bankruptcy Court for the District of Nevada (the "Court") pursuant to 11 U.S.C. §§ 105 and 363, Bankruptcy Rules 2002 and 6004, Local Rules 6004 and 9014, and, to the extent applicable, Bankruptcy Rule 9019 and/or Bankruptcy Rule 6006, proceeding under In re Velocity Esports, Inc., Case No. 25-12627-mkn

1

and the jointly administered Cases Nos. 25-12628-mkn, 25-12629-mkn, 25-12630-mkn, and 25-12631-mkn (collectively, the "Bankruptcy Cases"). This Purchase Agreement shall be binding upon execution, subject to the Parties' obligation to seek Court approval; provided, however, that no Closing shall occur unless and until the Court enters an order approving this Purchase Agreement and the transactions contemplated hereby (the "Sale Order") and all other conditions precedent to Closing have been satisfied or waived as permitted herein. If Seller first seeks approval of bidding or sale procedures rather than final approval of the sale, "Procedures Order" means the order approving such procedures, and "Sale Order" means the later final order approving the sale and related transactions. Any reference in this Purchase Agreement to the Sale Order shall include the Procedures Order only to the extent the context relates to bidding, notice, auction, or sale procedures rather than final transfer approval.

G.       The remaining twenty percent (20%) of the Seller Interest may be transferred as follows: ten percent (10%) to April Mountain Properties, LLC and ten percent (10%) to LRW Revocable Trust (collectively, the "Insider Bid Parties"), in each case only if approved by the Court after notice and hearing. The Insider Bid Parties shall provide consideration in the aggregate amount of $50,000.00, to be paid to the NOTL Property Owner LLC, $25,000.00 upon the effective date of the Second Amendment to the NOTL Landlord Lease, and $25,000.00 due upon the effective date of the Plan of Reorganization currently pending in the Bankruptcy Cases. Such consideration shall be treated as a credit bid under 11 U.S.C. § 363(k) only if the Court determines, after notice and hearing, that the applicable Insider Bid Party holds an Allowed Secured Claim secured by the Seller Interest and authorizes such credit bid. Unless and until the Court makes that determination, the Insider Bid Parties' consideration shall be cash, new value, Court-approved claim-settlement consideration, or other Court-approved consideration, and shall not be treated as a § 363(k) credit bid, distribution under the Plan, retention of old equity, payment on account of any insider claim, or satisfaction of any guaranty, reimbursement, subrogation, contribution, or indemnity claim. The Insider Bid Parties shall receive no interest unless the Sale Order expressly approves the consideration, allocation, and legal basis for such transfer. The sale motion shall separately disclose the identity of each Insider Bid Party, the relationship of each Insider Bid Party to the Debtors, the asserted basis for any credit bid or claim settlement, and why the proposed transfer does not violate the absolute-priority rule, unfair-discrimination standards, or the Plan's treatment of Classes 7, 8, and 9.

H.       The rights of Newtek Bank, N.A. ("Newtek"), any other creditor, any landlord, any equipment lessor or lender, any contract counterparty, and any other party in interest to receive notice of, object to, or be heard with respect to the transactions contemplated by this Purchase Agreement are preserved. Nothing in this Purchase Agreement shall be deemed an admission, stipulation, or adjudication regarding the validity, priority, extent, attachment, perfection, or enforceability of any lien, claim, encumbrance, or interest asserted against the Seller Interest, the Company, or the proceeds of the transactions contemplated hereby. Any free-and-clear relief shall apply only to the Seller Interest actually transferred and only to the extent the Court finds that one or more requirements of 11 U.S.C. § 363(f) are satisfied. Any valid liens, claims, encumbrances, or interests shall attach to proceeds, if any, only to the extent and with the priority expressly provided in the Sale Order.

2

I.      The Parties acknowledge that the Company operates from premises at Newport on the Levee under lease documents with NOTL Property Owner LLC ("NOTL"). This Purchase Agreement is not intended to be, and shall not be construed as, an assumption, assignment, amendment, cure, settlement, reinstatement, replacement, or modification of any lease or landlord-related obligation. Any lease amendment, lease assumption, landlord consent, rent treatment, guaranty, use-and-occupancy arrangement, settlement, or other landlord-related relief shall be addressed, if at all, through separate documents and separate motion practice or order of the Bankruptcy Court. Nothing in this Purchase Agreement releases, modifies, or waives any rights, claims, defenses, obligations, or guaranties of or against NOTL, the Company, Seller, Purchaser, any Insider Bid Party, or any non-Debtor guarantor, except to the extent expressly provided in a separate written agreement or order addressing such lease or landlord matters.

J.      NOW, THEREFORE, for and in consideration of the premises and mutual covenants, agreements, understandings, undertakings, representations, warranties and promises, and subject to the conditions, hereinafter set forth, and intending to be legally bound thereby, the parties hereby covenant and agree that the Recitals set forth above are true and correct and that the Transferred Interest will be sold upon the terms and for the consideration set forth below.

## ARTICLE I
## PURCHASE AND SALE OF THE INTEREST

Section 1.01   Purchase and Sale of the Transferred Interest. Subject to the terms and conditions set forth herein, and based upon the representations, warranties, covenants, and agreements set forth herein, at the Closing (as defined below), Seller shall sell, convey, transfer, assign, and deliver to Purchaser, and Purchaser agrees to purchase and receive from Seller at the Closing, the Transferred Interest. For the avoidance of doubt, the transaction contemplated by this Purchase Agreement is a sale of membership interests owned by Seller and is not a direct sale of the Company's assets, not a transfer of the Newport liquor license or any non-Debtor affiliate asset, and not an assumption, assignment, reinstatement, cure, settlement, amendment, replacement, or modification of any executory contract, unexpired lease, or landlord-related obligation. Any lease or landlord-related matters shall be governed solely by separate written documents and any separate Bankruptcy Court order approving the same.

Section 1.02   Consideration; No Assumption of Company or Landlord Liabilities; Separate Insider Bid Consideration.

(a)      In consideration for the transfer of the Transferred Interest to Purchaser at the Closing, Purchaser shall provide only the consideration, if any, expressly set forth on Exhibit C and approved by the Sale Order. Exhibit C shall identify, in a concise schedule, any cash consideration, non-cash consideration, closing covenant, or other consideration being provided by Purchaser for the Transferred Interest. For the avoidance of doubt, Purchaser does not personally assume any Company debt, landlord obligation, equipment obligation, tax obligation, employee obligation, guaranty obligation, claim, cure amount, settlement amount, or other liability merely by entering into this Purchase Agreement or acquiring the Transferred Interest, unless Purchaser expressly assumes such obligation in this Purchase Agreement, Exhibit C, the Sale Order, or a separate written agreement signed by Purchaser.

3

(b)    This Purchase Agreement does not fix, fund, cure, settle, compromise, or otherwise treat any lease obligation, landlord claim, rent arrearage, use-and-occupancy amount, guaranty obligation, or other landlord-related amount. Any such matters, including any proposed second amendment to lease with NOTL, any rent-payment schedule, any guaranty treatment, and any Bankruptcy Court approval of the landlord relationship, shall be addressed outside this Purchase Agreement through separate documents and separate motion practice or order.

