Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re

VELOCITY ESPORTS, INC.,

■ Affects Velocity Esports, Inc.
☐ Affects Velocity Esports Las Vegas Town Square, LLC
☐ Affects Velocity Esports Chicago Schaumburg, LLC
■ Affects Velocity Esports Newport Kentucky, LLC
☐ Affects Velocity Esports Orlando Downtown, LLC
☐ Affects All Debtors

Debtor(s).

Case No.: 25-12627-mkn

Jointly Administered with
Case No. 25-12628-mkn
Case No. 25-12629-mkn
Case No. 25-12630-mkn
Case No. 25-12631-mkn

Chapter 11

**DECLARATION OF PHILIP KAPLAN IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING MEMBERSHIP INTEREST PURCHASE AGREEMENT FOR VELOCITY ESPORTS NEWPORT KENTUCKY, LLC; (II) AUTHORIZING SALE AND TRANSFER OF MEMBERSHIP INTERESTS PURSUANT TO 11 U.S.C. § 363(b); (III) APPROVING RELATED MEMBERSHIP INTEREST ASSIGNMENTS, GOOD-FAITH PURCHASER FINDINGS, AND RELATED RELIEF; AND (IV) GRANTING RELATED RELIEF**

Hearing Date: **OST REQUESTED**
Hearing Time: **OST REQUESTED**

I, Philip Kaplan, declare as follows:

1.      I am over the age of eighteen and am competent to testify to the matters stated in this declaration. I make this declaration based on my personal knowledge, my review of the Debtors' books and

- 1 -

records, my involvement in the Debtors' chapter 11 cases, and information provided to me by the Debtors' professionals and management personnel under my supervision or at my direction. If called as a witness, I could and would testify competently to the facts set forth herein.

2.      I am the Chairman of the Board of Velocity Esports, Inc. ("VES Inc."). I previously submitted a first-day declaration in these chapter 11 cases [ECF No. 21]. Except as updated or supplemented by this declaration, the factual background in my first-day declaration remains accurate to the best of my knowledge, information, and belief.

3.      I am familiar with the Debtors' corporate structure, business operations, venue-level operations, cash management practices, debt structure, restructuring strategy, and the proposed Membership Interest Purchase Agreement for Velocity Esports Newport Kentucky, LLC dated July 14, 2026, as may be amended or supplemented before hearing (the "MIPA").

4.      The Debtors commenced these chapter 11 cases on May 7, 2025. Since the Petition Date, the Debtors have continued to operate their businesses and manage their affairs as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5.      To the best of my knowledge, no trustee or examiner has been appointed in these chapter 11 cases.

6.      VES Inc. is the parent and holding company for the Debtors' venue-level entities. VES Inc. wholly owns Velocity Esports Newport Kentucky, LLC ("VES Newport" or the "Company").

7.      VES Newport is a Kentucky limited liability company and operates the Debtors' Newport venue at Newport on the Levee in Newport, Kentucky.

8.      Velocity Esports Newport Kentucky II, LLC is a separate non-Debtor affiliate. It holds the Newport liquor license used in connection with Newport operations and does not operate as a revenue-generating venue entity.

9.      The Newport venue and the Las Vegas venue are the Debtors' two core continuing operating businesses. The Debtors' other planned or former expansion locations, including Schaumburg and Orlando, did not produce the cash-flow stabilization originally anticipated by management.

10. The Newport business depends on continued coordination among VES Newport, landlord-related arrangements, equipment arrangements, liquor-license arrangements, employees, and post-closing governance. The MIPA does not itself resolve each of those operational dependencies.

11. Historically, VES Inc. centrally administered cash generated by venue-level entities. Venue-level entities generally maintained limited daily operating balances, while surplus revenue was swept or administered at the holding-company level for payment of debt and operating expenses.

12. The Debtors' rapid-growth structure left VES Inc. with significant legacy debt, guaranty exposure, and parent-level administrative burdens. The parent-level overlay has become less useful to the Newport business as a going-concern operation than it was when the Debtors were pursuing rapid multi-venue expansion.

