Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Debtors*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>■ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>■ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>☐ Affects All Debtors<br><br>Debtor(s). | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>**DECLARATION OF BETH POWERS IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF ORDER (I) APPROVING MEMBERSHIP INTEREST PURCHASE AGREEMENT FOR VELOCITY ESPORTS NEWPORT KENTUCKY, LLC; (II) AUTHORIZING SALE AND TRANSFER OF MEMBERSHIP INTERESTS PURSUANT TO 11 U.S.C. § 363(b); (III) APPROVING RELATED MEMBERSHIP INTEREST ASSIGNMENTS, GOOD-FAITH PURCHASER FINDINGS, AND RELATED RELIEF; AND (IV) GRANTING RELATED RELIEF**<br><br>Hearing Date: **OST REQUESTED**<br>Hearing Time: **OST REQUESTED** |

I, Beth Powers, declare as follows:

1.       I am over the age of eighteen and am competent to testify to the matters stated in this declaration. I make this declaration based on my personal knowledge, my review of the MIPA and related

- 1 -

materials, and information available to me concerning the proposed transaction. If called as a witness, I could and would testify competently to the facts set forth herein.

2.      I am the proposed purchaser under that certain Membership Interest Purchase Agreement for Velocity Esports Newport Kentucky, LLC dated July 14, 2026, as may be amended or supplemented before hearing (the "MIPA"). Under the MIPA, I am the proposed purchaser of eighty percent (80%) of the membership interests in Velocity Esports Newport Kentucky, LLC ("VES Newport" or the "Company"), subject to Bankruptcy Court approval and satisfaction of the MIPA conditions.

3.      I understand that the MIPA is subject to approval by the United States Bankruptcy Court for the District of Nevada in the jointly administered chapter 11 cases of Velocity Esports, Inc. and its affiliated debtor entities.

4.      I understand that the MIPA is a membership-interest transaction. It is not a direct purchase of VES Newport assets, not a transfer of the Newport liquor license, and not an assumption, assignment, amendment, cure, settlement, replacement, or modification of any lease, landlord obligation, executory contract, or equipment obligation.

5.      I understand that no closing under the MIPA may occur unless and until the Bankruptcy Court enters an order approving the MIPA and the conditions to closing have been satisfied or waived as permitted by the MIPA and any order entered by the Court.

6.      Subject to Bankruptcy Court approval, satisfaction or waiver of the conditions stated in the MIPA, and finalization of closing documents, I am willing to close the transaction contemplated by the MIPA and to perform the obligations that I expressly undertake under the MIPA and any Sale Order entered by the Court.

7.      I understand that any relief concerning NOTL Property Owner LLC, the Newport lease, any proposed lease amendment, any rent treatment, any guaranty, any cure amount, any landlord payment, any use-and-occupancy arrangement, or any assumption under 11 U.S.C. § 365 will be addressed, if at all, through separate documents and separate motion practice or order of the Bankruptcy Court.

8.      I am not personally assuming any Company debt, landlord obligation, equipment obligation, tax obligation, employee obligation, guaranty obligation, claim, cure amount, settlement amount, or other

liability merely by entering into the MIPA or acquiring the Transferred Interest, unless I expressly assume such obligation in the MIPA, Exhibit C, a Sale Order, or a separate written agreement signed by me.

9.    I have reviewed, or have had the opportunity to review, the MIPA, the MIPA schedules, the Debtors' Plan materials, material contracts, lease documents, equipment schedules, liquor-license arrangements, tax records, payroll records, operating records, bankruptcy docket information, claims information, and other information that I deemed material to evaluating the Newport transaction.

10.    I have had the opportunity to ask questions of the Debtors and their representatives concerning the Company, the MIPA, and the risks of the transaction, and I have relied on my own review, analysis, and judgment and the express terms of the MIPA.

11.    I understand that the Transferred Interest is being acquired on an "as is, where is, with all faults" basis, subject only to the express representations, warranties, covenants, conditions, and orders applicable to the MIPA.

12.    I am acquiring the Transferred Interest for my own account and not with a view to any unlawful distribution. I understand that the Transferred Interest has not been registered under federal or state securities laws.

13.    I am not an insider of any Debtor within the meaning of 11 U.S.C. § 101(31), except to the extent expressly disclosed in the MIPA schedules or any supplemental disclosure filed with the Bankruptcy Court. I have disclosed, or will promptly disclose before hearing, any familial, business, financial, employment, consulting, ownership, compensation, management, creditor, landlord, guaranty, or other relationship I have with any Debtor, Philip Kaplan, Leonard Wanger, April Mountain Properties, LLC, LRW Revocable Trust, NOTL, any creditor, any equipment lender, any employee, or any potential bidder.

