Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Brenden J. Gougeon, Esq.
Nevada Bar No. 16874
NEVADA BANKRUPTCY ATTORNEYS, LLC
5502 S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
Email: bgougeon@nvbankruptcyattorneys.com
*Attorneys for Debtors*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.: 25-12627-mkn |
| VELOCITY ESPORTS, INC., | Jointly Administered with<br>Case No. 25-12628-mkn |
| ☐ Affects Velocity Esports, Inc. | Case No. 25-12629-mkn |
| ☐ Affects Velocity Esports Las Vegas Town Square, LLC | Case No. 25-12630-mkn<br>Case No. 25-12631-mkn |
| ☐ Affects Velocity Esports Chicago Schaumburg, LLC | Chapter 11 |
| ☐ Affects Velocity Esports Newport Kentucky, LLC | **DECLARATION OF PHILIP N. KAPLAN IN SUPPORT OF NEVADA BANKRUPTCY ATTORNEYS LLC'S FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE INTERIM FEE PERIOD ENDING JULY 9, 2026** |
| ☐ Affects Velocity Esports Orlando Downtown, LLC | |
| ■ Affects All Debtors | |
| Debtor(s). | **Hearing Date: OST REQUESTED**<br>**Hearing Time: OST REQUESTED**<br>**Teleconference Line: (833) 435-1820**<br>**Meeting ID: 161 062 2560**<br>**Passcode: 029066#** |

I, Philip Kaplan, declare as follows:

1. I am over the age of eighteen and competent to testify. I am a principal and authorized representative of the Debtors. Except where stated on information and belief, I have personal knowledge of the matters stated in this Declaration and could testify competently to them.

2. I submit this Declaration in support of Nevada Bankruptcy Attorneys, LLC's ("NBA") First Interim Application for Compensation and Reimbursement of Expenses (the "Application").

3.      I am authorized to act for the Debtors with respect to the Application and to state the Debtors' position concerning NBA's services, fees, expenses, and the results obtained during the interim period.

4.      I reviewed the Application, the Knepper Declaration, Exhibit A containing the postpetition fee summary and detailed billing schedule, Exhibit B containing the consolidated prepetition services and reconciliation, and the expense summary. I approve the Application and the invoice. The Debtors do not dispute the requested $377,713.00 in professional fees or $2,286.70 in net expenses, for a total request of $379,999.70, and no additional board, member, or manager approval is required for the Debtors to support the Application.

5.      The Debtors retained NBA because of its bankruptcy, restructuring, and litigation experience and its familiarity with the Debtors' businesses, creditors, leases, equipment, operations, and restructuring objectives. I understood and accepted the hourly rates disclosed in the employment papers.

6.      These cases involve five separate estates, multiple venue-level operations, intercompany and affiliate issues, secured debt, equipment financing, real-property leases, legacy landlord disputes, reporting obligations, sale transactions, and contested matters. NBA's familiarity with the Debtors and use of a small team were important to addressing those issues without unnecessary transition or duplication.

7.      NBA prepared and prosecuted the Debtors' initial case-administration and first-day matters and coordinated joint administration. The Court entered the joint-administration order at ECF No. 96. NBA thereafter coordinated notices, service, procedural matters, and administration of the separate estates and claims registers.

8.      NBA worked with the Debtors and secured creditors to address cash collateral, budgets, bank accounts, operating liquidity, and adequate protection. The stipulated interim cash-collateral order permitted continued use of operating funds under an approved budget while preserving creditor rights [ECF No. 175].

9.      NBA negotiated and prosecuted the NFS compromise. The Court approved the compromise, found it negotiated in good faith, fair and equitable, favorable to the Debtors and their estates, and in the best interests of creditors, and authorized implementation [ECF No. 168]. NBA also

addressed Advantage Leasing's collateral and payment issues, resulting in an adequate-protection stipulation that deferred specified payments, established ongoing payments, and provided a cure process before stay relief [ECF No. 161].

10. NBA addressed real-property leases, equipment leases, finance agreements, cure amounts, arrearages, surrender and relocation issues, assumption and assignment terms, and potential rejection claims at the Debtors' Las Vegas, Newport, Schaumburg, and other locations. That work was necessary to preserve operations, resolve collateral issues, and support transactions and claim treatment.

