Matthew I. Knepper, Esq.
Nevada Bar No. 12796
NEVADA BANKRUPTCY ATTORNEYS, LLC 5502
S. Fort Apache Rd., Suite 200
Las Vegas, NV 89148-7700
Phone: (702) 660-4228
Fax: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com
*Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>■ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>■ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>☐ Affects All Debtors<br><br>Debtor(s). | Case No.: 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>**DECLARATION OF PHILIP N. KAPLAN IN SUPPORT OF JOINT MOTION OF DEBTORS AND NOTL PROPERTY OWNER LLC FOR ENTRY OF ORDER AUTHORIZING ASSUMPTION OF NONRESIDENTIAL REAL PROPERTY LEASE AS AMENDED BY SECOND AMENDMENT TO LEASE; APPROVING CURE AND ARREARAGE TREATMENT; AND GRANTING RELATED RELIEF**<br><br>Hearing Date: OST Requested<br>Hearing Time: OST Requested |

I, Philip N. Kaplan, declare as follows:

1. I am over the age of eighteen and am competent to testify to the matters set forth in this declaration.

2. I am the Chief Executive Officer of Velocity Esports, Inc. ("VES Inc."). I am familiar with the business operations, restructuring efforts, and chapter 11 cases of VES Inc. and its affiliated debtor entities, including Velocity Esports Newport Kentucky, LLC ("VES Newport").

3. I make this declaration in support of the Joint Motion of Debtors and NOTL Property Owner LLC for Entry of Order Authorizing Assumption of Nonresidential Real Property Lease as Amended by Second Amendment to Lease (the "Motion"). Except where otherwise stated, the facts set forth in this declaration are based on my personal knowledge, my review of the Debtors' books and records, my communications with the Debtors' management, professionals, and landlord representatives, and my involvement in the Debtors' restructuring efforts. If called as a witness, I could and would testify competently to these facts.

4. On May 7, 2025, VES Inc., VES Newport, and affiliated debtor entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada. The cases are jointly administered under lead case number 25-12627-mkn. The Debtors continue to operate their businesses as debtors in possession.

5. VES Inc. is the parent holding company for the Debtors' venue-level entities.

6. VES Newport is the Debtor entity that operates the Newport on the Levee location in Newport, Kentucky. The Newport venue is an operating entertainment, arcade, bowling, food, beverage, and related venue.

7. VES Newport is tenant under that certain Standard Commercial Shopping Center Lease dated February 16, 2022 with NOTL Property Owner LLC ("NOTL" or "Landlord") for premises at Newport on the Levee in Newport, Kentucky.

8. VES Inc. guaranteed VES Newport's obligations under the Lease pursuant to the Guaranty attached to the Lease.

9. On December 21, 2022, VES Newport, VES Inc., and NOTL entered into a First Amendment to Lease, which expanded the leased premises and modified certain lease terms.

10. The Lease, as amended by the First Amendment, covers approximately 49,805 rentable square feet at Newport on the Levee, including Suite P-130, Suite G-117, and Suite G-112.

11. The Lease concerns premises located in a shopping center. The Newport venue's business is built around the existing location, improvements, floor plan, equipment, food and beverage operations, bowling, arcade, and related customer traffic at Newport on the Levee.

12. VES Newport's Schedule G identified the NOTL commercial rental agreement as a contract to be assumed.

13. To my knowledge, NOTL has not filed a proof of claim in the Debtors' chapter 11 cases.

14. From the commencement of the chapter 11 cases, the Debtors intended to preserve the Newport location as an operating venue and intended to assume or otherwise continue the lease relationship with NOTL.

15. Since the petition date, representatives of the Debtors and NOTL have communicated and negotiated concerning payment of rent, treatment of arrearages, amendment of lease terms, and preservation of the Newport operations.

16. Those negotiations were ongoing throughout the chapter 11 cases and were not a new effort begun only after the lease issues became urgent. The parties were working toward a consensual resolution that would allow the Newport venue to remain open and operating.

17. To my knowledge, NOTL has not sought surrender of the premises during these negotiations and has worked cooperatively with the Debtors to reach a negotiated lease amendment.

18. During the chapter 11 cases, VES Newport made ongoing payments to NOTL or NOTL's payment affiliate. The payment ledger attached to the Motion reflects 44 paid transfers from June 18, 2025 through June 24, 2026, totaling $614,751.33, plus one canceled transfer.

19. The payments described in the payment ledger were made while the parties continued to negotiate a broader lease resolution. Those payments did not fully satisfy all amounts accruing under the Lease.

20. To my knowledge, May and June 2026 were paid at the negotiated reduced monthly rent structure, including the monthly Future Repayment amounts contemplated by the Second Amendment.

21. For purposes of the Second Amendment, VES Newport and NOTL have reconciled and agreed that VES Newport is delinquent in Rent through April 30, 2026 in the amount of $775,445.88.

22. Under the Second Amendment, I will provide VES Newport with total payment of $25,000.00 upon the effective date of the Second Amendment to the NOTL Landlord Lease, and

$25,000.00 due upon the effective date of the Plan of Reorganization currently pending in the Bankruptcy Cases, both then payable to NOTL, subject to separate Court approval and without characterization as payment on account of old equity or insider claims unless expressly approved. The Second Amendment refers to this payment as the "Amendment Repayment."

