**MATTHEW I. KNEPPER, ESQ.**
Nevada Bar No. 12796
**NEVADA BANKRUPTCY ATTORNEYS LLC**
5940 S. Rainbow Blvd., Suite 400
PMB 99721
Las Vegas, Nevada 89118
Telephone: (702) 660-4228
Facsimile: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com

*Counsel for Jointly Administered Debtors*

In re

Case No.: BKS-25-12627-mkn

Jointly Administered with
Case No. 25-12628-mkn
Case No. 25-12629-mkn
Case No. 25-12630-mkn
Case No. 25-12631-mkn

VELOCITY ESPORTS, INC.,

Chapter 11

☐  Affects Velocity Esports, Inc.
☐  Affects Velocity Esports Las Vegas Town Square, LLC
☐  Affects Velocity Esports Chicago Schaumburg, LLC
■  Affects Velocity Esports Newport Kentucky, LLC
☐  Affects Velocity Esports Orlando Downtown, LLC
☐  Affects All Debtors

Debtors.

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF ORDER (I) APPROVING MEMBERSHIP INTEREST PURCHASE AGREEMENT FOR VELOCITY ESPORTS NEWPORT KENTUCKY, LLC; (II) AUTHORIZING SALE AND TRANSFER OF MEMBERSHIP INTERESTS PURSUANT TO 11 U.S.C. § 363(b); AND (III) GRANTING RELATED RELIEF**

| Date of Hearing: | **August 12, 2026** |
|---|---|
| Time of Hearing: | **11:00 a.m.** |
| Dial-In Number: | **(833) 435-1820** |
| Meeting ID: | **161 062 2560** |
| Access Code/Passcode: | **029066** |

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Newtek Bank, N.A. ("Newtek") identifies issues that warrant a more explicit evidentiary record, but it does not establish a basis to deny the Newport membership-interest transaction. The Debtors therefore submit this Reply, the Supplemental Declaration of Philip N. Kaplan ("Supplemental Kaplan Declaration"), the Supplemental Declaration of Beth Powers ("Supplemental Powers Declaration"), and the Declaration of Leonard R. Wanger ("Wanger Declaration") to clarify Purchaser's prepetition and postpetition operational role, distinguish gross asset liquidation value from the value of VES Inc.'s membership interest, explain the governance rationale for the proposed 80%/20% structure, and narrow the relief requested. Newtek's Opposition is ECF No. 327 (the "Opposition" or "Opp.").

The Court may apply heightened scrutiny without deciding whether Beth Powers is a statutory or nonstatutory insider. The transaction remains approvable because the supplemented record discloses her role, preserves Newtek's asserted lien and guaranty rights, leaves the MIPA exposed to higher and better proposals, and permits the Court to sever or reserve the proposed minority transfers if the insider record is not yet sufficient. (Suppl. Kaplan Decl. ¶¶ 5–10, 18–24, 33; Suppl. Powers Decl. ¶¶ 4–21, 28–29; Wanger Decl. ¶¶ 4–13.)

The relief Debtors request is narrow. Unless Newtek otherwise consents, Newtek's lien and personal guarantees remains unaffected; Debtors are not insisting on a § 363(m) finding if the Court concludes the present record is insufficient; and, considering Newtek's objection, Debtors withdraw the request for a complete waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). The Debtors request only authority to undertake non-closing implementation steps during the stay period. (Suppl. Kaplan Decl. ¶¶ 25–32; Suppl. Powers Decl. ¶¶ 23–27; Wanger Decl. ¶ 13.)

Newtek's central premise—that an estimated gross liquidation value of Newport's assets proves that VES Inc.'s membership interest has equivalent distributable value—is incorrect. The Debtors' liquidation analysis starts with estimated gross asset value of $438,847.93, deducts estimated liquidation costs of $65,827.19, recognizes approximately $363,499.02 in asserted asset-specific

obligations, and leaves only approximately $9,521.72 before Newtek's asserted blanket lien and other reconciliation issues. The projected recovery for general unsecured creditors from the Newport estate is $0.00. The asset estimate is not an appraisal of VES Inc.'s equity interest and is not a fund available for distribution. (Suppl. Kaplan Decl. ¶¶ 11–15 & Ex. 1.)

