**MATTHEW I. KNEPPER, ESQ.**
Nevada Bar No. 12796
**NEVADA BANKRUPTCY ATTORNEYS LLC**
5940 S. Rainbow Blvd., Suite 400
PMB 99721
Las Vegas, Nevada 89118
Telephone: (702) 660-4228
Facsimile: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com

*Counsel for Jointly Administered Debtors*

|  |  |
|---|---|
| In re | Case No.: BKS-25-12627-mkn |
| | Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn |
| VELOCITY ESPORTS, INC., | Chapter 11 |
| ☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>■ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>☐ Affects All Debtors | **ELIZABETH POWERS' SUPPLEMENTAL DECLARATION IN SUPPORT OF DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF ORDER (I) APPROVING MEMBERSHIP INTEREST PURCHASE AGREEMENT FOR VELOCITY ESPORTS NEWPORT KENTUCKY, LLC; (II) AUTHORIZING SALE AND TRANSFER OF MEMBERSHIP INTERESTS PURSUANT TO 11 U.S.C. § 363(b); AND (III) GRANTING RELATED RELIEF** |
| Debtors. | |

| Date of Hearing: | **August 12, 2026** |
|---|---|
| Time of Hearing: | **11:00 a.m.** |
| Dial-In Number: | **(833) 435-1820** |
| Meeting ID: | **161 062 2560** |
| Access Code/Passcode: | **029066** |

1

1. I am over the age of eighteen and am competent to testify to the matters stated in this supplemental declaration. I make this declaration from personal knowledge. If called, I could and would testify competently.

2. I previously submitted a declaration in support of the Newport MIPA Motion at ECF No. 301 (the "Powers MIPA Declaration"). This declaration supplements that declaration and clarifies paragraphs 13 and 20 as stated below.

3. I have reviewed Newtek Bank, N.A.'s Opposition at ECF No. 327, including its statements concerning my role, compensation, expense reimbursements, Kentucky annual-report listings, and proposed acquisition of an 80% interest in VES Newport.

4. Before and during these chapter 11 cases, I have served as Director of Operations for VES Newport. My work has involved day-to-day venue operations, employee coordination, scheduling, vendor and customer matters, and other delegated operational responsibilities.

5. From early in the Company's history until approximately one week before the closing of the Las Vegas sale, I served as Director of Operations for Velocity Esports. In that role, I supervised and supported the general managers at each operating location, assisted them in executing the Company's business plan, and performed various corporate-level functions relating to team management, operations, and product development. I helped open and operate each of the Company's three operating locations and had also been expected to assist with the opening and operation of the contemplated fourth location. Since the Las Vegas sale and the reduction of the Company's operations to the Newport location, my responsibilities have shifted to preparing Newport to operate as a standalone, single-location business. I now work directly with Newport's general manager on the operational functions necessary to maintain smooth and continuous operations and to transition Newport from a multi-location corporate structure to an independent operating platform.

6. My operational role has not, by itself, authorized me to issue or transfer equity, amend the operating agreement, admit members, sell substantially all assets, incur material financing outside delegated limits, select or withdraw a chapter 11 plan, settle material estate claims,

dismiss or convert a bankruptcy case, or take ownership-level action without required existing-governance and Court approvals.

7. I have received ordinary payroll compensation for my work. The approximately $17,544.11 identified by Newtek as prepetition expense reimbursements represented reimbursement for business expenses incurred in connection with my work and was not an equity distribution, profit distribution, purchase-price payment, or payment for any membership interest.

8. I was not an officer of Velocity Esports, Inc., and, to my knowledge, I was not identified as an officer or manager of the Kentucky entities in their state records before approximately April or May 2026. Around that time, Kaplan and Wanger authorized me to update the Kentucky entity records for the limited purpose of allowing me to apply for the liquor license and related approvals necessary to continue Newport's operations as smoothly and promptly as possible in anticipation of the proposed MIPA transaction. That authorization did not transfer ownership or ultimate control of VES Newport to me. Until the MIPA is approved and the transaction closes, Kaplan and Wanger continue to exercise the Debtors' ownership and debtor-in-possession authority over VES Newport's assets, cash, and material operational decisions.

9. I have never owned a membership interest in VES Newport or Velocity Esports Newport Kentucky II, LLC, and I did not purchase any interest in either entity before the proposed MIPA closing.

