**MATTHEW I. KNEPPER, ESQ.**
Nevada Bar No. 12796
**NEVADA BANKRUPTCY ATTORNEYS LLC**
5940 S. Rainbow Blvd., Suite 400
PMB 99721
Las Vegas, Nevada 89118
Telephone: (702) 660-4228
Facsimile: (702) 660-4228
Email: mknepper@nvbankruptcyattorneys.com

*Counsel for Jointly Administered Debtors*

|  |  |
|---|---|
| In re | Case No.: BKS-25-12627-mkn |
|  | Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn |
| VELOCITY ESPORTS, INC., | Chapter 11 |
| ☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☑ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>☐ Affects All Debtors | **SUPPLEMENTAL DECLARATION OF PHILIP N. KAPLAN IN SUPPORT OF DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF ORDER (I) APPROVING MEMBERSHIP INTEREST PURCHASE AGREEMENT FOR VELOCITY ESPORTS NEWPORT KENTUCKY, LLC; (II) AUTHORIZING SALE AND TRANSFER OF MEMBERSHIP INTERESTS PURSUANT TO 11 U.S.C. § 363(b); AND (III) GRANTING RELATED RELIEF** |
| Debtors. |  |

| Date of Hearing: | **August 12, 2026** |
|---|---|
| Time of Hearing: | **11:00 a.m.** |
| Dial-In Number: | **(833) 435-1820** |
| Meeting ID: | **161 062 2560** |
| Access Code/Passcode: | **029066** |

1

1. I am over the age of eighteen and am competent to testify to the matters stated in this supplemental declaration. I make this declaration from personal knowledge, my review of the Debtors' books and records, and information provided by personnel and professionals under my supervision or at my direction. If called, I could and would testify competently.

2. I am Chairman of the Board of Velocity Esports, Inc. ("VES Inc."). I previously submitted the Declaration of Philip N. Kaplan in support of the Newport MIPA Motion at ECF No. 300 (the "Kaplan MIPA Declaration"). This declaration supplements and, where expressly stated, clarifies that declaration.

3. I have reviewed Newtek Bank, N.A.'s Opposition at ECF No. 327, the MIPA, the MIPA schedules, the Debtors' liquidation and feasibility analyses, and the Supplemental Declaration of Beth Powers submitted with the Reply.

4. The Debtors commenced these chapter 11 cases on May 7, 2025. The reference in the Opposition to an August 2, 2025 petition date is incorrect.

5. Before and during these chapter 11 cases, Beth Powers has served in an operational role for VES Newport, commonly described as Director of Operations. Her responsibilities have included day-to-day venue functions, employee coordination, vendor interaction, customer operations, scheduling, and other delegated operational matters.

6. Powers' operational role has not, by itself, given her authority to issue or transfer equity, amend the Company's operating agreement, admit members, sell substantially all assets, incur material financing outside delegated limits, select or withdraw a chapter 11 plan, settle material estate claims, dismiss or convert a bankruptcy case, or take other ownership-level action without approval from the Company's existing governance and, where required, the Bankruptcy Court.

7. Powers has not owned any membership interest in VES Newport or Velocity Esports Newport Kentucky II, LLC before the proposed MIPA closing.

8. I understand that Kentucky annual reports may identify Powers by an operational or manager/officer title. Those filings were intended to identify her operational or administrative role and did not transfer equity to her or authorize her to exercise ultimate member or board-level control.

9. Powers has received ordinary payroll compensation for her work and expense reimbursements reflected in the Debtors' books and schedules. Those payments were compensation and reimbursement for business expenses, not purchase-price payments, equity distributions, profit sharing, or consideration for a prepetition transfer of ownership.

10. Paragraph 19 of my earlier declaration stated my then-current understanding that Powers was not an insider. I am not offering a legal conclusion concerning insider status. I provide the underlying facts in this supplemental declaration and understand that the Court may apply heightened scrutiny without deciding that issue.

11. The approximately $438,847.93 number cited by Newtek is the Debtors' estimate of gross liquidation value of Newport-owned assets. It is not an appraisal of VES Inc.'s membership interest, is not cash presently available to the estate, and does not account for liquidation costs or asset-specific obligations.

12. The Debtors' liquidation analysis estimates Newport-specific liquidation costs of approximately $65,827.19. Deducting those costs leaves estimated value of approximately $373,020.74 before asset-specific obligations.

13. The analysis identifies asserted NFS settlement/equipment obligations of approximately $255,645.52 and a LEAF claim of approximately $107,853.50, for total asset-specific obligations of approximately $363,499.02, each subject to reconciliation, allowance, lien, and priority determinations.

