Richard Samuel Ehlers (NV Bar #9313)
Todd S. Garan (CASB 236787)(Pro Hac Vice)
**ALDRIDGE PITE, LLP**
9205 West Russell Road
Building 3, Suite 240
Las Vegas, NV 89148
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

**Mailing Address:**
3333 Camino Del Rio South, Suite 225
San Diego, California 92108

Attorneys for Secured Creditor:
Newtek Bank, N.A.

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>VELOCITY ESPORTS, INC.,<br><br>Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>**X** Affects All Debtors<br><br>Debtors.<br>. | Case No. No. 25-12627-MKN (LEAD)<br>jointly Administered with<br>Case No.: 25-12628-mkn<br>Case No.: 25-12629-mkn<br>Case No.: 25-12630-mkn<br>Case No.: 25-12631-mkn<br><br>Chapter 11<br><br>**OBJECTION TO JOINT CHAPTER 11 PLAN OF REORGANIZATION NO.2**<br><br>**<u>HEARING:</u>**<br>DATE: SEPTEMBER 15, 2026<br>TIME: 9:30AM<br>JUDGE: HON. MICHAEL K NAKAGAWA |

Secured Creditor, Newtek Bank, N.A. (hereinafter, "<u>Creditor</u>") secured creditor of the above-entitled Debtors, Velocity Esports, Inc. et al; ("<u>Debtors</u>"), hereby submits the following Objection to Confirmation of Debtors' Joint Chapter 11 Plan of Reorganization No.2 [*Dkt. No.284*] ("<u>Objection</u>"). The basis of this Objection is stated below.

## I. STATEMENT OF FACTS

**A. THE INSTANT BANKRUPTCY CASE**

On May 7, 2025, Debtor, Velocity Esports, Inc. ("VES") filed the instant bankruptcy petition under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Nevada and assigned Case No. 25-126286-mkn. (*See*, Dkt. No.1).

On May 7, 2025, Debtors, Velocity Esports Las Vegas Town Square, LLC ("VELVTS"); Velocity Esports Newport Kentucky, LLC ("VENK"); Velocity Esports Chicago Schaumburg, LLC ("VECS"); and Velocity Esports Orlando Downtown, LLC ("VEOD"), each filed their own bankruptcy petition under Chapter 11 of the Bankruptcy Code for the District of Nevada, and were assigned the respective case Numbers: 25-12628-mkn; 25-12630-mkn; 25-12629-mkn; and 25-12631-mkn,

On May 23, 2025, Debtor filed a Motion for Joint Administration of the Debtors' Bankruptcy Cases. (*See*, Dkt. No.16)

On July 21, 2025, the Court entered its Order allowing for the Joint Administration of the Debtors' Bankruptcy Cases with the Lead Case being the Velocity Esports, Inc. ("VES") case. (*See*, Dkt. No.96).

Creditor filed its Secured Proofs of Claim in the above referenced cases for $2,486,502.27, with pre-petition arrears of $142,619.82. Creditor acknowledges that during the course of this case it has received a total of $1,492,239.14 from both non-debtor guarantor sources (10/17/25 $146,264.11, 2/23/26 $712,544.03) and $633,431 in net proceeds from the VES/VELVTS sale of the related Las Vegas operations. Thus, these amounts would serve to reduce Creditor's Secured Claim in this case leaving an approximate balance of $994,263.13. Creditor will be seeking to amend its Proof of Claim by time of Confirmation Hearing.

On December 12, 2025, the Court entered a Joint Stipulated Order Re Use of Cash Collateral ("Cash Collateral Order") with respect to VES, VELVTS, and VENK entities as these were the only operating entities at the time. (*See*, Dkt. No.175). To date, Creditor has not received any payments from the Debtors pursuant to the Cash Collateral Order despite payments being required thereunder. (*See, Id*).

On April 27, 2026, the Court entered its Order Approving the Sale of Certain Debtors' Assets that largely sold the business and related assets for the Velocity Esports Las Vegas Town Square

Location (e.g. VELVTS") to a 3rd party. (*See,* Dkt. No.269).

On July 15, 2026, the Debtors' filed a Motion to Sell VES' Membership Interests in VENK to Ms. Powers and certain Insiders on Shortened Notice along with the Supporting Declarations of Philip Kaplan and Beth Powers (collectively herein, "MIPA Motion") (*See,* Dkt. Nos.299, 300, 301, 311 and 314).

On August 5, 2026, Creditor filed its Opposition to the Debtors' MIPA Motion. (See, Dkt. No.327). On August 12, 2026, the Court granted the Debtors' MIPA Motion and the Order on the MIPA is pending entry.

