STEVEN T. GUBNER – NV Bar No. 4624
JESSICA L. BAGDANOV – CA Bar No. 281020 – Admitted *Pro Hac Vice*
JESSICA S. WELLINGTON – CA Bar No. 324477 – Admitted *Pro Hac Vice*
BG LAW LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101
Telephone: (702) 835-0800
Facsimile: (866) 995-0215
Email: sgubner@bg.law
jbagdanov@bg.law
jwellington@bg.law

Attorneys for Creditor Woodfield Mall LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>Velocity Esports, Inc.,<br><br>☐ Affects Velocity Esports, Inc.<br>☐ Affects Velocity Esports Las Vegas Town Square, LLC<br>☐ Affects Velocity Esports Chicago Schaumburg, LLC<br>☐ Affects Velocity Esports Newport Kentucky, LLC<br>☐ Affects Velocity Esports Orlando Downtown, LLC<br>☒ Affects All Debtors<br><br>Debtor(s). | Case No. 25-12627-mkn<br><br>Jointly Administered with<br>Case No. 25-12628-mkn<br>Case No. 25-12629-mkn<br>Case No. 25-12630-mkn<br>Case No. 25-12631-mkn<br><br>Chapter 11<br><br>**OBJECTION TO ADEQUACY OF DEBTORS' DISCLOSURE STATEMENT TO ACCOMPANY DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION #2**<br><br>Date: September 15, 2026<br>Time: 9:30 a.m. |

Creditor Woodfield Mall LLC ("Woodfield") hereby submits its objection (the "Objection") to the adequacy of the information contained in the *Disclosure Statement to Accompany Debtors' Chapter 11 Plan of Reorganization #2* (the "Disclosure Statement") [ECF No. 294] filed by Velocity Esports, Inc., Velocity Esports Las Vegas Town Square, LLC, Velocity Esports Chicago Schaumburg, LLC, Velocity Esports Newport Kentucky, LLC, and Velocity Esports Orlando Downtown, LLC (collectively, the "Debtors"). In support of the Objection, Woodfield respectfully represents as follows:

**THE OBJECTION**

As set forth below, the Disclosure Statement fails to provide adequate information as required by 11 U.S.C. § 1125 and should not be approved on a final basis. Specifically, it fails to disclose the information necessary to enable creditors to make an informed judgment about the Debtors' *Joint Chapter 11 Plan of Reorganization #2* (the "Plan") [ECF No. 284], omits material information regarding Plan feasibility, and describes a plan that is patently unconfirmable. Accordingly, approval of the Disclosure Statement should be denied. At bare minimum, the Debtors should be required to amend the Disclosure Statement to cure the informational deficiencies identified below.

## I. RELEVANT BACKGROUND

1. On May 7, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code commencing their jointly administered Chapter 11 cases.

2. Woodfield's claim arises from a lease dated April 4, 2022, between Woodfield, as landlord, and Velocity Esports Chicago Schaumburg, LLC ("Velocity Chicago"), as tenant, for approximately 15,360 square feet of retail space at Woodfield Mall in Schaumburg, Illinois (the "Lease"). The Lease term commenced June 1, 2023, and was set to expire November 30, 2035.

3. The Lease was secured by personal guaranties from Philip Kaplan and Leonard Wanger (together, the "Guarantors"), each guaranteeing obligations up to $1,500,000.

4. Prepetition, Velocity Chicago defaulted under the Lease. Neither Velocity Chicago nor the Guarantors cured the default prior to the Debtors' chapter 11 filings

5. The Lease is deemed rejected pursuant to 11 U.S.C. § 365(d)(4).

6. On September 4, 2025, Woodfield timely filed Proof of Claim No. 4 (the "Claim") in Velocity Chicago's Chapter 11 case. The Claim details that over $7 million is due and owing under the Lease for reserved rent and over $72,000 for unpaid rent as of the Petition Date. However, pursuant to 11 U.S.C. § 502(b)(6), Woodfield's damages as to Velocity Chicago are capped at 15%[1] of the reserved rent under the Lease plus unpaid rent. Thus, the Claim asserts a general unsecured claim in the amount of $1,135,053.73, consisting of $1,062,180.06 under the Section 502(b)(6) lease rejection damages cap, plus $72,873.67 in unpaid prepetition rent.