(c)    The transfer, if any, of the remaining twenty percent (20%) of the Seller Interest to the Insider Bid Parties is separate from Purchaser's consideration for the Transferred Interest and shall be effected solely pursuant to the Sale Order. Unless expressly approved by the Court, such transfer shall not constitute or be deemed a distribution on account of any prepetition equity interest, insider claim, subordinated claim, guaranty claim, or other claim against any Debtor. The Sale Order shall identify the exact consideration provided by each Insider Bid Party, the recipient of such consideration, the source of such consideration, whether any portion is cash, new value, claim settlement, or authorized credit bid, and whether any such consideration reduces, offsets, satisfies, or releases any debt, guaranty, insider claim, or Plan obligation. No such reduction, offset, satisfaction, or release shall occur unless expressly approved in the Sale Order.

Section 1.03    Bankruptcy Cooperation. Seller, Purchaser, the Company, and the Insider Bid Parties shall cooperate fully and in good faith, as and to the extent reasonably requested by the others, in connection with the preparation, filing, prosecution, and consummation of any motion, notice, order, stipulation, declaration, joinder, consent, acknowledgment, ownership disclosure, insider disclosure, or other document or proceeding required to obtain Court approval of this Purchase Agreement, any proposed credit bid, claim offset, new-value contribution, claim-settlement consideration, and the membership-interest transfer contemplated hereby (collectively, the "Bankruptcy Matters"). Such cooperation shall include providing declarations, proof of authority, proof of funds or consideration, insider-status disclosures, relationship disclosures, ownership disclosures, management-agreement disclosures, compensation disclosures, and any other information reasonably necessary to satisfy the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any order of the Court with respect to approval of this Purchase Agreement and the sale of the Transferred Interest. Each Party shall support entry of the Procedures Order and Sale Order and shall not file or support any objection, pleading, declaration, or position inconsistent with approval of the transactions contemplated hereby, except to the extent required by fiduciary duties, applicable law, or a Party's express rights under this Purchase Agreement. This Section 1.03 shall survive the Closing.

Section 1.04    Section 1.04    Higher or Better Offers; Procedures. Purchaser and the Insider Bid Parties acknowledge that this Purchase Agreement and the transactions contemplated hereby are subject to the Debtors' fiduciary duties, Bankruptcy Court approval, and any bidding or sale procedures approved by the Court. Unless otherwise ordered by the Court, Seller may solicit, consider, respond to, and accept higher or better offers, may modify proposed procedures, and may terminate this Purchase Agreement if Seller determines in the exercise of its business judgment and fiduciary duties that doing so is in the best interests of the estates. No Party shall be entitled to a break-up fee, expense reimbursement, topping fee, administrative claim, or similar bid protection unless expressly approved by separate order of the Court after notice and hearing.

Section 1.05    No Pre-Closing Control; Interim Arrangements. Before Closing, Purchaser shall not exercise control over the Company, its employees, bank accounts, POS systems, inventory, equipment, contracts, books and records, cash, or operations except pursuant to a written interim-management, consulting, transition-services, or operating agreement approved by the Court after notice and hearing. Any such interim arrangement shall be disclosed in the sale motion to the extent required by Local Rule 6004.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF SELLER

To induce Purchaser to enter into this Purchase Agreement and to purchase and receive the Transferred Interest, Seller hereby represents and warrants to Purchaser, except as disclosed in this Purchase Agreement, the Sale Order, the Bankruptcy Cases, or the disclosure schedules attached hereto, that, as of the date hereof and as of the Closing:

Section 2.01    Authority; Binding Nature of Purchase Agreement. Seller is a Nevada corporation and debtor and debtor in possession in the Bankruptcy Cases. Subject to entry of the Sale Order and, if applicable, the Procedures Order, Seller has the corporate and bankruptcy authority to execute and deliver this Purchase Agreement and the transaction documents contemplated hereby and to perform its obligations hereunder and thereunder. This Purchase Agreement is binding upon Seller upon execution, subject to the requirement that Closing shall not occur unless and until the Court enters the Sale Order and all other conditions precedent have been satisfied or waived as permitted herein.

Section 2.02    Ownership of Seller Interest. Seller is the sole record owner of the Seller Interest, which includes the Transferred Interest and the remaining twenty percent (20%) of the Seller Interest proposed to be transferred to the Insider Bid Parties pursuant to this Purchase Agreement and the Sale Order. Except as disclosed on Schedule 2.02 or as may be determined or reserved in the Sale Order, Seller has not transferred, assigned, pledged, hypothecated, or otherwise voluntarily encumbered the Seller Interest. Seller makes no representation that the Seller Interest is free and clear of liens, claims, encumbrances, restrictions, or interests except to the extent provided in the Sale Order. Schedule 2.02 shall be completed before the sale motion is filed and shall identify all known liens, claims, encumbrances, restrictions, rights of first refusal, consent rights, transfer restrictions, charging orders, UCC filings, pledges, or asserted interests affecting the Seller Interest, including any asserted interest of Newtek, any insider creditor, any equipment lender, NOTL, or any other party in interest.

Section 2.03    Broker or Finder.  By execution of this Purchase Agreement, Seller represents and warrants that it has not dealt with any broker or finder in connection with any transactions contemplated by this Purchase Agreement, and no broker or other person is entitled to any commission or finder's fee in connection with any of these transactions.

5

Section 2.04    No Undisclosed Side Agreements. After reasonable inquiry, and except as disclosed in writing to Seller's bankruptcy counsel and, to the extent required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, or order of the Court, filed with or disclosed to the Court, Seller has not entered into any side agreement with Purchaser, the Insider Bid Parties, NOTL, any equipment lender or lessor, any employee, any manager, any insider, or any other party in interest concerning compensation, management, equity, releases, indemnities, claim treatment, lease treatment, equipment treatment, bid protections, reimbursement, or other consideration related to this Purchase Agreement. All such agreements, if any, shall be disclosed in the sale motion to the extent required by Local Rule 6004.

Section 2.05    No Other Representations. Except for the representations expressly set forth in Article II, Seller makes no representation or warranty, express, implied, statutory, or otherwise, concerning the Company, its assets, liabilities, operations, leases, contracts, liquor-license arrangements, equipment, employees, taxes, books and records, permits, financial condition, prospects, or ability to continue operating. Purchaser acknowledges that Purchaser is acquiring the Transferred Interest on an "as is, where is, with all faults" basis, subject only to the express conditions set forth in this Purchase Agreement and the Sale Order.

Section 2.06    No Lease Representation. Seller makes no representation or warranty in this Purchase Agreement concerning the status, treatment, amendment, assumption, rejection, enforceability, value, default status, cure amount, rent amount, guaranty treatment, or future effectiveness of any lease or landlord-related document. Any such lease or landlord matters shall be addressed, if at all, through separate documents and separate Bankruptcy Court approval.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Section 3.01    Authority; Binding Nature of Purchase Agreement. Purchaser has the power and legal capacity to execute and deliver this Purchase Agreement and to carry out Purchaser's obligations hereunder. Purchaser has, or will have as of Closing, sufficient financial resources to satisfy Purchaser's obligations under this Purchase Agreement and to provide adequate assurance of future performance to NOTL and any applicable equipment lessor, lender, or contract counterparty to the extent required. Purchaser shall provide proof of funds, financial information, and adequate-assurance evidence reasonably requested by Seller, NOTL, any applicable counterparty, or the Court. Purchaser shall provide such evidence no later than three (3) Business Days before the hearing on the Procedures Order or Sale Order, as applicable, unless Seller agrees in writing to a later date or the Court orders otherwise.

Section 3.02    Broker or Finder. By execution of this Purchase Agreement, Purchaser represents and warrants that it has not dealt with any broker or finder in connection with any transactions contemplated by this Purchase Agreement, and no broker or other person is entitled to any commission or finder's fee in connection with any of these transactions.