13. In my business judgment, moving ownership and post-closing governance of the Newport business away from the parent-level holding-company structure and toward a clearer Newport-level ownership structure is reasonably designed to reduce implementation friction, preserve value, and support the Debtors' overall restructuring path.

14. On May 28, 2026, the Debtors filed their Joint Chapter 11 Plan of Reorganization #2 [ECF No. 284] ("Plan #2"). Plan #2 treats the Newport MIPA as a material restructuring transaction that remains subject to Bankruptcy Court approval by Sale Order or other applicable order.

15. The MIPA is a membership-interest transaction. It is not a direct sale of VES Newport's assets, not a transfer of the Newport liquor license, and not a motion to assume, assign, amend, cure, settle, replace, or otherwise adjudicate any lease or landlord-related obligation.

16. Under the MIPA, VES Inc. proposes to sell and transfer eighty percent (80%) of its membership interests in VES Newport to Beth Powers, subject to Bankruptcy Court approval and the terms of the MIPA.

17. Under the MIPA, the remaining twenty percent (20%) of the VES Newport membership interests may be transferred in equal ten percent (10%) interests to April Mountain Properties, LLC and LRW Revocable Trust, but only if the Bankruptcy Court approves the recipients, consideration, allocation, and legal basis for such transfers.

18.     April Mountain Properties, LLC is associated with me. LRW Revocable Trust is associated with Leonard R. Wanger. For that reason, the MIPA treats those proposed recipients as insider-related parties and conditions any transfer to them on express Bankruptcy Court approval after notice and hearing.

19.     Beth Powers is the proposed purchaser of the eighty percent (80%) transferred interest. Based on the information presently available to me, Beth Powers is not an insider of any Debtor, but I understand that Beth Powers must provide her own relationship, side-agreement, and purchaser disclosures in connection with approval of the MIPA.

20.     Beth Powers is not expected to pay a substantial conventional cash purchase price to VES Inc. for the eighty percent (80%) transferred interest. That fact has been disclosed to Debtors' counsel and is reflected in the structure of the MIPA.

21.     To the best of my knowledge, Beth Powers is not assuming all debts, landlord obligations, equipment obligations, tax obligations, employee obligations, guaranty obligations, cure amounts, settlement amounts, or other liabilities of VES Newport merely by entering into the MIPA, except to the extent expressly stated in the MIPA, its schedules, a Sale Order, or a separate written agreement signed by Beth Powers.

22.     The business rationale for the MIPA is not based primarily on immediate cash proceeds from Beth Powers. The MIPA is intended to preserve Newport as an operating business, move control toward a cleaner Newport-level governance structure, and support the Debtors' ability to pursue a confirmable restructuring rather than a value-destructive liquidation.

23.     The proposed minority transfers to April Mountain Properties, LLC and LRW Revocable Trust are separate from Beth Powers' proposed eighty percent (80%) transfer. No minority transfer should be effective unless and until the Bankruptcy Court approves the recipient, consideration, allocation, and legal basis for the transfer.

24.     The MIPA discloses that the proposed consideration associated with the insider-related minority component is tied to separate NOTL lease-amendment and lease-related payment matters: The Insider Bid Parties shall provide consideration in the aggregate amount of $50,000.00, to be paid to the NOTL Property Owner LLC, $25,000.00 upon the effective date of the Second Amendment to the NOTL Landlord Lease, and $25,000.00 due upon the effective date of the Plan of Reorganization currently pending

- 5 -

in the Bankruptcy Cases. I understand that approval of the MIPA does not itself approve the Second Amendment, authorize those payments, assume the lease, determine cure, release any guaranty, or resolve any landlord claim.

25.    The proposed minority transfer is not intended to be a distribution on account of Class 7 insider secured claims, a distribution on account of Class 9 equity interests, reimbursement, subrogation, contribution, indemnity, or payment on any guaranty claim unless the Bankruptcy Court expressly determines otherwise in a Sale Order or other applicable order.