14.    I have disclosed, or will promptly disclose before hearing, all agreements, understandings, communications, or arrangements I have with any Insider Bid Party, NOTL, equipment lender, employee, manager, creditor, or potential bidder concerning the MIPA, bidding, valuation, price, allocation of equity, management, compensation, releases, claim treatment, lease treatment, or post-closing operations.

15.    I have not entered into any undisclosed side agreement with the Debtors, the Company, Philip Kaplan, Leonard Wanger, April Mountain Properties, LLC, LRW Revocable Trust, NOTL, any equipment lender, any employee, any manager, any creditor, or any other party concerning the MIPA, the purchase

price, the allocation of equity, compensation, management rights, releases, indemnities, claim treatment, lease treatment, bid protections, reimbursement, or other consideration related to the MIPA.

16.    I have not discussed, offered, promised, agreed to, or entered into any undisclosed employment, consulting, compensation, reimbursement, indemnity, management, incentive, equity, bonus, or post-closing role with any current or former officer, director, manager, employee, insider, or consultant of any Debtor, except to the extent expressly disclosed in Schedule 3.09 or any supplemental disclosure filed with the Bankruptcy Court.

17.    I am entering into the MIPA in good faith and without fraud, collusion, or any agreement to control the sale price, chill bidding, or take grossly unfair advantage of any other bidder or party in interest.

18.    I have not entered into any agreement or understanding with any person to suppress bidding, allocate value improperly, conceal consideration, prevent a higher or better offer, or otherwise control the sale price within the meaning of 11 U.S.C. § 363(n).

19.    I understand that the Debtors retain the right, consistent with their fiduciary duties and any order of the Bankruptcy Court, to solicit, consider, respond to, and accept higher or better offers and to modify proposed sale procedures if they determine that doing so is in the best interests of the estates. I have not requested and do not have any break-up fee, topping fee, expense reimbursement, no-shop provision, or other bid protection unless separately approved by the Bankruptcy Court.

20.    I have not exercised control over VES Newport, its employees, bank accounts, POS systems, inventory, equipment, contracts, books and records, cash, or operations before closing under the MIPA, except to the extent any such control is disclosed and approved by the Bankruptcy Court. I am not aware of any Court-approved pre-closing control arrangement under which I control VES Newport before closing.

21.    I am not seeking through the MIPA to acquire or transfer personally identifiable information in a manner inconsistent with any applicable privacy policy or law. To the extent I obtain access to customer, employee, POS, event, loyalty-program, payment, or similar information after closing, I will comply with applicable law and any applicable order of the Bankruptcy Court.

22.    I understand that the MIPA requires post-closing preservation of and reasonable access to books and records necessary for administration of the chapter 11 cases, and I agree to comply with any such obligations that apply to me or to the Company after closing.

- 5 -

23.     I will cooperate in good faith with the Debtors and other parties as reasonably necessary to seek approval of the MIPA, implement the approved transaction, provide supplemental certifications or disclosures, execute closing documents, and appear at any hearing if reasonably requested and necessary.

24.     I have reviewed the portions of the Motion that describe me, my proposed role as Purchaser, the nature of the MIPA, my purchaser-side disclosures, the absence of a conventional cash purchase price from me, the absence of undisclosed side agreements, the absence of pre-closing control, and the requested good-faith / no-collusion findings. To the best of my knowledge, information, and belief, those descriptions are accurate, subject to the qualifications and reservations stated in the MIPA and this declaration.

25.     I have reviewed the copy of the MIPA attached to the Motion as Exhibit 1. To the best of my knowledge, information, and belief, **Exhibit 1** is a true and correct copy of the proposed MIPA I reviewed for purposes of the transaction for which the Debtors seek approval, subject to any non-material revisions, completion of schedules, and Bankruptcy Court approval.

26.     I have reviewed the MIPA schedules attached to the Motion as **Exhibit 2**, including Schedules 3.06 and 3.09. To the extent those schedules identify or reserve purchaser-side disclosures, relationship disclosures, insider-status disclosures, or management / compensation disclosures concerning me, they are accurate to the best of my knowledge, information, and belief, subject to any supplemental disclosures I may provide before hearing.

27.     I understand that the Newport liquor license is held by a separate non-Debtor affiliate and is not being transferred to me under the MIPA. To the extent continued post-closing operations require arrangements with the license holder, compliance with regulatory requirements, or cooperation with applicable licensing authorities, I will cooperate in good faith with the Debtors, the Company, the license holder, and applicable regulators as reasonably necessary and consistent with the MIPA, any Sale Order, and applicable law.

/ / /

/ / /

- 6 -

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: July 15, 2026.

By: /s/ *Elizabeth Powers*
Elizabeth Powers
*Proposed Purchaser*