11. NBA structured and prosecuted the Las Vegas sale. The Court approved the asset purchase agreement, the free-and-clear transfer, assumption and assignment of the Town Square lease and designated equipment leases, a $633,431.00 partial payment to Newtek, payment of $101,000.00 to Pawnee Leasing, and related implementation relief. [ECF No. 269]. The sale preserved value and materially advanced the Debtors' restructuring.

12. NBA coordinated the consumer privacy ombudsman process required for the Las Vegas sale and administered the business broker's retention and compensation matters. The Court approved the ombudsman's first and final fee application for $12,835.00 [ECF No. 286] and the broker's first and final compensation application [ECF No. 293].

13. NBA reviewed and addressed proofs of claim, lien positions, payment histories, credits, settlement terms, and potential objections. Its work on claim and creditor issues contributed to consensual resolutions and preserved the Debtors' ability to evaluate treatment under a plan.

14. NBA prepared and filed schedules, statements of financial affairs, amendments, creditor information, and monthly operating reports for five estates and responded to requests from the United States Trustee. NBA also addressed federal, state, payroll, sales, and other tax issues. This work was necessary to maintain statutory and fiduciary compliance and to provide reliable information to the Court, the United States Trustee, and creditors.

15. NBA prepared for and attended numerous hearings and status conferences concerning first-day relief, employment, the NFS compromise, cash collateral, adequate protection, the Las Vegas sale, professional compensation, and related matters. NBA coordinated with witnesses and opposing counsel and implemented the Court's rulings.

16.     NBA commenced and prosecuted the Orange adversary proceeding to preserve restricted Merrill/LRW Trust funds from unilateral collection while this Court considered bankruptcy claim and plan-support issues. The Court entered temporary restraining relief at Adv. ECF No. 19. Preserving the funds maintained the possibility of court-supervised use for administrative and implementation needs.

17.     The Debtors filed Plan No. 2 and the accompanying Disclosure Statement, and the Court conditionally approved the Disclosure Statement for solicitation [ECF Nos. 284, 294, 297]. The current Application does not seek compensation for Plan, Disclosure Statement, solicitation, or confirmation work. The Debtors also continue to work on the Newport membership-interest transaction and landlord resolution. The Application includes ordinary transactional and case-administration work where otherwise compensable but reserves the Newport MIPA approval motion and Newport landlord approval-motion work for a later application. The Application excludes Woodfield/Indiana adversary services.

18.     In my judgment, NBA staffed these cases efficiently. NBA used one partner for most high-level case management, negotiation, hearings, and strategy; one senior associate for substantial drafting and research; and limited paralegal assistance. I did not observe unnecessary duplication. When more than one professional participated, the matter generally required separate responsibilities, continuity, or preparation and implementation work.

19.     I reviewed the reconciliation in Exhibit B. I am aware that NBA applied the contractual $285 associate rate, preserved the $21,000.00 voluntary reduction, and waived the remaining March 26-April 30 prepetition balance. I am also aware that Exhibit B reflects 31.9 hours and $10,078.50 for services performed from May 1 through May 7, 2025, for which no payment was made and which NBA includes in the current professional-fee request. The Debtors agree with that treatment and do not dispute the amount.

20.     NBA has received no postpetition payment for the compensation or expenses requested. The Debtors intend to pay any allowed amount from lawfully available funds. The Debtors may seek separate authority concerning restricted third-party plan-support funds in the Orange adversary proceeding, but the Application does not itself seek turnover or a direction to Merrill Lynch.

21.     The services described in the Application were necessary, timely, and beneficial to the Debtors and their estates. I support allowance of $367,634.50 in postpetition fees, approval of $10,078.50

for the May 1-May 7 services reflected in Exhibit B, and reimbursement of $2,286.70 in expenses, for a total of $379,999.70, and respectfully request that the Court approve the Application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 15th day of July, 2026.

By: /s/ *Philip Kaplan*
Philip Kaplan
Chief Executive Officer
and Chairman of the Board
Velocity Esports, Inc.