23. Under the Second Amendment, Tenant will also pay $175,000.00 toward the Outstanding Rent over 84 monthly payments of $2,083.33 beginning May 1, 2026 and ending April 1, 2033. The Second Amendment refers to this payment stream as the "Future Repayment."

24. The monthly Future Repayment installments are due simultaneously with Tenant's payments of Minimum Rental due under the Lease.

25. Provided Tenant is not in default of the Lease, NOTL agrees under the Second Amendment to cancel and fully abate the balance of Outstanding Rent after credit for the Amendment Repayment and Future Repayment.

26. The Second Amendment also establishes the Minimum Rental structure for the premises for the Extended Term, modifies Percentage Rental beginning January 1, 2026 to 12% over a $3,600,000.00 breakpoint, and extends the lease expiration date to December 31, 2033.

27. The Second Amendment includes provisions addressing permitted transfers, release of Tenant and Guarantor after a qualifying transfer and one-year seasoning period, termination of the existing Guaranty upon payment of all amounts owed under Section 1(b), and reinstatement of the Guaranty if Tenant defaults in the payment of amounts owed under Section 1(b).

28. The source of ongoing rent and other consideration under the Lease as amended will be the continuing Newport operations, the revised lease economics negotiated with NOTL, and non-debtor guarantor support for the Amendment Repayment.

29. The Debtors expect the $50,000.00 Amendment Repayment to be funded through non-debtor guarantor support and plan-related contributions rather than solely from unrestricted Newport operating cash.

30. I am prepared to provide or cause funds to be provided, directly or indirectly, to support the Debtors' plan implementation needs, including the $50,000.00 Amendment Repayment, subject to applicable court approval and final coordination with the Debtors' professionals.

31. I understand that Leonard R. Wanger has separately provided evidence in the bankruptcy proceedings concerning funds that may be available or sought to be made available for plan support and related restructuring purposes.

32. The Newport venue is important to the Debtors' restructuring because it is an operating business location and a material part of the value the Debtors seek to preserve through chapter 11.

33. If the Debtors were unable to preserve the Newport premises, the Debtors would risk losing going-concern value, customer relationships, employee continuity, vendor relationships, revenue, and the value associated with location-specific equipment and improvements.

34. The Newport business is not easily relocatable without substantial disruption and loss of value. Its operations depend on the existing leasehold, layout, improvements, equipment, staff, customer awareness, and the traffic generated by the Newport on the Levee location.

35. The Debtors filed Joint Chapter 11 Plan of Reorganization #2 on May 28, 2026. The Newport location and the treatment of the NOTL lease relationship are material to the Debtors' plan structure and feasibility analysis.

36. In my business judgment, assumption of the Lease as amended by the Second Amendment is in the best interests of the Debtors, their estates, and creditors because it preserves an operating venue, resolves substantial arrearage issues, and avoids costly litigation or disruption.

37. In my business judgment, the Second Amendment provides a better outcome for the Debtors than litigating with NOTL or risking loss of the Newport location.

38. In my business judgment, assumption of the Lease as amended will not disrupt tenant mix or balance at Newport on the Levee because it preserves an existing tenant, existing use, and existing operating business at the same premises. The Second Amendment does not materially change the Debtors' permitted use of the premises.

39. I understand that no prior motion to assume the Lease and no prior motion to extend the § 365(d)(4) deadline was filed earlier in the chapter 11 cases.

40. The failure to file an earlier assumption or extension motion was not the result of an effort to obtain a tactical advantage over NOTL or to prejudice NOTL. The Debtors and NOTL were negotiating toward a consensual lease amendment and assumption structure.

41. Despite the procedural issue, the Debtors and NOTL have at all relevant times acted consistently with the shared business objective of preserving the Newport lease relationship and obtaining a consensual resolution that allows the Newport venue to continue operating.

42. NOTL supports the Motion and joins in the request that the Court authorize assumption of the Lease as amended by the Second Amendment.

43. I believe that the Motion is filed in good faith and that assumption of the Lease as amended will materially assist the Debtors' reorganization efforts.

44. As Chief Executive Officer of VES Inc., I am authorized to confirm VES Inc.'s agreement concerning the Guaranty. As a condition to NOTL's agreement to enter into the Second Amendment and to support assumption of the Lease as amended, VES Inc. has agreed that its obligations under the Guaranty and the Lease remain in full force and effect except as expressly modified by the Second Amendment, and VES Inc. is authorized to execute the Second Amendment.

45. VES Inc. further agrees that it shall remain bound by the Guaranty and the Lease, as amended by the Second Amendment, notwithstanding any discharge that may otherwise arise under the Bankruptcy Code, a chapter 11 plan, an order confirming a chapter 11 plan, or any other order entered by the Court, except to the extent NOTL, VES Newport, and VES Inc. agree otherwise in writing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated July 31, 2026

*s/ Philip N. Kaplan*
Philip N. Kaplan,
Manager VES Newport and VES Inc.