If the Court nevertheless concludes that additional market evidence is necessary, the appropriate remedy is a short, controlled market-check period—not denial. The MIPA contains no no-shop, break-up fee, topping fee, expense reimbursement, or other bid protection; no competing bidder has appeared; and the Debtors remain prepared to evaluate a binding, executable proposal supported by proof of financial and operational ability. (Kaplan MIPA Decl. ¶¶ 36–39; Suppl. Kaplan Decl. ¶¶ 21–24; Powers MIPA Decl. ¶ 19; Suppl. Powers Decl. ¶ 21.)

## II.    THE OPPOSITION'S MATERIAL FACTUAL PREMISES REQUIRE CLARIFICATION

### A.    The Opposition Conflates Operational Responsibility with Equity Ownership and Ultimate Governance Control.

Newtek's insider-status argument rests on an incomplete characterization of Powers' role and authority. The supplemental record eliminates that premise by placing her actual operational responsibilities, compensation, and lack of ownership-level control squarely before the Court. Before and during these cases, Powers served as Director of Operations for VES Newport, received ordinary payroll compensation, and received expense reimbursements reflected in the Debtors' records. Those facts are now expressly disclosed. (Suppl. Kaplan Decl. ¶¶ 5–10; Suppl. Powers Decl. ¶¶ 4–9.)

Those facts do not establish that Powers owned VES Newport, owned the nondebtor liquor-license affiliate, served as a member of VES Inc.'s board, or possessed ultimate authority to alter capital structure, sell equity, borrow outside delegated limits, settle material estate claims, select a chapter 11 plan, dismiss or convert a case, or bind the estates to a restructuring transaction. Her delegated operational role and the formal governance authority carried by an 80% membership interest are different. The supplemental declarations explain the limits of her existing role and clarify that the prior statement concerning "pre-closing control" referred to purchaser or ownership control under the

3

MIPA, not to the day-to-day authority she exercised in her existing job. (Suppl. Kaplan Decl. ¶¶ 5–10, 16–18; Suppl. Powers Decl. ¶¶ 4–14, 28–29.)

**B.  The $438,847.93 Figure Is Gross Asset Value, Not Net Equity Value or Creditor Recovery.**

Newtek repeatedly treats the gross liquidation estimate as though it were cash value belonging to VES Inc. or the value of an 80% equity interest. Opp. 3–7. That comparison omits liquidation costs, asset-specific equipment and settlement obligations, and Newtek's own asserted blanket lien. The resulting estimate is approximately $9,521.72 before Newtek's asserted lien and final reconciliation—not $438,847.93 available to creditors. (Suppl. Kaplan Decl. ¶¶ 11–15 & Ex. 1.)

Newtek's $438,847.93 comparison begins with the wrong number and stops before the waterfall is applied. That figure is the gross liquidation value of Newport's assets, not distributable estate value and not the value of VES Inc.'s 80% membership interest. The filed Liquidation Analysis reduces that gross amount first by $65,827.19 in estimated sale and liquidation costs, leaving $373,020.74, and then identifies $363,499.02 in asserted NFS and LEAF obligations. Only approximately $9,521.72 remains before application of Newtek's own blanket lien. Table 9 therefore projects $0.00 in net estate value from Newport's collateral pool. (ECF No. 294-1, Table 9; Suppl. Kaplan Decl. ¶¶ 11–15 & Ex. 1.)

The Liquidation Analysis's Chapter 7 comparison further undercuts Newtek's valuation premise. Table 10 separately identifies additional Chapter 7 administrative and wind-down costs, including Newport-specific storage, removal, security, insurance, payroll, and employee wind-down expenses, and Table 11 allocates $161,717.48 of Chapter 7 costs to the Newport estate. The resulting projected recovery to general unsecured creditors from Newport is $0.00, or 0.00%. (ECF No. 294-1, Tables 10–11; Suppl. Kaplan Decl. ¶¶ 11–15 & Ex. 1.)

**C.  The Opposition's Remaining Procedural and Historical Errors Do Not Decide the Merits.**

The cases were commenced on May 7, 2025—not August 2, 2025—and the lead case is No. 25-12627-mkn. ECF No. 327 at 2. The Opposition also cites *In re Ira Haupt & Co.*, 361 F.2d 164 (2d Cir. 1966), a case concerning the appointment of a trustee's own law firm, not the standards governing a §

363 membership-interest transaction. *Id.* at 5. The applicable Ninth Circuit authorities require an articulated business justification, fair process, and an evidentiary record—not resolution by aphorism. *See In re Walter*, 83 B.R. 14, 19–20 (B.A.P. 9th Cir. 1988); *In re 240 N. Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re Lahijani*, 325 B.R. 282, 288–90 (B.A.P. 9th Cir. 2005).