10. I have not served as a director on VES Inc.'s board and have not had unilateral authority to control VES Inc. or VES Newport within the meaning described above.

11. I report or have reported to the existing management of Velocity Esports, Inc., and material decisions outside my delegated operational authority have required approval from that structure and, where applicable, the Bankruptcy Court.

12. Paragraph 13 of my earlier declaration stated my understanding that I was not an insider. I understand insider status is a legal conclusion for the Court. I do not repeat that legal conclusion here; instead, I disclose the facts concerning my role and relationships.

13. Paragraph 20 of my earlier declaration stated that I had not exercised pre-closing control. I intended to distinguish ownership or purchaser control under the MIPA from the delegated day-to-day operational authority I have exercised in my existing job. I have performed operational duties, but I have not exercised pre-closing ownership control by reason of the MIPA.

14. My operational experience is one reason the Debtors considered me capable of continuing the Newport business. I am familiar with its employees, vendors, customer operations, equipment, premises, and daily operational needs.

15. From my perspective, the proposed 80% interest creates clear majority governance, ownership accountability, and exposure to the economic upside and downside of the Company. Those rights and risks are materially different from the delegated authority and ordinary compensation associated with my current employment. The proposed interest is not intended as compensation for my past employment or as an undisclosed bonus.

16. I am not paying a conventional cash purchase price to VES Inc. I understand the Court must evaluate the actual value of VES Inc.'s membership interest and the transaction as a whole. I am acquiring an interest subject to disclosed business, bankruptcy, lease, equipment, regulatory, and lien risks, and the value of my equity is not guaranteed.

17. I will perform only the obligations I expressly undertake in the MIPA, Sale Order, amended operating agreement, or another written agreement I sign. Those obligations include cooperation with the ownership transition, post-closing records access, bankruptcy administration, and operational continuity. I understand that VES Newport's payment of its own debts is not being represented as consideration provided by me.

18. Other than my disclosed existing employment and compensation relationship with VES Newport, I have no undisclosed compensation, employment, consulting, reimbursement, indemnity, side agreement, equity allocation, or post-closing payment agreement with Kaplan, Wanger, the Insider Bid Parties, or any Debtor relating to the MIPA.

4

19. I did not participate in any agreement to suppress bidding, control the sale price, conceal consideration, or prevent a higher or better offer. I have no no-shop, break-up fee, expense reimbursement, topping fee, or other bid protection.

20. I understand that the Court may apply heightened scrutiny because of my operational relationship with the Company. I am willing to provide testimony and documents concerning my role, negotiations, relationships, compensation, and the transaction.

21. I understand the Debtors remain free to consider a superior executable proposal. I will comply with any Court-directed market check or sale procedure, including reasonable bidder-qualification requirements, and will not interfere with a competing bid.

22. I have not acquired, and the MIPA does not transfer to me, any membership interest in Velocity Esports Newport Kentucky II, LLC.

23. While VES Newport remains a debtor, I will not cause or direct it to seek dismissal, conversion, severance of joint administration, withdrawal of Plan #2, an inconsistent plan, a material distribution, or a further equity transfer except after notice and further Bankruptcy Court authorization.

24. I will comply with the MIPA's bankruptcy-cooperation and records-access provisions and with any additional governance covenants included in the Sale Order or amended operating agreement.

25. I understand the Newport liquor license remains held by a separate nondebtor affiliate. I will cooperate with the license holder and applicable regulators, but I do not acquire the license through the MIPA.

26. I am not requesting any release, satisfaction, subordination, or impairment of Newtek's asserted liens, claims, or guaranties through the MIPA.

27. I do not object to preservation of the full fourteen-day stay under Bankruptcy Rule 6004(h). I am willing to prepare non-closing documents during that period but will not close the equity transfer until the stay expires or the Court orders otherwise.

28. To the extent any statement in my earlier declaration could be read as inconsistent with the factual clarifications above, this supplemental declaration controls.

29. The statements above are intended to provide a complete and candid disclosure of my operational role and the distinction between that role and the ownership rights proposed under the MIPA. I will comply with applicable federal and state securities laws and the investment representations and transfer restrictions contained in the final MIPA and related documents. I am not asking the Bankruptcy Court to exempt the transaction from otherwise applicable securities law.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: August 10, 2026.

By: s/ *Elizabeth Powers*
Elizabeth Powers