14. After the estimated liquidation costs and those asserted asset-specific obligations, the estimated residual is approximately $9,521.72 before considering Newtek's asserted blanket lien and other final reconciliation issues.

15. The Debtors therefore project no net recovery for general unsecured creditors from liquidation of the Newport estate. The value of VES Inc.'s membership interest is also different from the value of the Company's assets because the equity is subject to Company liabilities, operational dependencies, and any valid lien on the membership interest.

16. VES Inc. historically served as the parent holding company for a planned multi-venue system and centrally administered venue cash. Following the Las Vegas transaction and the failure of

the Schaumburg and Orlando expansion strategies, the parent-level overlay carries legacy debt and administrative burdens but no longer performs the same operational function for Newport.

17. Powers' current operational position permits her to manage delegated day-to-day activities, but it does not align ultimate ownership rights, long-term governance authority, economic upside and downside, and equity risk with the person expected to operate the Newport business after closing. The proposed MIPA is intended to create that alignment.

18. The proposed 80% interest was selected to give the operating purchaser clear majority governance and accountability, subject to the amended operating agreement, Sale Order, and continuing Bankruptcy Court supervision while VES Newport remains a debtor. The proposed 20% minority component is separate and subject to additional approval.

19. The filed Feasibility Analysis identifies separate Plan-support commitments from the LRW Revocable Trust and me. The LRW Revocable Trust's commitment is $386,454.00 from restricted Merrill Lynch accounts, subject to Court authorization. My separate commitment is $343,103.00, proposed to be funded over eight quarterly payments. The $50,000.00 initial payment required under the proposed NOTL Second Amendment will be funded from my $343,103.00 commitment. The LRW Revocable Trust has no additional cash contribution obligation in connection with the MIPA.

20. The 80%/20% division is a governance allocation. The 80% component is intended to provide one operating sponsor with clear majority governance, subject to the Sale Order and amended operating agreement. Each proposed 10% interest is a conditional minority governance position with different control rights and support functions. The LRW-related position is associated with its disclosed Plan-support contribution and continuing restructuring support, while the Kaplan-related position is associated with my separate Plan-support commitment and NOTL transaction funding. Those contributions support Plan implementation and the landlord resolution; they do not establish a uniform per-percentage-point equity price or a pro rata valuation for Powers' interest.

21. The Debtors evaluated continued parent ownership, delay through confirmation, liquidation, a different sale transaction, and the proposed MIPA. In doing so, management considered the gross-to-net liquidation economics, the Company's operating dependencies and liabilities, the

need for a viable lease and liquor-license path, the need for a responsible post-closing governance structure, and the absence of a superior executable proposal. Based on those considerations, I believe the MIPA remains the best available transaction.

22. No party has delivered a superior, binding, executable offer to acquire the VES Newport membership interest or assets on terms that provide greater value to the estates. Newtek has not identified such a bidder in its Opposition.

23. The Debtors are willing to participate in a fourteen-day, Court-directed market check if the Court concludes additional market evidence is required. Any bidder should be required to provide a binding agreement, proof of funds, any deposit required by the Court, and evidence that it can satisfy the operational, lease, equipment, licensing, regulatory, and bankruptcy-cooperation conditions applicable to Newport.

24. The MIPA contains no no-shop, break-up fee, topping fee, expense reimbursement, or other bid protection. The Debtors remain free to consider a higher or better executable proposal.

25. The Debtors do not request that the Sale Order extinguish any valid Newtek lien without Newtek's consent or a finding under a specific subsection of § 363(f). If Newtek holds a valid lien on the Seller Interest, the Debtors are prepared for the Sale Order to provide that the lien remains attached to the transferred interest with the same validity, priority, and extent, subject to all estate defenses and later orders, and to include any additional conditions the Court determines are required under § 363(e) to provide adequate protection.

26. The MIPA does not release, satisfy, subordinate, or impair any guaranty or other nondebtor claim held by Newtek.

27. Newtek states in the Opposition that it has received $1,345,975.03 from guarantor sources and Las Vegas transaction proceeds and intends to amend its proofs of claim. The Debtors reserve all rights concerning the amount, application, allowance, and remaining balance of Newtek's claims.

28. Newtek also asserts that no payments required by the Cash Collateral Order at ECF No. 175 have been received, but fails to reconcile this with the payments it has received through several asset dispositions in its favor.

29. The MIPA does not terminate joint administration, dismiss or convert VES Newport's case, withdraw or modify Plan #2, or authorize a distribution inconsistent with the Plan or another Court order. VES Newport remains a debtor until the Court orders otherwise.