On May 28, 2026, Debtor filed its Joint Chapter 11 Plan of Reorganization No.2 ("Plan") (*See*, Dkt No.284). Debtor identifies Creditor's Claim as a Class 1 Impaired Secured Claim. The amount of the Allowed Secured Claim is stated to be $2,486,502.27, subject to reconciliation, credits and allowance. As discussed above, Creditor acknowledges its claim has been reduced post-petition and the Secured Claim is approximately $994,263.13 as of the time of this Objection.

The Plan seeks to identify certain collateral that is to be used to satisfy Creditor's Allowed Secured Claim. Specifically, real properties located in Part City Utah, generally known and identified in Art 1.1.48 as the Park City Properties of 4958 W. Ponderosa Court (APN TL-3-A-314) and 745 Quaking Aspen Court, and a blanket security interests in substantially all the assets of the Debtors.[1] To be clear, the Park City Properties are not assets of the Debtors or property of the Debtors' bankruptcy estate in any way and are not listed in the Debtors' schedules. It is Creditor's understanding the Park City Properties are

The Plan does not provide a collateral value per se, just indicates "not finally determined" but the "collateral value" is derived from the estimated sale proceeds of the Park City Properties, and net proceeds from the sale of VELVTS business and related assets. The Plan does appear to provide a

[1] It's currently unclear what the present list of actual assets is for the Debtors, especially since several locations, like VECS and VEOD have never been operational during this case, and VELVTS and VES have sold assets in connection with the sale of the VELVTS business According to the schedules of the various Debtors, VENK had approximately $343,120.43 in assets related to inventory and gaming equipment, desks and other hard items at time of filing. (See, Case No.25-12630, Dkt. No.1). VECS, the Chicago location that was not operating at the time of filing, listed assets of approximately $931,970.19 related to inventory and gaming equipment, desks and other hard items at time of filing; however, wasn't that location closed and all assets divided between VENK and VELVTS?. (See, Case No.25-12629, Dkt. No.1). What assets does VECS actually hold any longer? VEOD listed no personal property assets whatsoever. (See, See, Case No.25-12631, Dkt. No.1). So, what is the current asset list for VENK and/or VES, if any, given VENK has been only 1 of two operating venues, and certainly VECS already moved all its assets to either VELVTS or VENK a long time ago (pre-petition), and VELVTS and VES' assets have been sold. Has there been updated schedules or consolidated remaining inventory list created for the remaining assets of VENK and/or any other Debtors?

liquidation value as to the Debtors' remaining assets, but no going concern value of the Debtors' or at least VENK's business despite this being a reorganization plan.

The Plan provides that the Allowed Secured Claim of Creditor shall be satisfied through application of net proceeds from "asset sales" as provided in Section 3.3, including proceeds from the Park City property sales and the Las Vegas asset sale, rather than through long-term amortization. Under Section 3.3.2, specifically paid in cash from the net proceeds related to the sale of the remaining Park City Properties (4958 W. Ponderosa Court, since the other was already sold), the VELVTS sale, adequate protection payments and Newport MIPA Proceeds.

Presently, there is valuation evidence provided as the Park City Property to ascertain if the sale of this remaining Park City Property as proposed would yield sufficient proceeds to satisfy Creditor's Claim. There is no present update as to sale efforts or status, or are there any deadlines related to the proposed sale of the remaining Park City Property, as the proposal appears open ended[2]. Further, there is no mechanism in the Plan for the Court to compel the sale of the Park City Property by any date certain to satisfy Creditor's claim as proposed. As the Plan notes, Debtors do not propose any type of amortization or payments to Creditor on its claim post-confirmation at all, despite the fact Creditor would still have a Secured Claim unless and/or until its claim is paid off. There is no loan terms, interest rate or present value proposed post-confirmation. Instead, it appears Debtors are asking Creditor to simply wait for a sale of non-Debtors asset that is purely at the discretion of a non-debtor party without any substantive obligation under the Plan to actually consummate such a sale and perform as proposed.

In the Plan, General Unsecured Claims are treated under Class 8 and presently receive no distribution under the Plan.

## II. ARGUMENT

11 U.S.C. § 1129(a)(1) provides that a court shall confirm a plan only if it complies with the applicable provisions of the bankruptcy code. In order for a chapter 11 plan to be confirmed, the plan proponent must demonstrate, *by a preponderance of the evidence*, that the requirements of 11 U.S.C. § 1129 are satisfied. *United States v. Arnold & Baker Farms,* 177 B.R. 648, 654 (9th

[2] Counsel for Creditor was just informed that the remaining Park City Property may be in escrow for sale. Counsel has not been provided with any substantive information or documents to support this. Nonetheless, Creditor still takes issue with the Plan as proposed with respect to any sale of the Park City Property for the reasons discussed in this Objection.