7. On March 3, 2026, the Debtors filed a complaint against Woodfield commencing Adversary Proceeding No. 26-01031 (the "Adversary Proceeding"), seeking to enjoin Woodfield's guarantor enforcement efforts and to disallow or reduce the Claim. On June 15, 2026, the Court entered an order in the Adversary Proceeding denying the Debtors' motion for a temporary restraining order and preliminary injunction against Woodfield [Adv. ECF No. 42]. On August 17, 2026, Woodfield timely filed its answer to the complaint [Adv. ECF No. 53].

8. On May 28, 2026, the Debtors filed the Plan [ECF No. 284], and on July 8, 2026, the Debtors filed the Disclosure Statement [ECF No. 294].

9. On July 10, 2026, the Court entered an order that, among other things, conditionally approved the Disclosure Statement, approved solicitation procedures, set a voting deadline, and set a combined hearing on the final approval of the Disclosure Statement and confirmation of the Plan for September 15, 2026 [ECF No. 297].

10. Under the Plan, the Claim is classified in Class 6 and proposed to be paid in full in equal quarterly installments over 20 years, with simple interest at the 20-year Treasury rate. However, no payment stream commences until the applicable Class 6 Claim becomes "Allowed" after resolution of all debtor-controlled objection and reduction procedures. Plan § 3.8.2.

11. Class 8 (General Unsecured Claims) receives no distribution. Plan § 3.10.2. Class 9 (Equity Interests) ostensibly receives nothing, but the Newport Master Investment and Purchase Agreement (the "Newport MIPA") contemplates the transfer of membership interests in Velocity

[1] Or one year's rent, whichever is greater. 11 U.S.C. § 502(b)(6).

Esports Newport Kentucky, LLC ("Velocity Newport") to a "Purchaser" or "Insider Bid Party." Plan § 3.11.2.

12. Plan feasibility is materially dependent on $729,557.00 in Non-Debtor Guarantor Contributions from Mr. Kaplan and Mr. Wanger. However, these contributions are expressly not binding conditions to confirmation. Plan § 4.1.4. In fact, the Debtors' own projections reveal a deficit of approximately $287,770.13 in the initial 13-week period if guarantor support is not funded. ECF No. 294, p. 24.

## II. ARGUMENT

### A. The Disclosure Statement Fails to Provide Adequate Information as Required by Section 1125 of the Bankruptcy Code

As set forth below, the Disclosure Statement does not provide "adequate information" as required by 11 U.S.C. § 1125 and should not be approved on a final basis. Fulsome disclosure is a "pivotal" concept in all chapter 11 reorganizations. *Westland Oil Development Corp. v. MCorp Management,* 157 B.R. 100, 102 (S.D. Tex. 1993) (citing 5 Collier on Bankruptcy, Section 1125.03 (15th ed. 1992)); *see also Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988) ("The importance of full disclosure is underlaid by the reliance upon the disclosure statement by creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'").

Section 1125 of the Bankruptcy Code conditions a plan proponent's solicitation of votes on a proposed chapter 11 plan on a judicial determination that the disclosure statement contains "adequate information," which is defined in the Bankruptcy Code as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1). *See also In re California Fid., Inc.,* 198 B.R. 567, 571 (9th Cir. B.A.P. 1996) ("The purpose of a disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan."); *In re*



3141964

*Lower Bucks Hosp.,* 571 F. App'x 139, 142 (3d Cir. 2014) ("Section 1125 of the Bankruptcy Code requires that a court approve a disclosure statement as containing 'adequate information,' which is 'information of a kind, and in sufficient detail, . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.'") (quoting 11 U.S.C. § 1125(a)(1)); *In re Commonwealth Grp.-Mocksville Partners, LP,* 2013 WL 1728056, at *3 (Bankr. E.D. Tenn. Apr. 22, 2013) ("In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.") (quoting *In re Ferretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991)).

Moreover, it is well-settled that a bankruptcy court should not approve a disclosure statement if the underlying chapter 11 plan is not feasible and therefore not confirmable. *See e.g., In re Arnold,* 471 B.R. 578, 587 (Bankr. C.D. Cal. 2012) ("Where a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan.") (quotations and citations omitted); *In re Beyond.com Corp.,* 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) ("Because the underlying plan is patently unconfirmable, the disclosure statement may not be approved.").