Section 3.03   As Is Condition. The Transferred Interest is conveyed hereunder and accepted by Purchaser "as is" and "with all faults and defects" as of the date hereof and without any representation or warranty of Seller, expressed, implied or statutory, except as expressly set forth herein. Without limiting the foregoing, Purchaser accepts the risk that: (i) the Company may be subject to contracts, leases, licenses, permits, debts, claims, defaults, operational risks, and regulatory requirements not resolved by this Purchase Agreement; (ii) the Newport liquor-license structure may require separate documentation with a non-Debtor affiliate or governmental approval; and (iii) the Court may require overbid procedures, modifications to this Purchase Agreement, or different treatment of the Insider Bid Parties' proposed interests.

Section 3.04   Informed Purchase. Purchaser represents and warrants that: (a) Purchaser has such knowledge and experience in financial and business matters that Purchaser is capable of evaluating the merits and risks of the purchase of the Transferred Interest and is able to bear the economic risk of such purchase; (b) Purchaser has been given the opportunity to ask questions of, and receive answers from, Seller and the Company, and to obtain any additional information necessary to verify the accuracy of any information furnished to Purchaser or to which Purchaser had access in connection with the purchase of the Transferred Interest; (c) Purchaser has conducted such independent investigation, review and analysis of the business, operations, assets, liabilities, results of operations, financial condition and prospects of the Company as Purchaser deems appropriate and is entering into this Agreement based solely upon such independent investigation, review and analysis and the express representations and warranties of Seller set forth in Article II hereof; (d) Purchaser acknowledges that it is not relying upon any representations or warranties of any kind or nature, express or implied, except as expressly set forth in this Agreement; (e) Purchaser has adequate means of providing for Purchaser's current needs and personal contingencies and has no need for liquidity with respect to the investment in the Transferred Interest; and (f) Purchaser has adequate knowledge and experience to properly evaluate the risks and merits of entering into this Agreement and acquiring the Transferred Interest. Purchaser further represents that Purchaser has reviewed, or has had the opportunity to review, the Plan, Disclosure Statement, material contracts, lease documents, equipment schedules, liquor-license arrangements, tax records, payroll records, operating records, bankruptcy docket, claims register, and all available information Purchaser deems material to the Newport transaction.

Section 3.05   Investment Representations.

(a)   Purchaser acknowledges and agrees that the Transferred Interest has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), or under any state securities laws and is being transferred by Seller in reliance upon federal and state exemptions for transactions not involving a public offering;

(b)   Purchaser acknowledges and agrees that the Transferred Interest will constitute "restricted securities" within the meaning of the Securities Act and its related regulations, including requirements that might impose a holding period during which disposition of the Transferred Interest could be limited;

(c)   Purchaser is acquiring the Transferred Interest solely for her own account for investment purposes and not with a view to the distribution thereof within the meaning of Section 2(a)(11) of the Securities Act;

7

(d)      Purchaser acknowledges and agrees that the transfer of the Transferred Interest is subject to the Securities Act and applicable state securities laws;

(e)      Purchaser is a sophisticated investor with knowledge and experience in business and financial matters generally, to be capable of evaluating the merits and risks of the prospective investment in the Transferred Interest and has so evaluated the merits and risks of such investment; and

(f)      Purchaser can bear the economic risk and lack of liquidity inherent in holding the Transferred Interest, is an "accredited investor" (as such term is defined in Rule 501 promulgated under the Securities Act), can bear a total loss in respect of its investment in the Transferred Interest, and, at present, can afford a complete loss of such investment.

(g)      Purchaser acknowledges that the Transferred Interest may not constitute "securities" under Article 8 of the Uniform Commercial Code unless the Company's governing documents validly provide that such interests are securities governed by Article 8 or another applicable rule so provides. Purchaser shall cooperate in determining the proper UCC characterization of the Transferred Interest to the extent necessary to consummate the transactions contemplated by this Purchase Agreement.

Section 3.06    Good Faith; No Collusion. Purchaser represents and warrants that Purchaser is entering into this Purchase Agreement in good faith, at arm's length, and without collusion, fraud, or any agreement to control the sale price within the meaning of 11 U.S.C. § 363(n). Purchaser has not engaged in conduct that would prevent the Court from finding that Purchaser is a good-faith purchaser entitled to the protections of 11 U.S.C. § 363(m). Purchaser has disclosed on Schedule 3.06 all agreements, understandings, communications, or arrangements with the Insider Bid Parties, NOTL, any equipment lender or lessor, any employee, any manager, any creditor, or any other potential bidder concerning the Purchase Agreement, bidding, valuation, price, allocation of equity, management, compensation, releases, claim treatment, lease treatment, or post-Closing operations.

Section 3.07    Insider Status and Relationship Disclosures. Purchaser represents and warrants that, except as disclosed on Schedule 3.06 and in writing to Seller's bankruptcy counsel and, to the extent required, disclosed in the sale motion or otherwise filed with the Court, Purchaser has no familial, business, financial, employment, consulting, ownership, compensation, management, creditor, landlord, guaranty, or other relationships with Seller, the Company, any other Debtor, the Insider Bid Parties, any officer, director, manager, employee, insider, creditor, landlord, equipment lender, or party in interest in the Bankruptcy Cases that would cause Purchaser to be an insider of any Debtor or otherwise require disclosure in connection with approval of this Purchase Agreement. Purchaser further represents that Purchaser is not an insider of any Debtor within the meaning of 11 U.S.C. § 101(31), except as expressly disclosed on Schedule 3.06 and in writing to Seller's bankruptcy counsel and, to the extent required, disclosed in the sale motion or otherwise filed with the Court.

Section 3.08    Reserved.

8

Section 3.09    Management, Key Employee, and Compensation Agreements. Purchaser has not discussed, offered, promised, agreed to, or entered into any employment, consulting, compensation, reimbursement, indemnity, management, incentive, equity, bonus, or post-Closing role with any current or former officer, director, manager, employee, insider, or consultant of any Debtor except as disclosed on Schedule 3.09 and in the sale motion to the extent required by Local Rule 6004.

Section 3.10    Personally Identifiable Information. No personally identifiable information is being sold, leased, or directly transferred by the Debtors through the MIPA. Any information remaining in the possession or control of VES Newport after Closing remains subject to applicable privacy policies, nonbankruptcy law, and the Sale Order.

**ARTICLE IV**
**CLOSING**

Section 4.01    Closing. The consummation of the transactions contemplated by this Purchase Agreement (the "Closing") shall take place remotely by exchange of documents and signatures within five (5) business days after all conditions set forth in Article V have been satisfied or waived in writing by the appropriate party, provided that no Closing shall occur unless the Sale Order has been entered and no stay of the Sale Order is in effect. If the Sale Order is subject to the stay imposed by Bankruptcy Rule 6004(h), Closing shall not occur until such stay has expired or has been waived by the Court. Entry of a Procedures Order alone shall not authorize Closing unless the Procedures Order expressly constitutes final sale approval and authorizes Closing. The date on which the Closing occurs is the "Closing Date."