26.    To the best of my knowledge, the Debtors have not entered into any undisclosed agreement with Beth Powers, April Mountain Properties, LLC, LRW Revocable Trust, NOTL, any equipment lender, any employee, or any other party that would materially alter the consideration, ownership allocation, compensation, management rights, releases, or bid protections disclosed in the MIPA and schedules. I understand that Beth Powers and the Insider Bid Parties are expected to provide separate certifications or disclosures concerning their own relationships and agreements.

27.    The MIPA schedules identify known or potential parties whose liens, claims, restrictions, relationships, or operational rights may be relevant to the MIPA. Those schedules are intended as disclosure schedules and do not constitute admissions that any asserted lien, claim, encumbrance, restriction, or interest is valid, perfected, enforceable, senior, or attached to the Seller Interest.

28.    Newtek Bank, N.A. has asserted secured claims and liens in these cases. The Debtors' Plan #2 [ECF No. 284] provides that any net cash proceeds of the Newport MIPA will be applied to Newtek only to the extent the Sale Order determines that such proceeds constitute Newtek collateral or are otherwise payable to Newtek. I do not intend the MIPA to adjudicate Newtek's asserted lien rights absent proper notice, evidence, and a Court ruling.

29.    The Debtors' Newport membership interest is not a simple liquid asset with an obvious standalone cash market. Its realizable value is constrained by continuing operations, landlord-related issues, equipment arrangements, regulatory and liquor-license issues, parent-level debt, asserted liens, and the need for a workable post-closing governance structure.

30. Based on my review of the Debtors' business, the Newport membership interest has limited standalone realizable value absent a transaction that preserves the Newport business as a going concern and coordinates the operating issues that allow Newport to continue functioning.

31. The Debtors have evaluated realistic alternatives to the MIPA, including continued parent-level ownership under the existing distressed structure, delay until confirmation, a piecemeal liquidation, and the possibility of seeking a different transaction. In my business judgment, the MIPA is superior to those alternatives based on current circumstances.

32. A chapter 7 liquidation or forced shutdown of the Newport business would likely impose additional administrative and wind-down costs, jeopardize the going-concern value of the Newport venue, create additional landlord and equipment issues, and reduce the Debtors' ability to implement Plan #2.

33. The Debtors' Initial Feasibility and Liquidation Analysis projects Newport gross liquidation value of approximately $438,847.93 and no net value for general unsecured creditors after liquidation costs and asserted NFS, equipment, LEAF, and Newtek-related obligations. That analysis supports my belief that preserving Newport as a going concern is more valuable than forcing a liquidation path.

34. The MIPA is intended to preserve the going-concern value of Newport by creating a clearer post-closing ownership and governance platform. That platform is intended to support continuing operations, facilitate further transaction documents, and reduce uncertainty regarding future control of VES Newport.

35. Failure of the Newport MIPA or related Newport transaction path would materially impair the Debtors' restructuring strategy and may require further Plan modification, alternative transaction efforts, conversion analysis, or structured dismissal analysis.

36. The MIPA contains no break-up fee, topping fee, expense reimbursement, no-shop covenant, or other bid protection that would discourage higher or better offers.

37. Under the MIPA, VES Inc. retains the right, consistent with its fiduciary duties and Court approval requirements, to solicit, consider, respond to, and accept higher or better offers. If a superior executable proposal is presented, I understand that the Debtors may seek to adjourn the hearing, propose overbid procedures, conduct an auction, modify the requested relief, or terminate the MIPA if doing so is in the best interests of the estates.

38.    To the best of my knowledge, the Debtors have not received a superior, binding, executable offer to purchase the VES Newport membership interests on terms that would provide greater value to the estates than the MIPA, but the Debtors remain willing to consider such an offer if one is timely presented.

39.    To the best of my knowledge, the MIPA was not proposed for the purpose of chilling bidding, controlling the sale price, conferring undisclosed value on insiders, or concealing landlord, guaranty, or creditor relief. The Debtors have structured the MIPA to require Court approval, disclosure, and preservation of rights not expressly adjudicated.