### III. LEGAL STANDARD

Section 363(b) permits a debtor in possession, after notice and a hearing, to sell property of the estate outside the ordinary course. Within the Ninth Circuit, the proponent must present an articulated business justification and a record establishing good faith, fair value, and the integrity of the transaction. *Walter*, 83 B.R. at 19–20; *240 N. Brand Partners*, 200 B.R. at 659. The Court's overarching duty is to assure that "optimal value is realized by the estate under the circumstances." *Lahijani*, 325 B.R. at 288.

A formal auction is not an invariant prerequisite. The bankruptcy court has discretion to forego overbid procedures that are unlikely to produce a better result, depending on the transaction's circumstances. *In re Open Medicine Institute, Inc.*, 639 B.R. 169, 186 (B.A.P. 9th Cir. 2022) (quoting *In re Mickey Thompson Ent. Grp., Inc.*, 292 B.R. 415, 422 (B.A.P. 9th Cir. 2003) ("Whether to impose formal sale procedures is ultimately a matter of discretion that depends upon the dynamics of the particular situation.").

Insider status does not automatically prohibit a sale. An insider transaction is subject to heightened scrutiny directed to fair value, full disclosure, and good faith. *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841–42 (Bankr. C.D. Cal. 1991); *In re Roussos*, 541 B.R. 721, 730–31 (Bankr. C.D. Cal. 2015). In the Ninth Circuit, nonstatutory insider status turns on whether the relationship is comparable to a listed insider relationship and whether the transaction was negotiated at less than arm's length. *U.S. Bank National Ass'n ex rel. CWCapital Asset Management LLC v. Village at Lakeridge, LLC*, 814 F.3d 993, 1001 (9th Cir. 2016), aff'd, 583 U.S. 387 (2018). Professional or operational proximity alone does not establish the requisite control. *Farrar v. Warda & Yonano, LLP (In re Bella Vista by Paramont, LLC)*, 549 F. App'x 648, 649 (9th Cir. 2013).

A § 363(m) good-faith finding is separate from the basic authority to approve a sale. Good faith is defeated by fraud, collusion, or an attempt to take grossly unfair advantage of other bidders. *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992). The proponent bears the evidentiary burden; boilerplate findings are insufficient. *In re M Capital Corp.*, 290 B.R. 743, 746–48 (B.A.P. 9th Cir. 2003).

## IV.    ARGUMENT

### A.    Powers' Existing Operational Role Does Not Require Denial; the Court May Apply Heightened Scrutiny and Approve the Transaction on the Supplemented Record.

Newtek's insider argument is not a categorical defense. The relevant question is what authority Powers actually exercised, what relationship she had with the Debtors, whether those facts were disclosed, and whether the transaction is fair. The supplemental declarations disclose her employment, compensation, expense reimbursements, state-reporting titles, lack of pre-closing equity ownership, limits on her governance authority, and absence of undisclosed side agreements. (Suppl. Kaplan Decl. ¶¶ 5–10; Suppl. Powers Decl. ¶¶ 4–20.)

The Debtors do not need a threshold ruling that Powers is not an insider. Even assuming heightened scrutiny applies, an insider or insider-adjacent purchaser is not disqualified merely because of the relationship. See *In re Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998); *Wilde Horse*, 136 B.R. at 841–42. Here, there is no bid protection, no claim release, no guaranty release, no credit bid by Powers, no transfer of avoidance actions, and no agreement barring a competing proposal. Powers' operational history is relevant to her ability to preserve the business; it is not proof of collusion or ownership. (Suppl. Powers Decl. ¶¶ 14–21, 26–29.)

The Debtors further agree that the Court may reserve a § 363(m) finding if it concludes the record does not yet establish that Powers purchased "for value" within the meaning of that provision. Reservation of appellate-finality protection is not a reason to deny the underlying § 363(b) relief. See *In re Thomas*, 287 B.R. 782, 785–86 (B.A.P. 9th Cir. 2002); *M Capital*, 290 B.R. at 746–48.