30. To address Newtek's governance concern, the Debtors are prepared to include provisions in the Sale Order and amended operating agreement requiring that, while VES Newport remains a debtor, Powers and the Company may not seek dismissal, conversion, severance of joint administration, withdrawal of Plan #2, an inconsistent plan, a material distribution, or a further equity transfer without notice and further Court authorization.

31. The Newport liquor license remains held by the separate nondebtor affiliate. The MIPA does not transfer that license. Continued operations will require the applicable affiliate arrangements and regulatory compliance, which will be documented or addressed separately.

32. In light of Newtek's objection, the Debtors no longer request a complete waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). They request only authority to prepare non-closing implementation documents during the stay.

33. If the Court finds the record insufficient as to the proposed minority transfers, those transfers may be reserved, conditioned, or denied without prejudice without requiring denial of the entire transaction.

34. Attached as Exhibit 1 is a true and correct reconciliation prepared from the Debtors' Initial Feasibility and Liquidation Analysis and the records I reviewed. It illustrates why the gross asset estimate is not the value of the membership interest or a projected creditor recovery. Attached as Exhibit 2 is a true and correct summary, prepared from the MIPA, the existing organizational records, and the proposed governance structure, comparing Powers' delegated operational authority before closing with the ownership and governance rights proposed under the MIPA, subject to the final Sale Order and amended operating agreement.

/ / /

35. Except as clarified or supplemented above, the statements in my Kaplan MIPA Declaration remain true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: August 10, 2026.


By: s/ *Philip N. Kaplan*
Philip N. Kaplan
Chief Executive Officer and Chairman of the Board,
Velocity Esports, Inc.

8

**EXHIBIT 1**

**NEWPORT LIQUIDATION VALUE RECONCILIATION**

| Item | Amount | Effect |
|------|--------|--------|
| Estimated gross liquidation value of Newport-owned assets | $438,847.93 | Starting estimate |
| Estimated liquidation costs | ($65,827.19) | Reduces value |
| Estimated value after liquidation costs | $373,020.74 | Before asset-specific obligations |
| Asserted NFS settlement/equipment obligations | ($255,645.52) | Subject to reconciliation |
| Asserted LEAF claim | ($107,853.50) | Subject to reconciliation |
| Estimated residual before Newtek blanket lien | $9,521.72 | Not distributable until lien/claim issues resolved |
| Newtek asserted blanket lien / other reconciliation | Unliquidated | Applies to residual if valid |
| Projected general unsecured recovery | $0.00 | No net estate value projected |

Note: All amounts are estimates subject to claim allowance, lien validity, priority, credits, payment application, and final reconciliation. This is not an independent appraisal.

8

**EXHIBIT 2**

**OPERATIONAL AUTHORITY AND PROPOSED OWNERSHIP-GOVERNANCE COMPARISON**

This summary is subject to the final MIPA, Sale Order, amended operating agreement, applicable nonbankruptcy law, and continuing Bankruptcy Court authority while VES Newport remains a debtor.

| Decision or Right | Powers' Existing Operational Role | Proposed Post-Closing Position | Significance |
|---|---|---|---|
| Daily venue operations | Delegated authority over scheduling, employees, vendors, customer operations, and routine venue matters. | Continues operational leadership, subject to governance documents and Court orders. | Operational continuity is preserved. |
| Issue or transfer equity | No authority by virtue of employment. | Majority-member rights only as authorized by the final MIPA, Sale Order, and amended operating agreement. | Ownership control is distinct from employment authority. |
| Amend operating agreement or admit members | No unilateral authority. | Governance rights subject to minority protections, the Sale Order, and applicable Kentucky law. | Creates a defined post-closing governance process. |
| Material financing or capital structure | No ultimate authority outside delegated limits and existing approval requirements. | Governance participation subject to Court-approved restrictions while the Company remains a debtor. | Aligns long-term responsibility with equity risk without eliminating Court oversight. |
| Chapter 11 case decisions | No unilateral authority to dismiss, convert, sever joint administration, withdraw the Plan, or make inconsistent distributions. | No unilateral authority; additional covenants and Court approval remain required. | Addresses Newtek's concern that the Company could leave the restructuring path unilaterally. |
| Economic risk and upside | Ordinary compensation and expense reimbursement; no ownership interest. | Proposed 80% economic interest, subject to disclosed business, bankruptcy, lien, lease, equipment, and regulatory risks. | Provides ownership accountability and incentive alignment. |
| Records and bankruptcy cooperation | Employee-level duties and existing operational access. | Express contractual duties under the MIPA, Sale Order, and amended operating agreement. | Preserves estate administration after closing. |

Note: This exhibit is a summary of proposed governance functions and is not intended to supersede the operative transaction documents or state law.

9