Cir.BAP1994), *aff'd,* 85 F.3d 1415 (9th Cir.1996), *cert. denied* 519 U.S. 1054 (1997)(emphasis added). Further, a Court has an independent duty to determine if a Chapter 11 Plan is confirmable, even if no objection to said plan has been filed. *See, In re Future Entergy Corp.*, 83 B.R. 470, 484 (BC SD OH 1988); *In re Coastal Equities, Inc.*, 33 B.R. 898, 906 (BC SD CA 1983). The burden of proof is on the debtor to provide sufficient evidence that a Chapter 11 Plan is confirmable. *See, In re Lennox*, 909 F.2d 737, 739 (9th Cir. 1990).

**A. THE TREATMENT OF CREDITOR'S SECURED CLAIM IS NOT ACTUALLY FAIR AND EQUITABLE TO CREDITOR AS DEBTOR SEEKS TO HAVE CREDITOR FOREGO ITS SECURED CLAIM IN THIS CASE AND INSTEAD BE FORCED TO RELY ON NON-DEBTOR SOURCES THAT ARE NO SUBJECT TO THIS COURT'S JURISDICTION OR OVERSIGHT.**

Pursuant to 11 U.S.C. §1129(a) a Court shall confirm a plan only if all of the requirements under §1129(a)(1)-(a)(15) are met. Under §1129(a)(8) each class of claims must either accept the Plan or not be impaired under the Plan. Pursuant to 11 USC §1124, a claim is impaired unless with respect to said claim or interest, the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest. See, 11 U.S.C. § 1124. Generally, any alteration of rights constitutes impairment, even if the value of the rights is enhanced. *See, In re Wabash Valley Power Ass'n*, 72 F.3d 1305, 34 C.B.C2d 877 (7th Cir. 1995), *cert. denied*, 519 U.S. 965, 117 S.Ct 389, 136 L.Ed.2d 305 (1996); *Accord, In re L&J Anaheim Assoc.*, 995 F.2d 940, 942-943 (9th Cir. 1993); *but see, In re Boston Post Road, Ltd. Partnership*, 154 B.R. 617 (D. Conn. 1993), aff'd, 21 F.3d 477, 30 C.B.C2d 1528 (2nd Cir. 1994), *cert., denied*, 513 U.S. 1109, 115 S. Ct. 897, 130 L.Ed 2d 782 (1995). This is important because it identifies who is entitled to vote on the Chapter 11 Plan. See, 11 U.S.C. §1126(a), (f). Creditor's claim is identified as impaired and entitled to vote. (See, generally, Dkt. No.284). Presently, Creditor has not voted in favor of the Plan for the reasons discussed herein.

If a creditor does not consent to the treatment, then pursuant to §1129(b) the Court shall confirm a Plan if it does not discriminate unfairly, and is fair and equitable, with respect to each class of claims that are impaired under the Plan. Pursuant to §1129(b)(2)(A)(i)(II) a Plan is fair and equitable if each holder of a secured claim receives deferred cash payments totaling at least the allowed amount of such claim as of the effective date of the plan.

In the present matter, the Debtors' Plan does not contemplate any monthly payments per se to Creditor on its secured claim, though, it does reserve the right to determine the amount and/or allowance of Creditor's Secured Claim. Instead, the Debtors indicate Creditor's Claim would be paid cash from the following sources: 1) proceeds related to the sale of the remaining Park City Property (4958 W. Ponderosa Court), 2) the VELVTS sale, 3) adequate protection payments and 4) Newport MIPA Proceeds.

The Creditor has already received proceeds in connection with the VELVTS sale, and from certain other non-debtor sources, which it has applied to its claim amount as noted above. However, to date, Creditor has not received any cash collateral payments per the Court's Order, which will largely dissolve once the Plan is confirmed. Further, Creditor is not expected to receive any proceeds in connection the MIPA transaction.

In light of the above, this is concerning to Creditor because the only possible payment being proposed on its Secured Claim is expected to come from the sale of the Park City Property located at 4958 W. Ponderosa Court. However, the Park City Property (4958 W. Ponderosa Court) is not an asset or property of the Debtors' estate for which the Court actually controls or holds jurisdiction over. 11 U.S.C. § 541(a)(1) provides that property of the Bankruptcy Estate are those legal or equitable interests of the *Debtor* in property as of the commencement of the Debtor's case. See, 11 U.S.C. § 541(a)(1)[emphasis added]. Further, 28 U.S.C. § 1334(e) prescribes: "(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction— (1) of all the property, wherever located, **of the debtor** as of the commencement of such case, and of property of the estate…." See, 28 U.S.C. § 1334(e). Thus, the Court's subject matter jurisdiction is limited to only to "property . . . of the debtor . . . and of property of the estate."