As set forth in Woodfield's concurrently filed objection to the Plan, the Plan as written cannot be confirmed, in large measure due to the fatal flaws contained in the Disclosure Statement. To comply with Section 1125 of the Bankruptcy Code, the Disclosure Statement must be amended to include clear and straightforward information that would allow creditors and equity holders to make an informed decision of whether to vote to accept or reject the Plan. Information that must be disclosed or clarified includes:

**Lack of Binding Commitment for Guarantor Contributions.** The Disclosure Statement acknowledges that Plan feasibility is "materially dependent" on plan contributions from the Guarantors. Disclosure Statement, p. 33. Yet Plan § 1.1.46 defines Non-Debtor Guarantors' Plan Contributions as "voluntary Plan funding contributions only," while Plan § 4.1.4 simultaneously acknowledges the Debtors' material dependence on those contributions by stating that their ability to consummate the Plan depends in material part upon continued access to them. The Disclosure Statement must reconcile this contradiction or clearly disclose the risk that the contributions may

never be made, and in turn, provide an alternative source of plan funding in order to ensure that the Plan is feasible. The Disclosure Statement also acknowledges that "confirmation is not conditioned upon receipt of any fixed minimum dollar amount of Non-Debtor Guarantors' Plan Contributions." Disclosure Statement, Exhibit 1, p. 3. This combination renders the Disclosure Statement materially misleading: it describes a plan as feasible while disclaiming any enforceable funding commitment on which feasibility depends.

Further, the Disclosure Statement does not disclose whether either Guarantor has executed any written obligation, contribution agreement, undertaking, or other arrangement—whether binding, conditional, or merely indicative—to provide Plan Contributions, the amount and timing of any such commitment, or what enforcement mechanisms or remedies exist if a Guarantor refuses or is unable to fund. It also provides no contingency plan if the contributions are not made and no explanation of how the resulting shortfall would be funded. A hypothetical reasonable investor cannot make an informed judgment about the Plan without knowing whether the funding essential to feasibility is actually committed and available. *See In re Northbelt, LLC*, 630 B.R. 228, 283 (Bankr. S.D. Tex. 2020) ("In assessing the feasibility of a Chapter 11 plan, courts do not place evidentiary value on non-binding pledges of financial support from third parties.").

**No Disclosure of Guarantors' Financial Condition.** Given that Plan feasibility depends on guarantor contributions, creditors need meaningful disclosure of the Guarantors' financial condition to assess whether the Plan's primary funding mechanism is realistic. Mr. Kaplan and Mr. Wanger are currently subject to guarantor judgments obtained by both Orange and Woodfield, and their assets may already be encumbered by garnishments or other enforcement measures. The Plan discloses that Orange obtained a Florida default final judgment against the Guarantors and pursued post-judgment garnishment, and that Woodfield obtained Indiana default judgments against both Guarantors arising from the same underlying lease obligations. The Disclosure Statement must disclose the current status of those and any other guarantor enforcement proceedings, including any known liens, judgments, garnishments, restraints, or other encumbrances on Guarantor assets. The Disclosure Statement provides no financial statements, balance sheets, asset inventories, income information, or information regarding existing obligations or encumbrances for the Guarantors. Without this

information, creditors cannot assess whether the Plan's $729,557.00 in potential "voluntary" contributions is realistically available or whether Guarantor assets have already been depleted or restrained by existing judgments.

**<u>Insufficient Detail on Treatment of Class 6 Claims.</u>** The Disclosure Statement fails to clearly describe the timing of Class 6 payments. The Plan provides that "No payment stream . . . shall be fixed, commence, or become due unless and until the applicable Class 6 Claim becomes Allowed after giving effect to all required reductions, offsets, credits, and non-Debtor recoveries under applicable law." Plan § 3.8.2.3. The Disclosure Statement provides no timeline for when Class 6 claims will be resolved and no information about how long the allowance process is expected to take. Class 6 creditors reviewing the Disclosure Statement cannot determine when, if ever, they will begin to receive payment. Nor does the Disclosure Statement provide a present-value analysis of the twenty-year payment stream at the proposed 20-year Treasury rate, even though Plan § 3.8.2.4 states that the Plan's methodology is intended to provide the present value of Allowed Class 6 Claims. Without that analysis, creditors cannot compare the value of the proposed Plan recovery to the recovery available in a liquidation or evaluate the effect of delayed payment commencement.