Section 4.02    Closing Deliveries.  At the Closing, unless otherwise stated, the parties shall deliver or cause to be delivered:

(a)    Seller shall deliver to Purchaser an Assignment of Membership Interest in the form of Exhibit B, duly executed by Seller, transferring the Transferred Interest to Purchaser, together with the Company's written consent, amended membership ledger, and Amended Operating Agreement provisions admitting Purchaser as a member with respect to the Transferred Interest effective as of Closing;

(b)    Purchaser shall deliver any certificates, consents, joinders, membership-interest powers, operating-agreement acknowledgments, and other instruments reasonably required by the Sale Order or the Amended Operating Agreement to evidence Purchaser's acquisition and admission as a member with respect to the Transferred Interest;

(c) Subject to entry of the Sale Order and approval of the Insider Bid Parties' Court-approved consideration described in Recital G, Seller shall deliver to April Mountain Properties, LLC and LRW Revocable Trust, respectively, assignments of membership interests in the form of Exhibit E, duly executed by Seller, transferring ten percent ( 10%) of the Seller Interest to each such Insider Bid Party. No such assignment shall be delivered unless the applicable Insider Bid Party has been identified by legal name, has executed this Purchase Agreement or a joinder, has provided all disclosures and evidence required by the Sale Order, and has been admitted as a member under the Amended Operating Agreement effective as of Closing;

9

(d)	Seller, Purchaser, the Company, and the applicable non-landlord counterparties, if any, shall execute and deliver such consents, acknowledgments, payoff letters, ownership-transfer acknowledgments, or other documents as are required to consummate the membership-interest transfer contemplated hereby. Any lease amendment, lease assumption, lease settlement, landlord consent, rent payment, guaranty, or landlord-related document shall be addressed separately and shall not be deemed approved, assumed, modified, or incorporated by this Purchase Agreement unless expressly provided in a separate written agreement or order;

(e)	To the extent required by the Sale Order, Seller and/or the Insider Bid Parties shall deliver evidence reasonably satisfactory to Purchaser of the authority for the Insider Bid Parties' Court-approved consideration, including, if a § 363(k) credit bid is sought, documentation establishing the asserted allowed secured claim, the lien against the Seller Interest, perfection, priority, amount, authority to bid, and any assignment or agency authority;

(f)	Purchaser, the Insider Bid Parties, and the Company shall execute and deliver, or cause to be executed and delivered, an amended and restated operating agreement for the Company, effective as of Closing (the "Amended Operating Agreement"), providing for Purchaser's 80% interest and the Insider Bid Parties' 10% interests, if approved by the Court, and expressly admitting Purchaser and, if approved by the Court, the Insider Bid Parties as members of the Company effective as of Closing. The Amended Operating Agreement shall include provisions that: (i) any compensation paid to any individual member shall be subject to the unanimous written consent of all minority owners holding, in the aggregate, at least five percent (5%) of the membership interests; (ii) personal expenses shall not be charged to the Company without the prior written approval of all minority owners holding, in the aggregate, at least five percent (5%) of the membership interests; (iii) the Company shall comply with the Purchase Agreement, the Sale Order, the Plan, the Confirmation Order, and any other applicable order of the Court; (iv) require commercially reasonable books and records, separate bank accounts, financial reporting, tax reporting, and record preservation; and (v) prohibit amendment of provisions affecting minority-owner protections, compensation, expense reimbursement, member admission, or Court-order compliance without the consent required therein and, to the extent applicable, Court approval;

(g)	Seller shall deliver a certified or docket-stamped copy of the Sale Order;

(h)	Purchaser and the Insider Bid Parties, as applicable, shall deliver evidence of payment, transfer, credit bid authority, new value, or other consideration required at Closing under Exhibit C and the Sale Order;

(i) Purchaser shall deliver a certificate confirming that all representations remain true and correct, all required disclosures are complete, and no undisclosed side agreements exist;

(j) Seller shall deliver a certificate confirming Seller's authority, ownership of the Seller Interest, and absence of undisclosed voluntary encumbrances, subject to Schedule 2.02 and the Sale Order;

(k)    The Company shall deliver an updated membership ledger, operating agreement records, tax records, payroll records, employee records, contract schedules, equipment schedules, lease documents, insurance information, POS/accounting access information, and other operational records reasonably necessary for post-Closing operation and bankruptcy-case administration;

(l)    The Parties shall deliver such additional documents as are reasonably necessary to implement the Sale Order, the Amended Operating Agreement, and this Purchase Agreement.

## ARTICLE V
## CONDITIONS PRECEDENT TO CLOSING

Section 5.01    Conditions Precedent.  The obligations of the parties to consummate the Closing are subject to the satisfaction, or written waiver by the appropriate party, of each of the following conditions:

(a) Sale Order. The Court shall have entered the Sale Order, in form and substance reasonably acceptable to Seller and Purchaser, approving this Purchase Agreement and the transactions contemplated hereby, including: (i) the transfer of the Transferred Interest to Purchaser under 11 U.S.C. § 363(b) and, if applicable, the Procedures Order and Court-approved bidding procedures; (ii) to the extent requested and approved by the Court, the transfer of the Transferred Interest free and clear of liens, claims, encumbrances, and interests under 11 U.S.C. § 363(f); (iii) the transfer, if approved, of the remaining twenty percent (20%) of the Seller Interest to the Insider Bid Parties, subject to the Court-approved consideration described in Recital G; and (iv) the treatment of liens, claims, encumbrances, interests, objections, and proceeds in connection with the transactions contemplated hereby. The Sale Order may approve the transfer of the remaining twenty percent (20%) of the Seller Interest to the Insider Bid Parties under 11 U.S.C. § 363(k) only if the Court determines that the applicable Insider Bid Party holds an allowed secured claim secured by the Seller Interest and authorizes such credit bid. The Sale Order shall further provide that any liens, claims, encumbrances, and interests determined by the Court to attach to the Seller Interest or the proceeds of the transactions contemplated hereby shall attach to such proceeds, if any, with the same validity, priority, and extent as existed immediately before the Closing, subject to all rights, claims, defenses, and objections of all parties in interest. Nothing in this Purchase Agreement requires the Sale Order to determine that N ewtek or any other creditor does or does not hold such a lien, claim, encumbrance, or interest, and nothing herein shall limit the right of any such party to object to the transactions contemplated hereby or seek such relief as it deems appropriate. The Sale Order shall include a finding, to the extent granted by the Court, that Purchaser is a good-faith purchaser entitled to the protections of 11 U.S.C. § 363(m), findings that the transaction was proposed and negotiated in good faith, without collusion, and without any agreement to control the sale price within the meaning of 11 U.S.C. § 363(n), approval of any waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), if requested and granted, and identification of all Local Rule 6004 material terms and their locations in this Purchase Agreement or the Sale Order. No stay of the Sale Order shall be in effect on the Closing Date. Nothing in the Sale Order or this Purchase Agreement shall impair or enjoin valid rights of setoff or recoupment preserved under applicable non-bankruptcy law and section 553 of the Bankruptcy Code, as determined by the Court.

11

(b)    Third-Party Consents. Seller, Purchaser, and the Company shall have obtained and delivered any third-party consents, waivers, acknowledgments, payoff letters, or other documents required to consummate the membership-interest transfer contemplated by this Purchase Agreement, to the extent such consents are required by the Operating Agreement, applicable nonbankruptcy law, or the Sale Order. For the avoidance of doubt, this condition does not itself approve, amend, assume, assign, settle, or otherwise resolve any lease or landlord-related document. Any such landlord or lease matters shall be addressed through separate documents and separate motion practice or order.

(c)    Purchaser Performance. Purchaser shall have performed, satisfied, and complied in all material respects with all covenants, agreements, and conditions required by this Purchase Agreement to be performed or complied with by her on or before the Closing.

(d)    Accuracy of Representations.  The representations and warranties of Seller and Purchaser set forth in this Purchase Agreement shall be true and correct in all material respects on and as of the Closing Date as though made on and as of that date.