40.    The Debtors are not asking the Court in the MIPA motion to approve, assume, amend, assign, cure, settle, revive, reinstate, replace, or otherwise adjudicate the NOTL lease or any landlord-related obligation. Any NOTL lease amendment, assumption motion, cure treatment, guaranty treatment, rent treatment, use-and-occupancy arrangement, settlement, or other landlord-related relief will need to be addressed separately.

41.    The Newport lease and landlord relationship are important to the operation of VES Newport, but I believe those issues should be addressed through separate documents and separate motion practice rather than embedded in the MIPA approval motion.

42.    The MIPA does not sell, assign, release, or limit the Debtors' avoidance actions or other estate causes of action.

43.    The MIPA does not request a sale or transfer of personally identifiable information inconsistent with any privacy policy. To the extent any customer, employee, POS, event, loyalty-program, or similar information remains in the possession or control of VES Newport after closing, access to that information will be subject to applicable law and any separate operational or Court-approved requirements.

44.    The MIPA requires post-closing preservation of and access to books and records reasonably necessary for administration of these chapter 11 cases. Such records include financial, tax, employee, payroll, contract, operational, bank, POS, insurance, vendor, customer/event, and litigation-support records.

45.    No good-faith deposit is presently required under the MIPA unless later disclosed and approved.

46.    Delay in approval or implementation of the MIPA may impair the Debtors' ability to coordinate post-closing governance, related transaction documents, the Newport operating structure, and the

- 7 -

broader confirmation timeline. If the Court determines that a full waiver of Bankruptcy Rule 6004(h) is not appropriate, I believe authorization to take non-closing implementation steps during any stay period would preserve value while respecting the rights of parties in interest.

47.    I have reviewed the Motion and the MIPA schedules. To the best of my knowledge, the factual statements in the Motion that are supported by this declaration are true and correct, subject to the reservations, qualifications, and need for further purchaser or insider certifications stated in this declaration and the MIPA schedules.

48.    To the best of my knowledge, Beth Powers has not exercised control over VES Newport before closing under the MIPA, and the Debtors are not seeking approval of any interim-management, transition-services, or pre-closing control arrangement through the MIPA motion.

49.    I have reviewed the MIPA attached to the Motion as **Exhibit 1**. To the best of my knowledge, information, and belief, Exhibit 1 is a true and correct copy of the substantially final MIPA dated July 14, 2026 for which the Debtors seek approval, subject to any non-material revisions, completion of schedules, and Court approval.

50.    I have reviewed the MIPA schedules attached to the Motion as **Exhibit 2**, including Schedule 2.02, Schedule 3.06 and Schedule 3.09. To the best of my knowledge, information, and belief, Exhibit 2 is a true and correct copy of the draft disclosure schedules prepared from the Debtors' books and records, Plan #2, the Disclosure Statement, prior declarations, and information presently available to the Debtors and their professionals.

51.    The schedules attached as Exhibit 2 are intended as disclosure schedules for purposes of the MIPA and the Motion. They are not intended as admissions that any asserted lien, claim, encumbrance, restriction, relationship, or interest is valid, perfected, enforceable, senior, attached to the Seller Interest, or otherwise finally adjudicated.

52.    I have reviewed the form of proposed Sale Order that the Debtors intend to file or lodge in connection with the Motion. The form of order was prepared by counsel to implement the relief requested in the Motion and should control over the MIPA only to the extent approved and entered by the Court.

- 9 -

53. Filed Plan #2 is docketed at ECF No. 284. My first-day declaration is docketed at ECF No. 21. I understand that those filed documents may be cited by ECF number in the Motion and need not be separately authenticated by me as exhibits to the Motion.

54. For avoidance of doubt, the MIPA does not transfer the Newport liquor license because, to my understanding, that license is held by non-Debtor Velocity Esports Newport Kentucky II, LLC. Any post-closing access to, use of, modification of, or coordination regarding that liquor license must be addressed through separate lawful arrangements with the license holder and any applicable regulatory authorities, and is not relief granted by approval of the MIPA alone.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

DATED this 15th day of July, 2026.

By: /s/ *Philip Kaplan*
Philip Kaplan
Chief Executive Officer and
Chairman of the Board Velocity
Esports, Inc.