6

**B.      Newtek's Gross-Value Comparison Does Not Establish That the Estate Is Giving Away Net Equity Value.**

Newtek's arithmetic begins and ends with the wrong asset. The Company's gross asset estimate is not the value of VES Inc.'s equity interest. The equity sits behind asset-specific obligations, liquidation expenses, the Company's operating liabilities, and Newtek's asserted blanket lien. After the deductions reflected in the Debtors' existing liquidation analysis, only approximately $9,521.72 remains before Newtek's asserted lien and claim reconciliation, and no recovery is projected for unsecured creditors. (Suppl. Kaplan Decl. ¶¶ 11–15 & Ex. 1.)

That record materially answers Newtek's constructive-fraudulent-transfer and fiduciary-duty themes identified in the Westlaw analysis. The Court need not find that gross asset value equals zero. It need only evaluate the actual estate interest being transferred and the value of the transaction as a whole. The MIPA preserves the operating entity and its assets, does not release liabilities, does not strip Newtek's lien, and avoids the estimated costs and operational destruction associated with shutdown. (Kaplan MIPA Decl. ¶¶ 29–35; Suppl. Kaplan Decl. ¶¶ 11–24.)

Newtek's own Opposition acknowledges that it has already received $1,345,975.03 from guarantor sources and Las Vegas sale proceeds and intends to amend its claims accordingly. Opp. 2 n.1. The MIPA does not alter Newtek's right to reconcile its remaining claim, assert a valid lien, or pursue preserved guaranties. (Suppl. Kaplan Decl. ¶¶ 25–28; Wanger Decl. ¶ 13.)

**C.      The MIPA Provides Concrete Operational and Governance Value Beyond Powers' Existing Employment Role.**

Newtek asks what changes if Powers already manages day-to-day Newport operations. The answer is governance, accountability, and post-closing authority. An operational employee may manage schedules, vendors, customer experience, and daily venue functions without having the power or economic incentive to make long-term ownership decisions, approve capital structure, amend the operating agreement, admit members, bear equity risk, or commit the Company to a post-closing business strategy. The MIPA aligns the person responsible for Newport operations with majority

governance rights, while preserving minority participation and Court supervision. (Suppl. Kaplan Decl. ¶¶ 16–20; Suppl. Powers Decl. ¶¶ 4–18.)

The change is also part of the Debtors' broader restructuring. VES Inc. historically functioned as a parent holding company that swept and administered venue cash for a multi-location growth strategy. After the Las Vegas asset sale and the failure of the Schaumburg and Orlando expansion strategies, that parent-level overlay no longer provides the same operational function for Newport. Moving Newport governance to a local ownership structure eliminates a layer that carries legacy debt and administrative burdens without operating the venue. (Kaplan MIPA Decl. ¶¶ 6–13, 29–35; Suppl. Kaplan Decl. ¶¶ 16–21.)

Powers' consideration is not represented as a conventional cash price. It consists of the obligations and covenants expressly stated in the MIPA and Sale Order, including taking the equity subject to disclosed risks, implementing the ownership transition, preserving records, cooperating with the bankruptcy cases, accepting exposure to higher offers, and continuing the operational platform on which the going-concern value depends. The Debtors do not contend that having the Company pay its own debts is consideration from Powers. The value case rests on the net economics and preservation of the operation, not on relabeling Company obligations. (Kaplan MIPA Decl. ¶¶ 20–22, 29–35; Suppl. Kaplan Decl. ¶¶ 11–24; Powers MIPA Decl. ¶¶ 5–12, 21–23; Suppl. Powers Decl. ¶¶ 14–21.)

**D.      The 80%/20% Structure Is a Governance Allocation, Not Proof of a Pro Rata Equity Valuation.**

Newtek's pro rata valuation argument depends on a factual premise the record disproves: the two proposed minority recipients are not paying a collective $50,000 purchase price for 20% of Newport. The LRW Revocable Trust is contributing no incremental cash for its proposed 10% interest. Its monetary commitment is the separately disclosed $386,454.00 Plan-support contribution from restricted Merrill Lynch accounts, subject to Court authorization. Kaplan will fund the $50,000 initial payment under the proposed NOTL Second Amendment from his separate $343,103.00 commitment, proposed over eight quarterly payments. Those Plan-support and landlord-resolution contributions do

not establish a cash price for the minority equity and provide no basis to extrapolate a value for Powers' 80% interest. (ECF No. 294-1, Table 6; Suppl. Kaplan Decl. ¶¶ 18–20; Wanger Decl. ¶¶ 4–9.)