Clearly, the Park City Property (4958 W. Ponderosa Court) is not listed in any Debtors' schedules. It is Creditor's understanding the Park City Property (4958 W. Ponderosa Court) is currently co-owned by 4958 West Ponderosa I, LLC and 4958 West Ponderosa II, LLC, who are not debtors in these bankruptcy proceedings, but do appear to be "creditors" of the Debtors based upon the schedules. These parties are guarantors under separate guarantor agreements with Creditor related to its claim.

The Plan does not provide any substantive discussion or evidence as to the current value of

the Park City Property (4958 W. Ponderosa Court) to support a finding whether it could satisfy Creditor's Secured Claim as proposed, when a sale is to occur or any deadlines for this sale and satisfaction to occur or substantive remedy mechanisms to compel these non-debtors to perform under the Plan as proposed or liquidate the Park City Property (4958 W. Ponderosa Court). Indeed, if the Plan were confirmed, could Creditor bring a Motion under Section 105 for contempt to compel these parties to sell the Park City Property (4958 W. Ponderosa Court) to pay Creditor and ensure compliance with the Plan as proposed? Creditor suspects the Court would respond that it couldn't. Similarly, if the case were converted to Chapter 7, would a Ch 7 Trustee have control over these non-debtor entities and/or the related the Park City Property (4958 W. Ponderosa Court). Similarly, Creditor suspects not.

Additionally, even in situations where a debtor has control over the assets to be sold, Courts have refused to confirm plans whose feasibility turns on future sales of properties, or a future refinancing, absent an adequate showing that such a sale or refinance would be likely to occur. *See*, *In re Las Vegas Monorail Co.*, 462 B.R. 795, 800-01 (Bankr. D. Nev. 2011) (citing to *In re Vanderveer Estates Holding*, LLC, 293 B.R. 560 (Bankr. E.D.N.Y. 2003); *Crestar Bank v. Walker* (In re Walker), 165 B.R. 994, 1005 (E.D. Va. 1994); *In re Hoffman*, 52 B.R. 212, 215 (Bankr.D.N.D. 1985)). A bare proposal to pay upon the sale of property does not necessarily satisfy the feasibility requirement of § 1129(a)(11) as a matter of law. *In re Bassett*, 413 B.R. 778, 788 (Bankr. D. Mont. 2009) (citing *In re Hungerford*, 19 Mont. B.R. 103, 111, 2001 WL 36211305 (Bankr. D Mont. 2001).

The Debtors' Plan here is even more problematic and speculative because not only do we not have any concrete evidence of value, marking, sale efforts or related deadlines for this proposed sale, but there is a complete lack of enforcement or compliance over these non-debtors and Park City Property (4958 W. Ponderosa Court) so as to enforce the Plan as proposed. What happens to Creditor's Secured Claim if these non-debtors don't or cannot sell the Park City Property (4958 W. Ponderosa Court) to satisfy Creditor's Secured Claim as proposed for any reason? Is Creditor expected to just take nothing by way of this Chapter 11 Plan while Debtor pays other similarly situated secured creditors under the Plan? Wouldn't that be unfair discrimination under 11 U.S.C. Section 1123(a)(4)? This does not seem fair and equitable to Creditor, especially given the very

opened ended nature of the proposal, and no Court scrutiny and/or enforcement over the Park City Property, or non-debtor parties.

Further, to be clear, because 4958 West Ponderosa I, LLC and 4958 West Ponderosa II, LLC are not debtors in this case, and related Park City Property is not property of the estate, the mere proposal to try and satisfy Creditor's Secured Claim under this Plan would in no way absolve, eliminate or impact these non-debtor parties of their obligations under the guarantees as that would be a violation of 11 U.S.C. § 524(e) in this case. 11 U.S.C. § 524(a)(2) states that the effect of a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability ***of the debtor***, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) [emphasis added]. In other words, section 524(a) provides for the discharge of personal liability on certain debts of the ***debtor***. Section 524 does not, however, provide for the release of personal liability for a third party non-debtors. To the contrary, 11 U.S.C. § 524(e) provides that a "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The bankruptcy court does not have the authority to release the liability of non-debtors, and a plan which contains such a provision may not be confirmed. *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995).

While the Plan may not expressly seek to do this, given the apparent "tangling" of the parties as part of the proposed treatment, Creditor feels compelled to be clear that not only are there issues with the proposal in the Plana, but that this Plan can in no way impact, reduce or absolve these non-debtors' separate contractual obligations to Creditor, and it objects to any such provision in the Plan to that effect, or any finding that this Plan, implied or otherwise, would in any way impact, limit Creditor's rights as to these non-debtors on their own separate contractual obligations whether presently, or post-confirmation. Just to be clear.