Additionally, the Disclosure Statement does not adequately explain the effect of the dollar-for-dollar offset provision (Plan § 3.8.2.5), which reduces each Class 6 claim by amounts collected from the non-debtor Guarantors. Nor does it explain that this provision effectively transforms the Plan's "payment in full" promise into something substantially less if a creditor exercises its independent guarantor enforcement rights: each dollar recovered from a Guarantor reduces the Debtor payment, while the creditor bears the delay, cost, and collection risk associated with those remedies. Thus, the Plan's purported payment-in-full treatment is not an unconditional payment in full from the Debtors, but a contingent amount subject to further reduction. The Plan simultaneously disclaims any release of guarantor liability (Plan § 3.8.2.7).

The Disclosure Statement should also disclose, separately and in the aggregate, the amount already collected from the Guarantors, the amount subject to pending garnishment or other enforcement, the identity of the collecting creditor, and how each amount will be credited or offset. Without that information, Class 6 creditors cannot assess the realistic net recovery under the Plan. A

proper disclosure statement must "clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991). The Disclosure Statement fails this fundamental requirement with respect to Class 6. Its failure to explain the interplay between the conditional payment structure, the offset provision, and the non-release of guarantor claims prevents Class 6 creditors from making an informed judgment about the Plan.

**Inadequate Disclosure of Newport MIPA Terms and Insider Interests.** The Disclosure Statement acknowledges that the Newport MIPA "contemplates that any transfer of minority interests to insider bid parties must be separately approved by the Bankruptcy Court." Disclosure Statement, p. 16. But it does not provide the information necessary to evaluate the transaction or the potential diversion of value to insiders. Plan § 3.11.2 attempts to disclaim that any transfer constitutes a distribution or retention of property "on account of" prepetition Equity Interests. That is a legal conclusion for the Court to determine, not a substitute for disclosure or supporting analysis in the Disclosure Statement. At a minimum, the Disclosure Statement must disclose: (a) the purchase price or other value of the membership interests being transferred; (b) whether Mr. Kaplan, Mr. Wanger, or any other insider is the "Insider Bid Party" or has any direct or indirect interest in the purchasing entity; (c) whether any competitive bidding, market-testing, valuation, or other sale process was conducted; and (d) what ongoing governance, management, voting, or economic interests insiders will hold after closing. Creditors cannot assess whether value is being diverted to insiders, and thus whether the absolute priority rule is satisfied, without this information. Disclosure must be sufficient to enable creditors to assess whether value is being diverted to insiders. The failure to disclose the material terms of a transaction through which equity holders may retain property while unsecured creditors go unpaid (Class 8) or face twenty-year conditional payments (Class 6) renders the Disclosure Statement inadequate.

**Insufficient Financial Projections.** The Disclosure Statement states that the Velocity Newport location is the sole remaining operating venue expected to generate operating receipts during the implementation period. Disclosure Statement, p. 23. Yet the Disclosure Statement provides only a 13-week so-called "implementation bridge" and a 24-month payment schedule to

support a Plan that asks creditors to commit to a twenty-year payment arrangement. This is fundamentally inadequate. The Disclosure Statement does not include historical operating data for the Newport venue or evidence supporting the Debtors' ability to sustain twenty years of quarterly Plan payments. In order to come close to providing sufficient information to allow creditors to make informed decisions, the Disclosure Statement should include: (a) historical operating data for the Newport location; (b) projected revenue, expenses, and cash flow covering at least the first five years of the Plan term; (c) feasibility analysis showing the impact of revenue underperformance on Plan payments; and (d) identification of the source of funds for Class 6 distributions beyond the 24-month projection period. While projections in a disclosure statement do not need to cover the entire life of the chapter 11 plan, they must cover a sufficient time period to permit creditors to evaluate feasibility. Without this information, creditors cannot make an informed decision on whether to vote to accept or reject the Plan.