(e) Plan and Disclosure Statement Consistency. Seller shall have filed or obtained approval of such amendments, supplements, notices, or conforming modifications to the Plan and Disclosure Statement as are reasonably necessary to make the Plan, Disclosure Statement, Sale Order, and this Purchase Agreement internally consistent. If such modifications materially and adversely affect creditors or voting rights, Seller shall seek approval of such modifications under 11 U.S.C. § 1127, Bankruptcy Rule 3019, or such other procedure as the Court requires.

(f) Final Schedules. Exhibits A, C, and E, and all schedules referenced in this Purchase Agreement, shall have been completed before the sale motion is filed, or, if not completed, the sale motion shall include a declaration explaining why any exhibit or schedule is unavailable and when it will be filed. In all events, such exhibits and schedules must be completed in form and substance acceptable to Seller and Purchaser and, to the extent required, approved by the Court before entry of the Sale Order or Closing, as applicable. No obligation shall be treated as personally assumed by Purchaser unless identified with reasonable specificity in Exhibit C, the Sale Order, or a separate written agreement signed by Purchaser.

(g) Liquor License and Regulatory Condition. Purchaser and the Company shall have obtained or entered into all agreements necessary for lawful post-Closing operation of the Newport business, including any agreement with Velocity Esports Newport Kentucky II, LLC or any other holder of the liquor license used in the Newport operations, and any governmental approval required under applicable law. No liquor license shall be deemed transferred by this Purchase Agreement unless expressly authorized under applicable law and approved by all required governmental authorities.

(h) Lienholder Treatment. The Sale Order shall determine, preserve, or otherwise provide for the treatment of all liens, claims, encumbrances, or interests asserted against the Seller Interest or proceeds, including any asserted interest of Newtek. The Closing shall not occur unless the Sale Order provides a clear mechanism for transfer of the Transferred Interest, including consent, free-and-clear relief, lien attachment to proceeds, adequate protection, reservation of rights, or such other treatment as the Court approves.

12

Section 5.02    Termination. This Purchase Agreement may be terminated: (a) by mutual written agreement of Seller and Purchaser; (b) by Seller if Seller determines in the exercise of its fiduciary duties that a higher or better offer should be accepted or pursued; (c) by either Seller or Purchaser if the Court denies entry of the Sale Order or denies any other Court approval that is expressly required for Closing under Section 5.01; (d) by either Seller or Purchaser if Closing has not occurred by September 15, 2026, unless the failure to close is caused by the terminating party's breach; or (e) by Seller if Purchaser or the Insider Bid Parties fail to provide required disclosures, evidence of funds, adequate assurance information, or transaction documents reasonably necessary to seek Court approval. Upon termination, no Party shall have further obligations under this Purchase Agreement except for obligations that expressly survive termination, including confidentiality, record-access, cooperation, indemnity, and any remedies for pre-termination breach. Purchaser has not provided a good-faith deposit unless expressly stated on Schedule 5.02. If a deposit is required, Schedule 5.02 shall state the deposit amount, escrow holder, interest treatment, refund conditions, forfeiture conditions, and whether forfeiture is the exclusive remedy.

## ARTICLE VI
## COVENANTS

Section 6.01    Acknowledgment. Seller and Purchaser each hereby acknowledge that they have sufficient knowledge of the business of the Company and have had sufficient access to the books and records of the Company to make an informed decision with respect to the purchase and sale of the Transferred Interest. Seller and Purchaser each acknowledge that no party has made any representations and warranties in connection with this Agreement, other than the representations and warranties expressly set forth herein, and that Seller and Purchaser are not relying upon the other party, or any manager, member, officer, employee or agent of the Company, in connection with the decision to sell or purchase the Transferred Interest and undertake the obligations described in Section 1.02. Purchaser agrees to provide Seller with reasonable access to copies of all financial, tax, employee/payroll, contract, and operational records reasonably necessary to administer the Bankruptcy. To the extent any such records are transferred to Purchaser or remain in the possession or control of the Company after Closing, Purchaser and the Company shall provide Seller, the Reorganized Debtors, their professionals, any post-confirmation estate representative, and the United States Trustee reasonable access to copies upon request for the longer of: (i) seven (7) years after Closing; (ii) two (2) years after entry of a final decree closing the Bankruptcy Cases; or (iii) such longer period as required by applicable law or Court order, subject to customary confidentiality protections and applicable privacy law. Purchaser and the Company shall not destroy, alter, delete, abandon, transfer outside the ordinary course, or materially restrict access to any pre-Closing books and records without Seller's prior written consent or Court order. "Records" include original and electronic accounting files, bank records, POS records, tax files, payroll records, employee files, lease files, equipment files, vendor files, insurance files, customer/event records, and litigation or claim-support materials.

Section 6.02    Post-Closing Bankruptcy Compliance. If Closing occurs before confirmation or the Effective Date of the Plan, Purchaser acknowledges that the Company remains a debtor and debtor in possession and shall cause the Company to comply with all duties under the Bankruptcy Code, Bankruptcy Rules, Local Rules, U.S. Trustee Guidelines, and orders of the Court, including monthly operating reports, U.S. Trustee fees, use of cash collateral restrictions, ordinary-course limitations, record preservation, claim reconciliation, and cooperation with confirmation and Plan consummation.

Section 6.03    Plan Support. Purchaser, the Company, and the Insider Bid Parties shall support all reasonable Plan, Disclosure Statement, and confirmation modifications necessary to conform the Plan to this Purchase Agreement, the Sale Order, the Amended Operating Agreement, and the treatment of Newport-related obligations, provided such modifications are consistent with this Purchase Agreement and the Sale Order.

Section 6.04    Employees; Payroll; Taxes. Nothing herein modifies or discharges any priority wage, tax, or employee claim except as provided by the Plan or order of the Court.

14

Section 6.05    No Non-Debtor Release by Implication. Nothing in this Purchase Agreement releases, discharges, enjoins, modifies, or impairs any liability of any non-Debtor guarantor, co-obligor, insider, affiliate, landlord, equipment lender, equipment lessor, or other non-Debtor unless expressly stated in a written agreement executed by the affected party and approved by the Court to the extent required.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

Section 7.01    Captions.  The captions appearing at the commencement of the sections hereof are descriptive only and for convenience and reference to this Purchase Agreement and in no way whatsoever define, limit, or describe the scope or intent of this Purchase Agreement, nor in any way whatsoever affect this Purchase Agreement or the interpretation thereof.

Section 7.02    Integration. With respect to its subject matter, namely, the sale and transfer of the Transferred Interest and the related transfer of the remaining twenty percent (20%) of the Seller Interest to the Insider Bid Parties pursuant to the Sale Order, this Purchase Agreement (including the documents expressly incorporated or referred to herein, whether now existing or hereafter entered into between the parties as contemplated herein) contains the entire understanding between the parties. In the event of any inconsistency between this Purchase Agreement and the Sale Order, the Sale Order shall govern. In the event of any inconsistency involving Plan treatment, the confirmed Plan and Confirmation Order shall govern. In the event of any inconsistency involving Kentucky LLC internal affairs, member admission, transfer restrictions, or governance, the Amended Operating Agreement shall govern to the extent consistent with the Sale Order and applicable Kentucky law. Lease, landlord, guaranty, rent, occupancy, and related matters are outside the scope of this Purchase Agreement except to the extent expressly stated herein and shall be governed by any separate written lease documents and any separate Court order approving such documents.

Section 7.03    Attorneys' Fees. Should any action be commenced by either party to enforce any portion of this Purchase Agreement, the prevailing party shall be entitled to reimbursement of all attorneys' fees and costs incurred therein. No attorneys' fee or cost obligation shall constitute an Administrative Claim against any Debtor or estate unless expressly allowed by order of the Court.