The 80%/20% structure allocates governance rather than assigning a uniform per-percentage-point value. Powers' 80% interest provides clear majority governance and ownership accountability. Each proposed 10% interest is a conditional minority governance position associated with disclosed Plan support and continuing restructuring assistance, with different control rights and risk allocations. The Court will independently determine whether the recipient, allocation, and legal basis for each minority position warrants approval, and the MIPA permits the Court to reserve either minority transfer while approving any otherwise supportable portion of the transaction. (Kaplan MIPA Decl. ¶¶ 17–18, 23–27; Suppl. Kaplan Decl. ¶¶ 18–20, 33; Suppl. Powers Decl. ¶¶ 15–18; Wanger Decl. ¶¶ 5, 9, 12.)

Newtek's guaranty argument does not alter the contribution structure. The $386,454.00 LRW contribution and Kaplan's $343,103.00 commitment advance Plan implementation, and $50,000.00 of Kaplan's commitment funds the proposed NOTL down payment. The MIPA preserves Newtek's guaranty rights, allowing Newtek to pursue those rights under applicable law and existing orders while the Court separately determines whether the proposed minority governance allocations are warranted. (ECF No. 294-1, Table 6; Suppl. Kaplan Decl. ¶¶ 19, 25–27; Wanger Decl. ¶¶ 6–9, 13.)

E.      A Formal Auction Is Not Mandatory, and the Absence of Bid Protections Leaves the Transaction Fully Exposed to a Better Proposal.

The Ninth Circuit BAP recognizes that a court may forego formal overbid procedures where they are unlikely to produce a better result. *Open Medicine*, 639 B.R. at 188–90. The relevant question remains optimal value under the circumstances. *Lahijani*, 325 B.R. at 288–90. Here, the MIPA contains no bid protection and the Debtors have invited higher and better offers. Newtek has not identified a competing purchaser, provided a term sheet, offered to fund a marketing process, or proposed a transaction that produces a superior recovery. (Kaplan MIPA Decl. ¶¶ 36–39; Suppl. Kaplan Decl. ¶¶ 21–24; Suppl. Powers Decl. ¶ 21.)

9

The Debtors nevertheless recognize that the present process is the transaction's weakest point. To eliminate that concern without destroying the transaction, the Court may condition approval on a short market-check period during which any competing bidder must provide a binding agreement, proof of funds, evidence of ability to satisfy operational, lease, equipment, and regulatory conditions, and terms demonstrably superior to the MIPA. If a qualified proposal emerges, the Debtors will request appropriate procedures or an auction. If none emerges, the absence of a superior offer will confirm the Debtors' conclusion. (Suppl. Kaplan Decl. ¶¶ 22–24; Suppl. Powers Decl. ¶ 21.)

**F.      The Proposed Change in Control Does Not Allow Powers to Unilaterally Abandon the Plan or Separate VES Newport from These Cases.**

Newtek's suggestion that Powers could simply pursue a different reorganization or "split" VES Newport from the jointly administered cases is speculative and legally incomplete. VES Newport remains a debtor until the Court orders otherwise. Joint administration, dismissal, conversion, plan withdrawal or modification, distributions, and disposition of estate property remain subject to the Bankruptcy Code and Court order. The MIPA also requires post-closing bankruptcy cooperation and compliance. (Kaplan MIPA Decl. ¶¶ 14–15, 44; Suppl. Kaplan Decl. ¶¶ 29–31; Powers MIPA Decl. ¶¶ 22–23; Suppl. Powers Decl. ¶¶ 23–25.)

To remove any doubt, the Debtors are prepared to include in the Sale Order and amended operating agreement covenants that, while VES Newport remains a debtor, neither Powers nor the Company will seek dismissal, conversion, severance of joint administration, withdrawal of Plan #2, an inconsistent plan, a material distribution, or a further equity transfer without notice and further Court authorization. Powers agrees to those restrictions. (Suppl. Kaplan Decl. ¶ 30; Suppl. Powers Decl. ¶¶ 23–24.)