As such, Creditor believes the present proposal set forth in the Plan is illusory as to Creditor. Further, Debtors have an express obligation under the Code to actually treat Creditor's Secured Claim in this case. Debtors' Plan cannot simply push off its own obligations to Creditor under the Code to non-debtor guarantors as this is not an option set forth in §1129(b)(2)(A).

Unfortunately, unless the Park City Property (4958 W. Ponderosa Court) was sold and

sufficient proceeds paid to Creditor on or before the Effective Date of the Debtors' Plan to satisfy its Secured Claim, Creditor believes Debtors have to treat and provide for Creditor's Secured Claim in this case in a manner that is fair and equitable, which may very well require the Debtors to value their assets to determine the amount of Creditor's Secured Claim, and require present value payments to Creditor post-confirmation. *See*, *In re North Valley Mall, LLC*, 432 B.R. 825, 830 (Bankr. C.D. Cal. 2010) (Restated in basic terms, 'present value' is the mirror image of 'interest rate,' and the plan cannot impose uncompensated risk upon the bank by paying too low an interest rate under the plan).

As discussed above, the current state of assets and their value is a bit unclear given some entities, like VECS, listed assets with substantial value, but largely never had them at time of filing since presumably they were transferred between the VELVTS and the currently last operating venue, VENK. Further, Debtors cannot simply rely on a liquidation value for the Debtors' business and related assets because this is a Plan of Reorganization and the law is clear, generally if assets are retained and/or a business is continuing, a liquidation approach to valuation is not appropriate. *See*, *In re Taffi*, 96 F.3d 1190, 1192 (9th Cir. 1996) (When Chapter 11 or Chapter 13 debtor intends to retain property subject to lien, purpose of valuation under statute governing determination of secured status is not to determine the amount that creditor would receive if it hypothetically had to foreclose and sell the collateral; rather, purpose of valuation is to determine how much creditor will receive for debtor's continued possession); *See, also, Moody v. Sec. Pac. Bus. Credit, Inc*., 971 F.2d 1056, 1067 (3d Cir. 1992); *In re Taxman Clothing Co*., 905 F.2d 166, 169-70 (7th Cir. 1990) (Business Valuation-going concern valuation is proper unless business was "on its deathbed").

If that is the case, then the question becomes what is the ongoing, or going concern value of the Debtors' business and assets to set the amount of Creditor's Secured Claim since a liquidation value is not appropriate. Also, what would be an appropriate rate of interest and reasonable loan term for Creditor's remaining Secured Claim? None of this is discussed in the present Chapter 11 Plan as the only payment proposed to Creditor is that by non-debtor sources without any deadlines or mechanism by the Court to enforce that proposal.

Accordingly, Creditor objects to the Debtors' present Plan as proposed as the treatment of Creditor's Secured Claim is patently not fair and equable per the Code because it does not actually

treat and/or provide for Creditor's Secured Claim from the Debtor's ongoing operations, but instead, tries to force the Creditor to forego the treatment in this case to look to non-debtor guarantor sources. Thus, Creditor respectfully request the Court deny confirmation of the Debtors' Plan or require the Debtors to amend the Plan to address defects noted herein.

**B. THE PLAN WOULD VIOLATE THE ABSOLUTE PRIORITY RULE IN THE EVENT DEBTOR SEEKS TO VALUE AND/OR BIFURCATE CREDITORS CLAIM.**

Pursuant to 11 U.S.C. §1129(b)(2)(B) a plan is fair and equitable with respect to a class of unsecured creditors if they are paid in full or no junior class retains any interest in estate property except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14). This provision is commonly known as the absolute priority rule.

In this case, presently, the Plan does not expressly provide for or list Creditor as having an unsecured claim in the Plan for purposes of voting, though, the Plan does preserve Debtors' rights to seek a reconciliation of claim amount given Creditor's receipt of funds from non-debtor and Debtor sources, as well as determination of allowance at time of confirmation. Thus, Creditor is raising this issue out of an abundance of caution to preserve its rights in the event Debtors seek to reduce/bifurcate Creditor's Secured Claim in any way with these proceedings. Generally, Creditor believes if Debtors were to do this, which is discussed above, this would certainly be a material change in the Plan, and Debtors would likely be required to file an amended plan to properly give notice for voting. Nonetheless, given the somewhat ambiguous nature of Debtors' treatment of Creditor's Secured Claim, Creditor is seeking to preserve its rights out of an abundance of caution.

Generally, to the extent Debtors seek to reduce or bifurcate Creditor's Secured Claim into an unsecured portion, the Creditor's security interest in the collateral is senior to the Debtors' interest in the collateral. Presently, Debtors' Plan does not propose any distribution to the Class 8 General Unsecured Claims. Therefore, the Plan as presently proposed is in violation of the absolute priority rule and could not be confirmed.