**B. The Plan Is Not Feasible and Is Patently Unconfirmable**

The Disclosure Statement provides insufficient evidence regarding the feasibility of the Plan, the Debtors' ability to fund it, or the likelihood that confirmation will not be followed by liquidation or the need for further financial reorganization. These are critical elements to confirmation of a chapter 11 plan of reorganization. The Disclosure Statement does not identify a committed source of funds sufficient to satisfy the Plan's long-term obligations or provide evidence that the Debtors have sufficient monies or access to sufficient monies to fund the Plan. Without further disclosure and evidence of the Debtors' ability to fund the Plan, the Plan is not confirmable.

The Plan is fatally flawed because it is materially dependent on $729,557.00 in Non-Debtor Guarantors' Plan Contributions from the Guarantors, yet Plan § 1.1.46 expressly defines those contributions as "***voluntary*** Plan funding contributions only." (Emphasis added). The Debtors' own projections reveal a liquidity deficit of approximately $287,770.13 without these contributions. Disclosure Statement, p. 24. The Plan can therefore be confirmed without any assurance that the critical funding necessary to perform its obligations will ever be paid. A plan that is feasible only if voluntary, non-binding contributions materialize is the very definition of a "visionary scheme" that § 1129(a)(11) was designed to prevent. *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),*

761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 *Collier on Bankruptcy* ¶ 1129.02[11] at 1129–34 (15th ed. 1984)) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation.").

Because the Plan is patently unconfirmable under § 1129(a)(11), the Disclosure Statement should not be approved on a final basis. *Arnold,* 471 B.R. at 587 ("Where a plan is on its face nonconfirmable, as a matter of law, it is appropriate for the court to deny approval of the disclosure statement describing the nonconfirmable plan.") (quotations and citations omitted); *Beyond.com Corp.,* 289 B.R. at 140 ("Because the underlying plan is patently unconfirmable, the disclosure statement may not be approved."). *See also In re American Capital Equip., LLC*, 688 F.3d 145, 154 (3d Cir. 2012) (holding that a court may deny approval of a disclosure statement when the plan described therein is patently unconfirmable).

**Violation of the Absolute Priority Rule.** The Plan is patently unconfirmable on its face for the additional reason that it permits insiders or an "Insider Bid Party" to retain or acquire Velocity Newport membership interests through the Newport MIPA while Class 8 receives nothing and Class 6 receives only conditional, deferred twenty-year payments. In a cramdown, the absolute priority rule prohibits a junior class from receiving or retaining property on account of its interest while a dissenting class of unsecured creditors is not paid in full. 11 U.S.C. § 1129(b)(2)(B)(ii). Plan § 3.11.2 cannot resolve that issue by declaring, without supporting analysis or evidence, that the Velocity Newport transfer is not a retention of property on account of prepetition Equity Interests. The Plan's treatment therefore presents an independent confirmation defect that the Disclosure Statement must address before final approval.

**Unfair Discrimination Between Classes 6 and 8.** Class 6 and Class 8 both consist of general unsecured creditors, yet the Plan gives Class 6 a conditional twenty-year payment stream and gives Class 8 no distribution at all. The Disclosure Statement identifies no legitimate justification for this vastly different treatment of substantially similar unsecured claims. The stark disparity unfairly discriminates between Class 6 and Class 8 and is an additional reason the

Disclosure Statement should not be approved on a final basis because the Plan cannot be confirmed under § 1129(b)(1).

## III. RESERVATION OF RIGHTS

Woodfield expressly reserves its right to supplement this Objection and to make such other and further objections as it may deem necessary or appropriate.

## IV. CONSENT TO ENTRY OF FINAL ORDERS OR JUDGMENT

Pursuant to Local Rule 7012, Woodfield consents to entry of final orders or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## V. CONCLUSION

Based on the foregoing, Woodfield respectfully requests that the Court deny final approval of the Disclosure Statement as it does not contain adequate information, and also because the Plan is not feasible and therefore not confirmable. Woodfield prays for relief in accordance with the foregoing, and for such other and further relief that the Court may deem just and proper under the circumstances.

DATED: August 19, 2026

BG LAW LLP

By:________________________________
Jessica L. Bagdanov
Jessica S. Wellington
Attorneys for Defendant Woodfield Mall LLC