Section 7.04    Governing Law and Forum. This Purchase Agreement shall be governed by, and construed in accordance with, the laws of the State of Nevada, except to the extent governed by the Bankruptcy Code, the Bankruptcy Rules, other applicable federal law, the Local Rules, the Sale Order, the Plan, the Confirmation Order, or the internal-affairs law of the Commonwealth of Kentucky applicable to the Company, the Operating Agreement, the Amended Operating Agreement, admission of members, transfer of membership interests, and Company governance. Until the Bankruptcy Cases are closed, dismissed, or the Court otherwise relinquishes jurisdiction, the United States Bankruptcy Court for the District of Nevada shall retain jurisdiction over all matters arising out of or related to this Purchase Agreement, the Sale Order, and the transactions contemplated hereby to the fullest extent permitted by law. Nothing in this Section expands the Court's jurisdiction beyond that permitted by applicable law.

15

Section 7.05    Severability. If any one or more provisions of this Purchase Agreement are declared judicially void or otherwise unenforceable, the remainder of this Purchase Agreement shall survive, and such provision shall be deemed modified or amended to fulfill the intent of the parties hereto.

Section 7.06    Notices. All notices to be given or required pursuant to this Purchase Agreement must be in writing and shall be deemed effective upon receipt when personally delivered; upon delivery confirmation when sent by nationally recognized overnight courier; upon confirmed transmission when sent by electronic mail; and three (3) business days after deposit with the U.S. Postal Service by registered or certified mail, postage prepaid, return receipt requested. Notices shall be sent to the notice addresses and email addresses set forth below each party's signature block, or to such other address or email address as a party may designate by written notice in accordance with this Section. All notice addresses and emails shall be completed before the sale motion is filed. Notices to Seller and the Company shall include notice to Debtors' bankruptcy counsel, Nevada Bankruptcy Attorneys LLC, Attn: Matthew I. Knepper, Esq., unless otherwise ordered by the Court.

Section 7.07    Counterparts. This Purchase Agreement may be executed in two or more counterparts and shall be deemed to have become effective when, and only when, all parties hereto have executed this Purchase Agreement, and all such counterparts shall be deemed to constitute one and the same instrument.

Section 7.08    Assignment. Purchaser may not assign this Purchase Agreement or designate an acquisition affiliate without Seller's prior written consent and, if required, Court approval. Any proposed assignee or designee must provide all disclosures, financial information, adequate assurance evidence, and insider-status disclosures required of Purchaser. No assignment shall relieve Purchaser of liability unless expressly approved by Seller and the Court. No assignment or designee shall be approved if it would materially change insider status, adequate assurance, consideration, ownership, management, or Local Rule 6004 disclosures without supplemental disclosure and, if required, further Court approval.

Section 7.09    Amendment. This Purchase Agreement may not be amended, modified, changed, or altered except in writing signed by all parties. After this Purchase Agreement is filed with the Court, no material amendment, modification, waiver, side agreement, or supplement shall be effective unless disclosed to the Court and approved to the extent required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, Sale Order, or other order of the Court.

Section 7.10    Succession. This Purchase Agreement shall be binding upon, and inure to the benefit of, the parties and their respective successors and assigns.

Section 7.11    Waiver. The waiver by Seller or Purchaser of a breach of any provision of this Purchase Agreement shall not operate or be construed as a waiver of any subsequent breach thereof.

Section 7.12    Further Assurances. The parties agree to execute such other documents and perform such other acts as may be reasonably necessary or proper and usual to effect this Purchase Agreement.

16

Section 7.13   Taxes. Any exemption from transfer, stamp, recording, or similar taxes under 11 U.S.C. § 1146(a) shall apply only to the extent approved by the Court and legally available. Nothing in this Purchase Agreement constitutes tax advice, and each party has been advised to consult independent tax counsel. Any sale motion seeking relief under 11 U.S.C. § 1146(a) shall identify each specific type of tax for which exemption is sought, including any recording tax, stamp tax, conveyance fee, transfer tax, sales tax, use tax, mortgage tax, or similar tax, and the state or local jurisdiction in which such tax may arise. No Party seeks exemption from income tax, capital-gains tax, franchise tax, or any tax not legally subject to 11 U.S.C. § 1146(a).

Section 7.14   Limited Joinder of Insider Bid Parties. Each Insider Bid Party, by executing this Purchase Agreement or a counterpart joinder hereto, acknowledges and agrees that: (a) it is an intended recipient of a ten percent (10%) membership interest pursuant to Recital G, Section 1.02(c), Section 4.02(c), Section 4.02(f), and Exhibit E, subject to entry of the Sale Order; (b) it shall be bound by Section 1.03, Section 4.02(c), Section 4.02(f), Section 5.01, and this Section 7.14; (c) except as expressly set forth herein or in the Sale Order, it is not assuming Purchaser's obligations with respect to the Transferred Interest and is not becoming a purchaser of the Transferred Interest under this Purchase Agreement; (d) each Insider Bid Party represents that it has authority to execute this Purchase Agreement or joinder, provide the Court-approved consideration, and consummate the transfer contemplated by the Sale Order; (e) each Insider Bid Party shall disclose its insider status, relationship to the Debtors, asserted claim or consideration, source of funds, ownership structure, and any agreements with Purchaser, Seller, the Company, NOTL, any creditor, or any employee; (f) each Insider Bid Party represents that it has not entered into any agreement to control the sale price or chill bidding; and (g) no Insider Bid Party shall receive any membership interest unless the Sale Order expressly approves the legal basis, consideration, and allocation of the transfer.

**[Signature page to follow]**

17

IN WITNESS WHEREOF, this Purchase Agreement has been executed as of the date first set forth above.

By signing below, Seller certifies that execution of this Purchase Agreement has been authorized subject to Court approval and the Sale Order.

**SELLER:**
Velocity Esports, Inc.
a Nevada corporation

**By:** _Philip N Kaplan_
**Name:** Philip N. Kaplan
**Its:** Managing Member

**Notice Address:**
3838 Kenneth Avenue
Chicago, IL 60641

**Email:**
philk@deervalleyventures.com

**PURCHASER:**
Elizabeth Powers

**By:** _Elizabeth Powers_
**Name: Elizabeth Powers**

**Notice Address:**
11438 65th Ave N, Seminole, FL 33772
**Email:**
bethiepowers@gmail.com

**ACKNOWLEDGED AND AGREED, solely for purposes of the Company Joinder Provisions:**

VELOCITY ESPORTS NEWPORT KENTUCKY, LLC,
a Kentucky limited liability company
**By:** _Philip N Kaplan_
**Name:** Philip N. Kaplan
**Its:** Authorized Signor

The Company executes this Purchase Agreement solely for the Company Joinder Provisions and to evidence its consent, subject to Court approval, to member admission, operating-agreement amendment, record-access obligations, post-Closing bankruptcy cooperation, and other obligations expressly imposed on the Company by this Purchase Agreement or the Sale Order.