**G.      Newtek's Lien, Adequate-Protection, Cash-Collateral, and Guaranty Rights Are Preserved.**

The Debtors do not request a free-and-clear transfer of Newtek's asserted lien unless Newtek consents or the Court identifies and finds a specific § 363(f) predicate. If Newtek holds a valid lien on the Seller Interest, that lien will remain attached to the transferred interest with the same validity,

priority, and extent, subject to all estate defenses and any later order. The Court should not transfer a lien to nonexistent proceeds. See *In re PW, LLC*, 391 B.R. 25, 41–46 (B.A.P. 9th Cir. 2008). Section 363(e) also permits the Court, upon a proper request, to condition the transaction to provide adequate protection. *Matter of Spanish Peaks Holdings II, LLC*, 872 F.3d 892, 899–901 (9th Cir. 2017).

Newtek's assertion that it has not received payments required by the Cash Collateral Order presents a separate accounting and compliance dispute. The MIPA does not modify ECF No. 175 or adjudicate any alleged default. The Debtors reserve all rights and will provide a reconciliation or address that issue through appropriate separate motion practice if necessary. (Suppl. Kaplan Decl. ¶ 28.)

The same is true of guaranties. The MIPA does not release or impair Newtek's rights against Kaplan, Wanger, or any other nondebtor guarantor. (Suppl. Kaplan Decl. ¶¶ 25–27; Wanger Decl. ¶ 13.)

**H.      Newtek's Securities-Law Reference Is Undeveloped and Does Not Support Denial.**

Newtek raises a possible federal or state securities issue in a single sentence but identifies no statute, registration requirement, exemption analysis, or prohibited conduct. Opp. 6–7. The Debtors do not ask this Court to declare that securities laws are displaced or categorically satisfied. The MIPA contains investment representations, the transfers are private, and closing remains conditioned on compliance with applicable law and court approval. Any specific securities issue can be addressed on a concrete record; speculation is not a basis to deny § 363(b) relief.

**I.      The Court May Reserve the § 363(m) Finding and Should Preserve the Rule 6004(h) Stay.**

The supplemental Powers Declaration provides the factual disclosures Newtek contends were missing, including her operational role, compensation, expense reimbursement, state-reporting titles, lack of prior equity ownership, absence of side agreements, and absence of collusion. (Suppl. Powers Decl. ¶¶ 4–22, 28–29.) But because good faith under § 363(m) must rest on evidence and because

11

Newtek contests the record, the Debtors agree that the Court may reserve that finding without denying approval. See *Ewell*, 958 F.2d at 281; *M Capital*, 290 B.R. at 746–48.

The Debtors also withdraw their request for a complete waiver of the fourteen-day stay. Rule 6004(h) permits waiver or reduction only on a sufficient record and with appropriate protection for appellate rights. *In re Borders Group, Inc.*, 453 B.R. 477, 485–86 (Bankr. S.D.N.Y. 2011). The Debtors request authority only to prepare assignments, governance documents, member-ledger updates, and other non-closing deliverables during the stay. No equity transfer will close until the stay expires or further order is entered. (Suppl. Kaplan Decl. ¶ 32; Suppl. Powers Decl. ¶ 27.)

## V.    ALTERNATIVE RELIEF

Denial is unnecessary even if the Court concludes the present record needs further development. The Debtors request, in descending order of preference: (1) approval of the MIPA subject to the narrowed lien, good-faith, and stay treatment stated above; (2) approval of the 80% Powers transfer while reserving the proposed minority transfers; or (3) a short continuance for a limited market check, final role and relationship disclosures, a conformed MIPA, final amended operating agreement, and any additional lien or valuation evidence the Court directs. Each alternative protects creditors better than immediate shutdown or denial without a replacement transaction.

## VI.    CONCLUSION

The Opposition properly identifies disclosures that should be made explicit. The Debtors have now made them and narrowed the requested relief. Newtek's remaining arguments rely on a gross-value comparison that ignores liquidation costs and secured obligations, treat operational employment as automatic disqualifying insider control, and speculate about future conduct that remains subject to the MIPA and Court order. The Court should overrule the Opposition except to the extent the Debtors have withdrawn full waiver of Rule 6004(h), approve the MIPA on the supplemented record and narrowed terms, or grant the limited alternative relief described above.

The Debtors respectfully request entry of an order approving the MIPA and granting the related relief requested in the Motion, as narrowed and supplemented by this Reply, or such other and further relief as the Court deems just and proper.

DATED this 10th day of August 2026.

NEVADA BANKRUPTCY ATTORNEYS LLC

By: /s/ Matthew I. Knepper
MATTHEW I. KNEPPER, ESQ.
*Counsel for Jointly Administered Debtors*