**C. THE PLAN LACKS FEASIBILITY**

Pursuant to 11 U.S.C. §1129(a)(11), the Court is required to find that "confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the

debtor....” The widely accepted application of this section as stated within the Second Circuit decision of *Bayview Manhattan Mortgage and Realty Trust v. Bergman* (*In re Bergman*), 585 F.2d, 1171, 1179 (2nd Cir. 1978), wherein the Court stated: Under the test of feasibility, the court “used the probability of actual performance of the provisions of the plan. Sincerity, honest, and willingness are not sufficient to make a plan feasible, and neither are visionary promises. The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.” The bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985). To establish feasibility, the plan proponent must demonstrate concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the Plan. *S &P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. 1995) (quoting *In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993)

In addition to the lack of feasibility evidence with respect to the proposed sale of the non-debtor Party City Property and its issues as discussed above, Creditor further believes the Plan in its current state is patently infeasible given the Debtors’ ongoing cash flow operations do not provide for or anticipate for a timely payment on Creditor’s Secured Claim from the Debtors’ ongoing business income. Instead, the Plan tries to force the Creditor forego the usual treatment of a secured and/or unsecured claim and primarily look to non-debtor guarantor sources to satisfy the Debtors’ obligations under this Plan, which Creditor objects to for the reasons discussed above and does not believe is appropriate. Thus, given Creditor believes the Debtors must deal with its claims in this case, this would change the Debtors’ anticipated post-confirmation monthly cash flow analysis under the Plan since no present value payments to Creditor are provided.

Further, the extent Debtors seek to bifurcate Creditor’s Claim, as is possible, the Debtors must provide sufficient evidence that it can feasibly satisfy the absolute priority rule under 11 U.S.C. Section 1129(b)(2)(B) and pay its unsecured claim in full, or provide sufficient new value. *See, In re Ambanc La Mesa Limited Partnership*, 115 F.3rd 650, 654-656 (9th Cir. 1997). Presently, the unsecured claims are receiving no distribution under the Plan and this likely needs to be addressed as well.

Accordingly, the Debtor’s Plan lacks sufficient evidence of feasibility. Thus, Creditor

respectfully request the Court deny confirmation, or Debtor be required to amend their Plan to address the defects noted above.

**D. IS THE PLAN PROPOSED IN GOOD FAITH**

§ 1129(b)(3) expressly provides that every plan of reorganization be "proposed in good faith and not by any means forbidden by law." § 1129(b) has been construed to require that a plan "achieves a result consistent with the objectives and purposes of the Code." See *Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070 (9th Cir. 2002) *cert. denied* 123 S. Ct. 2097 (2003) (considering the totality of the circumstances to find a plan was not proposed in good faith where its sole purpose was to enable the debtors to cure and reinstate an obligation, thereby avoiding a contractual liability for default interest, but refusing to apply a per se rule); *In re Stolrow's Inc*., 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988) ("[Good faith] also requires a fundamental fairness in dealing with one's creditors."); *see also In re Bd. of Directors of Telecom Argentina, S.A*., 528 F.3d 162, 174 (2d Cir. 2008) (requiring a showing that the plan "was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected.").

The absence of an adequate means of implementation demonstrates a lack of good faith under Section 1129(a)(3), thereby precluding confirmation of a Chapter 11 Plan. *In re Walker*, 165 B.R. 994, 1003 (Bankr. E.D. Va. 1994). Further, anything short of voluntary and honest disclosure calls into question a debtor's good faith. *See, In re Valley Park Group*, Inc., 96 B.R. 16, 23 (Bankr. N.D. N.Y. 1989).

As discussed above, Creditor does have concerns about whether the Plan is feasible or proposed in good faith for many of the reasons discussed above, including, but not limited to, the fact the Plan tries to force the Creditor to forego any secured or unsecured claim treatment under this Plan and as to these Debtors, and instead, look solely to non-debtor obligations and/or assets that are not subject to this Court's jurisdiction, oversight or enforcement.

Creditor understands that Debtors would likely prefer Creditor to look solely to its non-debtor sources to satisfy the Debtors' obligations. Indeed, to the extent Creditor has received or will receive additional funds from non-debtor sources, those would similarly be applied to reduce its claim herein, which in turn would benefit the Debtors' obligations under the Plan. Creditor has tried to work with Debtors in this regard during the case. However, the Plan cannot not be used as vehicle to

entirely avoid the Debtors underlying obligations to Creditor under the Code, especially without substantive remedies to assure performance as proposed. Indeed, if Creditor had accepted the Plan as proposed, technically if the Park City Property was not sold and Creditor paid, Creditor would get nothing and far less on its Secured Claim than if it were substantively treated under the Debtors Plan as required under the Code. Accordingly, absent Creditor being paid on its Secured Claim via a Park City sale prior to Confirmation, Creditor does question whether the current Plan is proposed in good faith.