18

**Notice Address:**
3838 Kenneth Avenue
Chicago, IL 60641

**Email:**
philk@deervalleyventures.com

**ACKNOWLEDGED AND AGREED, solely for the purposes set forth in Section 7.14:**

**INSIDER BID PARTY:**
April Mountain Properties, LLC

By: *Philip N Kaplan*

Name: Philip Kaplan
Manager, April Mountain Properties, LLC

Notice Address: 2443 Fillmore St #289, San Francisco, CA 94115
Email: philk@deervalleyventures.com

**INSIDER BID PARTY:**
LRW Revocable Trust

By: *Leonard Wanger*

Name: Leonard Wanger
Trustee, LRW Revocable Trust

Notice Address: 3838 N Kenneth Ave, Chicago, IL 60641
Email: len_wanger@hotmail.com

19

**EXHIBIT A**

**OPERATING AGREEMENT**

Seller Certification: Seller certifies that this Exhibit A is a true, correct, and complete copy of the Operating Agreement and all amendments thereto.

**LIMITED LIABILITY COMPANY AGREEMENT OF**

**Velocity Esports Newport Kentucky II, LLC**

This Limited Liability Company Agreement ("**Agreement**") of Velocity Esports Newport Kentucky II, LLC (the "**Company**"), effective as of March 13, 2024 (the "**Effective Date**"), is entered into by Velocity Esports, Inc., as the sole member of the Company (the "**Member**").

WHEREAS, the Company was formed as a limited liability company on January 27, 2023 by the filing of a Articles of Organization with the Secretary of State of the State of Kentucky pursuant to and in accordance with the Kentucky Revised Statutes, as amended from time to time (the "**Act**"); and

WHEREAS, the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein.

NOW, THEREFORE, the Member agrees as follows:

1.      Name. The name of the Company is Velocity Esports Newport Kentucky II, LLC.

2.      Purpose. The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act and to engage in any and all activities necessary or incidental thereto.

3.      Principal Office; Registered Agent.

    (a)     Principal Office. The location of the principal office of the Company shall be 3838 N. Kenneth Ave, Chicago, IL 60641, or such other location as the Member may from time to time designate.

    (b)     Registered Agent. The registered agent of the Company for service of process in the State of Kentucky and the registered office of the Company in the State of Kentucky shall be that person and location reflected in the Articles of Organization.  In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Member shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be, in the manner provided by law.

4. <u>Members</u>.

(a) <u>Initial Member</u>. The name and the business, residence or mailing address of the Member are as follows:

| **Name** | **Address** |
|---|---|
| Velocity Esports, Inc. | 3838 N. Kenneth Ave, Chicago, IL 60641 |

(b) <u>Additional Members</u>. One or more additional members may be admitted to the Company with the consent of the Member. Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional members. Each additional member shall execute and deliver a supplement or counterpart to this Agreement, as necessary.

(c) <u>Membership Interests; Certificates</u>. The Company will not issue any certificates to evidence ownership of the membership interests.

5. <u>Management</u>.

(a) <u>Authority; Powers and Duties of the Member</u>. The Member shall have exclusive and complete authority and discretion to manage the operations and affairs of the Company and to make all decisions regarding the business of the Company. Any action taken by the Member shall constitute the act of and serve to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of the Member as set forth in this Agreement. The Member shall have all rights and powers of a manager under the Act, and shall have such authority, rights and powers in the management of the Company to do any and all other acts and things necessary, proper, convenient or advisable to effectuate the purposes of this Agreement.

(b) <u>Election of Officers; Delegation of Authority</u>. The Member may, from time to time, designate one or more officers with such titles as may be designated by the Member to act in the name of the Company with such authority as may be delegated to such officers by the Member (each such designated person, an "**Officer**"). Any such Officer shall act pursuant to such delegated authority until such Officer is removed by the Member. Any action taken by an Officer designated by the Member pursuant to

2

authority delegated to such Officer shall constitute the act of and serve to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of any officer set forth in this Agreement and any instrument designating such officer and the authority delegated to him or her.

6. <u>Liability of Member; Indemnification</u>.

   (a) <u>Liability of Member</u>. To the fullest extent permitted under the Act, the Member, whether acting as the Member, in its capacity as the manager of the Company, or in any other capacity, shall not be liable for any debts, obligations or liabilities of the Company or each other, whether arising in tort, contract or otherwise, solely by reason of being a Member.

   (b) <u>Indemnification</u>. To the fullest extent permitted under the Act, the Member (irrespective of the capacity in which it acts) shall be entitled to indemnification and advancement of expenses from the Company for and against any loss, damage, claim or expense (including attorneys' fees) whatsoever incurred by the Member relating to or arising out of any act or omission or alleged acts or omissions (whether or not constituting negligence or gross negligence) performed or omitted by the Member on behalf of the Company; provided, however, that any indemnity under this Section 6(b) shall be provided out of and to the extent of Company assets only, and neither the Member nor any other person shall have any personal liability on account thereof.

7. <u>Term</u>. The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with **Section 11**.

8. <u>Initial Capital Contributions</u>. The Member hereby agrees to contribute to the Company such cash, property or services as determined by the Member.

9. <u>Tax Status; Income and Deductions</u>.

   (a) <u>Tax Status</u>. As long as the Company has only one member, it is the intention of the Company and the Member that the Company be treated as a disregarded entity for federal and all relevant state tax purposes and neither the Company nor the Member shall take any action or make any election which is inconsistent with such tax treatment. All provisions of this Agreement are to be construed so as to preserve the Company's tax status as a disregarded entity.

   (b) <u>Income and Deductions</u>. All items of income, gain, loss, deduction and credit of the Company (including, without limitation, items not subject to

3

federal or state income tax) shall be treated for federal and all relevant state income tax purposes as items of income, gain, loss, deduction and credit of the Member.

10. <u>Distributions</u>. Distributions shall be made to the Member at the times and in the amounts determined by the Member.

11. <u>Dissolution; Liquidation</u>.

    (a) The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member or (ii) any other event or circumstance giving rise to the dissolution of the Company under the Act, unless the Company's existence is continued pursuant to the Act.

    (b) Upon dissolution of the Company, the Company shall immediately commence to wind up its affairs and the Member shall promptly liquidate the business of the Company. During the period of the winding up of the affairs of the Company, the rights and obligations of the Member under this Agreement shall continue.

    (c) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (i) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); and (ii) thereafter, to the Member.

    (d) Upon the completion of the winding up of the Company, the Member shall file a Certificate of Cancellation in accordance with the Act.

12. <u>Miscellaneous</u>.

    (a) <u>Amendments</u>. Amendments to this Agreement may be made only with the consent of the Member.

    (b) <u>Governing Law</u>. This Agreement shall be governed by the laws of the State of Kentucky.

    (c) <u>Severability.</u> In the event that any provision of this Agreement shall be declared to be invalid, illegal or unenforceable, such provision shall survive to the extent it is not so declared, and the validity, legality and enforceability of the other provisions hereof shall not in any way be affected or impaired thereby, unless such action would substantially

impair the benefits to any party of the remaining provisions of this Agreement.

[SIGNATURE PAGE FOLLOWS]

5

IN WITNESS WHEREOF, the undersigned has executed this Agreement to be effective as of the date first above written.

By_____
Leonard Ralph Wanger, President

6

**EXHIBIT B**

**ASSIGNMENT OF MEMBERSHIP INTEREST**

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Velocity Esports, Inc., a Nevada corporation (the "Assignor"), hereby transfers, conveys, assigns, and delivers to Elizabeth Powers ("Assignee"), eighty percent (80%) of the membership interest of Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company (the "Assigned Membership Interest"), pursuant to and subject to that certain Membership Interest Purchase Agreement dated as of July 14, 2026 and the Sale Order entered by the United States Bankruptcy Court for the District of Nevada.