### E. IS THE DEBTOR IN VIOLATION OF A CASH COLLATERAL ORDER

As discussed above, the parties entered into a Joint Stipulated Cash Collateral Order that required certain modest adequate protection payments be made to Creditor commencing November 2025 and continuing on the 15th of each month thereafter. (*See*, Dkt. No.175). Creditor has not received any payments under the Cash Collateral Order to date.

Courts have applied a variety of remedies in the event a debtor in possession uses cash collateral without the creditor's consent or court approval or beyond the terms of said consent or court approval. *See, In re Kleather*, 208 B.R. 406, 414 (B.C. S.D. OH 1997**). One such remedy is to deny confirmation of a debtor's chapter 11 plan or dismiss the debtor's chapter 11 case**. *See, Cothran v. United States*, 45 B.R. 836, 838 (S.D. GA 1984). Another is to order that the unauthorized use of said cash collateral be deemed a priority administrative claim. *See, In re Aerosmith Denton Corp*., 36 B.R. 116, 119 (B.C. N.D. TX 1983). Further, a contempt order and/or sanctions is likewise appropriate in such circumstances. *See*, *In re Krisle*, 54 B.R. 330, 341 (BC D SD 1985); *Midwest Properties No. Two v. Big Hill Investment Co., Inc*., 93 B.R. 357, 362 (N.D. TX 1988). Finally, the unauthorized use of cash collateral alone constitutes cause to dismiss or convert a Chapter 11 Case. 11 U.S.C. § 1112(b)(4)(D).

Creditor understands that it had received funds from non-debtor sources around the same time that the Cash Collateral Order was effective, and that in April Debtors' sold the VELVTS business that would have likely impacted Debtors ability to make the full payment as initially proposed. However, Creditor being reasonable in exercise of its rights under the Cash Collateral Order should be construed a waiver of its rights under the Order. Why has Debtor not made any

payments to Creditor under the Cash Collateral Order? Wouldn't that have just served to further reduce Creditor's claim in this case? Indeed, Debtors discuss this in the Plan, but have not performed thereunder as to Creditor in any meaning way though VENK continues operations. Creditor is putting the Debtors and Court on notice that it maintains its rights under the Cash Collateral Order, but also, wants to reasonably work with the Debtors on this issue.

Respectfully submitted.

ALDRIDGE PITE, LLP

Dated: August 19, 2026

/s/ Todd S. Garan
Todd S. Garan (CASB 236878) (Pro Hac Vice)
Richard Samuel Ehlers (NV Bar #9313)
3333 Camino Del Rio South, Suite 225
San Diego, CA 92108
Attorney for Newtek Bank, N.A.

ALDRIDGE PITE, LLP
Richard Samuel Ehlers (NV Bar #9313)
Todd S. Garan (CASB 236787)(Pro Hac Vice)
ALDRIDGE PITE, LLP
9205 West Russell Road
Building 3, Suite 240
Las Vegas, NV 89148
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

**Mailing Address**:
3333 Camino del Rio South
Suite 225
San Diego CA 92108
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for Creditor
Newtek Bank, N.A.

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

VELOCITY ESPORTS, INC.,

Affects Velocity Esports, Inc.

☐ Affects Velocity Esports Las Vegas Town Square, LLC
☐ Affects Velocity Esports Chicago Schaumburg, LLC
☐ Affects Velocity Esports Newport Kentucky, LLC
☐ Affects Velocity Esports Orlando Downtown, LLC
X Affects All Debtors

Debtor.

Bankruptcy Case No. 25-12627-mkn(LEAD)
jointly Administered with
Case No.: 25-12628-mkn
Case No.: 25-12629-mkn
Case No.: 25-12630-mkn
Case No.: 25-12631-mkn

Chapter 11

**CERTIFICATE OF SERVICE**

I, Michelle Krecklow declare that:

I am employed by Aldridge Pite, LLP. My business address is: 3333 Camino Del Rio South, Suite 225, San Diego, CA 92108. I am over the age of eighteen years and not a party to this cause.