Assignee accepts the Assigned Membership Interest subject to the Purchase Agreement, Sale Order, and Amended Operating Agreement. The Company consents to Assignee's admission as a member with respect to the Assigned Membership Interest effective as of Closing, and the Company shall update its books, records, and membership ledger accordingly. Until Assignee is admitted as a member under Kentucky law and the Amended Operating Agreement, this Assignment shall transfer only the rights that may be transferred by assignment under applicable Kentucky law. This Assignment shall be effective as of the Closing Date. This Assignment may be executed in one or more counterparts, all of which, taken together, shall constitute one instrument.

DATED this  14 July, 2026

**ASSIGNOR:**
Velocity Esports, Inc.
a Nevada corporation

By: _Philip N Kaplan_
Name: Philip N Kaplan
Its:  Authorized signer

**ASSIGNEE:**
Elizabeth Powers

By: _Elizabeth Powers_
Name:

ACKNOWLEDGED AND AGREED:
Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company

By: _Philip N Kaplan_
Name: _Philip N Kaplan_
Its: _Authorized Signer_

21

**EXHIBIT C**

**TRANSACTION CONSIDERATION AND ASSUMPTION SCHEDULE**

For purposes of Section 1.02 of the Purchase Agreement, this Exhibit C identifies the consideration, if any, to be provided for the transfer of the Transferred Interest and any obligations expressly assumed by Purchaser in connection with this Purchase Agreement. No obligation shall be deemed personally assumed by Purchaser unless expressly identified in this Exhibit C, the Sale Order, or a separate written agreement signed by Purchaser. Lease, landlord, rent, guaranty, occupancy, and related matters are not resolved by this Exhibit C and shall be addressed, if at all, through separate lease documents and separate motion practice or order.

| Category | Description | Amount / Value | Responsible Party | Approval / Governing Document | Notes |
|---|---|---|---|---|---|
| Cash consideration payable to Seller | None. | $0 | N/A | Sale Order | No cash obligation exists unless expressly inserted. |
| Non-cash consideration | Execution of transaction documents, cooperation, ownership transition, and other non-cash consideration approved by the Court | Continuity of Operations | Purchaser | Sale Order | Newport transaction, claims reconciliation, operations, negotiations. Operations support, equipment / vendor issues, plan implementation. |
| Insider Bid Party consideration | Consideration, if any, for the remaining 20% of the Seller Interest | The Insider Bid Parties shall provide consideration in the aggregate amount of $50,000.00, to be paid to the NOTL Property Owner LLC, $25,000.00 upon the effective date of the Second Amendment to the NOTL Landlord Lease, and $25,000.00 due upon the effective date of the Plan of Reorganization currently pending in the Bankruptcy Cases. | Insider Bid Parties | Sale Order | Not a distribution on account of insider claims or equity unless expressly approved. |
| Company obligations | Obligations that remain obligations of the Company by operation of law or separate agreement | N/A | Company | Plan, Sale Order, separate agreements, or applicable law | Purchaser does not personally assume such obligations merely by acquiring the Transferred Interest. |
| Lease / landlord matters | Any lease amendment, rent treatment, landlord consent, guaranty, or occupancy arrangement | N/A | As provided in separate lease documents | Separate lease documents and separate Court order, if any | Not resolved by this Purchase Agreement. |
| Liquor-license / regulatory matters | Any liquor-license use, transfer, management, affiliate, or | None | N/A | N/A | No liquor license is transferred by this Purchase Agreement. |

22

23

| | regulatory arrangement necessary for operations | | | | |
|---|---|---|---|---|---|

## EXHIBIT E

### ASSIGNMENT OF MEMBERSHIP INTEREST

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Velocity Esports, Inc., a Nevada corporation (the "Assignor"), hereby transfers, conveys, assigns, and delivers to April Mountain Properties, LLC (the "Assignee"), ten percent (10%) of the membership interest of Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company (the "Assigned Membership Interest"), pursuant to and subject to that certain Membership Interest Purchase Agreement dated as of July 14, 2026 and the Sale Order entered by the United States Bankruptcy Court for the District of Nevada.

Assignee accepts the Assigned Membership Interest subject to the Purchase Agreement, Sale Order, and Amended Operating Agreement. This Assignment shall be effective only if the Sale Order expressly approves Assignee's acquisition of the Assigned Membership Interest and the consideration provided by Assignee. Unless the Sale Order expressly authorizes a credit bid under 11 U.S.C. § 363(k), Assignee's consideration shall be cash, new value, Court-approved claim-settlement consideration, or other Court-approved consideration, and shall not be treated as a distribution on account of any prepetition claim, insider claim, guaranty claim, or equity interest. The Company consents to Assignee's admission as a member with respect to the Assigned Membership Interest effective as of Closing, and the Company shall update its books, records, and membership ledger accordingly. Until Assignee is admitted as a member under Kentucky law and the Amended Operating Agreement, this Assignment shall transfer only the rights that may be transferred by assignment under applicable Kentucky law. This Assignment may be executed in one or more counterparts, all of which, taken together, shall constitute one instrument.

**[Signature Page Follows]**

24

DATED this 14 July, 2026

**ASSIGNOR:**
Velocity Esports, Inc.,
a Nevada corporation


By: _____ *Philip N Kaplan* _____
Name: Philip N. Kaplan
Managing Member


**ASSIGNEE:**
April Mountain Properties, LLC


By: _____ *Philip N Kaplan* _____
Name: Philip N. Kaplan
Manager, April Mountain Properties, LLC


**ACKNOWLEDGED AND AGREED:**
Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company


By: _____ *Philip N Kaplan* _____
Name: Philip N. Kaplan
Authorized Signor

25

## ASSIGNMENT OF MEMBERSHIP INTEREST

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Velocity Esports, Inc., a Nevada corporation (the "Assignor"), hereby transfers, conveys, assigns, and delivers to LRW Revocable Trust (the "Assignee"), ten percent (10%) of the membership interest of Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company (the "Assigned Membership Interest"), pursuant to and subject to that certain Membership Interest Purchase Agreement dated as of July 14, 2026 and the Sale Order entered by the United States Bankruptcy Court for the District of Nevada.

Assignee accepts the Assigned Membership Interest subject to the Purchase Agreement, Sale Order, and Amended Operating Agreement. This Assignment shall be effective only if the Sale Order expressly approves Assignee's acquisition of the Assigned Membership Interest and the consideration provided by Assignee. Unless the Sale Order expressly authorizes a credit bid under 11 U.S.C. § 363(k), Assignee's consideration shall be cash, new value, Court-approved claim-settlement consideration, or other Court-approved consideration, and shall not be treated as a distribution on account of any prepetition claim, insider claim, guaranty claim, or equity interest. The Company consents to Assignee's admission as a member with respect to the Assigned Membership Interest effective as of Closing, and the Company shall update its books, records, and membership ledger accordingly. Until Assignee is admitted as a member under Kentucky law and the Amended Operating Agreement, this Assignment shall transfer only the rights that may be transferred by assignment under applicable Kentucky law. This Assignment may be executed in one or more counterparts, all of which, taken together, shall constitute one instrument.

**[Signature Page Follows]**

DATED this _____ 14 July, 2026.


**ASSIGNOR:**
Velocity Esports, Inc.
a Nevada corporation


By: *Philip N Kaplan*

Name: Philip N. Kaplan
Managing Member


**ASSIGNEE:**
LRW Revocable Trust

By: *Leonard Wanger*

Name: Leonard Wanger
Trustee, LRW Revocable Trust

**ACKNOWLEDGED AND AGREED:**
Velocity Esports Newport Kentucky, LLC, a Kentucky limited liability company

By: *Philip N Kaplan*

Name: Philip N. Kaplan
Authorized Signor

27