On August 19, 2026, I caused the **OBJECTION TO JOINT CHAPTER 11 PLAN OF REORGANIZATION NO.2** to be served on the parties listed herein via electronic means through the Court's CM/ECF system or by placing a copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail, addressed as follows:

VELOCITY ESPORTS, INC.
NEVADA BANKRUPTCY ATTORNEYS, LLC
5940 S RAINBOW BLVD STE 400 PMB 99721
LAS VEGAS, NV 89118-2507
(VIA US MAIL)

BRENDEN J. GOUGEON
NEVADA BANKRUPTCY ATTORNEYS
5502 FORT APACHE ROAD
SUITE 200
LAS VEGAS, NV 89148
bgougeon@nvbankruptcyattorneys.com

MATTHEW I KNEPPER
NEVADA BANKRUPTCY ATTORNEYS
5940 S. RAINBOW BLVD, STE 400
PMB 99721
LAS VEGAS, NV 89118
mknepper@nvbankruptcyattorneys.com
(VIA ECF System)

U.S. Trustee
Department of Justice
300 Las Vegas Boulevard, SO.
Suite 4300
Las Vegas, NV 89101
USTPRegion17.LV.ECF@usdoj.gov
(VIA ECF System)

**Creditor's served:**
**(VIA US MAIL)**

4958 West Ponderosa I, LLC
2443 Fillmore St Pmb 289
San Francisco, CA 94115-1814

745 Quaking Aspen, LLC
2443 Fillmore St Pmb 289
San Francisco, CA 94115-1814

Bevilacqua PLLC
1050 Connecticut Ave Nw Ste 500
Washington, DC 20036-5304

Cottle & Cottle, Ltd.
1160 S Michigan Ave Apt 3002
Chicago, IL 60605-3047

Guardian
10 Hudson Yards
New York, NY 10001-2157

LP Consulting
3838 N Kenneth Ave
Chicago, IL 60641-2814

MICHAEL MAJOR COLLECTIONS OFFICER
P.O. BOX 4505
BURLINGTON, VT 05406-4505

Pawnee Leasing Corporation
1650 W College Dr # 104
Marshall, MN 56258-1689

4958 West Ponderosa I, LLC
3838 N Kenneth Ave
Chicago, IL 60641-2814

Advantage Leasing Corporation
13400 Bishops Ln Ste 280
Brookfield, WI 53005-6237

Blue Cross and Blue Shield of Illinois
Po Box 655924
Dallas, TX 75265-5924

D & H Lawn Irrigation, Inc.
17144 Oketo Ave.
Tinley Park, IL 60477-2632

H. Betti Industries, Inc.
303 Paterson Plank Rd
Carlstadt, NJ 07072-2307

Leonard R Wanger 2018 Fam. Irrevoc. Per. Tru
Attn Morris M. Cottle
1160 S Michigan Ave Apt 3002
Chicago, IL 60605-3047

NewtekOne
4800 T Rex Ave
Boca Raton, FL 33431-4479

Philip N Kaplan
2443 Fillmore St # 289 Pmb 289
San Francisco, CA 94115-1814

4940 West Ponderosa, LLC
2443 Fillmore St Pmb 289
San Francisco, CA 94115-1814

4958 West Ponderosa II, LLC
3838 N Kenneth Ave
Chicago, IL 60641-2814

Averus USA, Inc.
3851 Clearview Ct
Gurnee, IL 60031-1247

Chase Bank
Attn: Bankruptcy Dept.
Po Box 15299
Wilmington, DE 19850-5299

Fortune 5 Capital, LLC
3045 S Archibald Ave # H-507
Ontario, CA 91761-9001

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

Leonard Wanger
3838 N Kenneth Ave
Chicago, IL 60641-2814

North Star Leasing
Po Box 4505
Burlington, VT 05406-4505

Philip N Kaplan
2443 Fillmore St #289
San Francisco, CA 94115-1814

Philip N Kaplan Sep Prop Trust
3838 N Kenneth Ave
Chicago, IL 60641-2814

Ralph Wanger Trust
3838 N Kenneth Ave
Chicago, IL 60641-2814

TASC
2302 International Ln
Madison, WI 53704-3136

Thompson Coburn, LLP
55 E Monroe St Fl 37
Chicago, IL 60603-6029

UKG Inc.
Attn Legal Department
900 Chelmsford St
Lowell, MA 01851-8100

VELOCITY ESPORTS NEWPORT KENTUCKY, LLC
1 Levee Way Ste 2130
Newport, KY 41071-1658

Philip N Kaplan Separate Property Trust
3838 N Kenneth Ave
Chicago, IL 60641-2814

Restaurant Technologies Inc
2250 Pilot Knob Rd
Saint Paul, MN 55120-1127

The LRW Revocable Trust, dated 3/9/2012
3838 N Kenneth Ave
Chicago, IL 60641-2814

Schroeder Architects
211 Perimeter Center Pkwy Ne Ste 350
Atlanta, GA 30346-1315

VELOCITY ESPORTS LAS VEGAS TOWN SQUARE, LLC
6587 Las Vegas Blvd S Unit 171
Las Vegas, NV 89119-3234

/s/ *Michelle Krecklow*